Michael Friedland (State Bar No. 157,217)
michael.friedland@knobbe.com
Thomas P. Krzeminski (State Bar No. 213,714)
2tpk@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street
14th Floor
Irvine, CA 92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Plaintiff,
HIGHMARK DIGITAL, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| HIGHMARK DIGITAL, INC., a California corporation,<br><br>       Plaintiff,<br><br>       v.<br><br>CASABLANCA DESIGN CENTERS, INC., a California corporation; FOUR SEASONS WINDOWS, INC., a California corporation; INTERIOR DOOR & CLOSET COMPANY, an unincorporated California company; ONE DAY DOORS AND CLOSETS, INC., a California corporation; DAVID WINTER, an individual; and ONE DAY ENTERPRISES, LLC. a Delaware company,<br><br>       Defendants. | CASE NO. 2:18-cv-06105-SJO-AS<br><br>**SECOND AMENDED COMPLAINT FOR:**<br><br>**(1) TRADE SECRET MISAPPROPRIATION, 18 U.S.C. § 1836,** *ET SEQ.*<br><br>**(2) TRADE SECRET MISAPPROPRIATION, CAL. CIV. CODE § 3426,** *ET SEQ.*<br><br>**(3) VIOLATION OF CALIFORNIA PENAL CODE § 502,** *ET SEQ.*<br><br>**(4) BREACH OF CONTRACT**<br><br>**(5) UNFAIR COMPETITION, CAL. BUS. & PROF. CODE § 17200,** *ET SEQ.*<br><br>**(6) BREACH OF FIDUCIARY DUTY**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff HIGHMARK DIGITAL, INC. ("HIGHMARK") hereby complains of Defendants CASABLANCA DESIGN CENTERS, INC. ("CASABLANCA"), FOUR SEASONS WINDOWS, INC. ("FOUR SEASONS"), INTERIOR DOOR & CLOSET COMPANY ("IDCC"), ONE DAY DOORS AND CLOSETS, INC., DAVID WINTER ("WINTER") and ONE DAY ENTERPRISES, LLC, (collectively, "DEFENDANTS"), and alleges as follows. ONE DAY DOORS AND CLOSETS, INC. and ONE DAY ENTERPRISES, LLC are collectively referred to as "ONE DAY."

## L.R. 8-1 JURISDICTIONAL STATEMENT

1.     This Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1331, as this case involves federal questions arising under the Defend Trade Secret Act ("DTSA"), 18 U.S.C. § 1836, *et seq.*  This Court has supplemental jurisdiction over the pendent state law claims under 28 U.S.C. § 1367, as these claims derive from a common nucleus of operative facts and are so related that they form part of the same case or controversy.

## NATURE OF THE CASE

2.     This case concerns DEFENDANTS' wrongful and unauthorized exploitation of HIGHMARK's trade secret and/or confidential information relating to HIGHMARK's award-winning proprietary system for quickly measuring and installing custom-fitted and pre-painted replacement doors for homes and business.  HIGHMARK's proprietary system was launched in 2008 and is known as the "One-Cut"™ system.  HIGHMARK's "One-Cut"™ system is used throughout the United States, including in this District.

3.     This case also concerns WINTER's intentional breach of his employment agreement with HIGHMARK; his intentional breach of the fiduciary duty he owed to HIGHMARK when serving as President of the company; and his deliberate damaging of and/or deletion of data from HIGHMARK's corporate computers and hard drive in order to deceive

HIGHMARK from various acts of corporate misconduct that he engaged in as President of HIGHMARK, including *inter alia* [Withdrawn] his improper communications with HIGHMARK's competitor, ONE DAY, regarding HIGHMARK's trade secret and/or confidential information; and his unauthorized possession and use of HIGHMARK's trade secret and/or confidential information after resigning from HIGHMARK.

4.      This case also relates to ONE DAY's intentional breach of its licensing agreement with HIGHMARK relating to HIGHMARK's "One-Cut"™ system.

5.      This case also relates to various wrongful acts taken by DEFENDANTS, individually and/or collectively, which constitute unfair competition to HIGHMARK.

