**PORTER | SCOTT**
A PROFESSIONAL CORPORATION
Martin N. Jensen, (SBN 232231)
mjensen@porterscott.com
Jeffrey A. Nordlander, (SBN 308929)
jnordlander@porterscott.com
350 University Avenue, Suite 200
Sacramento, California 95825
Tel: 916.929.1481
Fax: 916.927.3706

Attorneys for Defendants

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| HIGHMARK DIGITAL, INC., a California corporation, <br><br> Plaintiff, <br><br> v. <br><br> CASABLANCA DESIGN CENTERS, INC., a California corporation; FOUR SEASONS WINDOWS, INC., a California corporation; INTERIOR DOOR & CLOSET COMPANY, an unincorporated California company; ONE DAY DOORS AND CLOSETS, INC., a California corporation; DAVID WINTER, an individual; and ONE DAY ENTERPRISES, LLC, a Delaware company, <br><br> Defendants. | CASE NO. 2:18-cv-06105-SJO-AS <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT** <br><br> **Date:**     **February 18, 2020** <br> **Time:**     **10:00 a.m.** <br> **Judge:**    **S. James Otero** <br> **Location:** **Courtroom 10C** <br><br> **Hon. S. James Otero** <br> **Magistrate Judge Alka Sagar** <br><br> **Trial Date: 6/9/20** |

{02145596.DOCX}

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR
SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

# **TABLE OF CONTENTS**

**Page(s)**

I.     INTRODUCTION ............................................... 1

II.    STATEMENT OF FACTS ..................................... 2

    A.     Four Seasons Licenses One-Cut™ ........................ 2

    B.     Casablanca Licenses Prodim Software ..................... 3

    C.     Winter Resigns From HighMark in July 2015............... 5

    D.     Winter Wipes His Laptop After Being Advised
        To Do So By the Wells Fargo Bank Fraud Department ........ 8

    E.     Defendants Did Not Access CadCode Following
        Winter's Resignation ................................... 9

    F.     HighMark's Claims Are Time-Barred ..................... 11

III.   LEGAL STANDARD .......................................... 12

IV.    ARGUMENT ................................................. 13

    A.     HighMark's Motion Factually Misstates Basic
        Information Regarding the Software Defendants
        Purportedly Misused .................................... 13

    B.     HighMark's Trade Secret Claims Relating to Reverse
        Engineering Fail........................................ 15

        1.     There Is No Evidence In The Record Of
            Reverse Engineering............................... 15

        2.     HOP Files Are Not Trade Secrets ..................... 17

    C.     Four Seasons Did Not Breach the Master Agreement............. 19

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

{02129294.DOCX}                               i

1   1. The Definition of "File" In Section 1.6 of
2     Master Agreement Does Not Include HOP Files . . . . . . . . . . . 19

3   2. Four Seasons Did Not Disclose A HighMark
4     HOP File to Prodim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

5   3. Four Seasons Did Not Reverse HighMark Software . . . . . . . . 22

6

7  D. Winter Did Not Disclose HighMark Source Code to
    Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
8

9  E. HighMark's Claim That Defendants Accessed CadCode
    is Frivolous . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
10

11   1. HighMark Concedes Its CadCode Claim Is
     Based On a Misstatement of the Evidence . . . . . . . . . . . . . . . . 26
12

13   2. The Remainder of HighMark's Claim
14     that Defendants Accessed CadCode is Similarly
     Meritless . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
15

16  F. Winter Did Not Violate Cal. Penal Code § 502. . . . . . . . . . . . . . . . 30

17   1. Winter Did Not Knowingly Access, Take, Copy,
18     or Make Use of HighMark's Data Without Permission. . . . . . . 30

19   2. Winter Did Not Access and Damage, Delete,
20     and/or Destroy HighMark Data . . . . . . . . . . . . . . . . . . . . . . . . . 31

21  G. Winter Did Not Breach Any Contract With HighMark . . . . . . . . . . . 32
22

23   1. Winter Did Not Disclose Confidential or
     Trade Secret Information Relating to HighMark . . . . . . . . . . . 32
24

25   2. Winter Did Not Otherwise Breach
26     the Employee Nondisclosure, Assignment
     and Non-Solicitation Agreement . . . . . . . . . . . . . . . . . . . . . . . 33
27

28   3. HighMark Concedes The Existence Of A
     Genuine Dispute Of Material Fact . . . . . . . . . . . . . . . . . . . . . . 33

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

{02129294.DOCX}    ii

TABLE OF CONTENTS / TABLE OF AUTHORITIES

H.    HighMark's Breach of Fiduciary Duty Claims
Against Winter Fail. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

    1.    HighMark Concedes The Existence Of A
Genuine Dispute Of Material Fact . . . . . . . . . . . . . . . . . . . . . . . 36

I.    HighMark's Unfair Competition Claim Is Preempted . . . . . . . . . . . . . 36

J.    Measuring Interior Door Frames And Manufacturing
Custom Fit Replacement Doors Is A Widely-Known Process. . . . . . . 37

V.    CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

{02129294.DOCX}          iii

TABLE OF CONTENTS / TABLE OF AUTHORITIES

# **TABLE OF AUTHORITIES**

**Cases**  **Page(s)**

*Bankcroft-Whitney Co. v. Glen,*
      64 Cal.2d 327, 345 (Cal. 1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Cellular Accessories for Less, Inc. v. Trinitas LLC,*
      2014 WL 4627090, at \*2 (C.D. Cal. Sept. 16, 2014) . . . . . . . . . . . . . . . . . . . 17

*Durell v. Sharp Healthcare,*
      183 Cal. App. 4th 1350, 1367 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Fara Estates Homeowners Ass'n v. Fara Estates, Ltd.,*
      134 F.3d 377 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Far Out Prods., Inc. v. Oskar,*
      247 F.3d 986, 997 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 24, 31

*Halpern v. United States,*
      No. CV 17-4272 PSG (KSX), 2019 WL 4565169, at \*5
      (C.D. Cal. Aug. 16, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Hoffman v. Impact Confections, Inc.,*
      544 F. Supp. 2d 1121 (S.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Jardin v. DATAllegro, Inc.,*
      2011 WL 3300152, at \*2 (S.D. Cal. July 29, 2011) . . . . . . . . . . . . . . . . . . . . . 36

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
      475 U.S. 574, 587 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Mattel, Inc. v. MGA Entm't, Inc.,*
      782 F. Supp. 2d 911, 986 (C.D. Cal. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Premier Displays & Exhibits v. Cogswell,*
      2009 WL 8623588, at \*9 (C.D. Cal. Dec. 23, 2009) . . . . . . . . . . . . . . . . . . . . 35

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

*Richman v. Hartley*
    (2014) 224 Cal.App.4th 1182, 1186 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Robinson, Leatham & Nelson, Inc. v. Nelson,*
    109 F.3d 1388, 1394 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Rodriguez v. Countrywide Homes,*
    668 F.Supp.2d 1239, 1246 (E.D.Cal.2009) . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Teledyne Risi, Inc. v. Martin-Baker Aircraft Co.,*
    2017 WL 9831402, at *9 (C.D. Cal. Sept. 7, 2017) . . . . . . . . . . . . . . . . . . . 37

**Other Authorities**

Rule 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

## I.   **INTRODUCTION**

Plaintiff HighMark Digital, Inc.'s ("HighMark") Motion for Summary Judgment should be denied.  HighMark fails to carry its initial burden to present evidence affirmatively showing that it should prevail on any of the causes of action alleged in its operative Complaint.  HighMark's Motion misstates basic information regarding the technology Defendants' purportedly misused, and its memorandum of points and authorities is principally comprised of attorney argument and "facts" that are not found in its Separate Statement. *Compare* Doc. 148-1, *with* Doc. 148-2.  The "uncontroverted facts" HighMark does identify are largely immaterial or disputed.[1]

No reasonable juror could find in favor of HighMark on its claims relating to the purported Prodim 2011 reverse engineering conspiracy, even assuming all such claims are not barred by statute of limitations, which they are.   Nor could any reasonable juror find in favor of HighMark on its claims relating to Defendant Dave Winter's ("Winter") July 2015 resignation from HighMark.  HighMark's Motion should be denied.

