1  **P O R T E R | S C O T T**
2  A PROFESSIONAL CORPORATION
   Martin N. Jensen, (SBN 232231)
3  mjensen@porterscott.com
4  Jeffrey A. Nordlander, (SBN 308929)
   jnordlander@porterscott.com
5  350 University Avenue, Suite 200
6  Sacramento, California 95825
7  Tel: 916.929.1481
   Fax: 916.927.3706
8
9  Attorneys for Defendants

10
11  **UNITED STATES DISTRICT COURT**
    **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

12
13  HIGHMARK   DIGITAL,   INC.,   a        CASE NO. 2:18-cv-06105-SJO-AS
    California corporation,

14                                          **DEFENDANTS' STATEMENT OF**
15              Plaintiff,                   **GENUINE     DISPUTES     IN**
    v.                                       **OPPOSITION    TO   HIGHMARK**
16                                           **DIGITAL, INC.'S STATEMENT OF**
    CASABLANCA DESIGN CENTERS,               **UNCONTROVERTED FACTS AND**
17  INC., a California corporation; FOUR     **CONCLUSIONS    OF    LAW    IN**
    SEASONS      WINDOWS,      INC.,   a     **SUPPORT    OF    MOTION    FOR**
18  California  corporation;   INTERIOR      **SUMMARY JUDGMENT**
19  DOOR  &  CLOSET  COMPANY,  an
    unincorporated  California  company;     **Date:      February 18, 2020**
20  ONE DAY DOORS AND CLOSETS,               **Time:      10:00 a.m.**
21  INC., a California corporation; DAVID    **Judge:     S. James Otero**
    WINTER,  an  individual;  and  ONE       **Location:  Courtroom 10C**
22  DAY     ENTERPRISES,      LLC,    a
23  Delaware company,                        **Hon. S. James Otero**
24                                           **Magistrate Judge Alka Sagar**
                Defendants.
25                                           **Trial Date: 6/9/20**
26
27  _____ /

28  {02145244.DOCX}                          1
    DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK
    DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF
    LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

# I. <u>STATEMENT OF GENUINE DISPUTES</u>

| UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTIES' RESPONSE |
|---|---|
| <u>Background</u> | |
| 1. In or around 2000, Michael McElroy ("McElroy") established Interior Door Replacement Company, which provided custom interior door replacement services." <br><br> **Evidence:** Krzeminski Decl. Ex. 11 at 12:4- 13:10. | Undisputed. |
| 2. New doors can be cut with straight sides to fit new, straight frames, whereas replacement doors need to precisely fit an existing door frame uniquely misshapen over time. <br><br> **Evidence:** Huisjen Decl. Ex. 11 at 4:23-25. | Undisputed. |
| 3. Interior Door Replacement Company initially used a manual process to measure existing door frames and cut replacement doors. <br><br> **Evidence:** Krzeminski Decl. Ex. 11 at 15:9- 18:20. | Undisputed. |
| 4. In or around late 2006 and early 2007, McElroy was looking for ways to automate the interior door replacement process. | Undisputed. |

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

{02145244.DOCX}                                     2

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| **Evidence:** Krzeminski Decl. Ex. 11 at 18:4- 20:7; *id*. Ex. 12 at 22:20-25:1. | **Objection**<br>Exhibit 12 to the Krzeminski Declaration does not include the identified testimony. |
| 5. On or about January 19, 2007, HighMark Digital Inc. ("HighMark") was incorporated under California law. | Undisputed. |
| **Evidence:** Krzeminski Decl. Ex. 27 (DEF_000127-128); *id*. Ex. 12 at 60:25-61:18. | **Objection**<br>Exhibit 12 to the Krzeminski Declaration does not include the identified testimony. |
| 6. HighMark was formed to develop technology for automating the interior door replacement process. | Undisputed. |
| **Evidence:** Krzeminski Decl. Ex. 11 at 55:6- 58:1, 62:17-21, 66:20-67:1; *id*. Ex. 12 at 22:20-25:1. | **Objection**<br>Exhibit 12 to the Krzeminski Declaration does not include the identified testimony. |
| 7. McElroy was the first Chief Executive Officer (CEO) and President of HighMark. | Undisputed. |
| **Evidence:** Krzeminski Decl. Ex. 12 at 135:1- 136:11; id. Ex. 43 at DEF_000177. | **Objection**<br>Exhibit 12 to the Krzeminski Declaration does not include the identified testimony.<br><br>Exhibit 43 is hearsay. |
| 8. In or around March 2007, David Winter ("Winter") joined HighMark as Vice President. | Disputed in part.  McElroy and Winter co-founded HighMark in January 2007. Declaration of Martin Jensen ("Jensen Decl."), Ex. A at 154:15 – 24. |
| **Evidence:** Krzeminski Decl. Ex. 43 at DEF_000177. | **Objection**<br>Exhibit 43 to the Krzeminski Declaration is hearsay. |

PORTER | SCOTT<br>350 University Avenue, Suite 200<br>Sacramento, CA  95825<br>TEL: 916.929.1481<br>FAX: 916.927.3706

{02145244.DOCX}

3

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

| | |
|---|---|
| 9.  In or around 2007, McElroy became aware that a company called Prodim sold a digital measuring device that could be used to scan door frames to generate door measurement data.<br><br>**Evidence:** Krzeminski Decl. Ex. 11 at 18:21- 25:17. | Disputed in part. McElroy became aware of the Prodim Proliner in 2006.  McElroy and Winter contracted with MetaWorks, LLC ("MetaWorks") to develop a "[p]rogram to convert **Prodim Proliner export data** to CADCode PartLink input data" on January 4, 2007.  Krzeminski Decl. Ex. 3 at HMDI.0001340 (emphasis added).  Before that, McElroy became aware of the Prodim Proliner through a colleague, Richard Reardon, and then travelled to a trade show in Atlanta to meet with Prodim regarding using the Proliner to generate door frame measurement data. Krzeminski Ex. 11 at 21:9 – 25:17; 44:23 – 45:15; 69:25 – 70:19. |
| 10.  In or around 2007, Prodim promoted its digital measuring device primarily for measuring countertops.<br><br>**Evidence:** Krzeminski Decl. Ex. 11 at 20:18 - 23:15. | Disputed in part. The cited testimony refers to McElroy's communications with Prodim in 2006.   McElroy and Winter contracted with MetaWorks to develop a "[p]rogram to convert Prodim Proliner export data to CADCode PartLink input data" on January 4, 2007.  Krzeminski Decl. Ex. 3 at HMDI.0001340.  Before that, McElroy travelled to the Atlanta trade show to meet with Prodim regarding the Proliner and learned Prodim was already using the Proliner to measure countertops. Krzeminski Ex. 11 at 21:9 – 25:17; 44:23 – 45:15; 69:25 – 70:19. |
| 11.  In or around 2007, Prodim offered some "basic software" for cutting doors on a CNC machine but it was not "not adequate to meet | Disputed as to Prodim offering to enhance it software for McElroy in 2007; that occurred in 2006.   McElroy and Winter contracted with MetaWorks to develop a "[p]rogram to convert Prodim Proliner |

{02145244.DOCX}                                    4

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

| | |
|---|---|
| [McElroy's] needs."<br><br>**Evidence:** Krzeminski Decl. Ex. 11 at 41:15-44:15, 51:5-52:17. | export data to CADCode PartLink input data" on January 4, 2007.   Krzeminski Decl. Ex. 3 at HMDI.0001340.   Before that, however, Prodim had already offered to enhance its existing door software, an offer McElroy declined because Prodim wanted to enter into a "per-door" licensing agreement, whereas McElroy wanted to own the software.   Krzeminski Ex. 11 at 21:9 – 25:17; 44:23 – 45:15; 69:25 – 70:19. |
| 12. Joseph Fallon has been a HighMark Digital, Inc. employee since July 2013, or thereabout, and currently holds the position of Chief Technical Officer (CTO) at HighMark Digital, Inc.<br><br>**Evidence:** Krzeminski Decl. Ex. 16 at 10:11- 11:7. | Undisputed. |
| 13. Richard Matulia has been employed by HighMark since late 2013, and currently holds the titles of President and Chief Executive Officer (CEO).<br><br>**Evidence:** Krzeminski Decl. Ex. 14 at 9:17 - 10:7. | Undisputed. |
| 14.   In or around July 2018, Glenn Johnson contacted Fallon and "aggressively recruited" Fallon to  work for him.<br><br>**Evidence:** Krzeminski Decl. Ex. 16 at 50:8-53:10; *id.* Ex. 51. | Disputed.   "Aggressively recruited" is Mr. Fallon's argumentative phrasing. What occurred is that Glenn Johnson called Mr. Fallon and told him "quite a bit about [Glenn Johnson's] company, revenue, whatnot" and that "it's a great place to work."   After the initial phone |

{02145244.DOCX}                                                5

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA   95825
TEL: 916.929.1481
FAX: 916.927.3706

| | | |
|---|---|---|
| | | conversation, Glenn Johnson left two voicemails with Mr. Fallon, which Mr. Fallon chose not to return. After that, the two did not have any more contact. Jensen Decl., Ex. H at 50:8 – 53:10.<br><br>**Objection**<br>Exhibit 16 to the Krzeminski Declaration does not include the identified testimony and Exhibit 51 to the Krzeminski has no apparent connection to the alleged fact.<br><br>The alleged material fact is also irrelevant and immaterial. |
| 15. | In November of 2016 through early 2017, CadCode and HighMark engaged in conversations to renegotiate the licensing fee.<br><br>**Evidence:** Krzeminski Decl. Ex. 14, *id.* Ex. 56; *id.* Ex. 59. | Disputed. Exhibit 56 to Krzminski Declaration is e-mail correspondence purportedly exchanged between Plaintiff and CadCode in <u>February 2016</u>. In November 2016, CadCode sent e-mail correspondence to Plaintiff stating that: "**Starting in February** I made several ultimately fruitless attempts to discuss the door programs Highmark generates through our CADCode software. At issue is the value in the arrangement for each company." Jensen Decl., Ex. P (emphasis added)<br><br>**Objection**<br>There is no testimony in Exhibit 14 that references Plaintiff and CadCode renegotiating a licensing fee between November 2016 and early 2017, or at any other time.<br><br>Exhibit 56 is unauthenticated hearsay. |

{02145244.DOCX}

6

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Exhibit 59 to the Krzeminski Declaration was not filed with Plaintiff's moving papers.

