**P O R T E R | S C O T T**
A PROFESSIONAL CORPORATION
Martin N. Jensen, (SBN 232231)
mjensen@porterscott.com
Jeffrey A. Nordlander, (SBN 308929)
jnordlander@porterscott.com
350 University Avenue, Suite 200
Sacramento, California 95825
Tel: 916.929.1481
Fax: 916.927.3706

Attorneys for Defendants

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

HIGHMARK DIGITAL, INC., a California corporation,

        Plaintiff,

v.

CASABLANCA DESIGN CENTERS, INC., a California corporation; FOUR SEASONS WINDOWS, INC., a California corporation; INTERIOR DOOR & CLOSET COMPANY, an unincorporated California company; ONE DAY DOORS AND CLOSETS, INC., a California corporation; DAVID WINTER, an individual; and ONE DAY ENTERPRISES, LLC, a Delaware company,

        Defendants.

_____/

CASE NO. 2:18-cv-06105-SJO-AS

**DEFENDANTS' STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT**

**Date:** **February 18, 2020**
**Time:** **10:00 a.m.**
**Judge:** **S. James Otero**
**Location:** **Courtroom 10C**

**Hon. S. James Otero**
**Magistrate Judge Alka Sagar**

**Trial Date: 6/9/20**

{02140081.DOCX}        1
DEFENDANTS' SEPARATE STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT

## STATEMENT OF ADDITIONAL MATERIAL FACTS

### Background

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

| ADDITIONAL MATERIAL FACTS AND SUPPORTING EVIDENCE | | PLAINTIFF'S RESPONSE |
|---|---|---|
| 144. | Under the Master Agreement, Four Seasons uploaded Proliner door frame measurement data to Plaintiff over the internet. | **Evidence:** Krzeminski Decl., Ex. 44; Jensen Decl., Ex. F at 23:7 – 23:17, 28:9 – 30:2; Jensen Decl., Ex. C at 83:22 – 85:4. |
| 145. | The Proliner is an electronic measuring device manufactured by Prodim that Four Seasons used to capture the dimensions of door frames in existing structures so that a custom fit replacement door could be cut. | **Evidence:** Jensen Decl., Ex. F at 28:9 – 29:3, 44:10 – 45:3; Jensen Decl., Ex. C at 83:22 – 85:4. |
| 146. | Plaintiff used software originally developed by a company called MetaWorks, LLC to convert Proliner measurement data into an eXtensible markup language ("XML") output ("MetaWorks Software"). | **Evidence:** Krzeminski Decl., Ex. 3 at 1340 – 1341, Jensen Decl., Ex. A at 35:22 – 36:9, 44:23 – 45:17; 69:6 – 70:19; Jensen Decl., Ex. G at 11:19 – 16:9. |
| 147. | Plaintiff used software supplied by CadCode Systems ("CadCode") to translate XML output into files written in HOP ("CadCode Software"). | **Evidence:** Jensen Decl., Ex. G at 18:25 – 21:12; Jensen Decl., Ex. H at 145:25 – 147:15; Jensen Decl., Ex. A at 72:9 – 81:21. |

{02140081.DOCX}

2

DEFENDANTS' SEPARATE STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

| ADDITIONAL MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFF'S RESPONSE |
|---|---|
| 148. A CadCode file library translated non CNC machine specific data (*e.g.*, Plaintiff's XML) into files readable by CNC machines produced by different CNC manufacturers (*e.g.*, HOP in the case of Holz-Her). | **Evidence:** Jensen Decl., Ex. H at 154:2 – 21; Jensen Decl., Ex. G at 19:8 – 10; 24:16 – 22; Winter Decl., ¶ 22 – 23. |
| 149. A HOP file is the instruction to the CNC machine to cut the door. | **Evidence:** Jensen Decl., Ex. G at 18:25 – 19:7. |
| 150. Holz-Her GmbH ("Holzer-Her") CNC machines are programmed to receive cutting instructions in HOP. | **Evidence:** Declaration of Don Vilfer ("Vilfer"), ¶ 7; Jensen Decl., Ex. G at 18:25 – 19:7; Jensen Decl., Ex. B at 129:13 – 18; Jensen Decl., Ex. O. |
| 151. In or around October 2011, Casablanca entered into an agreement with Prodim to use Prodim software to convert Proliner measurement data into cutting instructions written in HOP. | **Evidence:** Glenn Johnson Decl., ¶ 5, Ex. A. |
| 152. In 2013, Casablanca paid to upgrade the Prodim software it licenses. | **Evidence:** Jensen Decl., Ex. L at Response No. 1. |
| 153. Casablanca has manufactured doors using Prodim software since November 2011. | **Evidence:** Vilfer Decl., ¶ 8 – 11. |

DEFENDANTS' SEPARATE STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

| | **Winter Breach of Fiduciary Duty and Breach of Contract** | |
|---|---|---|
| 154. | Dave Winter ("Winter") and his father-in-law, Michael McElroy ("McElroy"), founded Plaintiff in 2007. | **Evidence:** Jensen Decl., Ex. A at 154:15 – 24. 61:11-18; Winter Decl., ¶ 2. |
| 155. | Prior to his departure, Winter's relationship with HighMark had become strained. | **Evidence:** Jensen Decl., Ex. B at 10:1 – 11:21, 86:22 – 87:10. |
| 156. | McElroy was not actively involved in the business and a new Chief Executive Officer, Richard Matulia ("Matulia"), had been hired. | **Evidence:** Jensen Decl., Ex. A at 145:15 – 24; Jensen Decl. Ex. I at 9:17 – 10:10. |
| 157. | Winter was not being compensated by Plaintiff as agreed to between the parties. | **Evidence:** Jensen Decl., Ex. B at 10:1 – 11:21: Winter Decl., ¶ 12, Ex. F. |
| 158. | Winter came across a May 28, 2015, e-mail correspondence from Matulia to the Board of Directors in which Matulia stated, as to Winter, that "franchises hate him," "the results warrant corrective action," "What exactly is the right position/responsibility? Are we stuck?" and "For the right things to happen, we need the right people, not anchors." | **Evidence:** Jensen Decl., Ex. B at 10:1 – 11:21; Winter Decl., ¶ 5, Ex. A. |

{02140081.DOCX}

4

DEFENDANTS' SEPARATE STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

| | | |
|---|---|---|
| 159. | Jonathan Morgan, one of Plaintiff's Board of Directors, responded that "No, I don't think you've said anything out of line. We need to know what you really think. You live it everyday" and "I think we can all agree that drastic action is necessary and you're the guy the board has chosen to do the job." | **Evidence:** Jensen Decl., Ex. B at 10:1 – 11:21; Winter Decl., ¶ 5, Ex. A. |
| 160. | Although Winter was on the Board of Directors at the time, Matulia did not include Winter in his communication to the Board of Directors. | **Evidence:** Winter Decl., ¶ 5, Ex. A. |
| 161. | Winter perceived that due to the efforts of Matulia, the HighMark Board of Directors view of him could not be changed. | **Evidence:** Jensen Decl., Ex. B at 10:1 – 11:21, 86:22 – 87:10. |
| 162. | Winter also became disenchanted with the business practices of HighMark, which he believed included the non-payment of vendors. | **Evidence:** Jensen Decl., Ex. B at 10:1 – 11:21. |
| 163. | All of these factors led Mr. Winter to the conclusion that he would need to seek alternative employment. | **Evidence:** Jensen Decl., Ex. B at 10:1 – 11:21, 86:22 – 87:10. |
| 164. | In June of 2015, Winter connected via a telephone call | **Evidence:** Jensen Decl., Ex. B at 163:13 – 165:4. |

