Michael Friedland (State Bar No. 157,217)
michael.friedland@knobbe.com
Thomas P. Krzeminski (State Bar No. 213,714)
2tpk@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, 14th Floor
Irvine, CA  92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Plaintiff,
HIGHMARK DIGITAL, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| HIGHMARK DIGITAL, INC., a California corporation,<br><br>    Plaintiff,<br><br>  v.<br><br>CASABLANCA DESIGN CENTERS, INC., a California corporation; FOUR SEASONS WINDOWS, INC., a California corporation; INTERIOR DOOR & CLOSET COMPANY, an unincorporated California company; ONE DAY DOORS AND CLOSETS, INC., a California corporation; DAVID WINTER, an individual; and ONE DAY ENTERPRISES, LLC, a Delaware company,<br><br>    Defendants. | CASE NO.  2:18-cv-06105-SJO-AS<br><br>**PLAINTIFF HIGHMARK DIGITAL , INC.'S OPPOSITION TO ENTITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>**Hon. S. James Otero**<br>**Magistrate Judge Alka Sagar**<br><br>**Date: February 18, 2020**<br>**Time: 10:00 a.m.**<br>**Judge: S. James Otero**<br>**Location: Courtroom 10C**<br><br>**Discovery Cutoff: 9/30/2019**<br>**Pre-Trial Conference: 6/1/2020**<br>**Trial Date: 6/9/2020** |

# TABLE OF CONTENTS

**Page No.**

I.   INTRODUCTION ........................................................................... 1

II.  FACTUAL BACKGROUND .......................................................... 1

III. THE COURT SHOULD DENY DEFENDANTS' MOTION ................. 2

    A.  Highmark's Allegations Are Not Time-Barred ............................. 2

        1.  Statutes of Limitations Legal Standard .................................. 2

        2.  HighMark's Claims Did Not Accrue Earlier Than
            January 2019 ......................................................................... 3

            a.  Suspicion of Wrongdoing, Alone, Is Not
               Sufficient to Trigger the Limitations Period .............. 4

                  i.   HighMark Did Not Suspect Improper
                      Use of Its Technology in 2011-2012 ............... 5

                  ii.  Four Seasons' Conduct Did Not Put
                      HighMark on Inquiry Notice in 2011 .............. 8

                  iii. A Reasonably Diligent Investigation
                      Would Not Have Uncovered the Facts
                      Necessary to Support HighMark's
                      Claims in 2011-2012 ....................................... 10

             b.  Whether HighMark Conducted An
               Investigation Is Irrelevant ......................................... 12

    B.  Defendants Are Not Entitled To Summary Judgment On
       The Merits .................................................................................. 13

        1.  Material Facts Are Genuinely Disputed ............................... 13

            a.  A Reasonable Juror Could Find that
               Defendants Improperly Disclosed and
               Reverse Engineered HighMark's Source
               Code ............................................................................ 13

**TABLE OF CONTENTS**
*(cont'd)*

**Page No.**

2.　A Reasonable Juror Could Find that the One-Cut™ Source Code and HOP Files Are Trade Secrets .................. 15

3.　A Reasonable Juror Could Find that Defendants Accessed CadCode's Server Following Winter's Resignation from HighMark ................................ 16

4.　A Reasonable Juror Could Find that Winter Disclosed Trade Secret and/or Confidential Information to Defendants .................................... 17

5.　Four Seasons is a Member of the Corporate Defendants Which Act Together as a Single Entity, and is Not Immune from DTSA Claims ............................. 18

6.　Defendants Are Not Entitled to Summary Judgment on Trade Secret Misappropriation Claims ............................................................. 19

7.　Four Seasons Is Not Entitled to Summary Judgment on the Breach of Contract Claim ....................... 20

8.　Defendants Are Not Entitled to Summary Judgment on the Unfair Competition Claim ....................... 21

C.　David Winter Is Not Entitled To Summary Judgment On The Merits .................................................... 21

D.　A Reasonable Juror Could Find That Winter Improperly Acquired, Disclosed Or Used Trade Secret Information .............. 22

E.　Defendant Is Not Entitled to Summary Judgment On Breach Of Contract Claims ............................................ 23

1.　A Reasonable Juror Could Find that Winter Disclosed Confidential or Trade Secret Information Relating to Plaintiff ........................... 24

**TABLE OF CONTENTS**
*(cont'd)*

**Page No.**

2. A Reasonable Juror Could Find that Winter Otherwise Breached the Employee Nondislcosure and Non-Solicitation Agreement .......................................... 24

F. Defendant is Not Entitled To Summary Judgment on Plaintiff's Computer Data Access And Fraud Act Claim Against Winter .............................................................. 25

1. A Reasonable Juror Could Find that Winter Took and Used Confidential or Trade Secret Information Relating to Plaintiff ............................................... 25

G. Defendant Is Not Entitled to Summary Judgment On Plaintiff's Breach of Fiduciary Duty Claims Against Winter ................................................................. 26

1. Defendant is Not Entitled to Summary Judgment on Plaintiff's Unfair Competition Claim against Winter ............................................................... 27

IV. CONCLUSION .......................................................... 28

# TABLE OF AUTHORITIES

**Page No(s).**

*Alamar Biosciences Inc. v. Difco Labs. Inc.*,
   40 U.S.P.Q.2d 1437 (E.D. Cal. 1996) ................................................... 3, 10, 12

*Alta Devices, Inc. v. LG Elecs., Inc.*,
   2019 WL 1924992 (N.D. Cal. Apr. 30, 2019) ............................................. 10

*Altavion, Inc. v. Konica Minolta Sys., Lab., Inc.*,
   226 Cal. App. 4th 26 (Cal. App. 2014) ......................................................... 15

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ......................................................................................... 2

*April Enters., Inc. v. KTTV*,
   147 Cal. App. 3d 805 (Cal. App. 1983) ................................................... 3, 10

*ATS Prods., Inc., v. Champion Fiberglass, Inc.*,
   No. C 13-02403 SI, 2013 WL 6086924 (N.D. Cal. 2013) ........................... 16

*BladeRoom Grp. Ltd. v. Emerson Elec. Co.*,
   331 F. Supp. 3d 977 (N.D. Cal. 2018) .......................................................... 19

*Block on behalf of Carrier Project, Inc. v. Maro Chermayeff,
Carrier Project, Inc.*,
   Case No. 2:09-cv-01046 JHN-Ex, 2010 WL 11507602
   (C.D. Cal. Aug. 16, 2010) ............................................................................. 26

*Broberg v. Guardian Life Ins. Co. of Am.*,
   171 Cal. App. 4th 912 (Cal. App. 2009) ......................................................... 3

*Callaway Golf Co. v. Dunlop Slazenger Grp. Americas., Inc.*,
   318 F. Supp. 2d 222 (D. Del. 2004) ................................................................ 8

*Cleveland v. Internet Specialties W., Inc.*,
   171 Cal. App. 4th 24 (Cal. App. 2009) ................................................... 5, 6, 8

*Cypress Semiconductor Corp. v. Superior Ct.*,
   163 Cal. App. 4th 575 (Cal. App. 2008) ......................................................... 4

*E-Fab, Inc. v. Accts., Inc. Servs.*,
   153 Cal. App. 4th 1308 (2007) ........................................................................ 3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES
## (*cont'd*)

**Page No(s).**

*First Advantage Background Serv. Corp. v. Private Eyes, Inc.*,
   569 F. Supp. 2d 929 (N.D. Cal. 2009) ..................................................... 21, 27

*Fox v. Ethicon Endo–Surgery, Inc.*,
   35 Cal. App. 4th 797 (Cal. App. 2005) ........................................................... 4

*General Bedding Corp. v. Echevarria*,
   947 F.2d 1395 (9th Cir. 1991) .................................................................... 7, 8