### THE PARTIES

6.      Plaintiff HIGHMARK is a corporation organized and existing under the laws of the State of California, having its principal place of business at 1751 Aviation Drive, Lincoln, California 95648.

7.      HIGHMARK is informed and believes, and thereon alleges, that Defendant CASABLANCA is a corporation organized and existing under the laws of the state of California, having its principal place of business in this District at 2675 Skypark Drive #203, Torrance, California 90505.

8.      HIGHMARK is informed and believes, and thereon alleges, that Defendant FOUR SEASONS is a corporation organized and existing under the laws of the state of California, having its principal place of business in this District at 2675 Skypark Drive #203, Torrance, California 90505.

9.      HIGHMARK is informed and believes, and thereon alleges, that Defendant IDCC is an unincorporated company having its principal place of business in this District at 15441 Chemical Lane, Huntington Beach, California 92649.

10.     HIGHMARK is informed and believes, and thereon alleges, that Defendant ONE DAY DOORS AND CLOSETS, INC. is a corporation organized and existing under the laws of the state of California, having its principal place of business in this District at 2675 Skypark Drive #203, Torrance, California 90505, and that ONE DAY ENTERPRISES, LLC is a company organized and existing under the laws of the state of Delaware, having its principal place of business at 3387 Industrial Ave., Rocklin, CA 95765.

11.     HIGHMARK is informed and believes, and thereon alleges, that Defendant WINTER is an individual residing at 2241 Wild Plains Circle, Rocklin, California 95765.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367.

13.     This Court has personal jurisdiction over CASABLANCA because CASABLANCA is incorporated in California, is registered to do business in California, maintains regular and established places of business in this District, has committed acts of misappropriation of HIGHMARK's trade secrets and unfair competition in this District, and/or otherwise has purposefully directed activities toward this District that the asserted causes of action arise out of or relate to.

14.     This Court has personal jurisdiction over FOUR SEASONS because FOUR SEASONS is incorporated in California, is registered to do business in California, maintains regular and established places of business in this District, has committed acts of misappropriation of HIGHMARK's trade secrets and unfair competition in this District, and/or otherwise has purposefully directed activities toward this District that the asserted causes of action arise out of or relate to.

15.     This Court has personal jurisdiction over IDCC because IDCC is

-3-

headquartered in this District, is purportedly registered to do business in California, maintains regular and established places of business in this District, has committed acts of misappropriation of HIGHMARK's trade secrets and unfair competition in this District, and/or otherwise has purposefully directed activities toward this District that the asserted causes of action arise out of or relate to.

16.     This Court has personal jurisdiction over ONE DAY because ONE DAY is incorporated in California, is registered to do business in California, maintains regular and established places of business in this District, has committed acts of misappropriation of HIGHMARK's trade secrets, unfair competition and breach of contract in this District, and/or otherwise has purposefully directed activities toward this District that the asserted causes of action arise out of or relate to.

17.     This Court has personal jurisdiction over WINTER because WINTER is a resident of California, regularly conducts business in this District, is an employee of CASABLANCA, which has its regular and established place of business in this District, has committed acts of misappropriation of HIGHMARK's trade secrets, unfair competition, breach of contract and breach of fiduciary duty in this District, and/or otherwise has purposefully directed activities toward this District that the asserted causes of action arise out of or relate to.

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the parties' dispute occurred in this District and this Court has personal jurisdiction over each of the parties as alleged throughout this complaint.

/ / /

/ / /

-4-

# STATEMENT OF FACTS

### A.  HIGHMARK'S "One-Cut"™ Door Replacement System

19.   HIGHMARK is a proven leader in the development of proprietary technology used to quickly measure and install custom-fitted and pre-painted replacement doors.  HIGHMARK's proprietary technology for measuring and installing custom doors is known as the "One-Cut"™ system.

20.   HIGHMARK introduced the "One-Cut"™ system in 2008.

21.   HIGHMARK's "One-Cut"™ system is the winner of the Window and Door Crystal Achievement Award for "Most Innovative Product."