/ / /

---

[1] That disputes of fact may require the denial of HighMark's Motion for Summary Judgment does not mean that Defendants' separately pending Motions for Summary Judgment should be denied on that basis as well. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 996 (9th Cir. 2001) ("There may be genuine issues of fact precluding summary judgment on behalf of one party while at the same time the undisputed facts warrant summary judgment for the other party.")

{02145596.DOCX}                                    1

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT**

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

## II.   STATEMENT OF FACTS

**A.   Four Seasons Licenses One-Cut™.**

Defendant Four Seasons Windows, Inc. ("Four Seasons") licensed the One-Cut™ door software under a December 2008 "Master Agreement." Additional Material Fact ("AMF") 241. One-Cut™ was principally comprised of software originally developed by a company called MetaWorks, LLC ("MetaWorks Software"). AMF 145, 146. The MetaWorks software converted Prodim Proliner measurement data into an eXtensible markup language ("XML") output; or as HighMark's expert labelled it, a WINSTEP file in XML format. *Id.* HighMark licensed CadCode Systems ("CadCode") software to translate the generic MetaWorks XML output into cutting instructions readable by specific brands of CNC machines, including Holz-Her CNC machine compatible "HOP files" ("CadCode Software"). AMF 147 – 148.[2]

HOP files are not proprietary to HighMark. AMF 235 – 236, 238 – 241. On the contrary, HOP is a standard Holz-Her programming interface, and HighMark was not involved in its development. AMF 147 – 150. CadCode makes it software available to customers other than HighMark, and HighMark and CadCode did not

---

[2] HOP files are essentially instructions to Holz-Her CNC machines about how to cut a desired product (doors, cabinets, countertops, etc.). AMF 149 – 150. Video of a Holz-Her CNC machine cutting a door can be viewed on the Holz-Her website at: https://www.holzherusa.com/us/company-overview/news-press/holz-her-application-videos.html.

{02145596.DOCX}                                      2

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

execute a confidentiality agreement relating to HighMark's use of the CadCode software.   AMF 233, 237. According to HighMark's Chief Technology Officer, CadCode HOP files are simple compared to the MetaWorks XML output.  AMF 234. The Master Agreement between Four Seasons and HighMark did not impose confidentiality or trade secret restrictions on CadCode Software generated HOP files, as more fully described in Section IV.C.

**B.   Casablanca Licenses Prodim Software.**

In October 2011, Defendant Casablanca Design Centers, Inc. ("Casablanca") entered into an agreement with Prodim to license Prodim software to manufacture doors. AMF 151.  Prodim completed installation of its software in November 2011. AMF 153.   In 2013, Casablanca paid to upgrade the Prodim software, and has manufactured doors using the Prodim software since November 2011.  AMF 152 – 153.

Software installed on the Prodim Proliner generates an XML file.  AMF 208. Prodim uses computer aid manufacturing ("CAM") software from vectorcam[3] to convert that XML file into a HOP file readable by Defendants' Holz-Her CNC machines.  AMF 188.

In 2011, or any at other time, the Johnsons did not contemplate, discuss, or

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

---

[3] https://www.vectorcam.com/en/

{02145596.DOCX}                                    3

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT

request that Prodim do anything improper with HighMark software.  AMF 208 – 215.

The Johnsons do not have experience reading, writing, or working with computer

code.  AMF 211.  Neither they nor their employees disclosed any type of trade secret

or confidential information of HighMark to Prodim for reversing engineering or any

other purpose.  AMF 212 – 213.  Even assuming a CadCode Software generated HOP

file constitutes confidential or trade secret information, neither Four Seasons nor

Casablanca sent a HighMark HOP file to Prodim.  AMF 216.

Moreover, Prodim had software to translate Proliner measurement data into

HOP files prior to Dairl Johnson licensing such software from Prodim in 2011. AMF

208 - 215.  In fact, Prodim has a long history of working with Holz-Her to measure

and manufacture products on Holz-Her CNC machines. AMF 219 – 241. The co-

founder of HighMark, Michael McElroy, "didn't even know what a CNC machine

was," until he met with Prodim in 2006 to discuss using the Proliner to measure

interior door openings.  AMF 221 - 222.

Prodim had a preexisting relationship with Holz-Her, and recommended that

McElroy use a Holz-Her CNC machine to manufacture doors.  AMF 222 – 223.

McElroy purchased the Holz-Her CNC machine used by HighMark on Prodim's

recommendation. *Id.* At the time, Prodim had been cutting countertops on Holz-Her

CNC machines "for years" and already had basic door software, which it

{02145596.DOCX}                                                4

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

demonstrated for McElroy.   AMF 224 – 226.   Prodim personnel travelled to McElroy's facility in 2006 and cut on a door on his newly purchased Holz-Her CNC machine. AMF 224 – 227.

McElroy considered having Prodim upgrade its existing software to automatically convert measurement data into HOP files.  AMF 229 – 231.  It was McElroy's understanding that Prodim and Holz-Her could put together an integrated software solution "fairly easily."  AMF 230.  But Prodim wanted to enter into a "per-door" licensing agreement for the software, whereas McElroy wanted to own the software, so McElroy declined. AMF 229 – 231.  McElroy ultimately contracted with MetaWorks to develop a "[p]rogram to convert Prodim Proliner export data to CADCode PartLink input data" on January 4, 2007 (*i.e.*, the MetaWorks Software).  Krzeminski Decl. Ex. 3 at HMDI.0001340 (emphasis added).  The final specifications of which were "[t]o be determined in final design, working with Prodim."  *Id.*  In essence, HighMark is accusing Prodim of reverse engineering software that Prodim assisted in the development of in the first place.

**C.     Winter Resigns From HighMark in July 2015.**

McElroy and Winter co-founded HighMark in 2007.  AMF 154.  By 2015, however, Winter's relationship with HighMark had become strained.  AMF 154.  McElroy was not actively involved in the business and a new Chief Executive Officer,

{02145596.DOCX}                                             5

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

Richard Matulia ("Matulia"), had been hired in 2014.  AMF 155 - 156.  HighMark was not paying Winter in accordance with his employment agreements,[4] and Winter disagreed with the way the company was being run, which he believed included the non-payment of vendors, among other reasons.  AMF 157, 162 – 163.

In or around early June 2015, Winter came across a May 28, 2015, e-mail from Matulia to the HighMark Board of Directors in which Matulia referred to Winter as an "anchor," and stated that: "the results warrant corrective action" and "franchises hate him."  AMF 158 – 159.  At the time, Winter was a member of the Board of Directors, but Matulia's did not include in him in his communication to the Board. AMF 160.  Shortly thereafter, HighMark reduced Winter's salary, and moved to him a commission-based compensation structure without his authorization.  Krzeminski Decl., Ex. 54 at HMDI 202.[5]

Sensibly concluding that continued employment with HighMark was untenable, Winter contacted Dairl and Glenn Johnson in early June 2015 about the possibility of working together.  AMF 163.  The Johnsons were receptive, and communicated their interest in working with Winter, because of his experience in the door industry and that "he's a really good guy, and people like him. And he is honest."  AMF 169 – 171.

---

[4] After his resignation, Winter brought a claim before the California Labor Commissioner for unpaid wages and unreimbursed expenses.  AMF 157; Winter Decl., ¶ 12, Ex. F.  Winter prevailed, securing a judgment in his favor in the amount of $221,875.33.  Winter Decl., ¶ 12, Ex. F.

[5] After Winter resigned from HighMark, Matulia mused to the Board of Directors that the change to his salary structure may have been the "motive for [Dave] bailing out and running to IDCC."  Krzeminski Decl., Ex. 54 at HMDI 202.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR
SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

The Johnsons were not interested in partnering or otherwise entering into a business relationship with HighMark. Declaration of Glenn Johnson, ¶ 9. The Johnsons were interested in hiring Winter personally, and never considered and would not have worked with HighMark. *Id.* In fact, HighMark approached the Johnsons in January 2017 about a partnership. *Id.* at ¶ 10. The Johnsons rejected HighMark's proposals. *Id.*

During negotiations over Winter joining the Johnsons in business, Winter informed the Johnsons he would not bring over any dealers or assets from HighMark or do anything to the detriment of the company. AMF 167. Winter wanted to be ethical in all areas and wanted nothing to do with HighMark's technology. AMF 168. Given that the Johnsons had been operating a profitable interior door replacement company using Prodim software for the last four years, there was no need or reason to do so in any case. *See* AMF 151 – 153.