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

{02145244.DOCX}

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

| | |
|---|---|
| **Winter Breach of Fiduciary Duty and Breach of Contract** | |
| 16.   David Winter was employed by HighMark from about March 1, 2007.<br><br>**Evidence:** Krzeminski Decl. Ex. 12 at 7:8-8:5; *id*. Ex. 43; *id*. Ex. 47. | Disputed in part.  McElroy and Winter co-founded HighMark in January 2007. Declaration of Martin Jensen ("Jensen Decl."), Ex. A at 154:15 – 24. |
| 17. On or about March 1, 2007, David Winter signed an Employee Nondisclosure, Assignment and Non- Solicitation Agreement in connection with his employment.<br><br>**Evidence:**  Krzeminski Decl. Ex. 12 at 7:8-8:5; *id*. Ex. 43. | Undisputed. |
| 18. On or about July 16, 2015, David Winter resigned from HighMark Digital, Inc.<br><br>**Evidence:** Krzeminski Decl. Ex. 14 at 175:16-176:12; *id*. Ex. 47. | Undisputed. |
| 19. At the time of Winter's resignation from HighMark he was President and Chief Development Officer.<br><br>**Evidence:** Krzeminski Decl. 12 at 54:18-20, 184:22-185:4; *see also id*. Ex. 28, Ex. 30. | Undisputed.<br><br>**Objection**<br>Exhibit 12 to the Krzeminski Declaration does not include the identified testimony. |
| 20. Winter was receiving compensation from HighMark.<br><br>**Evidence:**  Matulia  Decl.  at  ¶¶  9. | Disputed in part.  Winter was not being paid in accordance with his employment agreements.  Winter was forced to bring before the California |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

| | |
|---|---|
| Krzeminski Decl. 12 at 169:16-170:6. | Labor Commissioner, which resulted in a judgment against Plaintiff for unpaid wages, among other things, in the amount of $221,875.53. Declaration of Dave Winter, ¶ 12 at Ex. F<br><br>**Objection**<br>Exhibit 12 to the Krzeminski Declaration does not include the identified testimony. |
| 21. Winter had access to HighMark's source code at the time of and prior to his resignation from HighMark.<br><br>**Evidence:** Krzeminski Decl. Ex. 16 at 66:17-68:19, 89:1-91:1, 102:21-104:11, 132:16-134:5; 134:2-5; *id*. Ex. 7 at 93:1-16, 94:25-96:4. | Disputed. Winter had access to areas where he understood source code to be stored (*e.g.*, the server room at Plaintiff's facility) and on one occasion Fallon gave him an external hard drive that Fallon said contained source code on it, but Winter did not know how to "access" the source code and never tried. Jensen Decl., Ex. B at 19:10 – 20:10, 76:4 – 11. |
| 22. During Winter's employment, HighMark's source code was maintained in a cloud-based repository.<br><br>**Evidence:** Krzeminski Decl. Ex. 7 at 89:1- 91:1. | Undisputed. |
| 23. During Winter's employment, HighMark maintained local copies of its source code on the CTO's computer and on three portable backup drives in the server room.<br><br>**Evidence:** Krzeminski Decl. Ex. 16 at 102:21-104:11; *id*. Ex. 7 92:15-93:16, 94:25-96:4; *id*. Ex. 12 at 52:1-53:21. | Undisputed.<br><br>**Objection**<br>Exhibit 12 to the Krzeminski Declaration does not include the identified testimony. |

{02145244.DOCX}                                                    9

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

| | |
|---|---|
| 24. During his employment at HighMark, Winter had access to the cloud-based repository where HighMark's source code was maintained.<br><br>**Evidence:** Krzeminski Decl. Ex. 7 at 89:1-91:1. | Undisputed. |
| 25. During his employment at HighMark, Winter had access to the server room where the portable backup drives containing HighMark's source code were kept.<br><br>**Evidence:** Krzeminski Decl. Ex. 7 at 94:25-96:4. | Undisputed. |
| 26. HighMark restricts source code access to a limited number of employees.<br><br>**Evidence:** Krzeminski Decl. Ex. 7 at 89:1-91:1, 99:3-14. | Undisputed. |
| 27. Access to HighMark's source code requires unique log-in credentials.<br><br>**Evidence:** Krzeminski Decl. Ex. 16 at 66:17-68:19. | Disputed.  Exhibit 16 to the Krzeminski Declaration at 66:17 – 68:19 does not state that access to HighMark's source code requires unique log-in credentials. |
| 28. On occasion, HighMark's Chief Technology Officer, Joe Fallon, asked Winter to take home a backup        external hard drive containing a copy           of HighMark's source code. | Disputed.  Winter cannot recall taking the external hard drive home more than once. Jensen Decl., Ex. B at 62:2 – 6. |

{02145244.DOCX}

10

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

| | |
|---|---|
| **Evidence:** Krzeminski Decl. Ex. 12 at 52:1-53:17, 62:2-19; *id.* Ex. 16 at 102:21-104:24; *id.* Ex. 14 at 39:20-42:6, 64:25-65:6. | **Objection**<br>Exhibit 12 to the Krzeminski Declaration does not include the identified testimony. |
| 29. On at least one occasion in or about 2014, Winter took home a backup external hard drive containing a copy of HighMark's source code. | Undisputed. |
| **Evidence:** Krzeminski Decl. Ex. 12 at 52:1-53:17, 62:2-19; *id.* Ex. 14 at 39:20- 42 42:6, 64:25-65:6. | **Objection**<br>Exhibit 12 to the Krzeminski Declaration does not include the identified testimony. |
| 30. Winter had a HighMark laptop in his possession at the time of his resignation. | Undisputed. |
| **Evidence:** Krzeminski Decl. Ex. 12 at 17:19-19:4, 46:4-47:4. | **Objection**<br>Exhibit 12 to the Krzeminski Declaration does not include the identified testimony at 46:4 – 47:4. |
| 31. Winter retained the laptop for approximately seven to ten days after his resignation. | Undisputed. |
| **Evidence:** Krzeminski Decl. Ex. 12 46:18-47:4, 50:4-51:13, 86:17-21; *id.* Ex. 14 225:25-226:7. | **Objection**<br>Exhibit 12 to the Krzeminski Declaration does not include the identified testimony. |
| 32. Before returning the laptop to HighMark, Winter "wiped the hard drive." | Undisputed that Winter wiped the hard drive after HighMark employee Katherine Gabales accessed Dave Winter and his wife's personal Wells Fargo bank account and Winter's personal Facebook account and changed the account information to reflect HighMark credentials. Jensen |
| **Evidence:** Krzeminski Decl. Ex. 12 at 46:18-47:17; *id.* Ex. 49. | |

{02145244.DOCX}

11

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

| | |
|---|---|
| | Decl., Ex. B at 79:16 – 20; 46:18 – 49:5; Winter Decl., ¶ 6 – 8; Jensen Decl., Ex. J at 48:25- 50:9, 71:4-15. Winter was not informed by HighMark that changes were going to be made to the Wells Fargo bank account and the Facebook account prior to when such changes were made. Winter did not consent to HighMark making changes to the Wells Fargo bank account and the Facebook page. Winter Decl., ¶ 7-8, Ex. D - E. Winter was advised by Wells Fargo officials in its fraud department to wipe the hard drive of the Apple computer. Jensen Decl., Ex. B at 47:5-17. Before wiping the hard drive of the Apple laptop, Winter backed up any HighMark files to an external hard drive and returned the hard drive to HighMark. Jensen Decl., Ex. B at 47:5-17, 81:5-11, 89:19- 90:11, 248:22-249:22. **Objection** Exhibit 12 to the Krzeminski Declaration does not include the identified testimony. Exhibit 49 is unauthenticated hearsay that does not reference Winter. |
| 33. Approximately seven to ten days after Winter's resignation, Winter met Matulia at a Starbucks at which time he handed over his HighMark laptop and an external hard drive. | Undisputed. |
| **Evidence:** Krzeminski Decl. Ex. 12 46:18-47:4, 50:4-51:13, 79:16-80:19, 82:11-83:1, 86:17-21; *id.* Ex. 14 225:25-226:7. | **Objection** Exhibit 12 to the Krzeminski Declaration does not include the identified testimony. |

{02145244.DOCX}

12

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

| | |
|---|---|
| 34. At least as early as June 8, 2015, Winter was engaged in discussions with the Johnsons to start a new business together in the interior replacement door space.<br><br>**Evidence:** Krzeminski Decl. Ex. 17 at Ex. 8; Krzeminski Decl. Ex. 12 at 162:10-164:20. | Undisputed that Winter began discussions with the Johnsons on or around June 8, 2015, a little more than a month before he resigned from HighMark on July 16, 2015.<br><br>**Objection**<br>Exhibit 12 to the Krzeminski Declaration does not include the identified testimony. Exhibit 17 to the Krzeminski Declaration does not include an Exhibit 8. |
| 35. Phone records from Winter's company cell phone and office phone show at least eight calls between Winter and the Johnsons from June 5, 2015 to June 10, 2015.<br><br>**Evidence:** Krzeminski Decl. Ex. 54. | Disputed as to Winter's office phone because Exhibit 54 does not indicate that alleged office phone records show calls between June 5, 2015 and June 10, 2015.<br><br>**Objection**<br>Exhibit 54 is unauthenticated hearsay. |
| 36. The term "HS measuring devices" in a letter attached to a July 14, 2015 email from Winter to Glenn Johnson refers to HomeStory measuring devices used in HighMark's One-Cut™ system at the time.<br><br>**Evidence:** Krzeminski Decl. Ex. 17 at Ex. 6-7; *id.* at 182:5-184:12. | Objection. Plaintiff is misstating the evidence. The letter containing the term "HS measuring devices" – which is Exhibit 7 to the Deposition of Glenn Johnson – is a draft letter that was never sent to Winter. Jensen Decl., Ex. C at 175:10 – 16. It is <u>not</u> attached to Winter's July 14, 2015, e-mail to Glenn Johnson. Jensen Decl., Ex. C at 149:10 – 152:7. The letter actually attached to Mr. Winter's July 14, 2015, e-mail – which is <u>Exhibit 5</u> to the Deposition of Glenn Johnson – does <u>not</u> contain the phrase "HS measuring devices." *See* Jensen Decl., Ex. D.<br><br>To recap and correct HighMark's |

13

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

| | |
|---|---|
| | misstatement, Mr. Winter's July 14, 2015, e-mail to Glenn Johnson is Exhibit 6 to the Deposition of Glenn Johnson. Jensen Decl., Ex. C at 149:10 – 152:7. The letter attached to Mr. Winter's e-mail, which does <u>not</u> contain the phrase "HS measuring devices," is Exhibit 5 to Deposition of Glenn Johnsons. *Id.* The letter containing the term "HS measuring devices" is Exhibit 7 to the Deposition of Glenn Johnson. **Objection** Exhibit 17 to the Krzeminski Declaration does not include Exhibits 6 or 7. |
| 37. On or around February 5, 2016, CadCode shut down its servers due to a late payment by HighMark. **Evidence:** Krzeminski Decl. Ex. 56. | Disputed. Exhibit 56 to Krzeminski Declaration states that CadCode terminated service to Plaintiff on January 31, 2016. *See* Ex. 56 ("please note that your support will expire on 1/30/16"). **Objection** Exhibit 56 to the Krzeminski Declaration is unauthenticated hearsay. Plaintiff did not direct any discovery to CadCode in this case such that it has no non-hearsay evidence of what CadCode did or did not do or the reasons why CadCode did or did not do the things Plaintiff reports. |

{02145244.DOCX}                                   14

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

| | |
|---|---|
| 38. In the present litigation, Defendants produced tens of thousands HOP files from their manufacturing sites for examination by HighMark's technical expert.<br><br>**Evidence:** Krzeminski Decl. at ¶¶ 50. | Undisputed except that in February 2016 Defendants were only operating one facility; One Day Enterprises, LLC did not commence operations at its Rocklin, California facility until 2017.   Winter Decl., ¶ 1.<br><br>**Objection**<br>Paragraph 50 to the Krzeminski Declaration references a document identified as Exhibit 58 that does not have any apparent relationship to the alleged material fact.  Exhibit 58 also does not appear to have submitted with Plaintiff's moving papers. |
| 39. Defendants failed to produce any HOP files generated on February 5, 2016 the day CadCode shut down its servers.<br><br>**Evidence:** Krzeminski Decl. at ¶¶ 50. | Disputed.   Exhibit 56 to Krzeminski Declaration indicates that CadCode terminated service to Plaintiff on January 31, 2016.  *See* Ex. 56 ("please note that your support will expire on 1/30/16").  Casablanca also did not "fail" to produce HOP files on February 5, 2016.  Casablanca frequently does not produce HOP files for days at a time, especially over weekends.  Vilfer Decl., ¶ 19, Ex. I.<br><br>**Objection**<br>Paragraph 50 to the Krzeminski Declaration references a document identified as Exhibit 58 that does not have any apparent relationship to the alleged material fact.  Exhibit 58 also does not appear to have submitted with Plaintiff's moving papers. |
| 40.   Defendants failed to produce any HOP files generated between | Disputed. HighMark now concedes that its repeated assertion that there is a gap in |