{02140081.DOCX}

5

DEFENDANTS' SEPARATE STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

| | | |
|---|---|---|
| | with Dairl and Glenn Johnson regarding the potential of future employment. | |
| 165. | The parties entered into a nondisclosure agreement that Winter viewed as important to protect his family. | **Evidence:** Jensen Decl., Ex. B at 165:14 – 166:11. |
| 166. | Winter resigned from his employment with HighMark on July 16, 2015 and his last day of employment at HighMark was on July 17, 2015. | **Evidence:** Jensen Decl., Ex. B at 219:15 – 19; Winter Decl., Ex. B. |
| 167. | Prior to resigning from Plaintiff, Winter informed his future employers that he did not want to bring over any dealers or assets from HighMark or do anything to the detriment of the company. | **Evidence:** Jensen Decl., Ex. B at 46:4 – 46:10, 193:17 – 194:8; Winter Decl., Ex. C. |
| 168. | Winter wanted to be ethical in all areas and wanted nothing to do with HighMark's technology. | **Evidence:** Jensen Decl., Ex. B at 46:4 – 46:10, 193:17 – 194:8; Winter Decl., Ex. C. |
| 169. | In 2015, Dairl and Glenn Johnson did not want to enter into any type of partnership or business relationship with HighMark. | **Evidence:** Declaration of Glenn Johnson, ¶¶ 9 - 10, Ex. E. |
| 170. | Dairl and Glenn Johnson wanted to work with Dave | **Evidence:** Declaration of Glenn Johnson, ¶¶ 9 - 10, Ex. E. |

{02140081.DOCX}

6

DEFENDANTS' SEPARATE STATEMENT OF ADDITIONAL MATERIAL
FACTS IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR
SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

|  |  |  |
|---|---|---|
|  | Winter, not HighMark. |  |
| 171. | Dairl and Glenn Johnson wanted to work with Winter because of his experience in the industry and that "he's a really good guy, and people like him. And he is honest." | **Evidence:** Jensen Decl., Ex. C at 164:1 – 19; 180:5 – 15; 181:9 – 182:4; Jensen Decl., Ex. B at 199:21 – 208:8. |
| 172. | Plaintiff's Chief Technology Officer, Joseph Fallon ("Plaintiff's CTO"), admitted that he has no evidence Winter took, disclosed, or used trade secret or confidential information belonging to Plaintiff in any manner. | **Evidence:** Jensen Decl., Ex. H at 162:3 – 163:16, 181:11-21,191:13 – 193:5, 200:2 – 18, 224:3 - 21, 229:1 – 11. |
| 173. | Winter intended to return the Apple laptop upon his resignation. | **Evidence:** Jensen Decl., Ex. B at 79:16 – 20. 88:4-89:18 |
| 174. | Right after the end of his employment, Winter received an email alert that account information for his personal Wells Fargo bank account had been changed, including the changing of Winter and his wife's personal password and the removal of Winter and his wife's name and contact information. | **Evidence:** Jensen Decl., Ex. B at 79:16 – 20. 46:18 – 49:5; Winter Decl., ¶ 6 – 8. |
| 175. | Winter never accessed, took or disclosed any trade secret or confidential information of | **Evidence:** Jensen Decl., Ex. B at 33:15 – 35:20, 51:14 – 53:21, 68:8-69:8, 76:4-11, 81:16 - 82:10; Winter Decl., Ex. C. |

{02140081.DOCX}

7

**DEFENDANTS' SEPARATE STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT**

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

|  |  | Plaintiff. |  |
|---|---|---|---|
|  | 176. | Winter went to the bank and was informed that his account information was changed to include Matulia's email address along with other HighMark email addresses, HighMark phone numbers and the physical address for HighMark. | **Evidence:** Jensen Decl., Ex. B at 46:18 – 49:5; Winter Decl., Ex. D. |
|  | 177. | Winter believes that his personal Facebook page was accessed and account settings including the changing of his password and the removal of his personal email account were made by HighMark. | **Evidence:** Jensen Decl., Ex. B at 167:17 168–7; Winter Decl.,¶ 7-8, Ex. E. |
|  | 178. | Winter was not informed by HighMark that changes were going to be made to the Wells Fargo bank account and the Facebook account prior to when such changes were made. Winter did not consent to HighMark making changes to the Wells Fargo bank account and the Facebook page. | **Evidence:** Winter Decl., ¶ 7-8, Ex. D-E. |
|  | 179. | In July of 2015 Katherine Gabales was an employee of HighMark. | **Evidence:** Jensen Decl., Ex. J at 13:24 -14:6, 24:5-10. |
|  | 180. | Gabales was instructed to change credentials for Winter after he left HighMark. | **Evidence:** Jensen Decl., Ex. J at 46:11-14, 47:3-6. |

{02140081.DOCX}

8

DEFENDANTS' SEPARATE STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

| 181. | After the resignation of Winter, Gabales accessed a Wells Fargo bank account and switched the credentials to reflect HighMark. | **Evidence:** Jensen Decl., Ex. J at 48:25-50:9, 71:4-15. |
|---|---|---|
| 182. | After the resignation of Winter, Gabales accessed a Facebook account and switched the credentials to reflect Highmark. | **Evidence:** Jensen Decl., Ex. J at 65:25-66:17, 71:4-15. |
| 183. | Gabales assumed that the accounts where credentials were changed were HighMark accounts and were not personal accounts of Winter. | **Evidence:** Jensen Decl., Ex. J at 71:4-72:24. |
| 184. | Winter was advised by Wells Fargo officials in its fraud department to wipe the hard drive of the Apple computer. | **Evidence:** Jensen Decl., Ex. B at 47:5-17. |
| 185. | Winter, did not want to do so, but ultimately did wipe the hard drive of the Apple laptop. | **Evidence:** Jensen Decl., Ex. B at 47:5-17. |
| 186. | Before wiping the hard drive of the Apple laptop, Winter backed up any HighMark files to an external hard drive. | **Evidence:** Jensen Decl., Ex. B at 47:5-17, 81:5-11. |
| 187. | The external electronic storage device provided by Winter contained HighMark files and there is no suspicion that files were missing. | **Evidence:** Jensen Decl., Ex. B at 47:5-17, 81:5-11, 89:19-90:11, 248:22-249:22. |

{02140081.DOCX}

9

DEFENDANTS' SEPARATE STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

| 188. | Prodim uses computer aided manufacturing software provided by the third-party company vectorcam to translate Proliner XML files into cutting instructions for Casablanca's Holz-Her CNC machine written in HOP. | **Evidence:** Declaration of Don Vilfer, ¶ 7 – 10; Jensen Decl., Ex. B at 124:3 – 128:8. |
|---|---|---|
| 189. | Vectorcam is installed locally at Casablanca and One Day Enterprises' Torrance and Rocklin, California facility, respectively; Defendants do not access any type of off-site server to generate HOP files. | **Evidence:** Jensen Decl., Ex. B at 124:3 – 128:8. |
| 190. | Each HOP file stored on Defendants' CNC machine from November 2011 to the present bears the name "vectorcam" in its text. | **Evidence:** Declaration of Don Vilfer, ¶ 7 – 10. |
| 191. | Casablanca licensed the Prodim software, including vectorcam to generate HOP files, for a one-time fee. | **Evidence:** Glenn Johnson, Ex. A. |
| 192. | Casablanca can generate infinite HOP files using the vectorcam software linked to their CNC machines for no additional cost. | **Evidence:** Glenn Johnson Decl., ¶ 5, Ex. A. |
| 193. | From January of 2017 to the present Winter has been an employee of One Day Enterprises, LLC. | **Evidence:** Winter Decl., ¶ 11. |

{02140081.DOCX}

10

DEFENDANTS' SEPARATE STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT

| 194. | One Day Enterprises, LLC has used Prodim software, including vectorcam, to manufacture doors since its commenced operations in 2017. | **Evidence:** Jensen Decl., Ex. B at 123:17 – 126:1; Jensen Decl., Ex. K. |
| --- | --- | --- |
| 195. | One Day Enterprises never accessed the CadCode Software to generate HOP files. | **Evidence:** Jensen Decl., Ex. B at 123:17 – 126:1. |
| 196. | On December 2, 2016, Plaintiff's Chief Technology Officer sent e-mail correspondence stating that Plaintiff was generating more HOP files than it was producing doors because, for a given door, Plaintiff regenerates HOP file 3-4 times. | **Evidence:** Jensen Decl., Ex. E at 1187, 1239 – 1240. |
| 197. | CadCode responded that Plaintiff's Chief Technology Officer's statements are "consistent with the logs, so I think that question has been answered." | **Evidence:** Jensen Decl., Ex. E at 1238, 1187. |
| 198. | Plaintiff wrote to CadCode to ask if there had been "any cadcode conversions coming from more than 1 IP address in regards to our specific account." | **Evidence:** Jensen Decl., Ex. E at 1243. |
| 199. | CadCode responded that they "just verified that all of the authorization requests have come from the same computer | **Evidence:** Jensen Decl., Ex. E at 1242. |