*Glue–Fold, Inc. v. Slautterback Corp.*,
   82 Cal. App. 4th 1018 (Cal App. 2000) ........................................................ 10

*Hobart v. Hobart Estate Co.*,
   159 P.2d 958 (1945) ........................................................................................ 5

*Huston v. Imperial Credit Com. Mort. Inv. Corp.*,
   179 F. Supp. 2d 1157 (C.D. Cal. 2001) ........................................................ 26

*Intermedics, Inc. v. Ventritex, Inc.*,
   775 F. Supp. 1258 (N.D. Cal. 1991) .......................................................... 3, 8

*Jolly v. Eli Lilly*,
   44 Cal. 3d 1103 (1988) ................................................................................... 4

*Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*,
   342 F.3d 714 (7th Cir. 2003) ........................................................................ 16

*Manchester v. Sivantos GMBH*,
   Case No. 2:17-CV-05309-ODW, 2018 WL 587849
   (C.D. Cal. Dec. 17, 2018).......................................................................... 21, 27

*McKeon v. Giusto*,
   44 Cal. 2d 152 (1955).................................................................................... 8

*Memry Corp. v. Kentucky Oil Tech.*,
   No. C-04-03843 RMW, 2007 WL 2746736
   (N.D. Cal. Sept. 20, 2007)....................................................................... 12, 13

# TABLE OF AUTHORITIES
### (*cont'd*)

**Page No(s).**

*Norgart v. Upjohn Co.*,
  21 Cal. 4th 383 (1999)........................................................................ 4

*Oasis W. Realty, LLC v. Goldman*,
  51 Cal. 4th 811 (2011)...................................................................... 23

*Pinkerton's, Inc. v. Superior Ct.*,
  49 Cal. App. 4th 1342 (1996) ........................................................... 19

*Robinson, Leatham & Nelson, Inc. v. Nelson*,
  109 F.3d 1388 (9th Cir. 1997) .......................................................... 26

*Sonista, Inc. v. Hsieh*,
  No. C 04-04080 RMW, 2005 WL 3113083
  (N.D. Cal. Nov, 21, 2005) ................................................................ 26

*Teledyne Risi, Inc. v. Martin-Baker Aircraft Co.*,
  Case No. CV 15-07936 SJO, 2017 WL 9831402
  (C.D. Cal. Sept. 7, 2017) .................................................................. 12

*UniRAM Tech., Inc. v. Taiwan Semiconductor Mfg. Co.*,
  617 F. Supp. 2d 938 (N.D. Cal 2007) ........................................... 8, 19

*Wang v. Palo Alto Networks, Inc.*,
  111 U.S.P.Q.2d 1042(N.D. Cal. 2014)............................................. 10

*West v. Great W. Power Co. of Cal.*,
  36 Cal. App. 2d 403 (Cal. App. 1940) ............................................. 12

## OTHER AUTHORITIES

18 U.S.C. § 1836 ............................................................................. 2, 3

18 U.S.C. § 1839 ........................................................................... 15, 22

Cal. Bus. & Prof. Code §§ 17200 et. seq.................................... 21, 27

Cal. Bus. & Prof. Code § 17208 ......................................................... 3

Cal. Civ. Code § 3426.1 .............................................................. 15, 22

# TABLE OF AUTHORITIES
### (*cont'd*)

**Page No(s).**

Cal. Civ. Code § 3426.6 ...................................................................... 2, 3

Cal. Civ. Proc. Code § 337 ..................................................................... 3

Cal. Penal Code § 502 ........................................................................ 25

Computer Data Access and Fraud Act ...................................................... 25

Fed. R. Civ. P. 56.............................................................................. 2

## I. **INTRODUCTION**

Plaintiff HighMark Digital, Inc. ("HighMark") submits this Opposition to Defendants' Casablanca Design Centers, Inc., Four Seasons Windows, Inc., Interior Door & Closet Company, One Day Doors and Closets, Inc., and One Day Enterprises, LLC ("Defendants") Motion for Summary Judgment, or in the alternative, Partial Summary Judgment. The Court should deny Defendants' motion because the allegations against Defendants in the Second Amended Complaint ("SAC") (D.I. 56) are not time-barred. In addition, Defendants have failed to show that there is an absence of evidence to support HighMark's claims and back up their own evidence with an unqualified and conflicted expert witness. At a minimum, the parties dispute material facts underlying the claims at issue.

HighMark did not have actual or constructive notice of the facts underlying its claims until January 2019, when it first learned that Defendants emailed HighMark's HOP file to Prodim for reverse engineering. Defendants ignore Defendant Winter's unequivocal testimony that he and third-party Michael McElroy did not have any concerns about Defendants improperly using HighMark's technology in 2011 or 2012. Further, a reasonable investigation would not have uncovered the facts underlying HighMark's claims; the relevant conduct occurred in secret, and Defendants took affirmative (and effective) steps to hide their wrongdoing from HighMark. Accordingly, Defendants' motion should be denied.

## II. **FACTUAL BACKGROUND**

HighMark incorporates by reference the Factual Background set forth in the Memorandum of Points and Authorities (D.I. 148-1 at 1:20-6:16), in support

/ / /

/ / /

/ / /

-1-

1 of its Motion for Summary Judgment (D.I. 148) (collectively, "HighMark's
2 Motion"), filed on December 20, 2019.[1,2]

3 ### III.  THE COURT SHOULD DENY DEFENDANTS' MOTION

4 Summary judgment is appropriate only where "the movant shows that there
5 is no genuine dispute as to any material fact and the movant is entitled to
6 judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is "genuine" if
7 "the evidence is such that a reasonable jury could return a verdict for the
8 nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
9 "The evidence of the non-movant is to be believed, and all justifiable inferences
10 are to be drawn in his favor."  *Id.* at 255.

11 For the reasons set forth below, HighMark's claims are not time-barred and
12 Defendants have failed to show that the undisputed facts demonstrate otherwise.
13 Thus, Defendants are not entitled to summary judgment on this issue.  Summary
14 judgment is also not appropriate on the merits because the parties genuinely
15 dispute facts that are material to each of Highmark's trade secret
16 misappropriation, breach of contract, and unfair competition claims.

17 ### A.  Highmark's Allegations Are Not Time-Barred

18 #### 1.  Statutes of Limitations Legal Standard

19 The limitations period is three years for trade secret misappropriation
20 claims under both CUTSA and DTSA (*see* Cal. Civ. Code § 3426.6; 18 U.S.C.
21 / / /

---

23 [1] All referenced exhibit citations to the Declaration of Thomas Krzeminski
24 and its exhibits herein and in the Disputed Material Facts refer to D.I. 151 and the
Declaration of Thomas Krzeminski submitted with this Opposition.  Exhibit
25 Numbering between both declarations is continuous.

26 [2] All referenced exhibit citations to the Declaration of Richard Matulia and
27 its exhibits herein and in the Disputed Material Facts refer to D.I. 148-5 and the
Declaration of Richard Matulia submitted with this Opposition.  Exhibit
28 Numbering between both declarations is continuous.

§ 1836) and four years for breach of contract and unfair competition claims.  *See* Cal. Civ. Proc. Code § 337(1); Cal. Bus. & Prof. Code § 17208.

Under both CUTSA and DTSA, the statute of limitations begins to run once the misappropriation "is discovered or by the exercise of reasonable diligence should have been discovered."  *See* Cal. Civ. Code § 3426.6; 18 U.S.C. § 1836.  Likewise, under California's discovery rule,[3] the limitations period for breach of contract and unfair competition claims begins to run once a plaintiff actually discovers or reasonably should have discovered the wrongful conduct. *April Enters., Inc. v. KTTV*, 147 Cal. App. 3d 805, 832 (Cal. App. 1983); *Broberg v. Guardian Life Ins. Co. of Am.*, 171 Cal. App. 4th 912, 920-21 (Cal. App. 2009).