### B.  WINTER's Employment with HIGHMARK

22.   WINTER was employed by HIGHMARK from March 1, 2007 to July 16, 2015.

23.   HIGHMARK and WINTER entered into an EMPLOYEE NONDISCLOURE, ASSIGNMENT AND NON-SOLICITATION AGREEMENT ("WINTER EMPLOYMENT AGREEMENT").

24.   In the WINTER EMPLOYMENT AGREEMENT, WINTER agreed to the following terms, among others:

   a. "During my employment with Company [HIGHMARK], I will devote my best efforts to the interests of Company, will not engage in other employment or in any conduct in direct conflict with Company's interests that would cause a material and substantial disruption to Company and will otherwise abide by all of the Company's policies and procedures."

   b. "I will use my best efforts to prevent the unauthorized use of any laptop or personal computer, peripheral device, software or related technical documentation that the Company issues to me, and I will not input, load or otherwise attempt any unauthorized use of software in any Company computer, whether or not such computer

is assigned to me."

c. "Proprietary Information" includes (a) any information that is confidential or proprietary, technical or non-technical information of the Company, including for example and without limitation, information related to Company Innovations [ ], concepts, techniques, processes, methods, systems, designs, computer programs, source documentation, trade secrets, formulas, development or experimental work, work in progress, forecasts, proposed and future products, marketing plans, business plans, customers and suppliers and any other nonpublic information that has commercial value or (b) any information Company has received from others that Company is obligated to treat as confidential or proprietary, which may be made known to me by Company, a third party or otherwise that I may learn during my employment with Company."

d. "All Proprietary Information and all worldwide: patents . . . , copyrights, mask works, trade secrets and other worldwide rights in and to the Proprietary Information are the property of Company, Company's assigns, Company's customers and Company's suppliers, as applicable."

e. "I will not disclose any Proprietary Information to anyone outside Company, and I will use and disclose Proprietary Information to those inside Company only as necessary to perform my duties as an employee of Company."

f. "I hereby do and will assign to Company or Company's designees all my right, title and interest in and to any and all Company Innovations."

g. "At any time upon Company's request, and when my employment

-6-

with Company is over, I will return all materials (including, without limitation, documents, drawings, papers, diskettes and tapes) containing or disclosing any Proprietary Information (including all copies thereof), as well as any keys, pass cards, identification cards, computers, printers, pagers, personal digit assistants or similar items or devices that the Company has provided to me."

h. "This Agreement [ ] shall survive my employment by Company."

i. "I agree that if I violate this Agreement, Company will suffer irreparable and continuing damage for which money damages are insufficient, and Company shall be entitled to injunctive relief and/or a decree for specific performance, and such other relief as may be proper (including money damages if appropriate), to the extent permitted by law."

25. As of WINTER's first day of employment with HIGHMARK, his title was Chief Financial Officer ("CFO").

26. As of WINTER's last day of employment with HIGHMARK, his title was President.

27. When WINTER was President of HIGHMARK, he was responsible for providing strategic leadership for HIGHMARK by working with its Board of Directors and other management to establish and pursue short- and long-term goals, strategies and policies.

**C.   WINTER'S Conduct During and After Employment with HIGHMARK**

28. While WINTER was President of HIGHMARK, HIGHMARK personnel discovered suspicious text messages on a corporate phone issued by HIGHMARK to WINTER.

29. HIGHMARK is informed and believes, and thereon alleges, that the text messages at issue were exchanged during normal business hours between

-7-

WINTER and individuals associated with CASABLANCA, FOUR SEASONS, IDCC and/or ONE DAY, all of which are competitors of HIGHMARK.

30.    HIGHMARK is informed and believes, and thereon alleges, that Dairl Johnson ("Johnson") was, and is still currently, owner and operator of CASABLANCA, FOUR SEASONS, IDCC and ONE DAY.

31.    HIGHMARK is informed and believes, and thereon alleges, that WINTER, while still President at HIGHMARK, was in contact with individuals associated with CASABLANCA, FOUR SEASONS, IDCC and/or ONE DAY because WINTER was securing employment with ONE DAY and/or improperly sharing HIGHMARK's trade secret (*e.g.*, source code) and/or confidential information relating to its "One-Cut"™ system with CASABLANCA, FOUR SEASONS, IDCC and ONE DAY.