Winter resigned from HighMark July 16, 2015. AMF 166. Roughly 45 days elapsed between Winter contacting the Johnsons in early June 2015, and his July 16, 2015 resignation. *Id.* Winter did not take any confidential or proprietary information from HighMark and never shared any such information with the Johnsons or anyone else. AMF 172, 188 – 206. It is undisputed that Defendants have used Prodim software from November 2011 to the present. AMF 153.

{02145596.DOCX}

7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

**D.      Winter Wipes His Laptop After Being Advised To Do So By the Wells Fargo Bank Fraud Department.**

Approximately a week after his resignation, Winter returned his company laptop and an external hard drive to HighMark. AMF 173 – 187. Winter had intended to return all company property on the last day of his employment, but after being locked out of the office and escorted from the premises, he was unable to do so.  AMF 173.  The next day, Winter received e-mail alerts informing him that his and wife's personal Wells Fargo bank account had been accessed. AMF 174, 176 – 178. The account information and login credentials for the account had been modified, including the changing of Winter and his wife's personal password and the removal of Winter and his wife's name and contact information. *Id.* Winter also received an e-mail alert informing him that his Facebook had been accessed and account information had been modified, including the changing of his password and the removal of his personal email account. AMF 177.

Now former HighMark employee Katherine Gabales later appeared for deposition and readily acknowledged accessing a Wells Fargo and Facebook account and changing the account information to reflect HighMark information.  AMF 179 – 183.  Gabales testified that she had been instructed to change credentials for Winter after he left. AMF 180. At the time, Gabales was under the impression the accounts were HighMark business accounts, as opposed to Winter's personal accounts.  AMF

{02145596.DOCX}                                    8

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR
SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

183. It is undisputed that HighMark did not inform Winter these changes were being made. AMF 178. When Winter strenuously objected that HighMark personnel were accessing his personal accounts, HighMark refused to acknowledge accessing the accounts. *Id.*

After receiving fraud alerts from Wells Fargo, Winter went to his local branch. AMF 184. The Wells Fargo fraud department advised Winter to wipe the laptop to eliminate any viruses or malware that may have been allowing a third-party to access his accounts, which he reluctantly did. AMF 184 – 186. Before doing so, however, Winter saved all HighMark-related files on the laptop to an external hard drive. AMF 187. Winter met a HighMark employee at a Starbucks to return the laptop and the external hard drive approximately a week after he resigned. AMF 187. Matulia acknowledged in his deposition to having received an external harddrive, that it had data on it, and he was not aware of any files missing. *Id.*

**E.    Defendants Did Not Access CadCode Following Winter's Resignation.**

Although it is now undisputed that the Johnsons have generated HOP files and cut doors using the Prodim software since 2011, HighMark has persisted in claiming that Defendants, with Winter's aid, somehow and for some reason began accessing CadCode to generate HOP files following Winter's July 2015 resignation.

None of the Defendants ever accessed CadCode Software to generate HOP files

{02145596.DOCX}                                    9

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR
SUMMARY JUDGMENT

following Winter's July 2015 resignation. AMF 188 – 207. They would have no reason to do so. Defendants licensed the Prodim software, including vectorcam to generate HOP files, for a one-time fee. AMF 191. Defendants can generate infinite HOP files using the vectorcam software linked to its CNC machines for no additional cost. AMF 192.

Each HOP file generated by Defendants from November 2011 to the present bears the name "vectorcam" in its text. AMF 190. Although HighMark claims there was a discrepancy between the number of doors HighMark manufactured and the number of HOP files generated by CadCode, HighMark's own e-mail correspondence shows that the "discrepancy" was the result of HighMark employees generating multiple HOP files for each door HighMark produced. AMF 196. For example, sometimes HighMark employees would press the generate button twice, "because it makes them feel more confident that the HOP file is being created." Jensen Decl., Ex. E at 1240. That is why in December 2, 2016, e-mail correspondence to HighMark CadCode wrote: "[a]s for the discrepancies, we're not sure there really are any." AMF 207. On January 4, 2017, CadCode wrote to HighMark stating that: "For the record, we don't have any evidence that Dave and/or his current company are using the CadCode solution." AMF 200.

On March 16, 2017, HighMark sent e-mail correspondence to CadCode stating

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

{02145596.DOCX}                                   10

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT**

that HighMark's "server issues" have not been resolved and requesting that CadCode

make the issue a high priority "so we can get back up and running."   AMF 202.

Casablanca generated HOP files March 13, 14, 15, 16, and 17, 2017.  AMF 203.

**F.     HighMark's Claims Are Time-Barred.**

McElroy and Winter knew Dairl and Glenn Johnson had transitioned to Prodim

software by early 2012 at the latest.  AMF 251 - 252.   McElroy was "mad" and

"upset." UMF AMF 253.  Prior business dealing with the Johnsons had not ended on

"good terms," and the relationship between McElroy and the Johnsons was

"fractured."  UMF AMF 254 – 256.    McElroy felt that the Johnsons did not operate

their business in an "honest" manner, whether that meant the way they paid their bills,

treated customers, or how they resolved issues and problems.  AMF 257 – 258.

McElroy similarly considered Prodim a competitor whose software posed a

serious threat to HighMark's business.  AMF 260.  Prodim was already downplaying

the importance of HighMark's software by "advertising the fact that, you know, who

needs HighMark when we can do it." AMF 261.  McElroy was concerned Prodim was

using ideas and technology developed by HighMark to benefit Prodim's business.

AMF 262.

McElroy considered litigation against Defendants.  AMF 266.  McElroy did not

know what the Johnsons were doing with information belonging to HighMark, if

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR
SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

anything, but he was concerned and believed there to be "a need for protection." AMF 266. McElroy suspected "infringement" and the Johnsons using information belonging to HighMark "that they weren't allowed to have." AMF 259. Notwithstanding McElroy's 2012 suspicions, HighMark did not conduct a reasonable investigation into its alleged claims against Defendants. AMF 268 – 271. HighMark did not file its Complaint until July 13, 2018. AMF 267.

## III.  **LEGAL STANDARD**

Under Rule 56(c), summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A plaintiff moving for summary judgment must carry its initial burden to present "evidence affirmatively showing, for all essential elements of [their] case, that no reasonable jury could find for the non-moving party." *Fara Estates Homeowners Ass'n v. Fara Estates, Ltd.*, 134 F.3d 377 (9th Cir. 1998). Where the plaintiff does not satisfy its initial burden, the non-moving party has no obligation to demonstrate a genuine dispute of material fact. *Halpern v. United States*, No. CV 17-4272 PSG (KSX), 2019 WL 4565169, at *5 (C.D. Cal. Aug. 16, 2019) (denying motion for summary judgment where plaintiff did not meet initial burden). Should the plaintiff carry its burden, the non-movant can

{02145596.DOCX}                                          12

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR
SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

defeat summary by demonstrating a genuine dispute of material fact. *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## IV.   ARGUMENT

Since HighMark filed this lawsuit in July 2018, its claims against the Entity

Defendants and Winter have presented a moving target.  Most if not all of the issues

now being litigated – alleged reverse engineering in 2011 and Defendants purportedly

accessing CadCode after Winter's 2015 resignation – are nowhere to be found in any

of HighMark's three Complaints. *See* Doc. 1, 9, 56.  Notwithstanding the fact that the

issues on summary judgment are ordinarily framed by the Complaint, Defendants

address each of the unsupported claims now advanced by HighMark. *Rodriguez v.*

*Countrywide Homes*, 668 F.Supp.2d 1239, 1246 (E.D.Cal.2009) ("issues on summary

judgment are framed by the Complaint.").  For the reasons set forth below, summary

judgment should be denied as to all claims and issues.

## A.   HighMark's Motion Factually Misstates Basic Information Regarding the Software Defendants Purportedly Misused.

Of the several factual misstatements contained in HighMark's moving papers,

one of the most glaring is HighMark's inaccurate description of its own software.