{02145244.DOCX}                                    15

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

| | |
|---|---|
| February 5, 2016 and February 23, 2016 at one of their manufacturing sites.<br><br>**Evidence:** Krzeminski Decl. at ¶¶ 50. | HOP file production "at one of [Defendants] manufacturing sites" between February 5, 2016 and February 23, 2016, has no basis. Jensen Decl., Ex. T ("We have finished investigating the issue regarding two gaps in HOP file production around February 2016. After revisiting the facts, Mr. Huisjen will no longer be relying on a gap between February 4, 2016 to February 23, 2016 in view of Defendants' HOP files that appear to have been generated for certain days within that period. Counsel's initial assessment was inadvertently based on an incomplete data set. Mr. Huisjen will still rely on the gap between February 4, 2016 to February 9, 2016 to support his opinions, and we intend to have Mr. Huisjen submit a supplemental declaration regarding that point along with HighMark's opposition papers.").<br><br>**Objection**<br>Paragraph 50 to the Krzeminski Declaration references a document identified as Exhibit 58 that does not have any apparent relationship to the alleged material fact. Exhibit 58 also does not appear to have submitted with Plaintiff's moving papers. |
| 41.  Defendants failed to produce any HOP files generated between February 5, 2016 and February 8, 2016 at another one of their manufacturing sites.<br><br>**Evidence:** Krzeminski Decl. at ¶¶ 50. | Disputed in part. Casablanca was only the Defendant producing HOP files in 2015 and 2016. At the time, Defendants' only had one "manufacturing site" – Casablanca's Torrance, California facility. One Day Enterprises, LLC did not open its doors in Rocklin, California |

{02145244.DOCX}                                    16

until 2017.

**<u>Objection</u>**

Paragraph 50 to the Krzeminski Declaration references a document identified as Exhibit 58 that does not have any apparent relationship to the alleged material fact. Exhibit 58 also does not appear to have submitted with Plaintiff's moving papers.

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

{02145244.DOCX}

17

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

42.   In late 2016, CadCode informed Highmark of discrepancies between the number of doors processed by CadCode and the number of doors submitted by HighMark.

**Evidence:** Krzeminski Decl. at Ex. 23. *id.* Ex. 16 at 153:20-154:23.

Disputed. First, the alleged discrepancy – Plaintiff did not direct any discovery to CadCode so it has no admissible evidence that the discrepancy existed in the first place – was between the number of door files (*i.e.*, HOP files) processed by the CadCode Software and the number of the doors Plaintiff actually manufactured. Krzeminski Decl. at Exhibit 23 ("Since we don't know exactly how you operate, we can't know if a program generated was actually run or if that equates to a completed door, so I realize I was in error in my conversation with Richard in assuming that each program generated equals one door actually manufactured."). However, Plaintiff's Chief Technology Officer apparently investigated, and determined that the door file (*i.e.*, HOP file) and door manufactured discrepancy was the result of employees of Plaintiff unnecessarily regenerating door files through the CadCode system, which made it appear to CadCode that Plaintiff was cutting more doors than it actually was.   Jensen Decl., Ex. E.   That led CadCode to say in Exhibit 23 to the Krzeminski Declaration that, "[a]s for the discrepancies, we're not sure there really are any."

Second, CadCode did not inform Plaintiff of discrepancies between the number of doors processed by CadCode and the number of doors submitted by HighMark. CadCode informed HighMark that the CadCode Software was processing certain numbers of door files for Plaintiff.

{02145244.DOCX}                                    18

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Jensen Decl., Ex. P ("HighMark is on track to process more than 25,000 door programs this year and the volume has been growing for four consecutive years."). HighMark responded that it was not manufacturing that many doors. But as described above, the difference between the number of door files processed by CadCode and the number doors manufactured by Plaintiff was the result of HighMark's employees unnecessarily regenerating HOP files. Jensen Decl., Ex. E.

**Objection**
Exhibit 23 to the Krzeminski Declaration is unauthenticated hearsay.

{02145244.DOCX}

19

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

| UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTIES' RESPONSE |
|---|---|
| **Four Seasons Breach of Contract** | |
| 43.  On or around December 12, 2008, HighMark and Four Seasons Windows, Inc. ("Four Seasons") entered into a Master Agreement, under which Four Systems licensed HighMark's One-Cut™ technology.<br><br>**Evidence:**  Krzeminski Decl. Ex. 44; *id.* Ex. 11 at 107:15-109:25; *id.* Ex. 17 at 89:16-92:17; *id.* Ex. 13 at 22:9-25:11. | Undisputed. |
| 44.  The definition of "Licensed Applications" in Section 1.10 the Master Agreement encompasses HighMark's source code.<br><br>**Evidence:** Krzeminski Decl. Ex. 44 at § 1.10. | Disputed.  Section 1.10 of the Master Agreement specifically limits the definition of "Licensed Application" and "Software" to object code only.  Object code does *not* include source code. Declaration of Don Vilfer, ¶ 22. |
| 45.  The definition of "File" in Section 1.6 of the Master Agreement encompasses HighMark's HOP files.<br><br>**Evidence:** Krzeminski Decl. Ex. 44 at § 1.6; see also *id.* at § 1.10. | Disputed.  When the Master Agreement was drafted, CadCode Software, or other comparable CAM software capable of translating XML into machine-specific cutting instructions, was installed locally onto licensees' CNC machines. Licensees uploaded door frame measurement data to HighMark and downloaded XML files generated by the MetaWorks Software, not machine-specific cutting instructions, which were at that time were generated locally by |

{02145244.DOCX}                                     20

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

software installed on the CNC machine. Jensen Decl., Ex. B at 100:6 – 103:18; Exhibit 5 to the Krzeminski Declaration at HDMI 1462 (discussing function of the CadCode ToolboxX and site specific licenses for end-users [*i.e.*, customers of HighMark, such as Four Seasons] for use of the CadCode ToolboxX to generate machine-specific cutting instructions); Exhibit 5 to the Krzeminski Declaration at HDMI 1461 (discussing "CCSI-provided End-user support services, including, but not limited to . . . **On-site installation**, system integration, and instruction.") (emphasis added). At the time the Master Agreement was drafted, Licensees did not download HOP files from the Extranet, and the definition of "File" in Section 1.6 of the Master Agreement does not include HOP files. Jensen Decl., Ex. B at 100:6 – 103:18; *see also* Jensen Decl., Ex. B at 95:1 – 98:6.

The Master Agreement itself distinguishes between a File, on the one hand, and "a specific machine-ready run program that will process the cuttings of the Door Machining Unit" (*e.g.*, HOP file), on the other. Jensen Decl., Ex. Q at HMDI 1393.

In e-mail correspondence from 2016, CadCode also distinguishes between "when we put the prototype together with Dave ~10 years ago and the server based solution 5 years ago." Jensen Decl., Ex. E at 1238.

{02145244.DOCX}

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

| | |
|---|---|
| 46. Under Section 6.1 of the Master Agreement, Four Seasons "agree[d] to the terms and conditions of the Confidentiality Agreement," attached to the Master Agreement as Exhibit E ("Confidentiality Agreement").<br><br>**Evidence:** Krzeminski Decl. Ex. 44 at § 6.1. | Undisputed. |
| 47. The definition of "Confidential Information" in Section 1 the Confidentiality Agreement encompasses HighMark's HOP files and source code.<br><br>**Evidence:** Krzeminski Decl. Ex. 44 at § 1. | Disputed. The definition of Confidential Information in Section 1 of the Confidentiality Agreement is limited to "information or material disclosed by HIGHMARK . . . to the Recipient [. . .]." Plaintiff never disclosed and Four Seasons never possessed any source code so the definition of "Confidential Information" in Section 1 of the Confidentiality Agreement does not include source code. Exhibit 44 to the Krzeminski Declaration at § 1.<br><br>Disputed as to HOP files. Nothing in the definition of Confidential Information references HOP files, or any type of machine-specific cutting instructions. Exhibit 44 to the Krzeminski Declaration at § 1. Similarly, the definition of "File" in the Master Agreement does not include HOP files. |
| 48. The restrictions and obligations set forth in Section 2.4 and Section 6.1 of the Master Agreement "shall survive any expiration or termination of this Agreement." | Undisputed. |

{02145244.DOCX}

22

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

| | |
|---|---|
| **Evidence:** Krzeminski Decl. Ex. 44 at § 10.5. | |
| 49. The Master Agreement specifies an initial term from December 12, 2008 to December 31, 2010.<br><br>**Evidence:** Krzeminski Decl. Ex. 44. | Undisputed. |
| 50. After December 31, 2010, Four Seasons continued to pay HighMark for the use of its One-Cut™ technology as it had during the initial term of the parties' Master Agreement.<br><br>**Evidence:** Krzeminski Decl. Ex. 12 at 251:17-253:13; id. Ex. 45. | Undisputed. |
| 51. On or about September 27, 2011, Mike MacGilvray ("MacGilvray") sent an email to Prodim employee Marc Pustjens in which MacGilvray stated "HERE IS THAT FILE FROM OUR SERVER IN A HOPS FILE JUST SO YOU CAN SEE =HE CONVERSION . . ."<br><br>**Evidence:** Krzeminski Decl. Ex. 13 Depo. Ex. 12 at p.3; id. Ex. 15 at 52:17-56:5. | Undisputed as to the text of the e-mail correspondence. |
| 52. On or about September 28, 2011, MacGilvray sent another email to Pustjens in the same email chain, in which MacGilvray stated that | Undisputed that Dairl Johnson wanted to keep the fact that he was transitioning to Prodim software confidential for the time being because he did not want HighMark |

{02145244.DOCX}
23

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

| | |
|---|---|
| "DAIRL AND =LEEN ARE TRYING TO KEEP THIS QUIET SO WE DON'T GET CUT OFF WITH =HAT WERE USING RIGHT NOW SO IF YOU CAN<br><br>**Evidence:** Krzeminski Decl. Ex. 13 Depo. Ex. 12 at p.2; id. Ex. 15 at 61:17-62:21. | to cease processing door files for Four Seasons before the Prodim software was up and running.  Jensen Decl., Ex. F at 74:18 – 79:17. |
| 53.  MacGilvray was employed by Dairl and Glenn Johnson ("the Johnsons") in September of 2011.<br><br>**Evidence:** Krzeminski Decl. Ex. 15 at 55:5-56:5; id. Ex. 13 at 56:10-14. | Disputed.  MacGilvray was an employee of Casablanca Design Centers, Inc. Krzeminski Decl., Ex. 15 at 144:5 – 19. |
| 54.  The Johnsons were aware that MacGilvray sent the September 27, 2011 email to Prodim.<br><br>**Evidence:** Krzeminski Decl. Ex. 15 at 52:17-56:5, 58:5-15. | Disputed.  Exhibit 15 at 52:7 – 56:5 does not indicate the Johnsons were aware that McGilvray sent the September 27, 2011, e-mail to Prodim.  Dairl Johnson testified that he had never seen the e-mail sent by MacGilvray. Krzeminski Decl., Ex. 13 at 54:20 – 55:17, 61:2 – 8.<br><br>**Objection**<br>Exhibit 15 does not include the alleged excerpt at 58:5 - 15 from the deposition of Michael MacGilvray. |
| 55.  It was MacGilvray's practice to run things by Dairl and/or Glenn Johnson before contacting Prodim.<br><br>**Evidence:** Krzeminski Decl. Ex. 15 at 46:11-47:1, 58:5-15. | Undisputed that MacGilvray had a general practice of running things by Dairl and/or Glenn Johnson before contacting Prodim.<br><br>**Objection**<br>The alleged material fact is irrelevant. |