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

{02140081.DOCX}

11

DEFENDANTS' SEPARATE STATEMENT OF ADDITIONAL MATERIAL
FACTS IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR
SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

| | | |
|---|---|---|
| | ID." | |
| 200. | On January 4, 2017, CadCode wrote to Plaintiff stating that: "For the record, we don't have any evidence that Dave and/or his current company are using the CadCode solution." | **Evidence:** Jensen Decl., Ex. E at HDMI 1193; Jensen Decl., Ex. N at 86:2 – 87:25. |
| 201. | Winter did not provide Casablanca with any type of trade secret or confidential information relating to CadCode. | **Evidence:** Jensen Decl., Ex. B at 14:22 – 17:2, 123:17 – 126:1. |
| 202. | On March 16, 2017, Plaintiff sent e-mail correspondence to CadCode stating that Plaintiff's "server issues" have not been resolved and requesting that CadCode make the issue a high priority "so we can get back up and running." | **Evidence:** Jensen Decl., Ex. T. |
| 203. | Casablanca generated HOP files on March 13, 14, 15, 16, and 17, 2017. | **Evidence:** Vilfer Decl., ¶ 16, Ex. F. |
| 204. | Between December 30, 2014 and January 1, 2019, Casablanca frequently did not generate HOP files for days at a time, especially over weekends. | **Evidence:** Vilfer Decl., ¶ 15, Ex. E. |
| 205. | E-mail correspondence from CadCode states that service to Plaintiff will terminate as of | **Evidence:** Krzeminski Decl., Ex. 56 ("please note that your support will expire on 1/30/16"). |

{02140081.DOCX}

12

DEFENDANTS' SEPARATE STATEMENT OF ADDITIONAL MATERIAL
FACTS IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR
SUMMARY JUDGMENT

| | | |
|---|---|---|
| | February 1, 2016. | |
| 206. | Casablanca produced HOP files on February 1, 2, 3, and February 4, 2016. | **Evidence:** Vilfer Declaration, ¶ 21, Ex. K. |
| 207. | In December 2, 2016, e-mail correspondence CadCode informed HighMark that, "[a]s for the discrepancies, we're not sure there really are any." | **Evidence:** Exhibit 23 to the Krzeminski Declaration HDMI 278. |

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

{02140081.DOCX}

13

**DEFENDANTS' SEPARATE STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT**

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

| **Four Seasons Breach of Contract** | | |
|---|---|---|
| 146. | Plaintiff used software originally developed by a company called MetaWorks, LLC to convert Proliner measurement data into an eXtensible markup language ("XML") output ("MetaWorks Software"). | **Evidence:** Krzeminski Decl., Ex. 3 at 1340 – 1341, Jensen Decl., Ex. A at 35:22 – 36:9, 44:23 – 45:17; 69:6 – 70:19; Jensen Decl., Ex. G at 11:19 – 16:9. |
| 147. | Plaintiff used software supplied by CadCode Systems ("CadCode") to translate XML output into files written in HOP ("CadCode Software"). | **Evidence:** Jensen Decl., Ex. G at 18:25 – 21:12; Jensen Decl., Ex. H at 145:25 – 147:15; Jensen Decl., Ex. A at 72:9 – 81:21. |
| 148. | A CadCode file library translated non CNC machine specific data (*e.g.*, Plaintiff's XML) into files readable by CNC machines produced by different CNC manufacturers (*e.g.*, HOP in the case of Holz-Her). | **Evidence:** Jensen Decl., Ex. H at 154:2 – 21; Jensen Decl., Ex. G at 24:16 – 22. |
| 149. | A HOP file is the instruction to the CNC machine to cut the door. | **Evidence:** Jensen Decl., Ex. G at 18:25 – 19:7. |
| 150. | Holz-Her GmbH ("Holzer-Her") CNC machines are programmed to receive cutting instructions in HOP. | **Evidence:** Declaration of Don Vilfer ("Vilfer"), ¶ 7; Jensen Decl., Ex. G at 18:25 – 19:7; Jensen Decl., Ex. B at 129:13 – 18; Jensen Decl., Ex. O. |
| 151. | In or around October 2011, | **Evidence:** Glenn Johnson Decl., ¶ 5, |

{02140081.DOCX}

14

DEFENDANTS' SEPARATE STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

|   |   |   |
|---|---|---|
|   | Casablanca entered into an agreement with Prodim to use Prodim software to convert Proliner measurement data into cutting instructions written in HOP. | Ex. A. |
| 152. | In 2013, Casablanca paid to upgrade the Prodim software it licenses. | **Evidence:** Jensen Decl., Ex. L at Response No. 1. |
| 153. | Casablanca has manufactured doors using Prodim software since November 2011. | **Evidence:** Vilfer Decl., ¶ 8 – 11. |
| 188. | Prodim uses computer aided manufacturing software provided by the third-party company vectorcam to translate Proliner XML files into cutting instructions for Casablanca's Holz-Her CNC machine written in HOP. | **Evidence:** Vilfer Decl., ¶ 8 – 11. Jensen Decl., Ex. B at 124:3 – 128:8. |
| 208. | Software installed on the Prodim Proliner generates an XML file containing door measurement data. | **Evidence:** Jensen Decl., Ex. L at Response No. 1; Jensen Decl., Ex. B at 228:15 – 228:22. |
| 209. | Plaintiff did not install source code for the MetaWorks Software or the CadCode Software locally at the Torrance, California facility Four Seasons and then Casablanca conducted business from. | **Evidence:** Jensen Decl., Ex. F 86:1 – 86:22; Jensen Decl., Ex. H at 89:6 – 16, 92:15 – 93:25, 94:25 – 95:15. |

{02140081.DOCX}

15

DEFENDANTS' SEPARATE STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

| | | |
|---|---|---|
| 210. | Plaintiff stores source code in a cloud-based repository, which Four Seasons never accessed or attempted to access. | **Evidence:** Jensen Decl., Ex. H at 89:6 – 23, 96:23 – 97:7; Jensen Decl., Ex. F at 86:1 – 86:22. |
| 211. | Neither Four Seasons nor Casablanca ever accessed or attempted to access source code for any component of One-Cut™. | **Evidence:** Jensen Decl., Ex. F at 86:1 – 86:22, 173:19 – 174:20; Jensen Decl., Ex. C at 124:4 – 125:11; Jensen Decl., Ex. H at 91:16 – 92:14; 93:17 – 94:22; 96:23 – 99:20; 136:15 – 137:9. |
| 212. | Plaintiff's Chief Technology Officer admitted that he was aware of no facts suggesting that Defendants took source code from Plaintiff. | **Evidence:** Jensen Decl., Ex. H at 162:19 – 163:24. |
| 213. | Neither Casablanca nor Four Seasons ever accessed or attempted to access the XML output generated by the MetaWorks Software. | **Evidence:** Jensen Decl., Ex. F at 31:1 – 33:10. |
| 214. | The Johnsons do not have experience writing source code. | **Evidence:** Jensen Decl., Ex. F at 86:1 – 22, 93:17 – 94:2, 173:19 – 174:20; Jensen Decl., Ex. C at 124:4 – 125:11. |
| 215. | Neither Casablanca nor Four Seasons has ever possessed any source code for the Prodim software, including vectorcam. | **Evidence:** Jensen Decl., Ex. F at 173:19 – 174:20. |
| 216. | Neither Four Seasons or Casablanca sent a HOP file generated by CadCode and/or Plaintiff to Prodim. | **Evidence:** Ex. M at 15:7 – 16:3, 30:8 – 32:4, 34:6 – 36:2, 50:21 – 51:11, 52:12 – 15; 53:12 – 57:6; 90:3 – 90:15; 97:10 – 98:2. Jensen Decl., Ex. N at 108:20 – 110:6. |