A plaintiff discovers a cause of action "when the plaintiff has actual or constructive notice of the facts giving rise to the claim." *Alamar Biosciences Inc. v. Difco Labs. Inc.*, 40 U.S.P.Q.2d 1437, 1438 (E.D. Cal. 1996).  A plaintiff is deemed to have constructive notice of "all facts that a reasonable inquiry would disclose" once the plaintiff becomes aware of "circumstances sufficient to put a prudent man upon inquiry[.]"  *E-Fab, Inc. v. Accts., Inc. Servs.*, 153 Cal. App. 4th 1308, 1319, (2007).

### 2. HighMark's Claims Did Not Accrue Earlier Than January 2019

HighMark initially filed this lawsuit following CadCode's discovery of discrepancies between the number of doors processed by CadCode and the number of doors submitted by HighMark.   Decl. of Richard Matulia in Opposition to Defendant's Motion for Summary Judgment ("Matulia Opposition

---

[3]   Application of the discovery rule is appropriate in this case because there is "no reason to expect that the wrongdoing would be perceived or discoverable by plaintiff at the time" that it occurred.  *See Intermedics, Inc. v. Ventritex, Inc.*, 775 F. Supp. 1258, 1267 (N.D. Cal. 1991).  Four Seasons appears to concede that the discovery rule applies.  *See* D.I. 146-1 at 14:10-12.

Decl.") at ¶ 2; Krzeminski Decl., Ex. 16 at 153:20-154:23).   Only in January, during discovery in the present litigation, did HighMark learn about Defendants' conduct in late 2011 that forms the basis for the claims in the SAC.   Matulia Opposition Decl. at ¶ 3.   In arguing that these claims are time-barred, Defendants misrepresent both the law and the facts.

### a.   Suspicion of Wrongdoing, Alone, Is Not Sufficient to Trigger the Limitations Period

Defendants assert that "suspicion of wrongdoing triggers the statute of limitations."   *See* D.I. 146-1 at 14:10-11 (citing *Gabriel Techs. Corp. v. Qualcomm Inc.*, 857 F. Supp. 2d 997, 1003 (S.D. Cal. 2012)).   This premise is incorrect, or at least incomplete, for several reasons.

First, under the discovery rule, the limitations period may begin to run when the plaintiff has "suspicion of one or more of the elements of a cause of action, *coupled with knowledge of any remaining elements*."   *Fox v. Ethicon Endo–Surgery, Inc.,* 35 Cal. App. 4th 797, 807 (Cal. App. 2005) (emphasis added; internal quotation marks omitted).   California courts have explained that "elements" in this context refers to "the 'generic' elements of wrongdoing, causation, and harm."   *See, e.g., Cypress Semiconductor Corp. v. Superior Ct.*, 163 Cal. App. 4th 575, 586 (Cal. App. 2008) (internal quotation marks omitted).   Several of the California Supreme Court cases frequently cited for the articulation of California's discovery rule address products liability claims where the plaintiff knew about its injury and evidence linking the injury to the product in question, but had no definitive knowledge of wrongdoing.   *See Jolly v. Eli Lilly*; 44 Cal. 3d 1103, 1109-1113 (1988); *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397-398 (1999); *see also Fox,* 35 Cal. 4th at 810-816 (discussing *Jolly* and *Norgart*).   In such cases—where the plaintiff had knowledge of the harm and causation elements— the Court held that suspicion of wrongdoing may be sufficient to trigger a duty to investigate.   That is not the situation in the present case.

-4-

Here, there is no evidence that HighMark had knowledge (or even suspicion) of any specific harm, much less the facts related to causation—i.e., that its HOP file had been disclosed to Prodim and/or used to reverse engineer its source code. Therefore, even if Defendants could establish suspicion of wrongdoing, it would not be sufficient to trigger the limitations period.

Second, suspicion is only relevant to the extent that (1) such suspicion would have led a reasonably prudent person to investigate; and (2) a reasonable investigation would have uncovered the facts underlying the cause of action. *See Hobart v. Hobart Estate Co*., 159 P.2d 958, 972-75 (1945); *Cleveland v. Internet Specialties W., Inc*., 171 Cal. App. 4th 24, 33 (Cal. App. 2009). Any general mistrust of the Johnsons or concern about competition from Prodim would not have reasonably caused HighMark to investigate in 2011 or 2012 because HighMark was not aware that it had actually been harmed at that time. Furthermore, the evidence does not show that HighMark actually suspected or should have suspected the facts underlying its claims as of early 2012 (*see* Sections III.A.2.III. A.2.a.i-III. A.2.a.ii., *infra*) or that a reasonably diligent investigation at that time would have uncovered the underlying factual basis for the claims in the SAC (*see* Section III.A.2.III. A.2.a.iii., *infra*).

### i.    HighMark Did Not Suspect Improper Use of Its Technology in 2011-2012

Defendants assert that, no later than early 2012, HighMark "suspected improper use of its technology and specifically contemplated litigation" against Defendants. D.I. 146-1 at 1:11-13; *see id*. at 14-15. To support this claim, Defendants mischaracterize and take out of context the deposition testimony of HighMark's former president, Michael McElroy. Moreover, Defendants ignore Winter's unequivocal testimony that neither Winter nor McElroy suspected that Four Seasons was using HighMark's technology outside the scope of the parties' agreement. Krzeminski Decl., Ex. 12 at 254:21-255:4.

1    Contrary to Defendants' assertions, McElroy's testimony does not
2    demonstrate that McElroy suspected the Johnsons of misusing HighMark's
3    technology in early 2012. *See* D.I. 146-1 at 14-15. For example, Defendants
4    emphasize that McElroy did not trust the Johnsons. *See id*. at 9:25-29, 14:25-28.
5    The cited testimony, however, is not directed to events in the 2011-2012
6    timeframe, but generally addresses McElroy's "perception of the Johnsons as
7    business people" "prior to Mr. Winter leaving HighMark" in 2015. Krzeminski
8    Decl., Ex. 11 at 163:11-15, 60:1-3. Further, McElroy stated that his view of the
9    Johnsons was based on a general disagreement with their business style, for
10   example, aggressive sales techniques. *See id*. at 164:10-17 ("It was more about
11   their -- the day-to-day, the way they ran their business."); *see generally id*. at
12   163:11-165:2. This testimony does not support the notion that HighMark
13   suspected the Johnsons of misusing HighMark's technology at any time, much
14   less during the specific time period in question.

15   Similarly, McElroy's testimony that HighMark regarded Prodim as a threat
16   does not suggest any specific concern about Prodim improperly acquiring or
17   using HighMark's confidential or trade secret information from Four Seasons.
18   Rather, McElroy testified that he perceived Prodim to be a threat because Prodim
19   could offer a competing service that could draw customers away from HighMark
20   and undermine HighMark's position as a leader in the market. *See* Krzeminski
21   Decl., Ex. 11 at 126:17-127:2, 128:7-130:11, 140:4-14.

22   Even if it were possible to infer from McElroy's testimony that HighMark
23   was on notice of the claims, summary judgment would not be appropriate unless
24   that was the *only reasonable inference* that one could draw. *See Cleveland v.*
25   *Internet Specialties W., Inc*., 171 Cal. App. 4th 24, 33 (Cal. App. 2009)
26   ("Summary judgment is not appropriate unless only one reasonable inference can
27   be drawn from undisputed facts."). At best, one could argue that McElroy's
28   testimony is open to multiple interpretations, which is not sufficient to support

summary judgment in Defendants' favor.  *See General Bedding Corp. v. Echevarria*, 947 F.2d 1395, 1398 (9th Cir. 1991) ("The fact that the evidence would also support an inference that [plaintiff] was on constructive notice, even if such an inference is stronger, is not a sufficient basis for granting summary judgment").