32.    [Withdrawn]

33.    [Withdrawn]

34.    [Withdrawn]

35.    [Withdrawn]

36.    [Withdrawn]

37.    [Withdrawn]

38.    Around this same time, HIGHMARK personnel approached WINTER and asked him to immediately return his corporate key card and other HIGHMARK corporate property.

39.    WINTER voluntarily surrendered his key card to HIGHMARK when asked to do so, but refused to surrender his HIGHMARK corporate laptops or hard drive.

40.    Upon attempting to shut off WINTER's corporate phone, HIGHMARK personnel learned that WINTER took the phone to another carrier and opened a personal account, causing HIGHMARK to incur an $1,100 early termination fee.

41. Approximately 10 days after WINTER's resignation from HIGHMARK, WINTER finally surrendered the HIGHMARK corporate laptops and hard drive to HIGHMARK.

42. Specifically, WINTER surrendered the following HIGHMARK property: two Apple laptops and one hard drive.

43. HIGHMARK is informed and believes, and thereon alleges, that all data on the two Apple laptops and one hard drive surrendered by WINTER was intentionally "wiped," *i.e.*, erased, and/or rendered unreadable due to damage to the device (or other means) before being surrendered to HIGHMARK.

44. HIGHMARK is informed and believes, and thereon alleges, that WINTER intentionally wiped and/or rendered unreadable the data on one of the Apple laptops surrendered by WINTER.

45. HIGHMARK is informed and believes, and thereon alleges, that WINTER intentionally damaged the hard drive and second Apple laptop he surrendered to HIGHMARK, rendering the devices inoperable.

46. HIGHMARK is informed and believes, and thereon alleges, that WINTER intentionally wiped the data from and/or damaged HIGHMARK's laptop computers and hard drive in order to conceal from HIGHMARK that WINTER was improperly in possession of HIGHMARK's trade secret (*e.g.*, source code) and/or confidential information relating to its "One-Cut"™ system after resigning from HIGHMARK; and that WINTER was wrongfully communicating with HIGHMARK competitor ONE DAY regarding potential employment with ONE DAY and/or improperly sharing HIGHMARK's trade secret (*e.g.*, source code) and/or confidential information relating to its "One-Cut"™ system with ONE DAY.

47. HIGHMARK is informed and believes, and thereon alleges, that WINTER provided HIGHMARK's trade secret and/or confidential information (including source code for its "One-Cut"™ system) to ONE DAY with the intent

of misappropriating HIGHMARK's trade secret "One-Cut"™ system and/or other confidential information of HIGHMARK.

### D.   **WINTER Joins ONE DAY**

48.   HIGHMARK is informed and believes, and thereon alleges, that in or around September 2015 WINTER joined ONE DAY DOORS AND CLOSETS, INC. as its Chief Executive Officer ("CEO").   HIGHMARK is informed and believes, and thereon alleges, that in or around October 27, 2016 or January 6, 2017 WINTER also joined ONE DAY Enterprises, LLC as its CEO.

49.   HIGHMARK is informed and believes, and thereon alleges, that ONE DAY, like HIGHMARK, is in the business of providing door replacement services.

50.   HIGHMARK is informed and believes, and thereon alleges, that ONE DAY and HIGHMARK are competitors in the door measuring/replacement industry.

51.   HIGHMARK is informed and believes, and thereon alleges, that WINTER and ONE DAY, individually and/or collectively, are improperly using HIGHMARK's trade secret and/or confidential information (including source code for its "One-Cut"™ system) and falsely informing prospective customers that the technology is the property of ONE DAY.

52.   HIGHMARK is informed and believes, and thereon alleges, that ONE DAY is owned and operated by Johnson.

53.   HIGHMARK is informed and believes, and thereon alleges, that Johnson is also an owner and operator of CASABLANCA, FOUR SEASONS and IDCC.

54.   HIGHMARK is informed and believes, and thereon alleges, that CASABLANCA, FOUR SEASONS and IDCC, like HIGHMARK and ONE DAY, are in the business of providing door replacement services.