HighMark states its "proprietary software [is] used to convert measurements of an

existing doorframe into door-cutting instructions readable by a specific type of

woodcutting machine, known as a Holzher CNC machine." Doc. 148-1 at 1:13 – 16;

{02145596.DOCX}                                     13

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR
SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

2:12 – 16; 19:2 – 7.   At least with respect to all time periods relevant to this lawsuit, this is simply incorrect.

At least until HighMark reverse engineered the CadCode Software in 2017, HighMark's proprietary software did not produce cutting instructions readable by a specific type of CNC machine.  On the contrary, HighMark's proprietary software – the MetaWorks Software – generated non-specific cutting instructions that were not readable by particular brands of CNC machine.  AMF 146.   That was the point. Jensen Decl., Ex. U at 28:20 – 25 ("The WINTSTEP file in XML format . . . is it fair to say that's nonmachine-specific cutting instructions? A. That was the intent . . . [so HighMark] could operate on many different CNC machines.").

Software HighMark licensed from CadCode converted the generic MetaWorks Software XML output into cutting instructions readable by multiple manufacturers of CNC machines, including Holz-Her CNC machine-specific "HOP files." AMF 148 – 150.  The CadCode Software had the ability to take non-specific data, and translate it into code readable by multiple brands of CNC machines, depending on what type of CNC machine the customer used.  *Id*.  Finally, it is undisputed that the CadCode Software is not proprietary to HighMark.  Jensen Dec., Ex. H at 158:8 – 10 (Q. The CadCode software that you were talking about, it's proprietary to CadCode, is it not? A. That is correct.").  As HighMark cannot even accurately describe the technology

{02145596.DOCX}                                14

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR
SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

Defendants purportedly misused, summary judgment cannot be entered in its favor.

**B.      HighMark's Trade Secret Claims Relating to Reverse Engineering Fail.**

    **1.      There Is No Evidence In The Record Of Reverse Engineering.**

The essence of HighMark's reverse engineering theory is the allegation that in September 2011 a Casablanca employee, Michael MacGilvray, e-mailed a HighMark HOP file to Prodim.  By November of 2011, Prodim is supposed to have used that single HOP file to reverse engineer HighMark software.  *See* Doc. 148-1 at 8:8 – 9:16. HighMark's motion for summary judgment as to reverse engineering must be denied.

First, the undisputed facts show that Michael MacGilvray did <u>not</u> transmit a HighMark HOP file to Prodim.  Mr. MacGilvray appeared for deposition and testified that: (1) he has never seen a HighMark HOP file, Ex. M at 97:10 -98:2; (2) he "wouldn't have sent them any HighMark stuff, because that's not what we wanted," Ex. M at 50:21 – 51:7; (3) he did not send a HighMark HOP file to Prodim, Ex. M at 52:12 – 15;  and (4) the HOP file attached to his September 27, 20111, e-mail, on which HighMark's entire case hinges, was a <u>Prodim file</u>, not a HighMark file, Ex. M at 56:18 – 57:6.  MacGilvray's testimony by itself requires the denial of HighMark's Motion.

Second, HighMark's reverse engineering theory ignores the testimony of the founder of HighMark, Michael McElroy.  As McElroy confirmed, Prodim was

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

{02145596.DOCX}                                    15

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT**

instrumental in the development of the One-Cut™ in the first place. AMF 218 – 231. Prior to meeting with Prodim in 2006, McElroy "didn't even know what a CNC machine was," while Prodim had been working with Holz-Holzher for years. AMF 219 – 229. At the time, Prodim already had basic door cutting software, which it demonstrated for McElroy by cutting a door on his Holz-Her CNC machine. AMF 220, 228. By 2011, Prodim was already "advertising the fact that, you know, who needs HighMark when we can do it." AMF 261. HighMark's claim of reverse engineering is contradicted by the testimony of the person running HighMark at the time the alleged reverse engineering occurred.

In addition, McElroy and Winter's contract with MetaWorks explicitly states that the specifications of the "Geometry Interpreter," the MetaWorks software HighMark later used to convert "Prodim Proliner export data to CadCode PartLink input data," was "[t]o be determined in final design working with Prodim." Krzeminski Decl., Ex. 3 at HDMI at 1340. Rather than arising from a phantom reverse engineering conspiracy between Prodim and Defendants, any alleged similarities between HighMark and Prodim HOP files resulted from Prodim assisting in the development of HighMark software in the first place.[6]

Finally, summary judgment must be denied because HighMark has never

---

[6] Despite the critical roles Prodim and CadCode Systems technology play in this case, HighMark did not serve any discovery on either entity in this case.

{02145596.DOCX}                                         16

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

identified what component of the Prodim software was purportedly reverse engineered. Software on the Prodim Proliner generates an XML file containing measurement data, which software supplied by a third-party vendor, vectorcam, translates into HOP files. AMF 188. HighMark vaguely complains that some portion of this process was reverse engineered, but its expert has neither inspected Defendants' facilities nor the Prodim software used by Defendants. Defendants do not have any of the Prodim software source code, AMF 246, and HighMark never tried to contact, subpoena or otherwise obtain any source code from Prodim. HighMark's Motion must be denied.

## 2.   HOP Files Are Not Trade Secrets.

HighMark's motion should be denied for the additional reason that HOP files generated by the CadCode Software and used to cut doors on Holz-Her CNC machines are not trade secrets. *Cellular Accessories for Less, Inc. v. Trinitas LLC*, 2014 WL 4627090, at *2 (C.D. Cal. Sept. 16, 2014) (trade secrets are: (1) information that derives independent economic value from not being generally known; and (2) is the subject of reasonable efforts under the circumstances to maintain its secrecy.).[7] HighMark software did not begin generating HOP files HOP files were not even

---

[7] There is no evidence the Entity Defendants, in or around 2011 time period, ever accessed or used any HighMark source code, or any other type of information that could conceivably could be deemed a trade secret. AMF 209 – 213. HighMark's claims are contingent on HOP files constituting a trade secret.

{02145596.DOCX}                            17

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR
SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

1  produced using HighMark's software until much later in 2017.

2  HOP files are mere instructions to a Holz-Her CNC machine about how to mill
3
4  a desired product (*e.g.*, cut a door out of a slab of wood).  AMF 149 – 150. Holz-Her
5  was cutting doors on its CNC machines before HighMark existed, and Prodim
6
7  demonstrated its ability to cut a door on a Holz-Her machine for McElroy in 2006.
8  AMF 226 – 228.  Holz-Her gives out sample HOP files to customers, the German
9  software company direkt cnc systeme gmbh produces a manual describing how to
10
11  program HOP files, and users of Holz-Her CNC machines share sample HOP files on
12  internet forums dedicated to woodworking. AMF 232 – 234.  HighMark did not
13
14  develop the HOP format, and its retained expert witness has no idea who did.  Jensen
15  Decl., Ex. U at 96:6 ("Q. Is Direct CNC System GMBH the company that developed
16  HOP? A. I don't know.").
17

18  The founders of HighMark – Michael McElroy and Dave Winter – do not
19  consider HOP files proprietary to HighMark.  AMF 238 – 239. Nor were HighMark
20
21  HOP files protected by confidentiality or trade secret agreements, as further described
22  in Section IV.C below.  On the contrary, HighMark provided customers HOP files
23
24  with no expectation they would be kept confidential, which is fatal to its later adopted
25  claim of trade secret protection.  *Hoffman v. Impact Confections, Inc.*, 544 F. Supp.
26  2d 1121 (S.D. Cal. 2008) (finding that plaintiff's failure to designate items as
27

28  {02145596.DOCX}                                    18
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR
SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

confidential under non-disclosure agreement was evidence that the plaintiff did not make reasonable efforts to maintain the secrecy of the information).  As HOP files are not trade secrets, HighMark's trade secret claims – which are predicated on the purported disclosure of a trade secret HOP file – must fail.

## C.    Four Seasons Did Not Breach the Master Agreement.

"To prevail on a cause of action for breach of contract, the plaintiff must prove (1) the contract, (2) the plaintiff's performance of the contract or excuse for nonperformance, (3) the defendant's breach, and (4) the resulting damage to the plaintiff." *Richman v. Hartley* (2014) 224 Cal.App.4th 1182, 1186.  HighMark's Motion as to any alleged breach of contract by Four Seasons should be denied.  HOP files are not confidential under the Master Agreement and, even if they were, Defendants did not send a HighMark HOP file to Prodim for reverse engineering or any other purpose.