{02145244.DOCX}

24

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK
DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF
LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

| | |
|---|---|
| 56. In or around November 2011, Four Seasons stopped licensing HighMark's One-Cut™ technology.<br><br>**Evidence:** Krzeminski Decl. Ex. 13 at 23:18-24:3, 27:8-20, 96:6-22; id. Ex. 45. | Undisputed. |
| 57. In or around November 2011, Prodim installed software at the Johnsons' facility in Torrance, California.<br><br>**Evidence:** Krzeminski Decl. Ex. 13 at 96:6-22, 107:15-19, 116:14-117:14; Depo Ex. 14; Depo Ex. 15. | Undisputed. |

{02145244.DOCX}

25

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| Corporate Structure of Johnson-Owned Entities | |
|---|---|
| 58. Four Seasons was incorporated on or about July 15, 2004 under California law.<br><br>**Evidence:** Krzeminski Decl. Ex. 31. | Undisputed.<br><br><br><br>**Objection**<br>Exhibit 31 is unauthenticated hearsay. |
| 59. A 2008 statement filed with the California Secretary of State identifies Glenn Johnson as officer, director, and agent of Four Seasons.<br><br>**Evidence:** Krzeminski Decl. Ex. 32. | Undisputed.<br><br><br><br><br>**Objection**<br>Exhibit 32 is unauthenticated hearsay. |
| 60. A 2008 statement filed with the California Secretary of State identifies 2675 Skypark Dr. #203, Torrance, CA 90505 as the principal executive office, principal business office in California, and mailing address of Four Seasons.<br><br>**Evidence:** Krzeminski Decl. Ex. 32. | Undisputed.<br><br><br><br><br><br><br><br>**Objection**<br>Exhibit 32 is unauthenticated hearsay. |
| 61. A 2018 statement filed with the California Secretary of State identifies Dairl Johnson as officer, director, and agent of Four Seasons. | Undisputed. |

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

{02145244.DOCX}

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

| | |
|---|---|
| **Evidence**: Krzeminski Decl. Ex. 33. | **Objection**<br>Exhibit 33 is unauthenticated hearsay. |
| 62. Casablanca Design Centers, Inc. ("Casablanca") was incorporated on or about November 22, 2010 under California law. | Undisputed. |
| **Evidence:** Krzeminski Decl. Ex. 37. | **Objection**<br>Exhibit 37 is unauthenticated hearsay. |
| 63. The Articles of Incorporation for Casablanca identify Dairl Johnson as the initial agent for the company. | Undisputed. |
| **Evidence:**  Krzeminski Decl. Ex. 37. | **Objection**<br>Exhibit 37 is unauthenticated hearsay. |
| 64. A 2015 statement filed with the California Secretary of State identifies Glenn Johnson and Dairl Johnson as officers and directors of Casablanca. A 2017 statement filed with the California Secretary of State indicates no changes to the information provided in the 2015 statement. | Undisputed. |
| **Evidence:** Krzeminski Decl. Ex. 38. | **Objection**<br>Exhibit 38 is unauthenticated hearsay. |
| 65. A 2015 statement filed with the California Secretary of State identifies 2675 Skypark Dr. #203, Torrance, CA 90505 as the principal executive office, principal business office in | Undisputed. |

{02145244.DOCX}

27

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

|  |  |
|---|---|
| California, and mailing address for Casablanca. A 2017 statement filed with the California Secretary of State indicates no changes to the information provided in the 2015 statement. **Evidence:** Krzeminski Decl. Ex. 38. | **Objection** Exhibit 38 is unauthenticated hearsay. |
| 66. A 2011 invoice from Prodim identifies Casablanca's billing and shipping address as 2675 Skypark Dr. #204, Torrance, CA 90505. **Evidence:** Krzeminski Decl. Ex. 52. | Undisputed. **Objection** Exhibit 52 is hearsay. |
| 67. A 2013 invoice from Prodim identifies Casablanca's billing and shipping address as 2675 Skypark Dr. #204, Torrance, CA 90505. **Evidence:** Krzeminski Decl. Ex. 52. | **Objection** Exhibit 52 to the Krzeminski Declaration is not a 2013 billing invoice from Prodim. **Objection** Exhibit 52 is hearsay. |
| 68. One Day Doors and Closets, Inc. ("One Day Doors") was incorporated on or about April 17, 2012 under California law. **Evidence:** Krzeminski Decl. Ex. 34. | Undisputed. **Objection** Exhibit 34 is hearsay. |
| 69. The Articles of Incorporation for One Day Doors identify Dairl Johnson as the initial agent of the company and the business address | Undisputed. |

{02145244.DOCX}

28

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

| | |
|---|---|
| for service of process as 2675 Skypark Drive, Suite 204, Torrance, CA 90505.<br><br>**Evidence:** Krzeminski Decl. Ex. 34. | **Objection**<br>Exhibit 34 is hearsay. |
| 70. A 2014 statement filed with the California Secretary of State identifies Dairl Johnson as officer, director, and agent of One Day Doors.<br><br>**Evidence:** Krzeminski Decl. Ex. 35. | Undisputed.<br><br><br><br><br>**Objection**<br>Exhibit 35 is hearsay. |
| 71. A 2018 statement filed with the California Secretary of State identifies Dairl Johnson as officer, director, and agent of One Day Doors.<br><br>**Evidence:** Krzeminski Decl. Ex. 36. | Undisputed.<br><br><br><br><br>**Objection**<br>Exhibit 36 is hearsay. |
| 72. A 2014 statement filed with the California Secretary of State identifies 2675 Skypark Drive, Suite 204, Torrance, CA 90505 as the principal executive office and principal business office in California for One Day Doors.<br><br>**Evidence:** Krzeminski Decl. Ex. 35. | Undisputed.<br><br><br><br><br><br><br>**Objection**<br>Exhibit 35 is hearsay. |
| 73. A 2018 statement filed with the California Secretary of State identifies 2675 Skypark Drive, Suite 203, Torrance, CA 90505 as the principal executive office and | Undisputed. |

{02145244.DOCX}

29

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

| | |
|---|---|
| principal business office in California for One Day Doors.<br><br>**Evidence:**  Krzeminski Decl. Ex. 36. | **Objection**<br>Exhibit 36 is hearsay. |
| 74. One Day Enterprises, LLC ("One Day Enterprises") was established on or about October 27, 2016 under Delaware law.<br><br>**Evidence:** Krzeminski Decl. Ex. 40. | Undisputed.<br><br><br><br>**Objection**<br>Exhibit 40 is unauthenticated hearsay. |
| 75. Dairl Johnson executed and signed the Certificate of Formation for One Day Enterprises on or about October 21, 2016.<br><br>**Evidence:**  Krzeminski Decl. Ex. 40. | Undisputed.<br><br><br><br>**Objection**<br>Exhibit 40 is unauthenticated hearsay. |
| 76. A statement filed with the California Secretary of State on or about January 6, 2017 identifies Dairl Johnson as the agent of One Day Enterprises.<br><br>**Evidence:** Krzeminski Decl. Ex. 41. | Undisputed.<br><br><br><br><br>**Objection**<br>Exhibit 41 is unauthenticated hearsay. |
| 77. A statement filed with the California Secretary of State on or about October 11, 2017 identifies Dairl Johnson as the manager and agent of One Day Enterprises. | Undisputed. |

{02145244.DOCX}

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| **Evidence:** Krzeminski Decl. Ex. 42. | **Objection**<br>Exhibit 42 is unauthenticated hearsay. |
| 78.   A   statement   filed   with   the California Secretary of State on or about October 11, 2017 identifies David   Winter   as   the   Chief Executive Officer of One Day Enterprises. | Undisputed. |
| **Evidence:** Krzeminski Decl. Ex. 42. | **Objection**<br>Exhibit 42 is unauthenticated hearsay. |
| 79. Dairl Johnson and Glenn Johnson ("the Johnsons") are father and son, respectively. | Undisputed. |
| **Evidence:** Krzeminski Decl. Ex. 17. at 21:10-11. | **Objection**<br>Lack of Relevance, FRE 401-403. |
| 80.   Casablanca   operates   out   of   the Johnsons'   facility   in   Torrance, California.<br><br>**Evidence**: Krzeminski Decl. Ex. 17. at 56:21-57:5;  *id.*  Ex.  13  at  107:15-108:20. | Disputed.  None of the cited testimony states the Johnsons own the Torrance, California facility. |
| 81. Dairl and Glenn Johnson are the owners of Interior Door & Closet Company ("IDCC").<br><br>**Evidence:** Krzeminski Decl. Ex. 17 at 14:20-15:3, 17:14-17, 53:1-14; 168:21-169:9. | Disputed.     Interior   Door   &   Closet Company is a fictitious business name, not an existing legal entity. Krzeminski Decl., Ex. 17 at 198:6 – 199:21. |

PORTER | SCOTT<br>350 University Avenue, Suite 200<br>Sacramento, CA  95825<br>TEL: 916.929.1481<br>FAX: 916.927.3706

{02145244.DOCX}

31

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

| | |
|---|---|
| 82. Dairl Johnson is the sole owner of One Day Doors.<br><br>**Evidence:** Krzeminski Decl. Ex. 13 at 168:19-170:20; *id.* Ex. 17 at 36:1-8. | Undisputed that Dairl Johnson is the owner of One Day Doors and Closets, Inc. |
| 83. One Day Enterprises does business as One Day Doors & Closets.<br><br>**Evidence:** Krzeminski Decl. Ex. 13 at 170:5-11 G. *id.* Ex 17 at 36:1-8. | Undisputed. |
| 84. Dairl Johnson has transacted business on behalf of Four Seasons using an @interiordoorco.com email address.<br><br>**Evidence:** Krzeminski Decl. Ex. 45. | Undisputed.<br><br>**Objection**<br>Exhibit 45 is hearsay.  Vague as to time.  Irrelevant. |
| 85. IDCC is a "DBA" of Four Seasons.<br><br>**Evidence**:  Krzeminski Decl. Ex. 58; Dkt. No. 40 at pg. 3:17-20. | **Objection**<br>Exhibit 58 was not submitted with Plaintiff's moving papers. Dkt. No. 40 at pg. 3:17 – 20 does not say that Interior Door and Closet Company is a DBA of Four Seasons.  The alleged material fact misstates the evidence. |
| 86. IDCC is a "DBA" of Casablanca.<br>**Evidence:**  Krzeminski Decl. Ex. 17 at 54:11-22; *id.* Ex. 39. | Undisputed. |
| 87. One Day Enterprises "was formed to take over the function of One | Undisputed that One Day Doors & Closets, Inc. never operated. Krzeminski |