{02140081.DOCX}

16

DEFENDANTS' SEPARATE STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

| | | |
|---|---|---|
| 217. | Plaintiff's Chief Technology Officer admitted that he "could not recreate all of the functionality of CadCode" using a HOP file. | **Evidence:** Jensen Decl., Ex. G at 18:25 - 21:12. |
| 218. | Prodim had software to translate Proliner measurement data into HOP files prior to Dairl Johnson licensing such software from Prodim in 2011. | **Evidence:** Jensen Decl., Ex. A at 128:9 – 130:11. |
| 219. | In or around 2006, McElroy attended a trade show to meet with Prodim and discuss automating the replacement door manufacturing process. | **Evidence:** Jensen Decl., Ex. A at 20:8 – 23:24; 69:6 – 70:19. |
| 220. | Prodim already had basic door software, which it demonstrated for McElroy. | **Evidence:** Jensen Decl., Ex. A at 33:21 – 35:6. |
| 221. | When McElroy met with Prodim, Prodim was already using the Prodim Proliner to measure and cut countertops on CNC machines. | **Evidence:** Jensen Decl., Ex. A at 21:9 – 22. |
| 222. | Prior to meeting with Prodim, McElroy "didn't even know what a CNC machine was." | **Evidence:** Jensen Decl., Ex. A at 29:9 – 30:3. |
| 223. | Prodim recommended that McElroy use Holz-Her CNC machines to cut doors. | **Evidence:** Jensen Decl., Ex. A at 29:9 – 30:3. |

{02140081.DOCX}

17

**DEFENDANTS' SEPARATE STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT**

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

| | | |
|---|---|---|
| 224. | McElroy opted to use Holz-Her CNC machines because they were cost effective and because of Holz-Her's preexisting relationship with Prodim. | **Evidence:** Jensen Decl., Ex. A at 37:21 – 38:4. |
| 225. | McElroy understood that Holz-Her and Prodim had sold machines. | **Evidence:** Jensen Decl., Ex. A at 29:21 -30:3. |
| 226. | As of 2006, Holz-Her had been cutting doors on CNC machines for years. | **Evidence:** Jensen Decl., Ex. A at 31:2 – 31:18. |
| 227. | Prodim was measuring and cutting countertops on Holz-Her CNC machines in 2006. | **Evidence:** Jensen Decl., Ex. A at 21:9 – 22; 29:21 – 30:3. |
| 228. | After the trade show, Prodim travelled to McElroy's door facility and cut a door using a Proliner, Prodim provided door software, and McElroy's Holz-Her CNC machine. | **Evidence:** Jensen Decl., Ex. A at 49:9 – 52:25. |
| 229. | McElroy considered purchasing Prodim developed software to convert Proliner measurement data into HOP format, but decided not to because Prodim wanted to enter into a "per-door" licensing agreement, whereas McElroy wanted to own the software. | **Evidence:** Jensen Decl., Ex. A at 44:5 – 47:1. |

{02140081.DOCX}

18

**DEFENDANTS' SEPARATE STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT**

| | |
|---|---|
| 230. | McElroy contracted with MetaWorks to develop the MetaWorks Software (which converted Proliner measurement data into XML), but multiple companies, including Prodim, had "expressed they had the ability to do what we were asking them to do." | **Evidence:** Jensen Decl., Ex. A at 66:20 – 70:14; Krzeminski Decl., Ex. 3. |
| 231. | It was McElroy's understanding that Prodim and Holz-Her could put together an integrated software solution "fairly easily." | **Evidence:** Jensen Decl., Ex. A at 31:2 – 31:18. |

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

{02140081.DOCX}

19

DEFENDANTS' SEPARATE STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

| **Trade Secret Misappropriation** | |
|---|---|
| 146. Plaintiff used software originally developed by a company called MetaWorks, LLC to convert Proliner measurement data into an eXtensible markup language ("XML") output ("MetaWorks Software"). | **Evidence:** Krzeminski Decl., Ex. 3; Jensen Decl., Ex. A at 35:22 – 36:9, 44:23 – 45:17; 69:6 – 70:19; Jensen Decl., Ex. G at 11:19 – 16:9. |
| 147. Plaintiff used software supplied by CadCode Systems ("CadCode") to translate XML output into files written in HOP ("CadCode Software"). | **Evidence:** Jensen Decl., Ex. G at 18:25 – 21:12; Jensen Decl., Ex. H at 145:25 – 147:15; Jensen Decl., Ex. A at 72:9 – 81:21. |
| 148. A CadCode file library translated non CNC machine specific data (*e.g.*, Plaintiff's XML) into files readable by CNC machines produced by different CNC manufacturers (*e.g.*, HOP in the case of Holz-Her). | **Evidence:** Jensen Decl., Ex. H at 154:2 – 21; Jensen Decl., Ex. G at 24:16 – 22. |
| 149. A HOP file is the instruction to the CNC machine to cut the door. | **Evidence:** Jensen Decl., Ex. G at 18:25 – 19:7. |
| 150. Holz-Her GmbH ("Holzer-Her") CNC machines are programmed to receive cutting instructions in HOP. | **Evidence:** Declaration of Don Vilfer ("Vilfer"), ¶ 7; Jensen Decl., Ex. G at 18:25 – 19:7; Jensen Decl., Ex. B at 129:13 – 18; Jensen Decl., Ex. O. |
| 151. In or around October 2011, Casablanca entered into an | **Evidence:** Glenn Johnson Decl., ¶ 5, Ex. A. |

{02140081.DOCX}

20

**DEFENDANTS' SEPARATE STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT**

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

|     |     |     |
| --- | --- | --- |
|     | agreement with Prodim to use Prodim software to convert Proliner measurement data into cutting instructions written in HOP. |     |
| 152. | In 2013, Casablanca paid to upgrade the Prodim software it licenses. | **Evidence:** Jensen Decl., Ex. L at Response No. 1. |
| 153. | Casablanca has manufactured doors using Prodim software since November 2011. | **Evidence:** Vilfer Decl., ¶ 8 – 11. |
| 188. | Prodim uses computer aided manufacturing software provided by the third-party company vectorcam to translate Proliner XML files into cutting instructions for Casablanca's Holz-Her CNC machine written in HOP. | **Evidence:** Declaration of Don Vilfer, ¶ 7 – 10; Jensen Decl., Ex. B at 124:3 – 128:8. |
| 189. | Vectorcam is installed locally at Casablanca and One Day Enterprises' Torrance and Rocklin, California facility, respectively; Defendants do not access any type of off-site server to generate HOP files. | **Evidence:** Jensen Decl., Ex. B at 124:3 – 128:8. |
| 190. | Each HOP file stored on Defendants' CNC machine from November 2011 to the present bears the name "vectorcam" in its text. | **Evidence:** Declaration of Don Vilfer, ¶ 7 – 10. |

{02140081.DOCX}

21

DEFENDANTS' SEPARATE STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

| 191. | Casablanca licensed the Prodim software, including vectorcam to generate HOP files, for a one-time fee. | **Evidence:** Glenn Johnson, Ex. A. |
|---|---|---|
| 192. | Casablanca can generate infinite HOP files using the vectorcam software linked to their CNC machines for no additional cost. | **Evidence:** Glenn Johnson Decl., ¶ 5, Ex. A. |
| 193. | From January of 2017 to the present Winter has been an employee of One Day Enterprises, LLC. | **Evidence:** Winter Decl.,¶ 11. |
| 194. | One Day Enterprises, LLC has used Prodim software, including vectorcam, to manufacture doors since its commenced operations in 2017. | **Evidence:** Jensen Decl., Ex. B at 123:17 – 126:1; Jensen Decl., Ex. K. |
| 195. | One Day Enterprises never accessed the CadCode Software to generate HOP files. | **Evidence:** Jensen Decl., Ex. B at 123:17 – 126:1. |
| 196. | On December 2, 2016, Plaintiff's Chief Technology Officer sent e-mail correspondence stating that Plaintiff was generating more HOP files than it was producing doors because, for a given door, Plaintiff regenerates HOP file 3-4 times. | **Evidence:** Jensen Decl., Ex. E at 1187, 1239 – 1240. |