Furthermore, when McElroy's statements are read in light of Winter's testimony, no reasonable fact finder could conclude that HighMark suspected the factual basis for the claims in the SAC by early 2012.  Indeed, when asked whether he or McElroy had "any concerns as to whether or not Four Seasons was doing anything with HighMark's technology that was outside of the agreement" at that time, Winter definitively answered "No."  Krzeminski Decl., Ex. 12 at 254:21-255:4.  Winter explained that he and McElroy assumed that Defendants "just switched products. . . ."  *Id.* at 255:8; *see also id.* at 250:18-251:4.  This testimony is consistent with McElroy's testimony that HighMark was generally concerned about losing customers to competing technology from Prodim.  *See id.* Ex. 11 at 128:7-130:11.

Additionally, Winter's testimony directly undermines the argument that HighMark previously considered bringing a lawsuit against Defendants based on the currently asserted claims.  Winter testified that he and McElroy, instead, discussed whether Defendants had any legal obligations to continue using HighMark's services; they considered litigation only as a "[w]orst case" scenario or "extreme" option to "save the account" with the Johnsons, not to address any improper use of HighMark's technology.  Krzeminski Decl., Ex. 12 at 250:18-255:9.  Winter and McElroy ultimately determined that they had no basis to bring suit under the Master Agreement because they did not suspect that Four Seasons had improperly disclosed or used any trade secret or confidential information.  *See id.* at 250:18-251:16; 253:14-254:15.

/ / /

Given the highly factual nature of most statute of limitations inquiries, courts routinely deny motions for summary judgment involving the issue. *See, e.g.*, *General Bedding*, 947 F.2d at 1398-99 (collecting cases); *UniRAM Tech., Inc. v. Taiwan Semiconductor Mfg. Co.*, 617 F. Supp. 2d 938, 946-48 (N.D. Cal 2007); *Callaway Golf Co. v. Dunlop Slazenger Grp. Americas., Inc.*, 318 F. Supp. 2d 222, 225 (D. Del. 2004) (applying California law); *Intermedics, Inc. v. Ventritex, Inc.*, 775 F. Supp. 1258, 1265–68 (N.D. Cal. 1991).   In the present case, the evidence falls well short of that required to resolve a statute of limitations issue on summary judgment.   *See Cleveland*, 171 Cal. App. 4th at 33.

### ii.   Four Seasons' Conduct Did Not Put HighMark on Inquiry Notice in 2011

Defendants further argue that HighMark was on inquiry notice in 2011, when Four Seasons continued using One-Cut™ beyond the initial term of the Master Agreement.   D.I. 146-1 at 13:14-14:7.   This argument also fails.   The parties extended the Master Agreement past January 2011 by continued mutual performance.   Until at least mid-November 2011, Four Seasons continued to pay for HighMark's software and HighMark continued to process door measurement files submitted by Four Seasons.   *See* D.I. 146-14 at ¶ 6; *id*. Ex. B; Krzeminski Decl., Ex. 12 at 251:17-253:13 (testifying that HighMark "liked" Four Seasons' continued business beyond the initial two-year term).   A contract term extension by mutually continued performance is not a technical "breach" of contract. Accordingly, Four Seasons' continued use of the software did not trigger a duty to investigate.   *McKeon v. Giusto*, 44 Cal .2d 152 (1955) (where the parties to a contract continue performing under the contract with no change "a renewal of the original contract will be implied in the absence of a contractual provision to the contrary or an affirmative showing that the parties did not so intend").

To the extent Defendants argue that Four Seasons breached the Master Agreement in January 2011 by failing to return or destroy HighMark's materials,

this argument also fails.  Because the parties' continued their performance under the agreement, the condition precedent for the termination provision of the Master Agreement did not arise at that time.    Additionally, Defendants inaccurately present the termination obligations under the Master Agreement.  D.I. 146-1 at 16:4-10.  Section 9.3 gives Four Seasons the option to simply "discontinue its use of such application(s)" as an alternative to "return[ing] or destroy[ing] any copies. . . ."  Krzeminski Decl., Ex. 44 at p. 7 (§ 9.3).  Thus, to the extent any termination obligations arose under Section 9.3 in late 2011 or early 2012, Four Seasons would have satisfied those obligations by discontinuing its use of the Licensed Applications and other HighMark materials.  Indeed, Winter testified that he and McElroy thought that Four Seasons "just switched products," thereby discontinuing use of HighMark's technology in response to HighMark raising its prices.  *See id*. Ex. 12 at 255:8; *see also id*. at 250:18-251:4. Thus, Four Seasons' failure to return HighMark's materials would not have put HighMark on inquiry notice of any wrongdoing.

Additionally, under Section 4 of the Confidentiality Agreement, the obligation to return or destroy HighMark's Confidential Information only arises "[u]pon Owner's written request. . . ."  Krzeminski Decl., Ex. 44 at p. 10 (§ 4). Because HighMark did not make such a request, Four Seasons' failure to return or certify destruction of HighMark's Confidential Information did not breach the parties' Confidentiality Agreement and would not have put HighMark on inquiry notice.

Moreover, HighMark had no reason to think that Four Seasons had any motivation or ability to reverse engineer HighMark's source code.  As far as HighMark knew at the time, Four Seasons was a very small retail door replacement company using outside vendors for most of their needs.  In contrast, in the cases cited in Defendants' Motion, the plaintiffs were highly aware of the defendants' interest in and opportunity to make use of the technology at issue.

*See Alta Devices, Inc. v. LG Elecs., Inc.*, 2019 WL 1924992 at *13 (N.D. Cal. Apr. 30, 2019); *Wang v. Palo Alto Networks, Inc.*, 111 U.S.P.Q.2d 1042, 1048(N.D. Cal. 2014).  Even after Four Seasons stopped using HighMark's technology in late 2011, HighMark had no reason to suspect that Four Seasons would covertly work with a third party to improperly reverse engineer HighMark's technology.

Accordingly, there is no basis to conclude that a reasonable plaintiff in HighMark's position would have suspected as of January 1, 2011, or even by early 2012, that Defendants were using HighMark's technology outside the scope of the Master Agreement.

### iii. A Reasonably Diligent Investigation Would Not Have Uncovered the Facts Necessary to Support HighMark's Claims in 2011-2012

Even if Defendants were able to establish that HighMark was on inquiry notice in 2011 or 2012, the evidence shows that a reasonably diligent investigation would not have uncovered the facts necessary to support HighMark's claims.  *See Alamar, 40 U.S.P.Q.2d at 1438* ("[I]f certain facts necessary to the claim are unavailable even to a reasonably diligent plaintiff, the limitations period is tolled until the facts do become available.  Fraudulent concealment of the facts giving rise to a cause of action will toll the limitations period.")  (internal citations omitted).

It is well established that "trade secret misappropriation is ordinarily covert and hard for the betrayed party to discover."  *Glue–Fold, Inc. v. Slautterback Corp.,* 82 Cal. App. 4th 1018, 1026 (Cal App. 2000).  Similarly, California courts have recognized the "inherent difficulty, if not impossibility, of effectively monitoring for potential secretive breaches of contract." *April. Enters.*, 147 Cal. App. 3d at 832, n.13.  Here, HighMark learned about Defendants' conduct only through discovery in the current litigation.  *See* Matulia Opposition Decl. at ¶ 3;

-10-

*see also id.*, Ex. 20.  HighMark had no other way of obtaining internal emails between Defendants and Prodim.