55.   HIGHMARK is informed and believes, and thereon alleges, that WINTER has used and disclosed to ONE DAY and third parties, and continues to use and disclose, HIGHMARK's trade secret and/or confidential information, in willful and conscious disregard WINTER's contractual and related obligations owed to HIGHMARK.

56.   HIGHMARK is informed and believes, and thereon alleges, that after learning of HIGHMARK's trade secret and/or confidential information from WINTER, ONE DAY shared that information with CASABLANCA, FOUR SEASONS, and/or IDCC, individually and/or collectively, through their common owner and operator, Johnson.

57.   WINTER, ONE DAY, CASABLANCA, FOUR SEASONS and/or IDCC have committed and continue to commit unlawful business practices including, but not limited to, using HIGHMARK's trade secret and/or confidential information without authorization and for their own benefit, adversely to the interests of HIGHMARK.

**E.**   **HIGHMARK'S Licensing Agreement with FOUR SEASONS**

58.   On December 12, 2008, HIGHMARK entered into a MASTER AGREEMENT with FOUR SEASONS WINDOWS, INC.   ("LICENSING AGREEMENT").

59.   The LICENSING AGREEMENT provided that FOUR SEASONS wished to utilize HIGHMARK's proprietary "One-Cut"™ system and other licensed items from HIGHMARK.

60.   The LICENSING AGREEMENT contained confidentiality provisions that restricted FOUR SEASONS from any unauthorized disclosure of HIGHMARK's trade secret and/or confidential information to third parties, either during or after the term of the agreement.

61.   The LICENSING AGREEMENT also barred FOUR SEASONS from sublicensing HIGHMARK's trade secret and/or confidential information to

any third parties.

62.   HIGHMARK is informed and believes, and thereon alleges, that FOUR SEASONS has breached, *inter alia*, the confidentiality and no-sublicensing provisions of the LICENSING AGREEMENT.

\*     \*     \*

63.   By the aforesaid acts of DEFENDANTS, HIGHMARK has been greatly damaged, and will continue to be irreparably damaged unless DEFENDANTS are enjoined by the Court.

### FIRST CAUSE OF ACTION
### (TRADE SECRET MISAPPROPRIATION, 18 U.S.C. § 1836, *ET SEQ.*)
### [AGAINST ALL DEFENDANTS]

64.   HIGHMARK hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 63.

65.   HIGHMARK's trade secret materials related to its "One-Cut" ™ system are comprised of information that is not generally known to the public or to other persons who can obtain economic value from its disclosure or use. These materials are the subject of reasonable efforts by HIGHMARK to maintain their secrecy, and they derive independent economic value from not being generally known to the public or to others who can obtain economic value from their disclosure or use.  Therefore, these materials constitute "trade secrets" under 18 U.S.C. § 1839.

66.   HIGHMARK's trade secret materials are used in and/or intended for use in foreign or interstate commerce.

67.   HIGHMARK contends that DEFENDANTS acquired HIGHMARK's trade secrets by improperly copying, accessing, and/or removing them from HIGHMARK's premises and/or systems and/or by improperly using, transferring and/or disclosing them in breach of a duty to maintain the secrecy and confidentiality thereof.

68.     By reason of the above-alleged acts, HIGHMARK has suffered and will continue to suffer irreparable harm in an amount that is difficult or impossible to ascertain, thereby leaving HIGHMARK without an adequate remedy at law.   HIGHMARK is entitled to an injunction temporarily, preliminarily and permanently restraining DEFENDANTS, their employers, agents, employees and all persons acting in concert with them, from using, copying, publishing, disclosing, transferring or selling HIGHMARK's trade secrets, or any product or services based on or incorporating all or part of such trade secrets, and restraining them from obtaining any commercial advantage or unjust enrichment from the misappropriation of such trade secrets.

69.     HIGHMARK is further entitled to an order requiring DEFENDANTS, their employers, agents, employees and all persons acting in concert with them, to return to HIGHMARK any and all of their trade secret materials, including but not limited to any and all materials incorporating or referencing HIGHMARK's trade secrets.