### 1.    The Definition of "File" In Section 1.6 of Master Agreement Does Not Include HOP Files.

The Master Agreement does not contains the words "HOP file." *See* Krzeminski Decl., Ex. 44.  HighMark argues that "File" in Section 1.6 of the Master Agreement means HOP files.  *See* Doc. 148-1 at 13:8 – 12. HighMark is mistaken.

Section 1.6 of the Master Agreement defines "File" as, "[i]n the case of a file downloaded from the Extranet Site, . . . a file created by a Licensed Application based

{02145596.DOCX}                                19

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT

on Measurement Data containing a digital footprint for a single, individual door opening." Krzeminski Decl., Ex. 44 at HDMI 94.  HOP files do not fall within this definition for several reasons.  First, HOP files are cutting instructions for Holz-Her CNC machines; a HOP file is not reasonably described as a "digital footprint for a single, individual door opening." Krzeminski Decl., Ex. 44 at HDMI 94.  According to Winter, the person who created the Master Agreement, "File" was not intended to and did not encompass HOP files, or any other type of machine-specific cutting instructions used by customers to actually manufacture doors. Jensen Decl., Ex. B at 100:6 – 103:18.

What "File" was intended to encompass were the MetaWorks Software generated XML files.  This is because, when the Master Agreement was drafted, the Files downloaded by HighMark licenses were the MetaWorks Software XML files, as opposed to HOP files (or other type of CNC machine-specific file).    Winter Decl., ¶ 23; Jensen Decl., Ex. B at 100:6 – 103:18.  CadCode Software, or other comparable CAM software capable of translating XML into machine-specific cutting instructions, was installed locally onto customer CNC machines. Winter Decl., ¶ 23; Jensen Decl., Ex. B at 100:6 – 103:18.  Licensees generated HOP files locally at their facilities, and the "Files" downloaded from HighMark were generic MetaWorks XML files.  Winter Decl., ¶ 23; Krzeminski Decl., Ex. 44 at HDMI 94.

{02145596.DOCX}                                                  20

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT

It was not until later that CadCode developed the web-based software from which HighMark licensees could download HOP files over the internet. *See*, *e.g.*, Jensen Decl., Ex. E at 1238 (2016 e-mail correspondence in which CadCode distinguishes between "when we put the prototype together with Dave ~10 years ago and the server based solution 5 years ago."); *see also* Winter Decl., ¶ 23; Exhibit 5 to the Krzeminski Declaration at HDMI 1461 (discussing "[CadCode]-provided **End-user** support services, including, but not limited to . . . **On-site installation, system integration, and instruction**.") (emphasis added); Jensen Decl., Ex. B at 100:6 – 103:18.

Finally, the Master Agreement itself distinguishes between a "File," on the one hand, and "a specific machine-ready run program that will process the cutting actions of the Door Machining Unit" (*e.g.*, HOP file), on the other. Krzeminski Decl., Ex. Q at HMDI 1393 ("HighMark guarantees (the "Guarantee") to provide a product, a File, that will generate a specific machine-ready run program that will process the cutting actions of the Door Machining Unit."). Thus, the definition of "File" in Section 1.6 of the Master Agreement does not include HOP files. *See id.*

### 2. Four Seasons Did Not Disclose A HighMark HOP File to Prodim.

Even assuming a HOP file constitutes a "File" as defined in Section 1.6, Defendants did not send a HighMark HOP file to Prodim. As noted above, Mr.

{02145596.DOCX}                           21

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT**

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA   95825
TEL: 916.929.1481
FAX: 916.927.3706

MacGilvray appeared for deposition and repeatedly testified that: (1) he has never seen a HighMark HOP file, Ex. M at 97:10 -98:2; (2) he "wouldn't have sent them any HighMark stuff, because that's not what we wanted," Ex. M at 50:21 – 51:7; and (3) he did not send a HighMark HOP file to Prodim, Ex. M at 52:12 – 15;  and (4) the HOP file attached to his September 27, 2011, e-mail, on which HighMark's entire case hinges, was a <u>Prodim file</u>, not a HighMark file, Ex. M at 56:18 – 57:6.  Again, MacGilvray's testimony requires the denial of HighMark's Motion.[8]

### 3.    Four Seasons Did Not Reverse HighMark Software.

As described in Section IV(B), *supra*, Four Seasons did not reverse engineer One-Cut™ and HighMark's Motion for summary judgment as to reverse engineering must be denied.  The alleged similarities between the Prodim and CadCode generated HOP files set forth in the Opening Expert Report of Derek Huisjen[9] are disputed and insufficient to support HighMark's claims.

For example, the first factoid relied on by Mr. Huisjen in forming his opinion that Prodim reverse engineered HighMark's software is that HighMark and Defendants' HOP files both contain the comment line ";WZGV=7123ME001." Huisjen Decl., Ex. 9 at 8-9.  Huisjen says this comment line is "unique" and indicates

---

[8] Without any supporting evidence, Plaintiff claims that "any HOP file on Defendants' server in September 2011 would have been a HighMark HOP file." Doc. No. 8:16 – 18.  This is false.  There are thousands of non-CadCode generated HOP files stored on Casablanca's CNC's machine from prior to September 2011, including sample Holz-Her HOP files. Vilfer Decl., ¶ 18.

[9] See Defendants separately filed Motion to Exclude Testimony by Mr. Huisjen. Doc. 152.

{02145596.DOCX}                                        22

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL.: 916.929.1481
FAX: 916.927.3706

"a g-code creation methodology that traces to CadCode." *Id.* at 9:19-20.   But a HOP file containing this same "unique" comment line is publicly available on the internet, and its metadata shows it was last modified August 2006.   Vilfer Declaration, ¶ 6. HighMark did not exist in August 2006.   In deposition, Mr. Huisjen admitted he has no idea where the comment line ";WZGV=7123ME001" originated from or what it signifies. Jensen Decl., Ex. U at 89:10 – 90:22.

Mr. Huisjen next claims "another out-of-place comment in the Defendants' HOP files indicates reverse engineering because it matches the same location of an out-of place comment in HighMark's HOP files."   Huisjen Decl., Ex. 9 at 9:25-10:25.   Mr. Huisjen speculates that the "out-of place comment" is non-functional and "unique." *Id.*   He is wrong on both points.   First, the ";HOLZHER_RH" or ";HOLZHER_LH" comment lines found in the Prodim HOP files are not non-functional – they indicate whether the door is right hinged (RH) or left hinged (LH).   Moreover, the location of the comment line is not "unique" – HOP files stored on the Holz-Her CNC machine from before Four Seasons licensed One-CutTM (*i.e.*, prior to December 2008) have these very same "unique" out-of-place comment lines.   Vilfer Decl., ¶ 18, Ex. G and H.  Summary judgment as to HighMark's breach of contract claim must be denied.

**D.    Winter Did Not Disclose HighMark Source Code to Defendants.**

In Section IV.C, HighMark argues "Winter Disclosed HighMark's Source Code

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

{02145596.DOCX}                               23

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR
SUMMARY JUDGMENT

to Defendants." Doc. 148-1 at 10:17 – 6.  The missing link in HighMark's argument is any evidence that actually Winter disclosed any source code to Defendants. *See id.*

The unremarkable fact that Winter theoretically could have accessed HighMark during the period he was the President of the company is not evidence he disclosed source code to Defendants. *Id.* at 10:17 – 11:5.[10] That Winter accepted a job offer to work at Casablanca is not evidence he disclosed source code to Defendants. *Id.* at 11:12 – 22.   That Winter returned his Apple laptop and an external hard drive containing all HighMark files once saved to the laptop a week after he resigned is not evidence he disclosed source code to Defendants. *Id.* at 11:6 – 11.  In contrast, Dave Winter has repeatedly stated under oath that he neither took HighMark source code nor disclosed any HighMark source code to Defendants. AMF 175.  That HighMark chooses not to believe Winter is not evidence that, contrary to his sworn testimony, he disclosed source code to Defendants. *Cf. Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001) ("A party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment.").

To make matters worse, HighMark misleads the Court regarding the evidence.