{02145244.DOCX}

32

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

| | |
|---|---|
| Day Doors & Closets, Inc., which never happened." **Evidence:** Krzeminski Decl. Ex. 13 at 170:21-171:17. | Decl. Ex. 13 at 170:21- 171:17. "[I]t was a defunct company." *Id.* One Day Enterprises was formed and it did begin operating as a nationwide dealer program. *Id.* **Objection** Lack of Relevance, FRE 401-403. |
| 88. Dairl and Glenn Johnson own Four Seasons. **Evidence:** Krzeminski Decl. Ex. 17 at 20:19-21:11. | Undisputed. **Objection** Exhibit 17 to the Krzeminski Declaration does not include the identified testimony at 20:19 – 21:11. |
| 89. Dairl and Glenn Johnson own Casablanca. **Evidence:** Krzeminski Decl. Ex. 17 at 55:1-21; Ex. 13 at 172:7-11. | Undisputed. |
| 90. As of 2011, Casablanca and Four Seasons had the same employees and same business addresses. **Evidence:** Krzeminski Decl. Ex. 17 at 101:13-101:13, 104:3-19, 105:2-6. | Disputed.   By the time Casablanca was operating, Four Seasons had already been shut down. Jensen Decl., Ex. F at 108:8 - 14; **Objection** Exhibit 17 to the Krzeminski Declaration does not include the identified testimony at 101:13- 101:13, 104:3-19, and 105:2-6. |
| 91. Dairl Johnson is the sole owner of One Day Enterprises. **Evidence:** Krzeminski Decl. Ex. 13 at 170:12-20. | Undisputed. |

{02145244.DOCX}

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK
DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF
LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| 92.  Dairl Johnson is sole or part owner of all Corporate Defendants.<br><br>**Evidence:** Krzeminski Decl. Ex. 17 at 168:21-169:9. | Undisputed. |

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

{02145244.DOCX}

34

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK
DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF
LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| **Trade Secret Misappropriation** | |
|---|---|
| 93.    McElroy declined Prodim's offer to develop software for cutting interior replacement doors.<br><br>**Evidence:** Krzeminski Decl. Ex. 11 at 43:24-44:15, 51:5-52:25. | Disputed in part. McElroy declined Prodim's offer to enhance its existing door software to fit McElroy's requirements because Prodim wanted to enter into a "per-door" licensing agreement, whereas McElroy wanted to own the software. Krzeminski Ex. 11 at 21:9 – 25:17; 44:23 – 45:15; 69:25 – 70:19. |
| 94.    On or about January 4, 2007, McElroy and Winter entered into an agreement with MetaWorks to develop a "[p]rogram to convert Prodim Proliner export data to CADCode PartLink input data."<br><br>**Evidence:** Krzeminski Decl. Ex. 11 at 44:23-45:8, 69:10-70:14; *id.* Ex. 3 at HMDI.0001340. | Undisputed. |
| 95.    The MetaWorks agreement specified that to the extent Winter and McElroy made "any of its proprietary materials or products (including, without limitation, any software or documentation in either or both source code or object code form)…(such materials, together with any modifications, derivative works, enhancements or improvements thereof or thereto…)" were the property of Dave Winter and Mike | Undisputed. |

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

{02145244.DOCX}                                         35

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK
DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF
LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

| | |
|---|---|
| McElroy.<br><br>**Evidence**: Krzeminski Decl. Ex. 3 at HMDI.0001340 Sect. 5.1. | |
| 96. In signing the 2007 Employee Nondisclosure, Assignment and Non- Solicitation Agreement, Winter assigned to HighMark all of his "right, title and interest in and to any and all Company Innovations."<br><br>**Evidence:** Krzeminski Decl. Ex. 43 at§ 6. | Undisputed that the 2007 Employee Nondisclosure, Assignment, and Non-Solicitation Agreement contains the quoted language.<br><br>To the extent HighMark is suggesting that Winter assigned all right, title and interest in the original MetaWorks, LLC software, the fact is disputed. The MetaWorks, LLC software is a "Prior Innovation," in which Winter expressly did not assign all right, title, and interest to HighMark. *See* Exhibit 43 to the Krzeminski Declaration at § 5 ("I hereby grant to Company and Company's designees a royalty-free, irrevocable, worldwide, fully paid-up license . . . relating to any Prior Innovations that I incorporate, or permit to be incorporated, in any innovations that I, solely or jointly with others, conceive, develop or reduce to practice within the scope of my employment with Company (the 'Company Innovations').").  |
| 97. The Master Agreement, between Four Seasons and HighMark, dated December 12, 2008, states "Whereas HighMark is the owner of the proprietary One-Cut system and associated software and hardware." | Undisputed that the Master Agreement contains that language. Disputed to the extent Plaintiff contends the CadCode Systems software that converted generic XML into Holz-Her CNC machine specific HOP files is a part of the One-Cut™ system. Jensen Dec., Ex. H at 158:8 – 10 (Q. The CadCode software |

{02145244.DOCX}    36

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK
DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF
LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

| | |
|---|---|
| **Evidence:** Krzeminski Decl. Ex. 44. | that you were talking about, it's proprietary to CadCode, is it not?   A. That is correct."). |
| 98. When the Master Agreement was signed, HighMark was the owner of the One-Cut system and associated hardware and software.<br><br>**Evidence:** Krzeminski Decl. Ex. 11 at 141:25-142:14, 143: 7-16. | Disputed to the extent Plaintiff contends the CadCode Systems software that converted generic XML into Holz-Her CNC machine specific HOP files is a part of the One-Cut$^{TM}$ system.   Jensen Dec., Ex. H at 158:8 – 10 (Q. The CadCode software that you were talking about, it's proprietary to CadCode, is it not?   A. That is correct.").<br><br>As CadCode wrote to HighMark, "It might be helpful in filling in the blanks to review the letter of intent (LOI) from 2008 (attached) under which our two companies did business. Our agreement covered initial custom programing, work to enable Highmark's application/service to be launched as well as providing access to our standard tool library for processing the door information collected from Highmark's proprietary measuring tools. As such, the CADCode software and server are the bridge between door measurements and the CNC machines that cut the doors to size, generating the programs that actually instruct the machines to perform the trim-to-fit and hardware machining. CADCode software also creates and prints the labels for those doors." Jensen Decl., Ex. S. |
| 99. The software developed with MetaWorks is integrated into HighMark's One-Cut™ technology. | Undisputed. |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

| | |
|---|---|
| **Evidence:** Krzeminski Decl. Ex. 11 at 69:18-72:1, 80:21-81:21. | |
| 100.  HighMark's One-Cut™ system converts digital measurement data into door cutting instructions readable by a specific type of automated woodcutting machine, a Holzher CNC machine.<br><br>**Evidence:** Matulia Decl. at ¶¶ 5; Krzeminski Decl. Ex. 12 at 92:1-12. | Disputed.   At the time Four Seasons licensed One-Cut™ and at least until 2017, Plaintiff's software – the MetaWorks Software – generated an eXtensible markup language ("XML") output. Krzeminski Decl. Ex. 3 at 1340; Jensen Decl., Ex. A at 35:22 – 36:9, 44:23 – 45:17, 69:6 – 70:19; Jensen Decl., Ex. G (Fallon PMQ) at 11:19 – 16:9.   The MetaWorks XML output was <u>not</u> specific to Holz-Her CNC machines, or any other type of CNC machine. Jensen Decl., Ex. G at 18:25 – 19:10. CadCode software translated non-machine specific XML into machine specific cutting instructions, such as HOP for Holz-Her CNC machines.   Jensen Decl., Ex. G at 18:25 – 21:12.   The CadCode Software had the ability to output cutting instructions readable by multiple CNC manufacturers and Plaintiff previously cut doors on several different types of CNC machines.   Krzeminski Decl., Ex. 5 at 1465 – 1466; Jensen Decl., Ex. B at 92:10 – 92:20. Winter Decl., ¶ 22.   It was not until 2017 that Fallon reverse engineered the CadCode Software so that the MetaWorks Software outputted HOP files directly.   Jensen Decl., Ex. S (ED); Jensen Decl., Ex. H at 145:25 – 147:15; Jensen Decl., Ex. G at 22:1 – 10.<br><br>As CadCode wrote to HighMark, "It might be helpful in filling in the blanks to |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| | review the letter of intent (LOI) from 2008 (attached) under which our two companies did business. Our agreement covered initial custom programing, work to enable Highmark's application/service to be launched as well as providing access to our standard tool library for processing the door information collected from Highmark's proprietary measuring tools. As such, the CADCode software and server are the bridge between door measurements and the CNC machines that cut the doors to size, generating the programs that actually instruct the machines to perform the trim-to-fit and hardware machining. CADCode software also creates and prints the labels for those doors." Jensen Decl., Ex. S.<br><br>**Objection**<br>Exhibit 12 to the Krzeminski Declaration does not include the identified testimony. |
| 101.   HighMark's One-Cut system generates door cutting instructions in the form of a HOP file, which contains code readable by a Holzher CNC machine.<br><br>**Evidence:** Matulia Decl. at ¶¶ 5. | Disputed.   At the time Four Seasons licensed One-Cut™ and at least through 2016, Plaintiff's software – the MetaWorks Software – generated an eXtensible markup language ("XML") output.   Krzeminski Decl. Ex. 3 at 1340; Jensen Decl., Ex. A at 35:22 – 36:9, 44:23 – 45:17, 69:6 – 70:19; Jensen Decl., Ex. G (Fallon PMQ) at 11:19 – 16:9.   The MetaWorks XML output was <u>not</u> specific to Holz-Her CNC machines, or any other type of CNC machine. Jensen Decl., Ex. G at 18:25 – 19:10. The CadCode software translated non-machine specific XML into machine |

PORTER | SCOTT<br>350 University Avenue, Suite 200<br>Sacramento, CA  95825<br>TEL: 916.929.1481<br>FAX: 916.927.3706

{02145244.DOCX}
39

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

specific cutting instructions, such as HOP for Holz-Her CNC machines. Jensen Decl., Ex. G at 18:25 – 21:12. The CadCode Software had the ability to output cutting instructions readable by multiple CNC manufacturers and Plaintiff previously cut doors on several different types of CNC machines. Krzeminski Decl., Ex. 5 at 1465 – 1466; Winter Decl., ¶ 22. It was not until 2017 that Fallon reverse engineered the CadCode Software so that the MetaWorks Software outputted HOP files directly. Jensen Decl., Ex. S (ED); Jensen Decl., Ex. H at 145:25 – 147:15; Jensen Decl., Ex. G at 22:1 – 10.

As CadCode wrote to HighMark, "It might be helpful in filling in the blanks to review the letter of intent (LOI) from 2008 (attached) under which our two companies did business. Our agreement covered initial custom programing, work to enable Highmark's application/service to be launched as well as providing access to our standard tool library for processing the door information collected from Highmark's proprietary measuring tools. As such, the CADCode software and server are the bridge between door measurements and the CNC machines that cut the doors to size, generating the programs that actually instruct the machines to perform the trim-to-fit and hardware machining. CADCode software also creates and prints the labels for those doors." Jensen Decl., Ex. S.