{02140081.DOCX}

22

DEFENDANTS' SEPARATE STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

| | | |
|---|---|---|
| 197. | CadCode responded that Plaintiff's Chief Technology Officer's statements are "consistent with the logs, so I think that question has been answered." | **Evidence:** Jensen Decl., Ex. E at 1238, 1187. |
| 198. | Plaintiff wrote to CadCode to ask if there had been "any cadcode conversions coming from more than 1 IP address in regards to our specific account." | **Evidence:** Jensen Decl., Ex. E at 1243. |
| 199. | CadCode responded that they "just verified that all of the authorization requests have come from the same computer ID." | **Evidence:** Jensen Decl., Ex. E at 1242. |
| 200. | On January 4, 2017, CadCode wrote to Plaintiff stating that: "For the record, we don't have any evidence that Dave and/or his current company are using the CadCode solution." | **Evidence:** Jensen Decl., Ex. E at 1193; Jensen Decl., Ex. N at 86:2 – 87:25. |
| 201. | Winter did not provide Casablanca with any type of trade secret or confidential information relating to CadCode. | **Evidence:** Jensen Decl., Ex. B at 14:22 – 17:2, 123:17 – 126:1. |
| 202. | On March 16, 2017, Plaintiff sent e-mail correspondence to CadCode stating that Plaintiff's "server issues" have not been | **Evidence:** Jensen Decl., Ex. T. |

{02140081.DOCX}

23

DEFENDANTS' SEPARATE STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

| | | |
|---|---|---|
| | resolved and requesting that CadCode make the issue a high priority "so we can get back up and running." | |
| 203. | Casablanca generated HOP files on March 13, 14, 15, 16, and 17, 2017. | **Evidence:** Vilfer Decl., ¶ 16, Ex. F. |
| 204. | Between December 30, 2014 and January 1, 2019, Casablanca frequently did not generate HOP files for days at a time, especially over weekends. | **Evidence:** Vilfer Decl., ¶ 15, Ex. E. |
| 205. | E-mail correspondence from CadCode states that service to Plaintiff will terminate as of February 1, 2016. | **Evidence:** Krzeminski Decl., Ex. 56 ("please note that your support will expire on 1/30/16"). |
| 206. | Casablanca produced HOP files on February 1, 2, 3, and February 4, 2016. | **Evidence:** Vilfer Declaration, ¶ 21, Ex. K. |
| 207. | In December 2, 2016, e-mail correspondence CadCode informed HighMark that, "[a]s for the discrepancies, we're not sure there really are any." | **Evidence:** Exhibit 23 to the Krzeminski Declaration HDMI 278. |
| 208. | Software installed on the Prodim Proliner generates an XML file containing door measurement data. | **Evidence:** Jensen Decl., Ex. L at Response No. 1; Jensen Decl., Ex. B at 228:15 – 228:22. |
| 209. | Plaintiff did not install source code for the MetaWorks | **Evidence:** Jensen Decl., Ex. F 86:1 – 86:22; Jensen Decl., Ex. H at 89:6 – 16, |

{02140081.DOCX}

DEFENDANTS' SEPARATE STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

| | | | |
|---|---|---|---|
| | | Software or the CadCode Software locally at the Torrance, California facility Four Seasons and then Casablanca conducted business from. | 92:15 – 93:25, 94:25 – 95:15. |
| | 210. | Plaintiff stores source code in a cloud-based repository, which Four Seasons never accessed or attempted to access. | **Evidence:** Jensen Decl., Ex. H at 89:6 – 23, 96:23 – 97:7; Jensen Decl., Ex. F at 86:1 – 86:22. |
| | 211. | Four Seasons nor Casablanca has ever accessed or attempted to access source code for any component of One-Cut™. | **Evidence:** Jensen Decl., Ex. F at 86:1 – 86:22, 173:19 – 174:20; Jensen Decl., Ex. C at 124:4 – 125:11; Jensen Decl., Ex. H at 91:16 – 92:14; 93:17 – 94:22; 96:23 – 99:20; 136:15 – 137:9. |
| | 212. | Plaintiff's Chief Technology Officer admitted that he was aware of no facts suggesting that Defendants took source code from Plaintiff. | **Evidence:** Jensen Decl., Ex. H at 162:19 – 163:24. |
| | 213. | Neither Casablanca nor Four Seasons ever accessed or attempted to access the XML output generated by the MetaWorks Software. | **Evidence:** Jensen Decl., Ex. F at 31:1 – 33:10. |
| | 214. | The Johnsons do not have experience writing source code. | **Evidence:** Jensen Decl., Ex. F at 86:1 – 22, 93:17 – 94:2, 173:19 – 174:20; Jensen Decl., Ex. C at 124:4 – 125:11. |
| | 215. | Neither Casablanca nor Four Seasons has ever possessed any source code for the Prodim | **Evidence:** Jensen Decl., Ex. F at 173:19 – 174:20. |

{02140081.DOCX}

25

DEFENDANTS' SEPARATE STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

| | | | |
|---|---|---|---|
| | | software, including vectorcam. | |
| 216. | Neither Four Seasons nor Casablanca sent a HOP file generated by CadCode and/or Plaintiff to Prodim. | **Evidence:** Ex. M at 52:12 – 15; 53:12 – 57:6; 59:13 – 17; 60:14 – 60:21; 90:3 – 90:15;  Jensen Decl., Ex. N at 108:20 – 110:6. |
| 217. | Plaintiff's Chief Technology Officer admitted that he "could not recreate all of the functionality of CadCode" using a HOP file. | **Evidence:** Jensen Decl., Ex. G at 18:25 - 21:12. |
| 218. | Prodim had software to translate Proliner measurement data into HOP files prior to Dairl Johnson licensing such software from Prodim in 2011. | **Evidence:** Jensen Decl., Ex. A at 128:9 – 130:11. |
| 219. | In or around 2006, McElroy attended a trade show specifically to meet with Prodim and discuss automating the replacement door manufacturing process. | **Evidence:** Jensen Decl., Ex. A at 20:8 – 23:24. |
| 220. | Prodim already had basic door software, which it demonstrated for McElroy. | **Evidence:** Jensen Decl., Ex. A at 33:21 – 35:6. |
| 221. | When McElroy met with Prodim, Prodim was already using the Prodim Proliner to measure and cut countertops on CNC machines. | **Evidence:** Jensen Decl., Ex. A at 21:9 – 22. |
| 222. | Prior to meeting with Prodim, | **Evidence:** Jensen Decl., Ex. A at 29:9 – |

{02140081.DOCX}

26

DEFENDANTS' SEPARATE STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

| | | |
|---|---|---|
| | McElroy "didn't even know what a CNC machine was." | 30:3. |
| 223. | Prodim recommended that McElroy use Holz-Her CNC machines to cut doors. | **Evidence:** Jensen Decl., Ex. A at 29:9 – 30:3. |
| 224. | McElroy opted to use Holz-Her CNC machines because they were cost effective and because of Holz-Her's preexisting relationship with Prodim. | **Evidence:** Jensen Decl., Ex. A at 37:21 – 38:4. |
| 225. | McElroy understood that Holz-Her and Prodim had sold machines. | **Evidence:** Jensen Decl., Ex. A at 29:21 - 30:3. |
| 226. | As of 2006, Holz-Her had been cutting doors on CNC machines for years. | **Evidence:** Jensen Decl., Ex. A at 31:2 – 31:18. |
| 227. | Prodim was measuring and cutting countertops on Holz-Her CNC machines in 2006. | **Evidence:** Jensen Decl., Ex. A at 21:9 – 22; 29:21 – 30:3. |
| 228. | After the trade show, Prodim travelled to McElroy's door facility and cut a door using a Proliner, Prodim provided door software, and McElroy's Holz-Her CNC machine. | **Evidence:** Jensen Decl., Ex. A at 49:9 – 52:25. |
| 229. | McElroy considered purchasing Prodim developed software to convert Proliner measurement data into HOP format, but | **Evidence:** Jensen Decl., Ex. A at 44:5 – 47:1. |