Defendants identify no plausible alternative means by which HighMark could have uncovered the Prodim Email or any other evidence supporting HighMark's claims.  Defendants merely assert that HighMark did not demand the return of its materials as permitted under parties' licensing agreement or further investigate whether Defendants were misusing HighMark's technology.  *See* D.I. 146-1 at 10:22-11:3, 16:3-25.  Even assuming, contrary to the evidence, that HighMark had a reason to investigate, there is no basis for a reasonable juror to conclude that HighMark would have been able to uncover the facts underlying its current claims by contacting the Defendants.  Rather, the evidence shows that Defendants deliberately concealed their conduct from HighMark.

Indeed, the Prodim Email shows that Defendants engaged in affirmative steps to hide the facts underlying Highmark's current claims.  For example, after Mike MacGilvray's initial email providing Prodim with HighMark's HOP file so that Prodim could "SEE [T]HE CONVERSION," he sent a follow-up email in which he stated that "DAIRL AND [G]LEEN ARE TRYING TO KEEP THIS QUIET SO WE DON'T GET CUT OFF WITH [W]HAT WE[']RE USING RIGHT NOW," and asked that Prodim "KEEP US CONFIDENTIAL FOR NOW . . . [.]"  Krzeminski Decl., Ex. 18 at 2-3.  Dairl Johnson testified that the statements "[p]robably referred to HighMark."  *See id*. Ex. 13 at 77:22-79:9.  Additionally, in Prodim's responsive email, Prodim employee Marc Pustjens agreed to conceal the information as well.  *See id*. Ex. 18 at 1 ("And ofcourse [*sic*] we will keep u confidential!").

Because Defendants successfully concealed the disclosure of HighMark's HOP file, HighMark had neither a reason to be suspicious nor the means to uncover the facts underlying its current claims. *See West v. Great W. Power Co. of Cal.*, 36 Cal. App. 2d 403, 408 (Cal. App. 1940) ("'[H]e who practices bad

-11-

faith ought not to be permitted to invoke the doctrine of constructive or imputed notice in aid of his wrongdoing, unless negligence on the part of the injured party has supervened.'").   Accordingly, HighMark's claims accrued no earlier than January 2019.

### b.  <u>Whether HighMark Conducted An Investigation Is Irrelevant</u>

Defendants assert that HighMark's claims are time-barred because it did not investigate its claims and, therefore, cannot establish tolling of the limitations period.  D.I. 146-1 at 15:20-17:2.  But this argument misses the point—tolling is only necessary if the limitations period would have otherwise commenced.  And, under the trade secret misappropriation statutes and California's discovery rule, the limitations period only begins to run when (1) the plaintiff has reason to suspect the facts underlying the cause of action (i.e., inquiry notice) *and* (2) a reasonable investigation would confirm that suspicion (i.e., constructive notice). *See, e.g.*, *Alamar* (E.D. Cal. 1996) ("[W]hen there is reason to suspect that a trade secret has been misappropriated, and a reasonable investigation would produce facts sufficient to confirm this suspicion (and justify bringing suit), the limitations period begins, even though the plaintiff has not conducted such an investigation.").  In the present case, neither of these conditions was satisfied in 2011-2012.  *See* Sections III.A.2.III. A.2.a.i-III. A.2.a.iii., *supra*.

The cases Defendants cite are inapposite because they address circumstances where the party had reason to suspect the facts underlying the cause of action and avenues of investigation available that would have uncovered the necessary facts.  *See Memry Corp. v. Kentucky Oil Tech*., No. C-04-03843 RMW, 2007 WL 2746736, at *10-12 (N.D. Cal. Sept. 20, 2007); *Teledyne Risi, Inc. v. Martin-Baker Aircraft Co.*, Case No. CV 15-07936 SJO (GJSx), 2017 WL 9831402, at *5 (C.D. Cal. Sept. 7, 2017).  Furthermore, contrary to Defendants' assertion, *Memry Corporation,* does not stand for the proposition that

-12-

"[c]onducting a reasonable investigation is a prerequisite to tolling the statute of limitations." *See* D.I. 146-1 at 16:26-28 (interpreting *Memry Corp.* at *9-12).

## B.   Defendants Are Not Entitled To Summary Judgment On The Merits

### 1.   Material Facts Are Genuinely Disputed

The Court should also deny summary judgment because the parties genuinely dispute facts that are material to each of Highmark's trade secret misappropriation, breach of contract, and unfair competition claims.

### a.   A Reasonable Juror Could Find that Defendants Improperly Disclosed and Reverse Engineered HighMark's Source Code

Defendants argue that summary judgment should be granted with respect to HighMark's trade secret misappropriation claims and breach of contract claims because Defendants did not reverse engineer any technology relating to One-Cut™. *See* D.I. 146-1 at 17:13-18:20. HighMark disputes the conclusion that Defendants did not reverse engineer HighMark's technology relating to One-Cut™. In their Motion, Defendants ignore the most significant evidence in support of reverse engineering—namely, the Prodim Email, communications between Defendants and Prodim in late 2011, and the testimony from HighMark's technical expert regarding the striking similarities between Defendants' HOP files and HighMark's HOP files. As explained in HighMark's Motion, this evidence strongly supports the conclusion of reverse engineering. *See* D.I. 148-1 at 8:8-10:16.

Additionally, Defendants' oblique suggestion that reverse engineering is not technically feasible relies on a mischaracterization from the deposition testimony of Joe Fallon ("Fallon"), HighMark's Chief Technology Officer. *See* D.I. 146-1 at 17:21-26. First, as Highmark's counsel objected at the time, the line of questioning that elicited the cited testimony improperly seeks an expert opinion and is outside the scope of the deposition topics for which HighMark

-13-

agreed to provide a Fallon as a witness.  *See* D.I. 146-6 (Ex. F) at 261-263 (19:19-21:12).   Second, Fallon states that he "could not create *all* of the functionality of CADCode" from a HOP file (D.I. 146-6 (Ex. F) at 263 (21:6-12) (emphasis added); but, in paraphrasing this testimony, Defendants conveniently leave out the word "all."  *See* D.I. 146-1 at 17:21-26.  HighMark does not argue that Defendants were able to obtain every aspect of HighMark's source code from the HOP file.  Rather, as explained in more detail in Section III.B.1.2., *infra*, HOP files convey certain valuable information about the conversion process reflected in HighMark's source code.

Finally, Defendants continually assert that the Proliner measurement and HOP file generation solution they use could not have been the result reverse engineering, because it is licensed through Prodim and uses Vectorcam. D.I. 146-1 at 18:1-12.  Defendants further state that Prodim already had software to translate Proliner measurement data into HOP files prior to 2011, suggesting the absence of a need or motive to reverse engineer.   D.I. 146-1 at 18:8-12. Foremost, in support of these contentions Defendants put forth an expert witness who admitted to both lacking even a basic grasp of the underlying technology and to having a conflict of interest.  Krzeminski Decl., Ex. 60 at 18:5-9; Krzeminski Decl., Ex. 60 at 127:6-14.  Moreover, the Defendants still fail to account for or explain the shocking level of similarities between HOP files produced by HighMark, and HOP files produced by the Defendants.

In light of the evidence, and drawing all reasonable inferences in HighMark's favor, Defendants cannot establish the absence of a genuine dispute of material fact on this issue.

/ / /

/ / /

-14-

2.      **A Reasonable Juror Could Find that the One-Cut™ Source Code and HOP Files Are Trade Secrets**

Under CUTSA, a trade secret is defined as information that (1) "[d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use"; and (2) "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Cal. Civ. Code § 3426.1(d)(1)-(2). The DTSA sets forth similar requirements. *See* 18 U.S.C. § 1839(3)(A)-(B).