70.     HIGHMARK is further entitled to recover from DEFENDANTS for the actual damages sustained by HIGHMARK as a result of DEFENDANTS' wrongful acts described in this complaint.  The amount of such damages cannot be determined precisely at this time.  HIGHMARK contends that DEFENDANTS' acts of misappropriation were both willful and malicious, thereby entitling HIGHMARK to an award of exemplary or punitive damages and attorneys' fees against DEFENDANTS.  HIGHMARK is further entitled to recover from DEFENDANTS the gains, profits, advantages, and unjust enrichment that they have obtained as a result of their wrongful acts as described herein, in an amount to be proven at the time of trial.

/ / /

/ / /

## SECOND CAUSE OF ACTION

## (TRADE SECRET MISAPPROPRIATION, CAL. CIV. CODE § 3426, _ET SEQ._) [AGAINST ALL DEFENDANTS]

71.   HIGHMARK hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 70.

72.   HIGHMARK's trade secret materials related to its "One-Cut"™ system are comprised of information that is not generally known to the public or to other persons who can obtain economic value from its disclosure or use. These materials are the subject of reasonable efforts by HIGHMARK to maintain their secrecy, and they derive independent economic value from not being generally known to the public or to others who can obtain economic value from their disclosure or use.  Therefore, these materials constitute "trade secrets" under Cal. Civ. Code § 3426.1.

73.   HIGHMARK contends that DEFENDANTS acquired HIGHMARK's trade secrets by improperly copying, accessing and/or removing them from HIGHMARK's premises and/or systems, and/or by improperly using, transferring and/or disclosing them in breach of a duty to maintain the secrecy and confidentiality thereof.

74.   By reason of the above-alleged acts, HIGHMARK has suffered and will continue to suffer irreparable harm in an amount that is difficult or impossible to ascertain, thereby leaving HIGHMARK without an adequate remedy at law.   HIGHMARK is entitled to an injunction temporarily, preliminarily and permanently restraining DEFENDANTS, their employers, agents, employees and all persons acting in concert with them, from using, copying, publishing, disclosing, transferring or selling HIGHMARK's trade secrets, or any product or services based on or incorporating all or part of such trade secrets, and restraining them from obtaining any commercial advantage or unjust enrichment from the misappropriation of such trade secrets.

75.     HIGHMARK is further entitled to an order requiring DEFENDANTS, their employers, agents, employees and all persons acting in concert with them, to return to HIGHMARK any and all of their trade secret and/or confidential information materials, including but not limited to any and all materials incorporating or referencing HIGHMARK's trade secret and/or confidential information.

76.     HIGHMARK is further entitled to recover from DEFENDANTS for the actual damages sustained by HIGHMARK as a result of DEFENDANTS' wrongful acts described in this Complaint.  The amount of such damages cannot be determined precisely at this time.  HIGHMARK contends that DEFENDANTS' acts of misappropriation were both willful and malicious, thereby entitling HIGHMARK to an award of exemplary or punitive damages and attorneys' fees against DEFENDANTS.   HIGHMARK is further entitled to recover from DEFENDANTS the gains, profits, advantages, and unjust enrichment that they have obtained as a result of their wrongful acts as described herein, in an amount to be proven at the time of trial.

## THIRD CAUSE OF ACTION
## (VIOLATION OF CALIFONIA PENAL CODE § 502, *ET SEQ.*)
## [AGAINST WINTER]

77.     HIGHMARK hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 76.

78.     Defendant WINTER violated California Penal Code § 502, *et seq.* by WINTER's unauthorized and intentional taking and/or use of HIGHMARK's confidential information (including source code for HIGHMARK's "One-Cut"™ system) from HIGHMARK's corporate computer/storage devices and/or electronic files, and by means of such conduct furthered WINTER's intended fraud and obtained one or more things of value.

79.     WINTER violated California Penal Code § 502, *et seq.* by

intentionally accessing HIGHMARK's corporate computer/storage devices and/or electronic files beyond the scope of the authorization granted, causing damage to HIGHMARK, recklessly or without due regard for his actions.

80. HIGHMARK has been harmed by WINTER's violations, and its harm includes, without limitation, harm to HIGHMARK's data, programs and computer systems and impairment of the integrity and availability of data, programs, systems or information. HIGHMARK has further suffered damage and loss through the cost of responding to the offenses, including conducting damage assessments and restoring data, programs, systems and or information to its condition prior to the offenses. These, as well as other losses and damages in an amount to be determined at trial, amount to over $5,000 aggregated over a one-year period.