---

[10] Plaintiff's memorandum states: "According to Matulia, Winter never returned the portable backup drive containing HighMark's source code." Doc. 148-1 at 10:25 – 27.  Matulia's statement is inadmissible hearsay, not to mention incredible, as is made clear from the portion of Matulia's deposition HighMark omitted from its Motion. Jensen Decl., Ex. I at 65:24 – 66:3 ("Q. Okay.  Because, once again, do you have a memory that Mr. Winter took the protective hard drive and then never brought it back to HighMark?  A. No, I don't have a memory of that.  I was told by Joe Fallon of that.").  But Mr. Fallon, who was deposed twice in this case, first in his personal capacity and then as a PMQ, never stated that Winter did not return the hard drive. Jensen Decl., Ex. H at 103:15 – 105:5, 164:17 – 166:6.

{02145596.DOCX}                                                24

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR
SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

Specifically, HighMark's moving papers state that a "Letter of Intent" attached to a July 14, 2015, e-mail from Winter indicates that Winter is supposed to "bring the technology" and references HighMark's measuring device. Doc 148-1 at 11:12 – 22. HighMark is confused and completely wrong: the letter attached to Winter's July 14, 2015 e-mail to the Johnsons does not contain the phrase "bring the technology" or reference HighMark's measuring device.[11]

In any case, HighMark is again basing its case on out-of-context snippets of e-mail correspondence, as opposed to tangible evidence of wrongdoing.  Krzeminski Decl., Ex. 7 at 99:15 – 20 ("Q. And it's a fair statement, as we sit here today, you have nothing to share with me that any of the defendants in this matter have accessed the source code of HighMark.  True?  A. I have no evidence.")  Absent evidence that Winter actually disclosed source code, of which is there none, there is no basis to grant summary judgment and HighMark's Motion must be denied.

**E.    HighMark's Claim That Defendants Accessed CadCode is Frivolous.**

HighMark filed this lawsuit on the theory that Winter stole HighMark's "source code" and was "improperly using HGHMARK's trade secret and/or confidential information (including source code for its 'One-Cut'TM system) and falsely

---

[11] This is the same error present in UMF 36.  To hopefully clarify this matter for the Court, Mr. Winter's July 14, 2015, e-mail to Glenn Johnson is <u>Exhibit 6</u> to the Deposition of Glenn Johnson. Jensen Decl., Ex. C at 149:10 – 152:7.  The letter attached to Mr. Winter's e-mail, which does not contain the phrase "HS measuring devices" is <u>Exhibit 5</u> to the Deposition of Glenn Johnsons.  *Id.*  The letter containing the phrase "bring the technology" is <u>Exhibit 7</u> to the Deposition of Glenn Johnson.  Glenn Johnson never sent Exhibit 7 to Winter.  Jensen Decl., Ex. C at 175:10 – 16.

{02145596.DOCX}                                    25

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR
SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

informing prospective customers that the technology is the property of ONE DAY."

Complaint, ¶ 51.   While it is undisputed that Defendants have continuously used

Prodim software to manufacture doors since 2011, HighMark refuses to concede its

error.  Instead, HighMark opted to advance the fanciful allegation that the "evidence

demonstrates that in 2016, Defendants were processing door measurement data on

CadCode's servers." Doc. No. 148-1 at Doc. 12:12 – 13.   HighMark has no evidence

to support this claim

### 1.    HighMark Concedes Its CadCode Claim Is Based On a Misstatement of the Evidence.

HighMark's memorandum of points and authorities states the following:

"The evidence demonstrates that in 2016, Defendants were processing
door measurement data on CadCode's servers. For example, on or
around February 5, 2016, CadCode shut down its servers due to a late
payment by HighMark. UMF 37, 119. In the present litigation,
Defendants produced tens of thousands HOP files from their
manufacturing sites for examination by HighMark's technical expert.
UMF 38, 120. Yet they failed to produce any HOP files generated on
February 5, 2016—the very same day CadCode shut down its servers.
UMF 39, 121. **From one of their manufacturing sites, Defendants
produced no HOP files generated between February 5, 2016 and
February 23, 2016.** UMF 40, 122. From another of Defendants'
manufacturing sites, they failed to produce any HOP files generated
between February 5, 2016 and February 8, 2016. UMF 41, 123."

HighMark now concedes the bolded sentence is a statement conjured by one of

its attorneys with no factual basis. Jensen Decl., Ex. T ("We have finished

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

{02145596.DOCX}                                    26

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR
SUMMARY JUDGMENT

investigating the issue regarding two gaps in HOP file production around February 2016.  After revisiting the facts, Mr. Huisjen will no longer be relying on a gap between February 4, 2016 to February 23, 2016 in view of Defendants' HOP files that appear to have been generated for certain days within that period.  Counsel's initial assessment was inadvertently based on an incomplete data set.").  This admission by itself requires the denial of HighMark's Motion as to its causes of action for breach of contract, trade secret misappropriation, and breach of fiduciary, because the nonexistent February 4 through February 23, 2016 "gap" is identified as an undisputed material fact supporting those claims.  *See* UMF 40, 122.

While mistakes happen, what is especially concerning is the inconsistent sworn statements of HighMark's expert witness, Derek Huisjen, regarding his alleged review of HOP files generated by Defendants in February 2016.[12]  Mr. Huisjen declared under penalty of perjury that the statements in his Opening Expert Report, subject to one correction not relevant here, are true and correct.  Huisjen Decl., ¶ 3 – 5.  In his Opening Expert Report, Mr. Huisjen stated that he reviewed samples of Defendants' HOP files, which "were selected to include all HOP files in early February 2016."  Huisjen Decl., Ex. 9 at 3, fn. 1.  Later, Mr. Huisjen states that: "I have inspected all of the Defendants HOP files in early February.  The Defendants

---

[12] More specifically, the HOP files generated by Casablanca in February 2016.  Defendants other "site," One Day Enterprises' Rocklin, California facility did not open its doors until 2017.

{02145596.DOCX}                                  27

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT**

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

generated no HOP files on the day CadCode's servers were shut down, an event that is otherwise extremely unlikely." Huisjen Decl., Ex. 9 at 3, fn. 1. However, in deposition, Mr. Huisjen stated the opposite with respect actually conducting any type of forensic review of Defendants' HOP files generated in February 2016: "Q. Did you actually review the HOP files themselves? A. Which HOP files? Q. The HOP files that were generated by the defendants in February 2016. A. I was not given those HOP files." Jensen Decl., Ex. U at 160:18 – 162:9. Defendants do not believe Mr. Huisjen is being intentionally deceptive; more likely, he has simply been maneuvered into making statements the import of which he lacks the experience to grasp.

### 2. The Remainder of HighMark's Claim that Defendants Accessed CadCode is Similarly Meritless.

There is absolutely no technological evidence Defendants ever accessed CadCode following Winter's July 2015 resignation from HighMark. *See generally* Doc. 148 – 1. Each HOP file generated by Defendants from November 2011 to the present bears the name "vectorcam" in its code, and HighMark has never explained why HOP files purportedly downloaded from CadCode in 2016 are identical to all HOP files otherwise generated by Defendants between November 2011 and the present. AMF 120; Jensen Decl., Ex. U at 162:23 – 164:24.

The only "evidence" HighMark has presented to support its claim is that Casablanca did not generate HOP files February 5 – 8, 2016, a period of four days.

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

{02145596.DOCX}

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT

But Casablanca frequently does not generate HOP files for days at a time, *especially over weekends*. AMF 204.[13]  Given this undisputed fact, Casablanca's non-production of HOP files on February 5, 2016, a Friday, and February 8, a Monday, before resuming normal operations on February 9, 2019, is probative of nothing. *Id*.  The mere passage of time is not a causal link demonstrating use of a specific technology. Moreover, while HighMark says CadCode shut off service on February 5, 2016 because HighMark did not pay its bill, even this is questionable.  *See* Ex. 56 to the Krzeminski Decl., indicates that CadCode terminated service as of February 1, 2016. *See* Ex. 56 ("please note that your support will expire on 1/30/16").[14]

HighMark also ignores any facts contradicting its CadCode theory.  For example, on March 16, 2017, HighMark sent e-mail correspondence to CadCode stating that HighMark's "server issues" have not been resolved and requesting that CadCode make the issue a high priority "so we can get back up and running."  AMF 202.  While the CadCode server was down, however, continued to operate normally, generating HOP files March 13, 14, 15, 16, and 17, 2017.  AMF 203.