{02145244.DOCX}

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

| | |
|---|---|
| 102. The HOP files generated by HighMark's One-Cut™ system contain information about the number and order of cuts, cutting techniques, and positions of the cutting tools.<br><br>**Evidence:** Huisjen Decl. at ¶¶ 3, Ex. 1 at p.7:7-24. | Disputed in part because HighMark's One-Cut™ does not generate HOP files. At the time Four Seasons licensed One-Cut™ and at least through 2016, Plaintiff's software – the MetaWorks Software – generated an eXtensible markup language ("XML") output. Krzeminski Decl. Ex. 3 at 1340; Jensen Decl., Ex. A at 35:22 – 36:9, 44:23 – 45:17, 69:6 – 70:19; Jensen Decl., Ex. G (Fallon PMQ) at 11:19 – 16:9. The MetaWorks XML output was <u>not</u> specific to Holz-Her CNC machines, or any other type of CNC machine. Jensen Decl., Ex. G at 18:25 – 19:10. The CadCode software translated non-machine specific XML into machine specific cutting instructions, such as HOP for Holz-Her CNC machines. Jensen Decl., Ex. G at 18:25 – 21:12. The CadCode Software had the ability to output cutting instructions readable by multiple CNC manufacturers and Plaintiff previously cut doors on several different types of CNC machines. Krzeminski Decl., Ex. 5 at 1465 – 1466; Winter Decl., ¶ 22. It was not until 2017 that Fallon reverse engineered the CadCode Software so that the MetaWorks Software outputted HOP files directly. Jensen Decl., Ex. S (ED); Jensen Decl., Ex. G at 145:25 – 147:15. |
| 103. When HighMark's source code was used, it executed instructions that accessed CadCode's servers for part of its processing. | Objection. The alleged material fact is so vague and ambiguous that it is unclear what HighMark is attempting to establish.<br><br>Specifically, the testimony identified in |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK
DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF
LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

| | |
|---|---|
| **Evidence:** Krzeminski Decl. Ex. 16 at 155:5-156:16. | Exhibit 16 at 155:5 – 156:16 relates to CadCode tracking the number of door files processed by Plaintiff so that CadCode could see whether Plaintiff was up-to-date paying its licensing fee. The cited testimony is not describing the functionality of the CadCode Software or anything else material to HighMark's claims.<br><br>In any event, the fact is undisputed to the extent Plaintiff is attempting to establish that at the time Four Seasons licensed One-Cut™ and at least through 2016, Plaintiff's software – the MetaWorks Software – generated an eXtensible markup language ("XML") output. Krzeminski Decl. Ex. 3 at 1340; Jensen Decl., Ex. A at 35:22 – 36:9, 44:23 – 45:17, 69:6 – 70:19; Jensen Decl., Ex. G (Fallon PMQ) at 11:19 – 16:9. The MetaWorks XML output was <u>not</u> specific to Holz-Her CNC machines, or any other type of CNC machine. Jensen Decl., Ex. G at 18:25 – 19:10. The CadCode software translated non-machine specific XML into machine specific cutting instructions, such as HOP for Holz-Her CNC machines. Jensen Decl., Ex. G at 18:25 – 21:12. |
| 104. Since at least 2013, HighMark has not used Prodim Proliner measurement devices as part of its One-Cut™ system.<br><br>**Evidence:** Matulia Decl. at ¶¶ 7; Krzeminski Decl. Ex. 16 10:11-11:6; | Undisputed. |

{02145244.DOCX}                          42

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

| | |
|---|---|
| 117:24-118:23, 122:5-9, 122:17-123:15, 125:9-12. | |
| 105. In or around 2007, Prodim offered McElroy its services to develop software suitable for interior replacement doors.<br><br>**Evidence:** Krzeminski Decl. Ex. 11 at 41:15-44:15, 51:5-52:17. | Disputed in part. Prodim offered to develop software for McElroy in 2006. Specifically, Prodim offered to enhance its existing door software for McElroy *before* McElroy contracted with MetaWorks to develop a "[p]rogram to convert Prodim Proliner export data to CADCode PartLink input data" on January 4, 2007. Krzeminski Ex. 11 at 21:9 – 25:17; 44:23 – 45:8; 69:25 – 70:19; Krzeminski Decl. Ex. 3 at HMDI.0001340.<br><br>The alleged material fact is also vague and ambiguous. Prodim offered to enhance its already existing door software, which was sufficient to "cut[] doors on a Holz-Her machine." Jensen Decl., Ex. A at 51:19 – 52:25. What Plaintiff was actually offering to do was write software that would automatically convert Proliner measurement data into machine-specific Holz-Her HOP files. *Id.* |
| 106. Prior to licensing HighMark's One-Cut™ technology, Defendants exclusively used manual techniques for measuring and cutting doors.<br><br>**Evidence:** Krzeminski Decl. Ex. 13 at 21:16-22:3; *id.* Ex. 17 at 81:11-82:7. | Disputed in part because Casablanca never used manual techniques for measuring and cutting doors; it was not incorporated until November 2010. Krzeminski Decl. at Ex. 37.<br><br>Disputed in part because One Day Doors & Closets, Inc. never conducted business and has not measured and cut doors using |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

| | |
|---|---|
| | any kind of process, manual or automated. Jensen Decl., Ex. F at 171:18 – 172:2; Jensen Decl. Ex. R. at 9, 10; Glen Johnson, Decl. Ex. D.  One Day Doors & Closets, Inc. also was not incorporated until 2012, after Four Seasons stopped licensing One-Cut™. Krzeminski Decl. Ex. 34. |
| | Disputed in part because One Day Enterprises, LLC never used manual techniques for measuring and cutting doors; it was not form until October 2016, after Four Seasons stopped licensing One-Cut™. Krzeminski Decl., Ex. 40. |
| | Disputed as to Winter.  Winter never licensed One-Cut™. |
| | Undisputed as to Four Seasons Windows and Doors, Inc. |
| 107. Prior to Winter's registration from HighMark, HighMark's One-Cut™ system generated HOP files through a server maintained by CadCode Systems, Inc.<br><br>**Evidence:** Krzeminski Decl. Ex. 12 at 106:5-10, 108:11-14, 108:20-109:7; id. Ex. 16 at 155:5-156:16. | Undisputed to the extent Plaintiff means to say that it licensed software from CadCode to convert non-machine specific XML generated by the MetaWorks Software into machine-specific cutting instructions, including Holz-Her CNC machine specific HOP files.  Jensen Decl., Ex. G at 18:25 – 21:12; Jensen Decl., Ex. H at 145:25 – 147:15. |
| 108. Since Defendants stopped licensing HighMark's solution, Defendants have used the Prodim Proliner measuring devices to obtain door measurement data. | Disputed.  Defendants have always used the Prodim measuring device to obtain door measurement data.  Jensen Decl., Ex. F at 28:9 – 29:3. |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

| | |
|---|---|
| **Evidence:** Krzeminski Decl. Ex. 17 at 83:22-84:10; 121:22-122:11, 139:4-14. | |
| 109. On or about March 1, 2007, David Winter signed an Employee Nondisclosure, Assignment and Non- Solicitation Agreement in connection with his employment at HighMark Digital Corporation.<br><br>**Evidence**: Repeat of UMF #17. Krzeminski Decl. Ex. 12 at 7:8-8:5; *id.* Ex. 43. | Undisputed. |
| 110. Winter had access to HighMark's source code at the time of and prior to his resignation from HighMark.<br><br>**Evidence:** Repeat of UMF #21. Krzeminski Decl. Ex. 16 at 66:17-68:19, 102:21-104:11, 132:16-134:5; *id.* Ex. 7 at 89:1-91:1, 93:1-16, 94:25-96:4. | Disputed.    Winter had access to areas where he understood source code to be stored (*e.g.*, the server room at Plaintiff's facility) and on one occasion Fallon gave him an external hard drive that Fallon said contained source code on it, but Winter did not know how to "access" the source code and never tried. Jensen Decl., Ex. B at 19:10 – 20:10, 76:4 – 11. |
| 111. During Winter's employment, HighMark's source code was maintained in a cloud-based repository.<br><br>**Evidence:** Repeat of UMF #22. Krzeminski Decl. Ex. 7 at 89:1-91:1. | Undisputed. |
| 112. During Winter's employment, HighMark maintained local copies of its source code on the CTO's computer and on three portable backup drives in the | Undisputed. |

{02145244.DOCX}

45

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

| | |
|---|---|
| server room.<br><br>**Evidence:** Repeat of UMF #23. Krzeminski Decl. Ex. 16 at 102:21-104:11; *id.* Ex. 7 at 92:15-93:16, 94:25-96:4; *id.* Ex. 12 at 52:1-53:21. | **Objection**<br>Exhibit 12 to the Krzeminski Declaration does not include the identified testimony. |
| 113. During his employment at HighMark, Winter had access to the cloud-based repository where HighMark's source code was maintained.<br><br>**Evidence:** Repeat of UMF #24. Krzeminski Decl. Ex. 7 at 89:1-91:1. | Undisputed. |
| 114. During his employment at HighMark, Winter had access to the server room where the portable backup drives containing HighMark's source code were kept.<br><br>**Evidence:** Repeat of UMF #25. Krzeminski Decl. Ex. 7 at 94:25-96:4. | Undisputed. |
| 115. HighMark restricts source code access to a limited number of employees.<br><br>**Evidence:** Repeat of UMF #26. Krzeminski Decl. Ex. 7 at 89:1-91:1, 99:3-14. | Undisputed. |
| 116. Access to HighMark's source code requires unique log-in credentials. | Disputed. Exhibit 16 to the Krzeminski Declaration at 66:17 – 68:19 does not state that access to HighMark's source code requires unique log-in credentials. |

{02145244.DOCX}

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK
DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF
LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

| | |
|---|---|
| **Evidence:** Repeat of UMF #27. Krzeminski Decl. Ex. 16 at 66:17-68:19. | |
| 117. On occasion, HighMark's Chief Technology Officer, Joe Fallon, asked Winter to take home a backup external hard drive containing a copy of HighMark's source code. | Disputed.  Winter cannot recall taking the external hard drive home more than once. Jensen Decl., Ex. B at 62:2 – 6. |
| **Evidence:** Repeat of UMF #28. Krzeminski Decl. Ex. 12 at 52:1-53:17, 62:2-19; *id.* Ex. 16 at 102:21-104:24; *id.* Ex. 14 at 39:20-42:6, 64:25-65:6. | **Objection** Exhibit 12 to the Krzeminski Declaration does not include the identified testimony. |
| 118. On at least one occasion in or about 2014, Winter took home a backup external hard drive containing a copy of HighMark's source code. | Undisputed. |
| **Evidence:** Repeat of UMF #29. Krzeminski Decl. Ex. 12 at 52:1-53:17, 62:2-19; *id.* Ex. 14 at 39:20-42:6, 64:25-65:6. | **Objection** Exhibit 12 to the Krzeminski Declaration does not include the identified testimony. |
| 119. On or around February 5, 2016, CadCode shut down its servers due to a late payment by HighMark. | Disputed.  Exhibit 56 to Krzeminski Declaration states that CadCode terminated service to Plaintiff on January 31, 2016.  *See* Ex. 56 ("please note that your support will expire on 1/30/16"). |
| **Evidence:** Repeat of UMF #37. Krzeminski Decl. Ex. 56. | **Objection** Exhibit 56 to the Krzeminski Declaration is unauthenticated hearsay.  Plaintiff did not direct any discovery to CadCode in |