{02140081.DOCX}

27

DEFENDANTS' SEPARATE STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

|  |  |  |
|---|---|---|
|  | decided not to because Prodim wanted to enter into a "per-door" licensing agreement, whereas McElroy wanted to own the software. |  |
| 230. | McElroy contracted with MetaWorks to develop the MetaWorks Software (which converted Proliner measurement data into XML), but multiple companies, including Prodim, had "expressed they had the ability to do what we were asking them to do." | **Evidence:** Jensen Decl., Ex. A at 66:20 – 70:14; Krzeminski Decl., Ex. 3. |
| 231. | It was McElroy's understanding that Prodim and Holz-Her could put together an integrated software solution "fairly easily." | **Evidence:** Jensen Decl., Ex. A at 31:2 – 31:18. |
| 232. | A July 13, 2006 HOP Interface manual describes how to program HOP files for Holz-Her CNC machines. | **Evidence:** Jensen Decl., Ex. O; Vilfer Decl., ¶ 12, 14. |
| 233. | Holz-Her gives out sample HOP files to users of its CNC machines. | **Evidence:** Winter Decl., ¶ 14, Ex. G. |
| 234. | On woodworking and CNC machine forums, users discuss programming Holz-Her CNC machines and writing HOP files and share information | **Evidence:** Vilfer Decl., ¶ 13 - 15, Ex. D, E. |

{02140081.DOCX}

28

**DEFENDANTS' SEPARATE STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT**

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

| | | |
|---|---|---|
| | amongst themselves, including sample HOP files. | |
| 235. | As of 2006, Holz-Her had been cutting doors on its CNC machines for years. | **Evidence:** Jensen Decl., Ex. A at 31:9 – 32:3. |
| 236. | Plaintiff's Chief Technology Officer admitted that CadCode offers its software to other customers. | **Evidence:** Jensen Dec., Ex. H at 158:19-22. |
| 237. | According to Plaintiff's Chief Technology Officer, CadCode HOP files are "simple" compared to XML. | **Evidence:** Jensen Decl., Ex. G at 29:1 – 30:8; Jensen Decl., Ex. Q. |
| 238. | McElroy testified that he does not see HOP files as something "proprietarywise." | **Evidence:** Jensen Decl., Ex. A at 145:25-146:12. |
| 239. | Winter, the former President and Chief Executive Officer of Plaintiff, does not consider HOP files proprietary to Plaintiff. | **Evidence:** Jensen Decl., Ex. B at 95:8 – 98:6. |
| 240. | Between 2008 and at least 2012, Plaintiff and CadCode did not execute a written confidentiality or other agreement restricting Plaintiff's use of the CadCode Software to generate HOP files. | **Evidence:** Winter Decl., ¶ 15. |
| 241. | After CadCode contacted Plaintiff regarding Plaintiff's | **Evidence:** Jensen Decl., Ex. Q. |

{02140081.DOCX}

29

DEFENDANTS' SEPARATE STATEMENT OF ADDITIONAL MATERIAL
FACTS IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR
SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

| | | |
|---|---|---|
| | use of the CadCode Software, Plaintiff's Chief Technology Officer sent e-mail correspondence stating in part: [A]fter reviewing our source code, your part is just a small code library that our system wraps and exposes. My software generates the XML that your little library consumes. Your library spits out a rather simple hop file that is about 200 lines long with about 15 CNC cutting features . . . Indeed, the construction of the input XML is way more complicated and 10x longer in length. We use your library because it is convenient. To do away with this convenience, I would have to sit down and change our logic to output the HOP directly instead of outputting the XML . . . I would prefer to not have to do this, but it is not remotely difficult. | |
| 242. | Plaintiff's current Chief Executive Officer, Richard Matulia, responded that the e-mail was good but he did not want CadCode to "leverage [Plaintiff] on new pricing." | **Evidence:** Jensen Decl., Ex. Q. |
| 243. | Plaintiff's Chief Technology Officer wrote software that was | **Evidence:** Jensen Decl., Ex. Q; Jensen Decl., Ex. H at 145:25 – 147:15; Jensen |

{02140081.DOCX}
30

DEFENDANTS' SEPARATE STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| the "equivalent" of the CadCode software and Plaintiff stopped paying to use the CadCode Software to generate HOP files. | Decl., Ex. G at 22:1 – 10. |

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

{02140081.DOCX}

31

**DEFENDANTS' SEPARATE STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT**

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

| **Cal. Penal Code Sec. 502** | | |
|---|---|---|
| 172. | Plaintiff's Chief Technology Officer, Joseph Fallon ("Plaintiff's CTO"), admitted that he has no evidence Winter took, disclosed, or used trade secret or confidential information belonging to Plaintiff in any manner. | **Evidence:** Jensen Decl., Ex. H at 162:3 – 163:16, 181:11-21,191:13 – 193:5, 200:2 – 18, 224:3 - 21, 229:1 – 11. |
| 173. | Winter intended to return the Apple laptop upon his resignation. | **Evidence:** Jensen Decl., Ex. B at 79:16 – 20; 88:4-89:18 |
| 174. | Right after the end of his employment, Winter received an email alert that account information for his personal Wells Fargo bank account had been changed, including the changing of Winter and his wife's personal password and the removal of Winter and his wife's name and contact information. | **Evidence:** Jensen Decl., Ex. B at 79:16 – 20; 46:18 – 49:5; Winter Decl., ¶ 6 – 8. |
| 175. | HighMark banked with US Bank at the time. | **Evidence:** Jensen Decl., Ex. I at 177:13 - 15. |
| 176. | Winter went to the bank and was informed that his account information was changed to include Matulia's email address along with other HighMark email addresses, HighMark | **Evidence:** Jensen Decl., Ex. B at 46:18 – 49:5; Winter Decl., Ex. D. |

{02140081.DOCX}

32

DEFENDANTS' SEPARATE STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

| | | | |
|---|---|---|---|
| | | phone numbers and the physical address for HighMark. | |
| | 177. | Winter believes that his personal Facebook page was accessed and account settings including the changing of his password and the removal of his personal email account were made by HighMark. | **Evidence:** Jensen Decl., Ex. B at 167:17 168–7; Winter Decl.,¶ 7-8, Ex. E. |
| | 178. | Winter was not informed by HighMark that changes were going to be made to the Wells Fargo bank account and the Facebook account prior to when such changes were made. Winter did not consent to HighMark making changes to the Wells Fargo bank account and the Facebook page. | **Evidence:** Winter Decl.,¶ 7-8,  Ex. D-E. |
| | 179. | In July of 2015 Katherine Gabales was an employee of HighMark. | **Evidence:** Jensen Decl., Ex. J at 13:24-14:6, 24:5-10. |
| | 180. | Gabales was instructed to change credentials for Winter after he left HighMark. | **Evidence:** Jensen Decl., Ex. J at 46:11-14, 47:3-6. |
| | 181. | After the resignation of Winter, Gabales accessed a Wells Fargo bank account and switched the credentials to reflect HighMark. | **Evidence:** Jensen Decl., Ex. J at 48:25-50:9, 71:4-15. |
| | 182. | After the resignation of Winter, | **Evidence:** Jensen Decl., Ex. J at 65:25- |

{02140081.DOCX}

33

DEFENDANTS' SEPARATE STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

| | | | |
|---|---|---|---|
| | | Gabales accessed a Facebook account and switched the credentials to reflect Highmark. | 66:17, 71:4-15. |
| 183. | | Gabales assumed that the accounts where credentials were changed were HighMark accounts and were not personal accounts of Winter. | **Evidence:** Jensen Decl., Ex. J at 71:4-72:24. |
| 184. | | Winter was advised by Wells Fargo officials in its fraud department to wipe the hard drive of the Apple computer. | **Evidence:** Jensen Decl., Ex. B at 47:5-17. |
| 185. | | Winter, did not want to do so, but ultimately did wipe the hard drive of the Apple laptop. | **Evidence:** Jensen Decl., Ex. B at 47:5-17. |
| 186. | | Before wiping the hard drive of the Apple laptop, Winter backed up any HighMark files to an external hard drive. | **Evidence:** Jensen Decl., Ex. B at 47:5-17, 81:5-11. |
| 187. | | The external electronic storage device provided by Winter contained HighMark files and there is no suspicion that files were missing. | **Evidence:** Jensen Decl., Ex. B at 47:5-17, 81:5-11, 89:19-90:11, 248: 22-249:22. |
| 188. | | Prodim uses computer aided manufacturing software provided by the third-party company vectorcam to translate Proliner XML files into cutting instructions for Casablanca's Holz-Her CNC machine | **Evidence:** Declaration of Don Vilfer, ¶ 7 – 10; Jensen Decl., Ex. B at 124:3 – 128:8. |