Defendants do not dispute that HighMark's One-Cut™ source code is a trade secret; Defendants only challenge the conclusion that the HOP files generated through HighMark's One-Cut™ technology are also trade secrets. D.I. 146-1 at 18:20-20:17. For the reasons set forth in HighMark's Motion, its One-Cut™ source code satisfies both requirements for trade secret protection under CUTSA and DTSA. D.I. 148-1 at 18:23-20:21. For the same reasons, HighMark's HOP files constitute trade secrets because they convey valuable information about the conversion process reflected in HighMark's source code. *See* Huisjen Decl., Ex. 9 at 7:4-9.

California courts have recognized that "the trade secret is not the idea or fact itself, but *information* tending to communicate (disclose) the idea or fact to another." *Altavion, Inc. v. Konica Minolta Sys., Lab., Inc.*, 226 Cal. App. 4th 26, 53–54 (Cal. App. 2014) (emphasis in original; internal quotation marks omitted). HighMark has presented expert testimony that HOP files communicate valuable information about the "adjustments made in the conversion process," i.e., the adjustments to the raw measurement data necessary to produce a replacement door that will actually fit the old door frame. Huisjen Decl., Ex. 9 at 7:4-13. Additionally, HOP files convey information about cutting techniques and the order of steps that "allow a door to be more quickly cut with fewer tool changes" and "reduce[] the risk of blowout and reduce[] risk of stress and breakage when

-15-

making later cuts." *Id*. at 7:7-24.  HighMark's HOP files, therefore, convey information that would allow one to "reverse engineer many of the valuable aspects of conversion and door cutting" contained in HighMark's One-Cut™ source code. *Id*. at 7:4-6.  Accordingly, HighMark's HOP files constitute trade secrets. *See ATS Prods., Inc., v. Champion Fiberglass, Inc.*, No. C 13-02403 SI, 2013 WL 6086924 at *3 (N.D. Cal. 2013) (trade secret acquisition can occur where a party acquires materials from which the trade secret can be reverse engineered).

In arguing that HighMark's HOP files are not trade secrets, Defendants rely on the propositions that (1) CadCode owned software executing the entire conversion process and (2) HOP files are publicly available. These arguments completely misconstrue the nature of HighMark's trade secrets and HOP files.

At best, Defendants' evidence shows that the trade secret status of HighMark's HOP files is the subject of a genuine dispute, which is not amenable to resolution at summary judgment.  As several courts have recognized, "the existence of a trade secret is not obvious; it requires an ad hoc evaluation of all the surrounding circumstances[,]" and therefore is "best 'resolved by a fact finder after full presentation of evidence from each side.'" *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 722-723 (7th Cir. 2003) (quoting *Lear Siegler, Inc. v. Ark–Ell Springs, Inc.,* 569 F.2d 286, 289 (5th Cir. 1978)).

### 3. A Reasonable Juror Could Find that Defendants Accessed CadCode's Server Following Winter's Resignation from HighMark

Defendants claim that they did not access CadCode to generate HOP files, because their Prodim/Vectorcam solution allowed them to generate HOP files. D.I. 146-1 at 21:1-2.  Of course, Defendants (1) cannot admit to accessing CadCode servers via misappropriated HighMark source code linked to CadCode servers and/or (2) may have done so inadvertently as a result of source code theft.

Whether Defendants presently use a different solution has no bearing on whether they accessed CadCode servers on the day in question (Feb. 5, 2016). As the evidence shows, despite producing thousands of HOP files from 2016 (and other years), Defendants failed to produce any HOP files from Feb. 5, 2016. Krzeminski Decl. at ¶ 52.  This coincides with a date when HighMark's CadCode server access was shut down as a result of late payment. Krzeminski Decl., Ex. 56. This evidence supports the theory that Defendants were using HighMark source code integrated with CadCode servers that was misappropriated by the Defendants. Defendants have not directly rebutted this theory, and instead rely on CadCode's assertion that all doors were generated using the same customer "key ID." D.I. 146-1 at p.20.  However, if Defendants stole HighMark source code, they would be in possession of HighMark's CadCode key ID. Krzeminski Decl., Ex. 16 at 155:5-24. If Defendants were in possession of HighMark's CadCode key ID, CadCode would likely have difficulty discerning a difference in access between the Plaintiff and Defendant when reviewing logs.  Krzeminski Decl., Ex. 16 at 155:5-24.  Moreover, any alternative explanation of the increased number of times CadCode's servers were access is undermined by the fact that the discrepancy did not arise prior to Winter's departure.   Fallon Decl. at ¶ 3. Therefore, a reasonable juror could find that Defendants accessed CadCode's server after Winter resigned from HighMark.

### 4.   A Reasonable Juror Could Find that Winter Disclosed Trade Secret and/or Confidential Information to Defendants

Defendants assert that Winter made efforts to be "ethical in all areas" before accepting a position with Casablanca. D.I. 146-1 at 21:14-15.  Winter making blanket statements of intent about ethics to his future employer hardly serves as evidence that he abided by such ethical principles in his practices with that employer especially when other evidence conveys his twofaced nature. Krzeminski Decl., Ex. 61.  Plaintiff had many reasons to believe Winter disclosed

trade secrets and/or confidential information to the defendants, ranging from an unreturned hard drive, to uncanny similarities between Plaintiff's and Defendants' HOP files, to lack of HOP file production from Defendants on the day Plaintiff's CadCode server access was shut down. *See* Sections III. B.3, *supra*, III. D, *infra.* When combined with Winter's stated intention to "bring the technology" in his letter of intent with Johnsons and the assignment of technical responsibilities such getting the "code" despite his expertise lying largely in the realm of sales, these facts more clearly point to the conclusions that Winter took source code with him to assist the new entity he was creating with the Johnsons. Krzeminski Decl., Ex. 25 at ¶ 2; *id*., Ex 50 at p. 4.

Moreover, Defendants' and Winter's explanation for his conduct at the time of departing HighMark (wiping his entire laptop hard drive because he saw his former employer mistakenly changed his personal credentials to company credentials) lacks credibility when one considers that Winter is a computer-savvy technical executive.   Thus, a reasonable juror could certainly find that Winter disclosed confidential information and trade secrets to the Defendants.

### 5. <u>Four Seasons is a Member of the Corporate Defendants Which Act Together as a Single Entity, and is Not Immune from DTSA Claims</u>

Defendants claim "Four Seasons has been non-operational since 2011 and there is no evidence to suggest Four Seasons improperly acquired, used, or disclosed Plaintiff's trade secrets after May 11, 2016." D.I. 146-1 at 22:6-9. However, Four Seasons was never dissolved and remains an operational business entity to date.  Krzeminski Decl., Ex. 13 at 34:15-22.  Furthermore, all Corporate Defendants act together as a single entity. For example, all three entities (IDCC, Casablanca, and Four Seasons) are owned by Dairl and Glenn Johnson. Krzeminski Decl., Ex. 17 at 54:6-55:11.  It is undisputed that IDCC is a "DBA" of both Four Seasons and Casablanca, and that the Johnsons routinely conduct

business under the name IDCC on behalf of both companies.  Krzeminski Decl., Ex. 58; D.I. 40 at pg. 3:17-20.  Dairl Johnson testified that IDCC is the "same [company]" as Four Seasons.  As California courts have recognized, "[t]he designation [DBA] means 'doing business as' but is merely descriptive of the person or corporation who does business under some other name. Doing business under another name does not create an entity distinct from the person operating the business." *Pinkerton's, Inc. v. Superior Ct.*, 49 Cal. App. 4th 1342, 1348 (1996) (emphasis in original).  Since Four Seasons is a member of the single entity Corporate Defendants who were all doing business as of the DTSA effective date, it is not immune from DTSA claims. Therefore, Four Seasons is not entitled to summary judgment in its favor for DTSA claims.