81. WINTER'S unlawful access to, and misappropriations from, HIGHMARK'S corporate computer/storage devices and/or electronic files have caused HIGHMARK irreparable injury.

## FOURTH CAUSE OF ACTION
## (BREACH OF CONTRACT)
## [AGAINST WINTER AND FOUR SEASONS]

82. HIGHMARK hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 81.

### A.   Breach of the WINTER EMPLOYMENT AGREEMENT by WINTER

83. The WINTER EMPLOYMENT AGREEMENT was a valid contract between HIGHMARK and WINTER governing the terms of WINTER's employment with HIGHMARK. The WINTER EMPLOYMENT AGREEMENT required WINTER, *inter alia*, to not engage in other employment or in any conduct in direct conflict with HIGHMARK's business and prohibited WINTER from disclosing HIGHMARK's trade secret and/or

-16-

confidential information to third parties.

84. HIGHMARK has performed its obligations under the WINTER EMPLOYMENT AGREEMENT.

85. WINTER has breached the WINTER EMPLOYMENT AGREEMENT by engaging and/or attempting to engage in other employment while employed by HIGHMARK, by acting in direct conflict with HIGHMARK's business and by disclosing HIGHMARK's trade secret and/or confidential information to CASABLANCA, FOUR SEASONS, IDCC and/or ONE DAY.

86. As a direct and proximate result of said breaches, HIGHMARK has been damaged in an amount to be proven at the time of trial.

**B.** **Breach of the LICENSING AGREEMENT by FOUR SEASONS**

87. The LICENSING AGREEMENT was a valid contract between HIGHMARK and FOUR SEASONS governing the terms of a license to FOUR SEASONS of HIGHMARK's proprietary "One-Cut"™ system. The LICENSING AGREEMENT prohibited FOUR SEASONS, *inter alia*, from disclosing HIGHMARK's trade secret and/or confidential information to third parties and from sub-licensing HIGHMARK's trade secret and/or confidential information.

88. HIGHMARK has performed its obligations under the LICENSING AGREEMENT.

89. FOUR SEASONS have breached the LICENSING AGREEMENT by disclosing HIGHMARK's trade secret and/or confidential information to third parties and by sublicensing HIGHMARK's trade secret and/or confidential information to third parties without authorization.

90. As a direct and proximate result of said breaches, HIGHMARK has been damaged in an amount to be proven at the time of trial.

**FIFTH CAUSE OF ACTION**

**(UNFAIR COMPETITION, CAL. BUS. & PROF. CODE § 17200, *ET SEQ*.)**

**[AGAINST ALL DEFENDANTS]**

91.     HIGHMARK hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 90.

92.     DEFENDANTS' acts as alleged herein, including *inter alia* misappropriating and using  HIGHMARK's trade secret and/or confidential information in violation of United States law; WINTER's violation of Penal Code § 502, *et seq.*; and breaching of contracts with HIGHMARK by WINTER  and FOUR SEASONS, constitute acts of unfair competition within the meaning of Cal. Bus. & Prof. Code § 17200, *et seq.*

93.     HIGHMARK has no adequate or speedy remedy at law for these acts because they have caused, and will continue to cause, irreparable injury to HIGHMARK.

94.     By reason of the above-alleged acts, HIGHMARK has suffered irreparable harm in an amount that is difficult or impossible to ascertain, thereby leaving it without an adequate remedy at law.

95.     HIGHMARK is entitled to an injunction restraining DEFENDANTS, their employers, agents, employees, and all persons acting in concert with them, from engaging in further acts of unfair competition, and restraining them from obtaining any commercial advantage or unjust enrichment as a result of their unlawful conduct.

**SIXTH CAUSE OF ACTION**

**(BREACH OF FIDUCIARY DUTY)**

**[AGAINST WINTER]**

96.     HIGHMARK hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 95.

97.     By virtue of his position as President of HIGHMARK, WINTER

-18-

stood in a fiduciary relationship with HIGHMARK and had a duty to act in good faith and with utmost loyalty to HIGHMARK and to refrain from doing anything that would cause injury to HIGHMARK or deprive HIGHMARK of profit or advantage to which it was otherwise entitled.