In addition, although HighMark claims there was a discrepancy between the number of doors HighMark manufactured and the number of HOP files generated by CadCode, HighMark's own e-mail correspondence shows that the "discrepancy" was

---

[13] February 6 and February 7, 2016 are a Saturday and Sunday.
[14] Defendants produced HOP files February 1, 2, 3, and 4, 2016.  AMF 260.

{02145596.DOCX}                                    29

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT**

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

the result of HighMark employees generating multiple HOP files for each door HighMark produced.  AMF 196.   For example, sometimes HighMark employees would press the generate button twice, "because it makes them feel more confident that the HOP file is being created."  Jensen Decl., Ex. E at 1240.  That is why in December 2, 2016, e-mail correspondence to HighMark, CadCode wrote: "[a]s for the discrepancies, we're not sure there really are any."  AMF 207.

Finally, HighMark's claim makes no sense on its own terms.  Casablanca licensed the Prodim software, including vectorcam to generate HOP files, for a one-time fee. AMF 191. Casablanca can generate infinite HOP files using the vectorcam software linked to its CNC machines for no additional cost.  AMF 192.  There is no reason for Casablanca to use CadCode in the first place.[15]

**F.      Winter Did Not Violate Cal. Penal Code § 502.**

   **1.      Winter Did Not Knowingly Access, Take, Copy, or Make Use of HighMark's Data Without Permission.**

As described in Sections IV.D and IV.E, HighMark has failed to present evidence that Winter ever actually accessed or otherwise made use of HighMark source code following his resignation. Krzeminski Decl., Ex. 7 at 99:15 – 20 ("Q. And

---

[15] When asked why Defendants would need or want to access CadCode to generate HOP files, HighMark's expert was at a loss.  The only thing he could do was speculate that maybe Defendants were not satisfied with the way the Prodim software they had been using for four years had been cutting doors.  Jensen Decl., Ex. U at 166:16 – 167:6.  There is absolutely no evidence to indicate that was the case, or that using CadCode, as opposed to vectorcam, would produce HOP files of differing quality.

{02145596.DOCX}                                          30

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT**

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

it's a fair statement, as we sit here today, you have nothing to share with me that any of the defendants in this matter have accessed the source code of HighMark. True? A. I have no evidence.")   In contrast, Winter repeatedly stated under oath that he neither took HighMark source code nor disclosed any HighMark source code to Defendants. AMF 175. That HighMark chooses not to believe Winter is not evidence that, contrary to his sworn testimony, he disclosed source code to Defendants. *See Far Out Prods., Inc.*, 247 F.3d at 997.

    **2.**    **Winter Did Not Access and Damage, Delete, and/or Destroy HighMark Data.**

Winter backed up all HighMark files from his laptop to the external hard drive he returned to HighMark a week after his resignation. AMF 186 – 187. No HighMark information was lost or destroyed, and it is pure speculation by HighMark to say otherwise. *Id.* In addition, counsel for HighMark simply made up the claim that "HighMark's CTO was unable to properly access files on" the "external hard drive." Doc. 148-1 at 29:17-19.   Joseph Fallon, HighMark's CTO, testified that he never examined the hard drive. Jensen Decl., Ex. H at 179:11 – 181:7.

Similarly unsupported is HighMark's claim that Winter did not return an external hard drive HighMark's CTO gave to Winter for safekeeping.   The "evidence" for this claim, the testimony of Richard Matulia, is inadmissible hearsay, not to mention incredible. Jensen Decl., Ex. I at 65:24 – 66:3 ("Q. Okay.   Because, once

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

{02145596.DOCX}               31

again, do you have a memory that Mr. Winter took the protective hard drive and then never brought it back to HighMark? A. No, I don't have a memory of that.  I was told by Joe Fallon of that.").  Mr. Fallon, deposed twice in this case, first in his personal capacity and then as a PMQ, never claimed that Winter did not return the hard drive.  Instead, he admitted no hard drive was missing.  Jensen Decl., Ex. H at 103:15 – 105:5, 164:17 – 166:6; 94:25 – 95:5 ("Q. Right. Now, we have three backup devices that you identified as portable hard drives. Right? A. Correct. Q. Okay. Where are the portable hard drives currently stored?  A. In the server room.").

## G.    Winter Did Not Breach Any Contract With HighMark.

HighMark alleges Winter breached an Employee Nondisclosure, Assignment and Non-Solicitation Agreement ("Nondisclosure Agreement").  SAC at ¶¶ 82–86.  This is not the case.  To prevail on this claim, Plaintiff must establish: (1) the existence of a contract; (2) performance or excuse for nonperformance; (3) breach; and (4) resulting damages.  *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1367 (2010).  The undisputed facts show that no reasonable trier of fact could find in favor of HighMark as no breach ever occurred.

### 1.    Winter   Did   Not   Disclose   Confidential   or   Trade   Secret Information Relating to HighMark.

HighMark asserts that Winter disclosed trade secret and/or confidential information to third parties.  HighMark's theory has no evidentiary support.  AMF

{02145596.DOCX}                                              32

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

154 – 207.   Winter vehemently denies ever keeping or disclosing any such information.  AMF 175.  As described in Sections IV.D and IV.E, the only "evidence" that HighMark has presented to the contrary is misstated or selectively quoted and out-of-context e-mail correspondence.

### 2. Winter Did Not Otherwise Breach the Employee Nondisclosure, Assignment and Non-Solicitation Agreement.

Winter fully complied with his "duties" as outlined in section one of the Nondisclosure Agreement that HighMark feigns were breached.  While at Highmark, Winter devoted his best efforts to the interests of the business, never had other employment and never engaged in conduct that was in direct conflict with HighMark's interests that would cause a material and substantial disruption to it.  AMF 154 – 207.  After resigning in July of 2015 due to HighMark failing to pay him his full salary, Winter simply began alternative employment which started after he terminated his employment with HighMark.  AMF 166.

### 3. HighMark Concedes The Existence Of A Genuine Dispute Of Material Fact.

Undisputed material fact 40 in support of HighMark's breach of contract cause of action against Winter states that one of Defendants' "sites" did not produce HOP files between February 4, 2016 and February 23, 2016.  UMF 40.  HighMark now concedes that this assertion was an attorney-generated "fact," for which is there is no

{02145596.DOCX}

33

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

basis.  Jensen Decl., Ex. T.  As this alleged material fact is admittedly completely unfounded, HighMark's Motion must be denied.

**H.    HighMark's Breach of Fiduciary Duty Claims Against Winter Fail.**

Corporate employees—officers included—have a right to seek alternative employment. *Bancroft-Whitney Co. v. Glen*, 64 Cal.2d 327, 345 (Cal. 1966). Seeking and accepting a job, even with the competitor of one's employer, is not a breach of fiduciary duty or usurpation of corporate opportunity. *Id.*  Similarly, "[t]he mere fact that the officer makes preparations to compete before he resigns his office is not sufficient to constitute a breach of duty. It is the nature of the preparations which is significant." *Id.* at 346.

No reasonable juror could find in favor of HighMark on its breach of fiduciary claim because there is no evidence Winter took any action – beyond resigning and joining a different company due to his employer failing to pay him his salary, which is not improper in the slightest – that caused harm to HighMark.

As described in Sections IV.D and IV.E, HighMark's allegations that Winter misused HighMark technology border on the frivolous.  *See* AMF 154 – 207. Moreover, to the extent HighMark's breach of fiduciary duty claim against Winter is predicated on alleged misuse of HighMark technology, it is preempted by CUTSA. *See, e.g., Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 986 (C.D. Cal. 2011).

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

{02145596.DOCX}                                        34

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR
SUMMARY JUDGMENT

HighMark's allegation that Winter usurped "the opportunity to expand the market for interior replacement door services by partnering with the Johnsons" fares no better. Doc. 148-1 at 27:1 – 3; *see* AMF 154 – 207. Most importantly, there is no evidence that there was a corporate opportunity for *HighMark* to partner with the Johnsons. *Premier Displays & Exhibits v. Cogswell*, 2009 WL 8623588, at *9 (C.D. Cal. Dec. 23, 2009) (In order to state a claim for breach of fiduciary duties by usurpation of a corporate opportunity, the company must have an actual opportunity that the fiduciary usurped from it.). "The abstract notion that [HighMark could have partnered with the Johnsons] does not amount to a 'corporate opportunity' as contemplated by the California Courts." *Robinson, Leatham & Nelson, Inc. v. Nelson*, 109 F.3d 1388, 1394 (9th Cir. 1997).