{02145244.DOCX}                                          47

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

| | this case such that it has no admissible evidence of what CadCode did or did not do or the reasons why CadCode did or did not do the acts Plaintiff describes. |
|---|---|
| 120. In the present litigation, Defendants produced tens of thousands HOP files from their manufacturing sites for examination by HighMark's technical expert.<br><br>**Evidence:**   Repeat   of   UMF   #38. Krzeminski Decl. at ¶¶ 50. | **Objection**<br>Paragraph   50   to   the   Krzeminski Declaration   references   a   document identified as Exhibit 58 that does not have   any   apparent   relationship   to   the alleged material fact.   Exhibit 58 also does not appear to have submitted with Plaintiff's moving papers. |
| 121. Defendants   failed   to   produce   any HOP files generated on February 5, 2016, the day CadCode shut down its servers.<br><br>**Evidence:**   Repeat   of   UMF   #40. Krzeminski Decl. at ¶¶ 50. | Disputed.   Exhibit 56 to the Krzeminski Declaration   states   that   CadCode terminated service to Plaintiff on January 31, 2016.   *See* Ex. 56 ("please note that your   support   will   expire   on   1/30/16"). HighMark has not presented evidence that   CadCode   terminated   service   on February 5, 2016, as opposed to any day between   February   1 – 4,   2016. Casablanca also did not "fail" to produce HOP   files   on   February   5,   2016. Casablanca frequently does not produce HOP   files   for   days   at   a   time.   Vilfer Decl., ¶ 19, Ex. I.<br><br>**Objection**<br>Paragraph   50   to   the   Krzeminski Declaration   references   a   document identified as Exhibit 58 that does not have   any   apparent   relationship   to   the alleged material fact.   Exhibit 58 also does not appear to have submitted with Plaintiff's moving papers. |

{02145244.DOCX}                                                    48

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK
DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF
LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

|  |  | UMF 121 is also a repeat of UMF #39, not #40. |
|---|---|---|
| 122. | Defendants failed to produce any HOP files generated between February 5, 2016 and February 23, 2016 at one of their manufacturing sites.<br><br>**Evidence:** Repeat of UMF #40. Krzeminski Decl. at ¶¶ 50. | Disputed. HighMark now concedes that its repeated assertion that there is a gap in HOP file production "at one of [Defendants] manufacturing sites" between February 5, 2016 and February 23, 2016, has no basis. Jensen Decl., Ex. T ("We have finished investigating the issue regarding two gaps in HOP file production around February 2016. After revisiting the facts, Mr. Huisjen will no longer be relying on a gap between February 4, 2016 to February 23, 2016 in view of Defendants' HOP files that appear to have been generated for certain days within that period. Counsel's initial assessment was inadvertently based on an incomplete data set. Mr. Huisjen will still rely on the gap between February 4, 2016 to February 9, 2016 to support his opinions, and we intend to have Mr. Huisjen submit a supplemental declaration regarding that point along with HighMark's opposition papers.").<br><br>**Objection**<br>Paragraph 50 to the Krzeminski Declaration references a document identified as Exhibit 58 that does not have any apparent relationship to the alleged material fact. Exhibit 58 also does not appear to have submitted with Plaintiff's moving papers. |
| 123. | Defendants failed to produce any HOP files generated between | Disputed. Casablanca was only the Defendant producing HOP files in 2015 |

{02145244.DOCX}

49

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

| | |
|---|---|
| February 5, 2016 and February 8, 2016 at another one of their manufacturing sites.<br><br>**Evidence:** Repeat of UMF #41. Krzeminski Decl. at ¶¶ 50. | and 2016.  At the time, Defendants' only had one "manufacturing site" – Casablanca's Torrance, California facility.  One Day Enterprises, LLC did not open its doors in Rocklin, California until 2017.<br><br>**Objection**<br>Paragraph 50 to the Krzeminski Declaration references a document identified as Exhibit 58 that does not have any apparent relationship to the alleged material fact.  Exhibit 58 also does not appear to have submitted with Plaintiff's moving papers. |
| 124. In late 2016, CadCode informed Highmark of discrepancies between the number of doors processed by CadCode and the number of doors submitted by HighMark.<br><br>**Evidence:** Repeat of UMF #42. Krzeminski Decl. at Ex. 23. *id.* Ex. 16 at 153:20-154:23. | **Disputed**.  The alleged discrepancy was between the number of door files (*e.g.*, HOP files) generated by CadCode and the number of the doors Plaintiff actually manufactured.  Krzeminski Decl. at Exhibit 23 ("Since we don't know exactly how you operate, we can't know if a program generated was actually run or if that equates to a completed door, so I realize I was in error in my conversation with Richard in assuming that each program generated equals one door actually manufactured.").  Plaintiff's Chief Technology Officer investigated the reason for the alleged discrepancy, and determined that the door file and door manufactured discrepancy was the result of employees of Plaintiff unnecessarily regenerating door files through CadCode, which made it appear to CadCode that Plaintiff was cutting more doors than it actually was.   Jensen Decl., Ex. E at |

{02145244.DOCX}

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

1187, 1239 – 1240.  That led CadCode to say in Exhibit 23 to the Krzeminski Declaration that, "[a]s for the discrepancies, we're not sure there really are any."

Second, CadCode did not inform Plaintiff of discrepancies between the number of doors processed by CadCode and the number of doors submitted by HighMark. CadCode informed HighMark that the CadCode Software was processing a certain number of door files for Plaintiff. Jensen Decl., Ex. P ("HighMark is on track to process more than 25,000 door programs this year and the volume has been growing for four consecutive years."). HighMark responded that it was not manufacturing that many doors, leading to discussion over the reason for the alleged discrepancy.

**Objection**
Exhibit 23 to the Krzeminski Declaration is unauthenticated hearsay.

| | |
|---|---|
| 125. On or about September 27, 2011, Mike MacGilvray ("MacGilvray") sent an email to Prodim employee Marc Pustjens in which MacGilvray stated "HERE IS THAT FILE FROM OUR SERVER IN A HOPS FILE JUST SO YOU CAN SEE =HE CONVERSION . . ." <br><br> **Evidence:** Repeat of UMF #51. Krzeminski Decl. Ex. 13 Depo. Ex. 12 | Undisputed as to the text of the e-mail correspondence. |

{02145244.DOCX}

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| at p.3; *id*. Ex. 15 at 52:17-56:5. | |
| 126. On or about September 28, 2011, MacGilvray sent another email to Pustjens in the same email chain, in which MacGilvray stated that "DAIRL AND =LEEN ARE TRYING TO KEEP THIS QUIET SO WE DON'T GET CUT OFF WITH =HAT WERE USING RIGHT NOW SO IF YOU CAN"<br><br>**Evidence:** Repeat of UMF #52. Krzeminski Decl. Ex. 13 Depo. Ex. 12 at p.2; *id*. Ex. 15 at 61:17-62:21. | Undisputed as to the text of the e-mail correspondence. Dairl Johnson wanted to keep the fact that he was transitioning to Prodim software confidential for the time being because he did not want HighMark to cease processing files for Four Seasons before the Prodim software was up and running. Jensen Decl., Ex. F at 74:18 – 79:17. |
| 127. MacGilvray was employed by Dairl and Glenn Johnson ("the Johnsons") in September of 2011.<br><br>**Evidence:** Repeat of UMF #53. Krzeminski Decl. Ex. 15 at 55:5-56:5; *id*. Ex. 13 at 56:10-14. | Disputed. MacGilvray was an employee of Casablanca Design Centers, Inc. Krzeminski Decl., Ex. 15 at 144:5 – 19. |
| 128. The Johnsons were aware that MacGilvray sent the September 27, 2011 email to Prodim.<br><br>**Evidence:** Repeat of UMF #54. Krzeminski Decl. Ex. 15 at 52:17-56:5, 58:5-15. | Disputed. Exhibit 15 at 52:7 – 56:5 does not indicate the Johnsons were aware that MacGilvray sent the September 27, 2011, e-mail to Prodim. Dairl Johnson testified that he had never seen the e-mail sent by MacGilvray. Krzeminski Decl., Ex. 13 at 54:20 – 55:17, 61:2 – 8.<br><br>**Objection**<br>Exhibit 15 does not include the alleged excerpt at 58:5 - 15 from the deposition of Michael MacGilvray. |

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

{02145244.DOCX}

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

| | |
|---|---|
| 129. It was MacGilvray's practice to run things by Dairl and/or Glenn Johnson before contacting Prodim. | Undisputed that MacGilvray had a general practice of running things by Dairl and/or Glenn Johnson before contacting Prodim. |
| **Evidence:** Repeat of UMF #55. Krzeminski Decl. Ex. 15 at 46:11-47:1, 58:5-15. | **Objection** Irrelevant. |
| 130. In or around November 2011, Four Seasons stopped licensing HighMark's One-Cut™ technology. | Undisputed. |
| **Evidence**: Repeat of UMF #56. Krzeminski Decl. Ex. 13 at 23:18-24:3, 27:8-20, 96:6-22; *id.* Ex. 45. | |
| 131. In or around November 2011, Prodim installed software at the Johnsons' facility in Torrance, California. | Undisputed. |
| **Evidence:** Repeat of UMF #57. Krzeminski Decl. Ex. 13 at 96:6-22, 107:15-19, 116:14-117:14; Depo Ex. 14; Depo Ex. 15. | |

{02145244.DOCX}                                              53

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK
DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF
LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTIES' RESPONSE |
|---|---|
| **Cal. Penal Code Sec. 502** | |
| 132. On or about March 1, 2007, David Winter signed an Employee Nondisclosure, Assignment and Non- Solicitation Agreement in connection with his employment at HighMark Digital Corporation.<br><br>**Evidence:** Repeat of UMF #17. Krzeminski Decl. Ex. 12 at 7:8-8:5; *id*. Ex. 43. | Undisputed. |
| 133. Winter had access to HighMark's source code at the time of and prior to his resignation from HighMark.<br><br>**Evidence:** Repeat of UMF #21. Krzeminski Decl. Ex. 16 at 66:17-68:19, 102:21-104:11, 132:16-134:5; *id*. Ex. 7 at 89:1-91:1, 93:1-16, 94:25-96:4. | Disputed.   Winter had access to areas where he understood source code to be stored (*e.g.*, the server room at Plaintiff's facility) and on one occasion Fallon gave him an external hard drive that Fallon said contained source code on it, but Winter did not know how to "access" the source code and never tried.  Jensen Decl., Ex. B at 19:10 – 20:10, 76:4 – 11. |
| 134. During Winter's employment, HighMark's source code was maintained in a cloud-based repository.<br><br>**Evidence:** Repeat of UMF #22. Krzeminski Decl. Ex. 7 at 89:1-91:1. | Undisputed. |
| 135. During Winter's employment, HighMark maintained local copies of its source code on the | Undisputed. |

{02145244.DOCX}

54

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

| | |
|---|---|
| CTO's computer and on three portable backup drives in the server room.<br><br>**Evidence:** Repeat of UMF #23. Krzeminski Decl. Ex. 16 at 102:21-104:11; *id*. Ex. 7 at 92:15-93:16, 94:25-96:4; *id*. Ex. 12 at 52:1-53:21. | |
| 136. During his employment at HighMark, Winter had access to the cloud-based repository where HighMark's source code was maintained.<br><br>**Evidence:** Repeat of UMF #24. Krzeminski Decl. Ex. 7 at 89:1-91:1. | Undisputed. |
| 137. During his employment at HighMark, Winter had access to the server room where the portable backup drives containing HighMark's source code were kept.<br><br>**Evidence:** Repeat of UMF #25. Krzeminski Decl. Ex. 7 at 94:25-96:4. | Undisputed. |
| 138. HighMark restricts source code access to a limited number of employees.<br><br>**Evidence:** Repeat of UMF #26. Krzeminski Decl. Ex. 7 at 89:1-91:1, 99:3-14. | Undisputed. |
| 139. Access to HighMark's source code requires unique log-in | Disputed. Exhibit 16 to the Krzeminski Declaration at 66:17 – 68:19 does not |