{02140081.DOCX}

34

DEFENDANTS' SEPARATE STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

| | | |
|---|---|---|
| | written in HOP. | |
| 189. | Vectorcam is installed locally at Casablanca and One Day Enterprises' Torrance and Rocklin, California facility, respectively; Defendants do not access any type of off-site server to generate HOP files. | **Evidence:** Jensen Decl., Ex. B at 124:3 – 128:8. |
| 190. | Each HOP file stored on Defendants' CNC machine from November 2011 to the present bears the name "vectorcam" in its text. | **Evidence:** Declaration of Don Vilfer, ¶ 7 – 10. |
| 191. | Casablanca licensed the Prodim software, including vectorcam to generate HOP files, for a one-time fee. | **Evidence:** Glenn Johnson, Ex. A. |
| 192. | Casablanca can generate infinite HOP files using the vectorcam software linked to their CNC machines for no additional cost. | **Evidence:** Glenn Johnson Decl., ¶ 5, Ex. A. |
| 194. | One Day Enterprises, LLC has used Prodim software, including vectorcam, to manufacture doors since its commenced operations in 2017. | **Evidence:** Jensen Decl., Ex. B at 123:17 – 126:1; Jensen Decl., Ex. K. |
| 195. | One Day Enterprises never accessed the CadCode Software to generate HOP files. | **Evidence:** Jensen Decl., Ex. B at 123:17 – 126:1. |

{02140081.DOCX}

35

DEFENDANTS' SEPARATE STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

| | | |
|---|---|---|
| 196. | On December 2, 2016, Plaintiff's Chief Technology Officer sent e-mail correspondence stating that Plaintiff was generating more HOP files than it was producing doors because for a given door, Plaintiff regenerates HOP file 3-4 times. | **Evidence:** Jensen Decl., Ex. E at 1187, 1239 – 1240. |
| 197. | CadCode responded that Plaintiff's Chief Technology Officer's statements are "consistent with the logs, so I think that question has been answered." | **Evidence:** Jensen Decl., Ex. E at 1238, 1187. |
| 198. | Plaintiff wrote to CadCode to ask if there had been "any cadcode conversions coming from more than 1 IP address in regards to our specific account." | **Evidence:** Jensen Decl., Ex. E at 1243. |
| 199. | CadCode responded that they "just verified that all of the authorization requests have come from the same computer ID." | **Evidence:** Jensen Decl., Ex. E at 1242. |
| 200. | Casablanca licensed the Prodim software, including vectorcam to generate HOP files, for a one-time fee. | **Evidence:** Glenn Johnson, Ex. A. |
| 201. | Casablanca can generate infinite HOP files using the | **Evidence:** Glenn Johnson, Ex. A. |

{02140081.DOCX}                                           36

DEFENDANTS' SEPARATE STATEMENT OF ADDITIONAL MATERIAL
FACTS IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR
SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

| | | |
|---|---|---|
| | vectorcam software linked to their CNC machines for no additional cost. | |
| 202. | On March 16, 2017, Plaintiff sent e-mail correspondence to CadCode stating that Plaintiff's "server issues" have not been resolved and requesting that CadCode make the issue a high priority "so we can get back up and running." | **Evidence:** Jensen Decl., Ex. T. |
| 203. | Casablanca generated HOP files March 13, 14, 15, 16, and 17, 2017. | **Evidence:** Vilfer Decl., ¶ 19, Ex. J. |
| 204. | Between December 30, 2014 and January 1, 2019, Casablanca frequently did not generate HOP files for days at a time, especially over weekends. | **Evidence:** Vilfer Decl., ¶ 19, Ex. I. |
| 205. | E-mail correspondence from CadCode states that service to Plaintiff will terminate as of February 1, 2016. | **Evidence:** Krzeminski Decl., Ex. 56 ("please note that your support will expire on 1/30/16"). |
| 206. | Casablanca produced HOP files on February 1, 2, 3, and February 4, 2016. | **Evidence:** Vilfer Declaration, ¶ 21, Ex. K. |
| 207. | In December 2, 2016, e-mail correspondence CadCode informed HighMark that, "[a]s for the discrepancies, we're not sure there really are any." | **Evidence:** Exhibit 23 to the Krzeminski Declaration HDMI 278. |

{02140081.DOCX}                                                37

DEFENDANTS' SEPARATE STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

| | **Plaintiff's Complaint Is Time-Barred Because Plaintiff On Inquiry Notice In 2011 When Four Seasons Continued Using One-Cut™ Beyond The Term of The Master Agreement** | |
|---|---|---|
| 244. | Defendant Four Seasons Windows, Inc. ("Four Seasons") licensed door software (*i.e.*, One-Cut™) from Plaintiff under a December 2008 "Master Agreement." | **Evidence:** Krzeminski Decl., Ex. 44 |
| 245. | The initial term of the Master Agreement was December 12, 2008 to December 31, 2010. | **Evidence:** Krzeminski Decl., Ex. 44; Jensen Decl., Ex. F at 25:12 – 18. |
| 246. | The Master Agreement could be renewed for additional two year terms. | **Evidence:** Krzeminski Decl., Ex. 44 at Section 9.1. |
| 247. | Four Seasons and Plaintiff did not execute an agreement to renew the Master Agreement beyond December 31, 2010. | **Evidence:** Jensen Decl., Ex. B at 252:4 – 253:3; Jensen Decl., Ex. F at 25:12 – 27:7. |
| 248. | Four Seasons continued to use One-Cut™ until approximately November 2011. | **Evidence:** Jensen Decl., Ex. F at 23:18 – 24:3, 27:2 – 27:12, 96:6 – 96:13; Declaration of Glenn Johnson ("Glenn Johnson Dec."), Ex. B. |
| 249. | The Master Agreement provided that Four Seasons should return or destroy the Licensed Applications, Documentation, or | **Evidence:** Krzeminski Decl., Ex. 44 at Section 9.3. |

{02140081.DOCX}

DEFENDANTS' SEPARATE STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT

| | | |
|---|---|---|
| | Confidential Information in its possession upon the termination of the Master Agreement. | |
| 250. | The Confidentiality Agreement attached to the Master Agreement as Exhibit E provides that upon Plaintiff's request, Four Seasons shall either return all written materials containing the confidential information or destroy such materials and certify to Plaintiff that such destruction has occurred. | **Evidence:** Krzeminski Decl., Ex. 44 at p. 15 Section 4, "Return of Information." |

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

{02140081.DOCX}

39

DEFENDANTS' SEPARATE STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

| | | |
|---|---|---|
| **Plaintiff's Complaint Is Time-Barred Because Suspected Plaintiff Improper Use Of Its Technology No Later Than 2012** | | |
| 251. | Casablanca entered into an agreement to license door software from Prodim in October 2011. | **Evidence:** Glenn Johnson Decl., Ex. A. |
| 252. | Plaintiff knew Dairl and Glenn Johnson, of Casablanca, had transitioned to competing software from Prodim no later than early 2012. | **Evidence:** Jensen Decl., Ex. B at 250:18 – 252:3; Jensen Decl., Ex. A at 125:12 – 18. |
| 253. | Michael McElroy ("McElroy"), the President of Plaintiff at the time, was "mad" and "upset." | **Evidence:** Jensen Decl., Ex. A at 125:12 – 18. |
| 254. | McElroy knew the Johnsons from prior to the founding of Plaintiff in January 2007 because the Johnsons had been franchisees of another door company owned by McElroy, IRDC Franchising, Inc. | **Evidence:** Jensen Decl., Ex. A at 119:6 – 121:9. |
| 255. | In "heavy negotiations," the Johnsons had bought out their franchise, which did not leave McElroy and the Johnsons "on good terms." | **Evidence:** Jensen Decl., Ex. A at 89:12 – 90:2. |
| 256. | The relationship between McElroy and the Johnsons was "fairly fractured." | **Evidence:** Jensen Decl., Ex. A at 118:19 – 24. |
| 257. | McElroy did not trust Dairl and | **Evidence:** Jensen Decl., Ex. A at 163:11 |