## 6.   Defendants Are Not Entitled to Summary Judgment on Trade Secret Misappropriation Claims

"Plaintiffs alleging trade secret misappropriation may prove such misappropriation by circumstantial as well as direct evidence." *UniRAM Tech., Inc. v. Taiwan Semiconductor Mfg. Co.*, 617 F. Supp. 2d 938, 944 (N.D. Cal. 2007) (citing *Droeger v. Welsh Sporting Goods Corp.*, 541 F.2d 790, 792 (9th Cir.1976)).  "It is well recognized with respect to trade secrets that: [m]isappropriation and misuse can rarely be proved by convincing direct evidence. In most cases plaintiffs must construct a web of perhaps ambiguous circumstantial evidence from which the trier of fact may draw inferences which convince him that it is more probable than not that what plaintiffs allege happened did in fact take place.  Against this often delicate construction of circumstantial evidence there frequently must be balanced defendants and defendants' witnesses who directly deny everything." *BladeRoom Grp. Ltd. v. Emerson Elec. Co.*, 331 F. Supp. 3d 977, 983–84 (N.D. Cal. 2018) (internal quotations and citations omitted)."  Defendants' assertions that HighMark has no evidence to support its trade secret claims are untrue.

-19-

Here, Plaintiff puts forth various Defendant emails, Plaintiff expert testimony, witness deposition testimony, and event-based timelines as evidence of trade secret misappropriation. Defendants fail to directly address most of Plaintiff's trade secret misappropriation evidence and/or fail to offer alternate explanations for the evidence in their motion for summary judgment. Minimally, there are clearly disputed material facts related to the trade secret misappropriation claim. Therefore, Defendants' motion for summary judgment on trade secret misappropriation claims should be denied.

**7.    Four Seasons Is Not Entitled to Summary Judgment on the Breach of Contract Claim**

Defendants do not appear to dispute that HighMark's HOP files constitute (i) "Files" under Section 1.6 of the Master Agreement and (ii) Confidential Information under Section 1 of the Confidentiality Agreement. Defendants do not dispute that HighMark's source code constitutes part of the "Licensed Applications" under Section 1.10 of the Master Agreement. Defendants do not dispute that, under the Master Agreement and Confidentiality Agreement, Four Seasons was prohibited from (i) disclosing HighMark's HOP file to a third party, such as Prodim; (ii) using HighMark's HOP file "as a component of or a base for products or services prepared for commercial, sale, sublicense, lease, access or distribution" (HMDI.0000096); (iii) using HighMark's HOP file "for developing competitive products of businesses" (HMDI.0000108); and (iv) reverse engineering HighMark's source code.

Defendants do not address the bulk of HighMark's evidence to support its argument that Defendants disclosed HighMark's HOP file to Prodim and orchestrated the reverse engineering of HighMark's source code. Resultantly, Defendants fail to meet their burden for obtaining summary judgment on the breach of contract claim.

/ / /

-20-

**8.** **Defendants Are Not Entitled to Summary Judgment on the Unfair Competition Claim**

A claim for unfair competition exists under California law where the defendant has committed "an unlawful, unfair, or fraudulent business act." Cal. Bus. & Prof. Code §§ 17200 et. seq. The disputed facts discussed above provide more than enough evidence for a reasonable juror to find that Defendants, in violation of California law and public policy, improperly obtained HighMark's confidential information from and utilized it to unfairly compete against HighMark. *See* Sect. III.B.1.d., *supra*.

HighMark acknowledges the likelihood that aspects of its unfair competition claim may be preempted by CUTSA. Without conceding the claims and in an effort to expedite disposition of this Motion, HighMark has decided to forgo full argument of its unfair competition claim, with the understanding that HighMark preserves those claims in the unlikely event that the confidential information underlying its unfair competition claims does not constitute a trade secret under CUTSA and DTSA. *See Manchester v. Sivantos GMBH*, Case No. 2:17-CV-05309-ODW (JEMx), 2018 WL 587849, *6 (C.D. Cal. Dec. 17, 2018) (allowing unfair competition claims to go forward after the trade secret status of the underlying confidential information was determined); *First Advantage Background Serv. Corp.  v. Private Eyes, Inc*., 569 F. Supp. 2d 929, 942 (N.D. Cal. 2009).

**C.** **David Winter Is Not Entitled To Summary Judgment On The Merits**

In support of Defendant David Winter's ("Winter") Motion for Summary Judgment, Defendants attempt to paint a picture of an angelic Winter partnering with competitive, but honest businessmen. However, upon closer examination, Winter's duplicitous nature and the Johnsons true character are revealed by Winter's own words when he refers to his now business partners as "scum-bags" a mere two years prior to joining forces with them. Krzeminski Decl., Ex. 61.

For this and many of the same reasons put forth in opposition to the entity Defendants' Motion for Summary Judgment above, Winter's Motion for Summary Judgment must also fail.

**D.    A Reasonable Juror Could Find That Winter Improperly Acquired, Disclosed Or Used Trade Secret Information**

Under CUTSA, a trade secret is defined as information that (1) "[d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use"; and (2) "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy."  Cal. Civ. Code § 3426.1(d)(1)-(2).  The DTSA sets forth similar requirements.  *See* 18 U.S.C. § 1839(3)(A)-(B).

Despite Defendants' contentions, to the contrary Plaintiff has put forth more than enough evidence for a reasonable juror to find that Winter took information that constituted trade secrets and used it to assist the entity defendants in the formation of a competing company.  As discussed above in Sect. III.B.1.b., *supra* a reasonable juror could find Plaintiff's One Cut™ system to be confidential and a trade secret.

As stated above in Sect. III.B.2. *supra*, proving trade secret misappropriation is no easy task.  Nonetheless, Plaintiffs have laid a trail of bread crumbs easy for jurors to follow.  There is no question that Winter, as an officer and director of HighMark, had access to the source code that made up Plaintiff's trade secret information.  Krzeminski Decl., Ex. 16 at 66:17-68:19, 89:1-91:1, 102:21-104:11, 132:16-134:5; 134:2-5; *id.* Ex. 7 at 93:1-16, 94:25-96:4.  Moreover, at the time of his departure Winter took hardware containing sensitive information from Plaintiffs.  Krzeminski Decl., Ex. 12 46:18-47:4, 50:4-51:13, 86:17-21; *id.* Ex. 14 225:25-226:7.  Upon receipt of the returned hardware a week to a week and a half after Winter departure Plaintiff determined Winters laptop hard drive had been wiped preventing any analysis as to what information was on

the computer or as to what may have been removed.  Krzeminski Decl., Ex. 49. Later signs that HighMark's source code had been taken arose both in the form of a discrepancy in the number of doors processed by CadCode servers and in later discovered similarities between Defendants' and Plaintiff's HOP files. Krzeminski Decl., Ex. 16 at 153:20-154:23; Huisjen Decl., Ex. 9, Sect. VII.C; Sect. III.B.1.c., *supra*.

While Defendants have attempted to throw cold water on evidence presented by Plaintiff their efforts have fallen flat.  They present evidence from an expert with a questionable understanding of the underlying technology. Krzeminski Decl., Ex. 60 at 18:5-9.  Moreover, their expert witness admits to having a conflict of interest having previously examined the laptop returned by Winter.   Krzeminski Decl., Ex. 60 at 127:6-14.   Finally, evidence of the discrepancy should have arisen prior to Winter's departure if it were not connected to his departure.  Fallon Decl. at ¶ 3.  For these reasons, a reasonable juror is able to find Winter improperly acquired, disclosed, and used trade secret information belonging to HighMark.

**E.   Defendant Is Not Entitled To Summary Judgment On Breach Of Contract Claims**

Winter fails to show that there is no genuine dispute of material fact with respect to Plaintiff's Breach of Contract Claims and therefore his Motion for Summary Judgment must fail.  In order to prove breach of contract Plaintiffs must show (1) the existence of a contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damage to the plaintiff.  *See Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).  Plaintiffs have provided ample evidence for a reasonable juror to conclude those elements are met.