98.   WINTER breached his fiduciary duties to HIGHMARK by the acts set forth above and incorporated herein by reference.

99.   By virtue of the wrongful conduct of WINTER, HIGHMARK has been damaged in an amount to be proven at the time of trial.

## **PRAYER FOR RELIEF**

WHEREFORE, HIGHMARK prays for judgment in its favor against DEFENDANTS for the following relief:

A.   A permanent injunction restraining and enjoining DEFENDANTS from continuing the wrongful acts and conduct set forth above;

B.   During the pendency of this action, such temporary and/or preliminary equitable or other relief as hereafter requested by HIGHMARK;

C.   Restitution;

D.   Compensatory damages to the fullest extent permitted under applicable law, including without limitation for unjust enrichment and/or compulsory royalties in an amount to be proven at trial;

E.   Punitive and/or exemplary damages;

F.   That DEFENDANTS be adjudged to have misappropriated HIGHMARK's trade secrets in violation of 18 U.S.C. § 1836, *et seq.*, and that DEFENDANTS' acts in doing so be adjudged willful, malicious, oppressive and done knowingly;

G.   That WINTER be adjudged to have violated the California Comprehensive Computer Data Access and Fraud Act, California Penal Code § 502(c), and that WINTER's acts in doing so be adjudged, fraudulent, willful, malicious, oppressive and done knowingly;

H.     That WINTER be adjudged to have breached the WINTER EMPLOYMENT AGREEMENT with HIGHMARK, under the common law of the State of California, and that WINTER's acts in doing so be adjudged willful, malicious, oppressive and done knowingly;

I.     That ONE DAY be adjudged to have breached its LICENSING AGREEMENT with HIGHMARK, under the common law of the State of California, and that ONE DAY's acts in doing so be adjudged willful, malicious, oppressive and done knowingly;

J.     That DEFENDANTS be adjudged to have competed unfairly with HIGHMARK under California Business and Professions Code § 17200, *et seq.*, and that DEFENDANTS' acts in doing so be adjudged willful, malicious, oppressive and done knowingly;

K.     That WINTER be adjudged to have breached his fiduciary duty to HIGHMARK, under the common law of the State of California, and that WINTER's acts in doing so be adjudged willful, malicious, oppressive and done knowingly

L.     That DEFENDANTS be directed to file with this Court and serve on HIGHMARK within thirty (30) days after the service of the injunction, a report in writing, under oath, setting forth in detail the manner and form in which DEFENDANTS have complied with the injunction;

M.     That DEFENDANTS be required to account to HIGHMARK for any and all gains, profits and advantages derived by it, and all damages sustained by HIGHMARK, by reason of DEFENDANTS' acts complained herein;

N.     That the Court deem this case exceptional and award HIGHMARK reasonable attorneys' fees;

O.     An order imposing a constructive trust for the benefit of HIGHMARK over: (1) any trade secrets and/or confidential information DEFENDANTS obtained from HIGHMARK; (2) any profits, revenues, or other

benefits obtained by DEFENDANTS as a result of any disclosure or use of trade secrets and/or confidential information obtained from HIGHMARK; (3) any proprietary information obtained from HIGHMARK; and (4) any profits, revenues, or other benefits obtained by DEFENDANTS as a result of any disclosure or use of proprietary information obtained from HIGHMARK; and

      P.     Such other and further relief as this Court may deem just.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: __March 21, 2019__     By: */s/ Thomas P. Krzeminski*
                         Michael K. Friedland
                         Thomas P. Krzeminski

                         Attorneys for Plaintiff,
                         HIGHMARK DIGITAL, INC.

## **DEMAND FOR JURY TRIAL**

HIGHMARK hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: March 21, 2019          By: */s/ Thomas P. Krzeminski*
                                            Michael K. Friedland
                                            Thomas P. Krzeminski

                                            Attorneys for Plaintiff,
                                            HIGHMARK DIGITAL, INC.

29034058

-22-