The Johnsons wanted to work with Dave Winter, not HighMark. AMF 170. The Johnsons wanted to work with Winter because of his experience in the industry and that "he's a really good guy, and people like him. And he is honest." AMF 171. The Johnsons did not want to enter into any type of partnership or business relationship with HighMark. AMF 169. HighMark's corporate opportunity theory was concocted for summary judgment – in discovery, HighMark never inquired as to this alleged corporate opportunity – and no reasonable juror could find in favor of HighMark on the claim.

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

{02145596.DOCX}                                    35

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT

1.  **HighMark Concedes The Existence Of A Genuine Dispute Of Material Fact.**

Like with HighMark's breach of contract and trade secret misappropriation claims, HighMark breach of fiduciary cause of action identified the assertion that that one of Defendants' "sites" did not produce HOP files between February 4, 2016 and February 23, 2016 as an undisputed material fact. *See* UMF 40, 122. As this alleged undisputed material fact admittedly lacks any foundation, HighMark's Motion for Summary Judgment as to breach of fiduciary duty claim must be denied. *See* Jensen Decl., Ex. T.

**I.  HighMark's Unfair Competition Claim Is Preempted.**

"[T]o avoid CUTSA preemption, a claim must 'retain sufficient independent facts' to be viable after the 'trade secret' facts are removed." *Jardin v. DATAllegro, Inc.*, 2011 WL 3300152, at *2 (S.D. Cal. July 29, 2011) (citation omitted). HighMark's UCL and CUTSA claims have identical factual predicates, each arising from Defendants' purported misuse of confidential or trade secret information. *Compare* Doc. 56 at ¶¶ 71 – 76, *with* Doc. 56 at ¶¶ 91 – 95.

In its Motion, "[r]ather than articulate the different factual predicates underlying its UCL and CUTSA claims," HighMark purports to reserve its UCL claim for consideration at some later date, and "directs the Court to two cases discussing CUTSA preemption in matters at the motion to dismiss stage . . . [.]" as support for

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

{02145596.DOCX}                                                36

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT

this maneuver. *Teledyne Risi, Inc. v. Martin-Baker Aircraft Co.*, 2017 WL 9831402, at *9 (C.D. Cal. Sept. 7, 2017). Both cases are inapposite, and given HighMark's concession that its UCL claim is preempted, its Motion must be denied as to this cause of action.

## J.   Measuring Interior Door Frames And Manufacturing Custom Fit Replacement Doors Is A Widely-Known Process.

Much of HighMark's case and the damages it supposedly incurred is predicated on the idea that the process of measuring interior door frames and manufacturing custom fit replacement doors is a closely-guarded secret, known only to HighMark. First, HighMark states that: "HighMark and the Corporate Defendants are the sole competitors in the technology-assisted interior replacement door industry." Doc. 148-1 at 15:20-2. Second, HighMark states: "Up until approximately November 2011, HighMark was the only provider of interior door measurement and conversion technology." Hanson Decl., Ex. 1 at 12, ¶ 4.

However, as HighMark knows or should know, neither of these statements are accurate. First, Michael McElroy, the co-founder of HighMark, sold his interior door replacement company, Interior Door and Replacement Company ("IDRC"), in 2015. Winter Decl., ¶ 21. IDRC uses electronic measuring devices and CNC machines to manufacture replacement interior doors and continues to operate from its facility in Santa Clara, California. *Id.* IDRC is a direct competitor of HighMark. *Id.* It is

{02145596.DOCX}                                    37

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR
SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

incorrect to say that "HighMark and the Corporate Defendants are the sole competitors in the technology-assisted interior replacement door industry." Doc. 148-1 at 15:20-2.

Second, manufacturing interior doors using electronic measuring devices and computer numerical control ("CNC") machines is a widely-known process.  Jeld-Wen, Inc. ("Jeld-Wen"), a world-wide manufacturer of windows and doors and largest global door and window manufacturer, launched its interior door replacement program in or around 2009. Winter Decl., ¶ 17. It was called the "Perfect-Fit" program.  Winter Decl., ¶ 17 – 20; Ex. H, I. The Jeld-Wen measuring device was known as the "Door Digitizer" – "a state-of the art measuring device which allows the capture of 3-D measurements for the contour of each door opening."  Winter Decl., Ex. H. Jeld-Wen produced brochures demonstrating the use of its electronic measuring devices and CNC machines to manufacture doors.  Winter Decl., Ex. H.  It is therefore incorrect to say that: "Up until approximately November 2011, HighMark was the only provider of interior door measurement and conversion technology."  Hanson Decl., Ex. 1 at 12, ¶ 4.[16]

These types of misstatements are especially concerning because HighMark once had a partnership with Jeld-Wen under which Jeld-Wen produced doors for

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

---

[16] Given that the opinions of HighMark's damages expert, David Hanson, are expressly predicated on the inaccurate information supplied to him by HighMark, his opinions on damages are disputed and have little to no probative value.

{02145596.DOCX}                                        38

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT**

HighMark. Winter Decl., ¶ 19. HighMark would send raw measurement data from HighMark's measurement device to Jeld-Wen for processing by Jeld-Wen's proprietary conversion code and the CAM software used by Jeld-Wen. *Id.* Jeld-Wen manufactured the doors on their CNC machines and returned them to HighMark or HighMark's customers. *Id.* John Ambruz and Paul Bernards, members of the HighMark Board of Directors, were previously employed by Jeld-Wen and were intimately aware of Jeld-Wen's system for processing doors, including the use of a measuring device and proprietary conversion code. *Id.* at ¶ 20.

## V.  **CONCLUSION**

For any and all of the foregoing reasons, HighMark's Motion for Summary Judgment should be denied in its entirety.

Respectfully Submitted,

Dated:  January 28, 2020          PORTER SCOTT
                                  A PROFESSIONAL CORPORATION

                                  By ____*/s/ Martin N. Jensen*____
                                     Martin N. Jensen
                                     Jeffrey A. Nordlander
                                     Attorneys for Defendants

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

{02145596.DOCX}                      39
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR
SUMMARY JUDGMENT

**CASE NAME:** *Highmark Digital, Inc. v. Casablanca Design Centers, Inc. et al.*
**CASE NO.:**    USDC Central District, Western Division Case No. 2:18-cv-06105-SJO-AS

## PROOF OF SERVICE

At the time of service, I was over 18 years of age and not a party to this action.   My business address is 350 University Avenue, Suite 200, Sacramento, California 95825.

On January 28, 2020, I served the following document:

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| XX | **BY MAIL:** I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business' practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. |
| | **BY PERSONAL SERVICE:** I caused such document to be personally delivered to the person(s) addressed below. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office, between the hours of nine in the morning and five in the evening.  (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening. |
| | **BY OVERNIGHT DELIVERY:**  I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the person(s) listed below. I placed the envelope or package for collection and overnight delivery at my office or a regularly utilized drop box of the overnight delivery carrier. |
| | **BY FAX TRANSMISSION:** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed below.  No error was reported by the fax machine that I used.  A copy of the record of the fax transmission, which I printed out, is attached |
| XX | **BY ELECTRONIC SERVICE**: Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification address listed below. **(COURTESY COPY PER AGREEMENT OF COUNSEL)** |

/ / /

/ / /

/ / /

/ / /

/ / /

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

{02145768.DOCX}                                              1

PROOF OF SERVICE

1

Addressed as follows:

2

**COUNSEL FOR PLAINTIFF:**
Michael Friedland

3

Thomas P. Krzeminski
Cassie Gourash

4

Benjamin Ho

5

KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, 14th Floor

6

Irvine, CA 92614

7

Michael.friedland@knobbe.com; 2tpk@knobbe.com;
Cassie.Gourash@knobbe.com; Benjamin.Ho@knobbe.com

8

9

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed at Sacramento, California on January 28, 2020.

10

11

12

Desiree Ganzon

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

{02145768.DOCX}

2

PROOF OF SERVICE