{02145244.DOCX}

55

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

| | |
|---|---|
| credentials.<br><br>**Evidence:** Repeat of UMF #27. Krzeminski Decl. Ex. 16 at 66:17-68:19. | state that access to HighMark's source code requires unique log-in credentials. |
| 140. On occasion, HighMark's Chief Technology Officer, Joe Fallon, asked Winter to take home a backup external hard drive containing a copy of HighMark's source code.<br><br>**Evidence:** Repeat of UMF #28. Krzeminski Decl. Ex. 12 at 52:1-53:17, 62:2-19; *id.* Ex. 16 at 102:21-104:24; *id.* Ex. 14 at 39:20-42:6, 64:25-65:6. | Disputed. Winter cannot recall taking the external hard drive home more than once. Jensen Decl., Ex. B at 62:2 – 6.<br><br>**Objection**<br>Exhibit 12 to the Krzeminski Declaration does not include the identified testimony. |
| 141. On at least one occasion in or about 2014, Winter took home a backup external hard drive containing a copy of HighMark's source code.<br><br>**Evidence:** Repeat of UMF #29. Krzeminski Decl. Ex. 12 at 52:1-53:17, 62:2-19; *id.* Ex. 14 at 39:20-42:6, 64:25-65:6. | Undisputed.<br><br>**Objection**<br>Exhibit 12 to the Krzeminski Declaration does not include the identified testimony. |
| 142. Prior to licensing HighMark's One-Cut™ technology, Defendants exclusively used manual techniques for measuring and cutting doors.<br><br>**Evidence:** Repeat of UMF #106. Krzeminski Decl. Ex. 17 at 81:11-82:7. | Disputed in part because Casablanca never used manual techniques for measuring and cutting doors; it was not incorporated until November 2010. Krzeminski Decl. at Ex. 37.<br>Disputed in part because One Day Doors & Closets, Inc. never conducted business and has not measured and cut doors using |

{02145244.DOCX}                    56

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

| | |
|---|---|
| | any kind of process, manual or automated. Jensen Decl., Ex. F at 171:18 – 172:2; Jensen Decl. Ex. R. at 9, 10; Glen Johnson, Decl. Ex. D.  One Day Doors & Closets, Inc. also was not incorporated until 2012, after Four Seasons stopped licensing One-Cut™. Krzeminski Decl. Ex. 34.<br><br>Disputed in part because One Day Enterprises, LLC never used manual techniques for measuring and cutting doors; it was not form until October 2016, after Four Seasons stopped licensing One-Cut™. Krzeminski Decl., Ex. 40.<br><br>Disputed as to Winter. Winter never licensed One-Cut™.<br><br>Undisputed as to Four Seasons Windows and Doors, Inc. |
| 143. Prior to Winter's registration from HighMark, HighMark's One-Cut™ system generated HOP files through a server maintained by CadCode Systems, Inc. ("CadCode ").<br><br>**Evidence:**   Repeat of UMF #107. Krzeminski Decl. Ex. 12 at 106:5-10, 108:11-14, 108:20-109:7; id. Ex. 16 at155:5-156:16. | Undisputed to the extent Plaintiff means to say that it licensed software from CadCode to convert non-machine specific XML generated by the MetaWorks Software into machine-specific cutting instructions, including Holz-Her CNC machine specific HOP files.   Jensen Decl., Ex. G at 18:25 – 21:12; Jensen Decl., Ex. H at 145:25 – 147:15. |

{02145244.DOCX}

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## CONCLUSIONS OF LAW

1.      Plaintiff's claim for breach of contract has a limitations period of four years.  Code of Civil Procedure § 337(1).

2.      Plaintiff's claims for trade secret misappropriation have limitations periods of three years.  Civil Code § 3426.6; 18 U.S.C. § 1836(d).

3.      A continuing misappropriation constitutes a single claim for misappropriation that "arises for a given plaintiff against a given defendant only once, at the time of the initial misappropriation [. . .]." *Cadence Design Systems, Inc. v. Avant! Corp.*, 29 Cal.4th 215, 217 (2002); *Deerpoint Grp., Inc. v. Agrigenix, LLC*, 345 F.Supp.3d 1207, 1228 (E.D. Cal. 2018), reconsideration denied, 2019 WL 4201443 (E.D. Cal. Sept. 5, 2019).

4.      Plaintiff's unfair competition claim has a limitations period of four years.  Cal. Bus. & Prof. Code § 17208.

5.      Under California's discovery rule, suspicion of wrongdoing triggers the statute of limitations. *Gabriel Techs. Corp. v. Qualcomm Inc.*, 857 F.Supp.2d 997, 1003 (S.D. Cal. 2012).

6.      A plaintiff discovers a cause of action for statute of limitations purposes when he or she "suspects a factual basis" for the claim. *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397–398 (1999).

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

{02145244.DOCX}                                58

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

7.    Courts have rejected the notion that the "statute of limitations begins running only when a plaintiff can unassailably establish a legal claim for trade secret misappropriation, [as that] would effectively eviscerate the statute of limitations in all cases in which the plaintiff never discovers 'smoking gun' evidence of misappropriation." *Chasteen v. UNISIA JECS Corp.*, 216 F.3d 1212, 1218 (10th Cir. 2000).

8.    Courts do not examine whether the plaintiff suspects facts supporting each specific legal element of a particular cause of action, but instead look to whether the plaintiff has reason to at least suspect that a type of wrongdoing has injured them. *Cypress Semiconductor Corp. v. Superior Court*, 163 Cal. App. 4th 575, 586 (2008).

9.    Where the defendant's allegedly wrongful conduct took place outside the limitations period, the plaintiff has the burden to prove facts sufficient to toll the statute of limitations. *California Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1406 (9th Cir. 1995); *Inv'rs Equity Life Holding Co. v. Schmidt*, 195 Cal. App. 4th 1519, 1533 (2011) ("The burden of pleading and proving belated discovery of a cause of action falls on the plaintiff.").

10.    A plaintiff who does not conduct a reasonably diligent investigation into its alleged claim or claims cannot later prove delayed discovery or fraudulent

{02145244.DOCX}

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

concealment. *Alamar Biosciences, Inc. v. Difco Labs., Inc.*, 40 U.S.P.Q.2d 1437, 1440 (E.D.Cal. 1996).

11.  Breach of a contractual term pertaining to the protection of trade secrets puts a plaintiff on inquiry notice of misappropriation. *Alta Devices, Inc. v. LG Elecs., Inc.*, 2019 WL 1924992, at *13 (N.D. Cal. Apr. 30, 2019); *Wang v. Palo Alto Networks, Inc.*, 2014 WL 1410346 (N.D. Cal. Apr. 11, 2014).

12.  Where a plaintiff's claims arise from a single alleged misappropriation, the statute of limitations begins to run at the same time as all claims arising out of the alleged misappropriation. *Stutz Motor Car of America, Inc. v. Reebok Int'l, Ltd.*, 909 F.Supp. 1353, 1363 – 64 (C.D.Cal.1995) (dismissing inter alia state law claims for misappropriation, fraud, and unfair competition as barred by the statute of limitations based on allegations demonstrating that the alleged misconduct at issue constituted "a single, irrevocable wrong").

14.  A person cannot be held liable for misappropriation unless he or she unlawfully acquires, discloses, or uses information that is a "trade secret." Cal.Civ.Code § 3426.1; 18 U.S.C. § 1836(b).

15.  Information will be considered a "trade secret" if it (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other person who can obtain economic value from its disclosure or

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

{02145244.DOCX}

60

use; and (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. Cal.Civ.Code § 3426.1(d).

16.    "It is well established that the disclosure of a trade secret in a patent places the information comprising the secret into the public domain. [Citation omitted.] Once the information is in the public domain and the element of secrecy is gone, the trade secret is extinguished and 'the patentee's only protection is that afforded under the patent law." *Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 528 (N.D. Cal. 2000).

17.    The Defend Trade Secrets Act applies only to misappropriations that occur or continue to occur on or after its date of enactment on May 11, 2016. Defend Trade Secrets Act of 2016, PL 114-153, May 11, 2016, 130 Stat. 376; *Veronica Foods Co. v. Ecklin*, 2017 WL 2806706, at *13 (N.C. Cal. June 29, 2017).

18.    "CUTSA's 'comprehensive structure and breadth' suggests a legislative intent to occupy the field." *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal.App.4th 939, 957 (2009).

19.    "CUTSA supersedes claims based on the misappropriation of information, regardless of whether such information ultimately satisfies the definition of trade secret." *SunPower Corp. v. SolarCity Corp.*, 2012 WL 6160472, at *7 (N.D. Cal. Dec. 11, 2012).

PORTER | SCOTT·
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

{02145244.DOCX}                    61

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

20.   A plaintiff with an adequate remedy at law cannot also pursue an unfair competition claim. *Munning v. Gap, Inc.*, 238 F.Supp.3d 1195, 1204 (N.D. Cal. 2017).

21.   In general, an alleged breach of contract is not a proper predicate for an unfair competition claim. *Nestle USA, Inc. v. Crest Foods, Inc.*, 2017 WL 3267665, at *19 (C.D. Cal. July 28, 2017) (citing *Boland, Inc. v. Rolf C. Hagen (USA) Corp*, 685 F.Supp.2d 1094, 1110 (E.D. Cal. 2010)).

22.   "There may be genuine issues of fact precluding summary judgment on behalf of one party while at the same time the undisputed facts warrant summary judgment for the other party." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 996 (9th Cir. 2001).

Respectfully Submitted,

Dated:  January 28, 2020

PORTER SCOTT
A PROFESSIONAL CORPORATION

By ___*/s/ Martin N. Jensen*___
      Martin N. Jensen
      Jeffrey A. Nordlander
      Attorneys for Defendants

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

{02145244.DOCX}

62

DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**CASE NAME:** *Highmark Digital, Inc. v. Casablanca Design Centers, Inc. et al.*
**CASE NO.:**    USDC Central District, Western Division Case No. 2:18-cv-06105-SJO-AS

## PROOF OF SERVICE

At the time of service, I was over 18 years of age and not a party to this action.   My business address is 350 University Avenue, Suite 200, Sacramento, California 95825.

On January 28, 2020, I served the following document:

# DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| XX | **BY MAIL:** I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business' practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. |
| | **BY PERSONAL SERVICE:** I caused such document to be personally delivered to the person(s) addressed below.  (1)  For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office, between the hours of nine in the morning and five in the evening.  (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening. |
| | **BY OVERNIGHT DELIVERY:** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the person(s) listed below. I placed the envelope or package for collection and overnight delivery at my office or a regularly utilized drop box of the overnight delivery carrier. |
| | **BY FAX TRANSMISSION:** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed below.  No error was reported by the fax machine that I used.  A copy of the record of the fax transmission, which I printed out, is attached |
| XX | **BY ELECTRONIC SERVICE:** Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification address listed below. **(COURTESY COPY PER AGREEMENT OF COUNSEL)** |

/ / /

/ / /

/ / /

/ / /

/ / /

{02145507.DOCX}

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

1

PROOF OF SERVICE

Addressed as follows:

**COUNSEL FOR PLAINTIFF:**
Michael Friedland
Thomas P. Krzeminski
Cassie Gourash
Benjamin Ho
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, 14th Floor
Irvine, CA 92614
Michael.friedland@knobbe.com; 2tpk@knobbe.com;
Cassie.Gourash@knobbe.com; Benjamin.Ho@knobbe.com

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed at Sacramento, California on January 28, 2020.

_____
Desiree Ganzon

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

{02145507.DOCX}

2

PROOF OF SERVICE