{02140081.DOCX}

40

DEFENDANTS' SEPARATE STATEMENT OF ADDITIONAL MATERIAL
FACTS IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR
SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

| | | |
|---|---|---|
| | Glenn Johnson and questioned the legitimacy of their business dealings. | – 164:9. |
| 258. | McElroy felt that the Johnsons did not operate their business in an "honest" manner, whether that meant the way they paid their bills, treated customers, or how they resolved issues and problems. | **Evidence:** Jensen Decl., Ex. A at 165:19 – 169:4. |
| 259. | When the Johnsons transitioned to Prodim software, McElroy was concerned about "infringement" and the Johnsons using information belonging to Plaintiff "that they weren't allowed to have." | **Evidence:** Jensen Decl., Ex. A at 125:19 – 126:16. |
| 260. | McElroy considered Prodim competitor that posed a threat to Plaintiff's business because Prodim offered competing software. | **Evidence:** Jensen Decl., Ex. A at 128:9 – 130:2. |
| 261. | Prodim was downplaying the importance of Plaintiff's software by "advertising the fact that, you know, who needs HighMark when we can do it." | **Evidence:** Jensen Decl., Ex. A at 128:9 – 23; 135:21 – 136:12. |
| 262. | McElroy was concerned Prodim was using ideas and technology developed by Plaintiff to benefit Prodim's | **Evidence:** Jensen Decl., Ex. A at 135:5 – 135:20. |

{02140081.DOCX}

41

DEFENDANTS' SEPARATE STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

| | | | |
|---|---|---|---|
| | | business. | |
| | 263. | A former employee of Plaintiff, Richard Reardon, had abruptly left his employment with Plaintiff and went to work for Prodim; when McElroy learned of this, he was "upset" and "surprised." | **Evidence:** Jensen Decl., Ex. A at 132:11 – 134:21. |
| | 264. | McElroy and Winter met and reviewed the terms of the Master Agreement after Four Seasons stopped using One-Cut™. | **Evidence:** Jensen Decl., Ex. B at 250:18 – 251:11. |
| | 265. | McElroy did not know what the Johnsons were doing with information belonging to Plaintiff, if anything, but he was concerned and believed there to be "a need for protection." | **Evidence:** Jensen Decl., Ex. A at 125:12 – 127:12. |
| | 266. | McElroy and Winter considered litigation against Dairl and Glenn Johnson in or around the beginning of 2012. | **Evidence:** Jensen Decl., Ex. B at 253:14 – 254:4; Jensen Decl., Ex. A at 127:22 – 128:3. |
| | 267. | Plaintiff filed its Complaint on July 13, 2018. | **Evidence:** Doc. 1. |

{02140081.DOCX}

42

DEFENDANTS' SEPARATE STATEMENT OF ADDITIONAL MATERIAL
FACTS IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR
SUMMARY JUDGMENT

<table>
<tr><td colspan="2"><strong>Plaintiff's Complaint is Time-Barred Because Plaintiff Did Not Reasonably Investigate Its Alleged Claims</strong></td></tr>
<tr><td>268.</td><td>The Master Agreement provided that Four Seasons should return or destroy the Licensed Applications, Documentation, or Confidential Information in its possession upon the termination of the Master Agreement.</td><td><strong>Evidence:</strong> Krzeminski Decl., Ex. 44 at Section 9.3.</td></tr>
<tr><td>269.</td><td>The Confidentiality Agreement attached to the Master Agreement as Exhibit E provides that upon Plaintiff's request, Four Seasons shall either return all written materials containing the confidential information or destroy such materials and certify to Plaintiff that such destruction has occurred.</td><td><strong>Evidence:</strong> Krzeminski Decl., Ex. 44 at p. 15 Section 4, "Return of Information."</td></tr>
<tr><td>270.</td><td>Plaintiff did not request that Four Seasons return all materials containing confidential information or destroy such materials and certify to Plaintiff that such destruction occurred.</td><td><strong>Evidence:</strong> Jensen Decl., Ex. F at 102:12 – 103:13; Declaration of Dave Winter ("Winter Decl.") at ¶ 4; Jensen Decl., Ex. C at 212:18 – 217:18.</td></tr>
<tr><td>271.</td><td>Between 2012 and at least January 1, 2015, Plaintiff did not conduct further investigation into whether the</td><td><strong>Evidence:</strong> Jensen Decl., Ex. C at 212:18 – 217:18; Jensen Decl., Ex. A at 127:22 – 128:3; Winter Decl. at ¶ 4.</td></tr>
</table>

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

{02140081.DOCX}

43

DEFENDANTS' SEPARATE STATEMENT OF ADDITIONAL MATERIAL
FACTS IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR
SUMMARY JUDGMENT

| Johnsons or Prodim had or was misusing technology belonging or relating to Plaintiff. | |
|---|---|

Respectfully Submitted,

Dated:  January 28, 2020

PORTER SCOTT
A PROFESSIONAL CORPORATION

By  /s/ Martin N. Jensen
     Martin N. Jensen
     Jeffrey A. Nordlander
     Attorneys for Defendants

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

{02140081.DOCX}

44

DEFENDANTS' SEPARATE STATEMENT OF ADDITIONAL MATERIAL
FACTS IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR
SUMMARY JUDGMENT

**CASE NAME:** *Highmark Digital, Inc. v. Casablanca Design Centers, Inc. et al.*
**CASE NO.:**     USDC Central District, Western Division Case No. 2:18-cv-06105-SJO-AS

## PROOF OF SERVICE

At the time of service, I was over 18 years of age and not a party to this action.  My business address is 350 University Avenue, Suite 200, Sacramento, California 95825.

On January 28, 2020, I served the following document:

# DEFENDANTS' STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION TO HIGHMARK DIGITAL, INC.'S MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| XX | **BY MAIL:** I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business' practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. |
| | **BY PERSONAL SERVICE:** I caused such document to be personally delivered to the person(s) addressed below.  (1)  For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office, between the hours of nine in the morning and five in the evening.  (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening. |
| | **BY OVERNIGHT DELIVERY:** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the person(s) listed below. I placed the envelope or package for collection and overnight delivery at my office or a regularly utilized drop box of the overnight delivery carrier. |
| | **BY FAX TRANSMISSION:** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed below.  No error was reported by the fax machine that I used.  A copy of the record of the fax transmission, which I printed out, is attached |
| XX | **BY ELECTRONIC SERVICE:** Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification address listed below.  **(COURTESY COPY PER AGREEMENT OF COUNSEL)** |

/ / /

/ / /

/ / /

/ / /

/ / /

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

{02145499.DOCX}                                    1

## PROOF OF SERVICE

1    Addressed as follows:

2    **COUNSEL FOR PLAINTIFF:**
     Michael Friedland
3    Thomas P. Krzeminski
     Cassie Gourash
4    Benjamin Ho
5    KNOBBE, MARTENS, OLSON & BEAR, LLP
     2040 Main Street, 14th Floor
6    Irvine, CA 92614
7    Michael.friedland@knobbe.com; 2tpk@knobbe.com;
     Cassie.Gourash@knobbe.com; Benjamin.Ho@knobbe.com

8
         I declare under penalty of perjury under the laws of the State of California that the
9    foregoing is true and correct.  Executed at Sacramento, California on January 28, 2020.

10

11                                                    _____
12                                                    Desiree Ganzon

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   {02145499.DOCX}                        2
                                 PROOF OF SERVICE

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706