/ / /

/ / /

1   **1.   A Reasonable Juror Could Find that Winter Disclosed**
2        **Confidential or Trade Secret Information Relating to Plaintiff**

3        Contrary to Winter's argument, Plaintiff has provided copious evidence
4   that Winter disclosed trade secret and confidential information to Defendants. As
5   discussed above, despite Winter's denial, it is clear that Winter had access to
6   Plaintiffs confidential and trade secret information.   *See* Sect. III.C.1 *supra*.
7   Moreover, he promised to "*bring the technology*" in his Letter of Intent to form
8   Casablanca with Glenn and Dairl Johnson.   *See* Krzeminski Decl., Ex. 25 at ¶ 2.
9   Additionally, he was charged with technical responsibilities such as getting
10  "code" despite his expertise being largely in the area of sales.   Krzeminski Decl.,
11  Ex 50 at p. 4.   Finally, the discrepancy in the number of HOP files processed by
12  CadCode's servers shows Winter provided Defendants with access to CadCode's
13  servers and at minimum presents a genuine dispute of material fact for the jury to
14  decide.   Matulia Opposition Decl. at ¶ 2; Krzeminski Decl., Ex. 16 at 153:20-
15  154:23; Fallon Decl. at ¶ 3.

16  **2.   A Reasonable Juror Could Find that Winter Otherwise**
17       **Breached the Employee Nondislcosure and Non-Solicitation**
         **Agreement**
18

19       In addition to showing Winter provided Defendants with trade secret and
20  confidential information, Plaintiff has provided ample evidence that Winter
21  breached his contractual duties in other ways.   Defendants' argument to the
22  contrary lacks merit.

23       Specifically, provision 10 of the Employee Nondisclosure, Assignment and
24  Non-Solicitation Agreement states "when my employment with company is over,
25  I will return all materials . . . containing or disclosing any Proprietary Information
26  . . . ." Krzeminksi Decl., Ex. 43.   Nonetheless, by his own admission, Winter
27  failed to return a laptop computer and hard drive containing confidential
28  / / /

information belonging to Plaintiffs.   Krzeminski Decl., Ex. 12 at 46:18-47:4, 50:4-51:13, 86:17-21; *id.* Ex. 14 225:25-226:7.

Additionally, by Defendants' own admission, David Winter worked towards an agreement that conflicted with his duties under the Employee Nondisclosure, Assignment and Non-Solicitation Agreement when he worked toward a Letter of Intent with the Johnsons.   D.I. 147-1 at 3:1-4; Krzeminski Decl., Ex. 43 at ¶ 11.

For these reasons, Plaintiff has provided enough evidence for a reasonable juror to find David Winter breached his contractual duties to HighMark.

**F.   Defendant Is Not Entitled To Summary Judgment On Plaintiff's Computer Data Access And Fraud Act Claim Against Winter**

Section 502 provides that a person who "knowingly accesses and without permission takes, copies, or makes use of any data from a computer, a computer system, or a computer network, or takes or copies any supporting documentation . . ." violates Cal. Penal Code § 502.   As laid out below, Plaintiffs have provided ample evidence for a reasonable juror to conclude Winter Violated the Computer Data Access and Fraud Act, therefore, Defendants are not entitled to summary judgment on the claim.

**1.   A Reasonable Juror Could Find that Winter Took and Used Confidential or Trade Secret Information Relating to Plaintiff**

Winter had access to the information, failed to return property containing confidential information upon his departure, and when he did return the property it had been wiped, hiding any activity he may have conducted.   *See* Sect. III.C.1 *supra*.   Additionally, prior to his departure Winter agreed to "bring the technology" to a new venture he was starting with Glenn and Dairl Johnson.   *See* Sect. III.C.2.a *supra*.   Subsequently, it was discovered that new entity had been accessing the same CadCode servers Plaintiffs.   Matulia Opposition Decl. at ¶ 2; Krzeminski Decl., Ex. 16 at 153:20-154:23.   Connecting the dots provides strong

-25-

support for the contention that Winter took and used confidential information relating to the plaintiff as a reasonable juror could easily conclude. At minimum, this evidence presents a genuine dispute as to material facts.

## G. Defendant Is Not Entitled To Summary Judgment On Plaintiff's Breach Of Fiduciary Duty Claims Against Winter

Once again, Defendants' arguments undermining Plaintiffs breach of fiduciary claims against Winter goes against clearly established California law and a reasonable juror could find that he violated his duties. Past California Courts have made clear that setting up a competing company while serving as a Director of a company is a clear violation of the fiduciary duties of that Director. *Sonista, Inc. v. Hsieh*, No. C 04-04080 RMW, 2005 WL 3113083, at *4 (N.D. Cal. Nov, 21, 2005) ("[a]ssisting in the creation of a rival to [the company] while still a [company] director and officer would be a clear-cut violation of [the officer's] fiduciary duties to the [company]"). Defendants admit Winter worked towards a letter of intent to establish a competing company while still at HighMark. D.I. 147-1 at 3:1-4.

Additionally, Winter breached his fiduciary duty when he took advantage of a corporate opportunity by pursuing increased market presence by setting up a competing company with the Johnsons instead of seeking to do so through HighMark in violation of California law. *See Block on behalf of Carrier Project, Inc. v. Maro Chermayeff, Carrier Project, Inc.*, Case No. 2:09-cv-01046 JHN-Ex, 2010 WL 11507602, at *4 (C.D. Cal. Aug. 16, 2010); *Robinson, Leatham & Nelson, Inc. v. Nelson*, 109 F.3d 1388, 1392 (9th Cir. 1997).

Finally, it has long been held "officers are . . . charged with a continuing duty to protect privileged and confidential information, which continues even after they leave the company." *Huston v. Imperial Credit Com. Mort. Inv. Corp.*, 179 F. Supp. 2d 1157, 1177 n.19 (C.D. Cal. 2001). Winter breached this duty

/ / /

when he took source code and other confidential information from Highmark and provided it to the Entity Defendants after his departure.  *See* Sect. III.C.1 *supra.*

The combination of these facts presented by Plaintiffs show Winter breached his fiduciary duty to HighMark and minimally that there is a genuine dispute of material facts as to whether he did, therefore, Winter's motion for Summary Judgment must fail.

1.      **Defendant is Not Entitled to Summary Judgment on Plaintiff's Unfair Competition Claim against Winter**

A claim for unfair competition exists under California law where the defendant has committed "an unlawful, unfair, or fraudulent business act."  Cal. Bus. & Prof. Code §§ 17200 et. seq.  The disputed facts discussed above provide more than enough evidence for a reasonable juror to find that Winter, in violation of California law and public policy, improperly obtained HighMark's confidential information from and utilized it to unfairly compete against HighMark.  *See* Sect. III.C.1 *supra.*

HighMark acknowledges the likelihood that aspects of its unfair competition claim may be preempted by CUTSA.  Without conceding the claims and in an effort to expedite disposition of this Motion, HighMark has decided to forgo full argument of its unfair competition claim, with the understanding that HighMark preserves those claims in the unlikely event that the confidential information underlying its unfair competition claims does not constitute a trade secret under CUTSA and DTSA.  *See Manchester*, 2018 WL 587849, *6 (allowing unfair competition claims to go forward until the trade secret status of the underlying confidential information was determined); *First Advantage*, 569 F. Supp. 2d at 942.

/ / /

/ / /

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, HighMark respectfully requests that the Court deny Defendants' Motion for Summary Judgment or Partial Summary Judgment.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: January 28, 2020          By:    *Thomas P. Krzeminski*
                                         Michael K. Friedland
                                         Thomas P. Krzeminski

                                         Attorneys for Plaintiff,
                                         HIGHMARK DIGITAL, INC.

31760365

-28-