Michael Friedland (State Bar No. 157,217)
michael.friedland@knobbe.com
Thomas P. Krzeminski (State Bar No. 213,714)
2tpk@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, 14th Floor
Irvine, CA 92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Plaintiff,
HIGHMARK DIGITAL, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| HIGHMARK DIGITAL, INC., a California corporation,<br><br>                              Plaintiff,<br><br>        v.<br><br>CASABLANCA DESIGN CENTERS, INC., a California corporation; FOUR SEASONS WINDOWS, INC., a California corporation; INTERIOR DOOR & CLOSET COMPANY, an unincorporated California company; ONE DAY DOORS AND CLOSETS, INC., a California corporation; DAVID WINTER, an individual; and ONE DAY ENTERPRISES, LLC, a Delaware company,<br><br>                              Defendants. | CASE NO.  2:18-cv-06105-GW-ASx<br><br>**PLAINTIFF HIGHMARK DIGITAL, INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>**Hon. George H. Wu**<br>**Magistrate Judge Alka Sagar**<br><br>**Pre-Trial Conf.:  September 9, 2021**<br>**Trial:  September 21, 2021** |

# TABLE OF CONTENTS

**Page No.**

I.      INTRODUCTION.................................................................................1

II.     THE PARTIES' CLAIMS AND DEFENSES (L.R. 16-4.1)................2

    A.      Summary of HighMark's Claims and Elements (L.R. 16-4.1(a), (b))..........................................................................2

    B.      Summary of Key Evidence in Support of Each of Plaintiff's Claims (L.R. 16-4.1(c))...............................9

    C.      Summary, Elements and Key Evidence in Opposition to Defendants' Counterclaims and Affirmative Defenses (L.R. 16-4.1(d)-(f)) ......................................14

III.    ANTICIPATED EVIDENTIARY ISSUES (L.R. 16-4.1 (I)).............19

IV.     ISSUES OF LAW (L.R. 16-4.1 (I)) ..............................................20

V.      BIFURCATION (L.R. 16-4.3) ......................................................20

VI.     JURY TRIAL (L.R. 16-4.4) ..........................................................20

    A.      Jury Issues ........................................................................20

    B.      Court Issues ......................................................................21

VII.    ATTORNEYS' FEES (L.R. 16-4.5) ..............................................21

VIII.   ABANDONMENT OF ISSUES (L.R. 16-4.6)................................21

# TABLE OF AUTHORITIES

**Page No(s).**

*Alamar Biosciences Inc. v. Difco Labs. Inc.*,
40 U.S.P.Q.2d 1437 (E.D. Cal. 1996) ...................................................... 16

*April Enters., Inc. v. KTTV*,
147 Cal. App. 3d 805 (Cal. App. 1983) ................................................... 16

*Broberg v. Guardian Life Ins. Co. of Am.*,
171 Cal. App. 4th 912 (Cal. App. 2009) .................................................. 16

*E-Fab, Inc. v. Accts., Inc. Servs.*,
153 Cal. App. 4th 1308 (2007) ................................................................ 17

*E.E.O.C. v. Timeless Investments, Inc.*,
734 F. Supp. 2d 1035 (E.D. Cal. 2010) ................................................... 19

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388, 126 S. Ct. 1837 (2006) ...................................................... 8

*Fladeboe v. Am. Isuzu Motors Inc.*,
150 Cal. App. 4th 42, 58 Cal. Rptr. 3d 225 (2007) ................................. 15

*Ross v. Morgan Stanley Smith Barney, LLC*,
2013 WL 1344831 (C.D. Cal. 2013) ......................................... 15, 18, 19

*Shouse v. Pierce Cty.*,
559 F.2d 1142 (9th Cir. 1977) ................................................................. 15

*Vogel v. Huntington Oaks Del. Partners, LLC*,
291 F.R.D. 438 (C.D. Cal. 2013) ............................................................ 14

*Waymo LLC v. Uber Techs., Inc.*,
No. C 17-00939 WHA, 2017 WL 2123560
(N.D. Cal. May 15, 2017) .......................................................................... 4

## OTHER AUTHORITIES

18 U.S.C. § 1836 ............................................................................. 2, 16

28 U.S.C. § 1331 ................................................................................... 2

28 U.S.C. § 1367 ................................................................................... 2

California Civil Code § 3426.3 ............................................................ 8

California Civil Code § 3426.4 ................................................ 9, 19, 21

California Civil Code § 3426.6 .......................................................... 16

1
2
3

# TABLE OF AUTHORITIES
## (*Cont'd*)

**Page No(s).**

California Civil Code § 1717................................................................9

California Civil Jury Instructions (2020 edition) § 303 ............................6, 7

California Civil Jury Instructions (2020 edition) § 350 .................................8

California Civil Jury Instructions (2020 edition) § 454 ...............................16

California Civil Jury Instructions (2020 edition) § 1812 ...............................5

California Civil Jury Instructions (2020 edition) § 3903 ...............................8

California Civil Jury Instructions (2020 edition) § 3945 ...............................9

California Civil Jury Instructions (2020 edition) § 4401 ...........................4, 5

California Civil Jury Instructions (2020 edition) § 4409 ..........................8, 9

California Civil Jury Instructions (2020 edition) § 4410 ...............................8

California Penal Code § 502.......................................................*passim*

California Uniform Trade Secret Act .............................................*passim*

Federal Defend Trade Secrets Act, 18 U.S.C. § 1836...........................*passim*

Local Rule 16-4 .............................................................................1

Local Rule 16-4.1 ..................................................................*passim*

Local Rule 16-4.3 .........................................................................20

Local Rule 16-4.4 .........................................................................20

Local Rule 16-4.5 .........................................................................21

Local Rule 16-4.6 .........................................................................21

Pursuant to Local Rule 16-4 and the Court's Standing Order, Plaintiff HighMark Digital, Inc. ("HighMark") respectfully submits the following Memorandum of Contentions of Fact and Law, addressing the contentions of the parties as regards the trial scheduled to commence of September 21, 2021.

## I. **INTRODUCTION**

This is an action for trade secret misappropriation and breach of contract brought by HighMark against a former licensee of HighMark's trade secret technology (and related companies) and HighMark's former President, and now competitor, Defendant David Winter.

HighMark and the Corporate Defendants directly compete against one another in the custom interior door replacement industry. The primary issue in this case is whether the Corporate Defendants and Defendant David Winter misappropriated HighMark's trade secret relating to its proprietary door-cutting technology. HighMark's trade secret technology is comprised of source code that converts three-dimensional measurements of an existing doorframe into custom door-cutting instructions ("HOP" files) readable by a specific type of woodcutting machine, known as a Holzher CNC machine. HighMark's trade secret includes the source code and the HOP files generated by the code. The evidence at trial will show that HighMark has invested over $1.5m designing and developing its trade secret technology over the past 10 years and has taken appropriate steps to maintain its secrecy.

HighMark also asserts breach of contract claims against Defendants Winter and Four Seasons. Winter, as former President of HighMark, and Four Seasons, a former licensee of HighMark's trade secret technology, both intentionally breached contractual duties of confidentiality to HighMark by improperly providing third parties access to HighMark's trade secret technology. Additionally, HighMark asserts a claim against Winter for violating Section 502 of the California Penal Code for destroying the data on the HighMark laptop to

conceal its contents from HighMark after he resigned from the company. Shortly after Winter departed and started competing against HighMark, a third-party cloud-service provider informed HighMark that it was seeing an unusually high number of door-cutting files being generated from HighMark's technology, giving HighMark reason to believe that its trade secret technology was being misappropriated by Winter and his new employer, triggering this lawsuit.

## II. THE PARTIES' CLAIMS AND DEFENSES (L.R. 16-4.1)

This is a civil action concerning trade secret misappropriation, breach of contract and destruction of corporate data by the respective Defendants. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367.

## A. Summary of HighMark's Claims and Elements (L.R. 16-4.1(a), (b))

HighMark's Second Amended Complaint alleges six claims for relief, which was reduced to four claims during summary judgment.[1]

**Claim 1:   Trade secret misappropriation under DTSA (against all Defendants except Four Seasons)**

Summary:   HighMark alleges all Defendants have violated the Federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq.* When licensing HighMark's trade secret software, Defendant Four Seasons violated its contractual obligations by sending a confidential HOP file generated by HighMark's technology to an overseas third party (Prodim International) for the purpose of improperly reverse engineering HighMark's technology. Four

---

[1] During the summary judgment phase, the Court granted summary judgment to Defendants on HighMark's unfair competition claim because it was preempted by the California Uniform Trade Secrets Act ("CUTSA"). D.I. 201 at 27. The Court granted summary judgment to Defendant Four Seasons on Defendants' DTSA claim because Four Seasons was not in business when the DTSA was enacted. *Id.* at 26. The Court also granted summary judgment to Defendant Winter on HighMark's breach of fiduciary duty and unfair competition claims, concluding those claims were preempted by CUTSA. *Id.* at 31; D.I. 208 (as corrected).

Seasons misappropriated HighMark's trade secret information by disclosing it to another (Prodim) after acquiring the information under circumstances giving rise to a duty to maintain its secrecy.  Prodim then reverse engineered HighMark's trade secret and provided it to Defendant Four Seasons.

Thereafter, the owners/operators of Four Seasons (Dairl and Glenn Johnson) disclosed and installed their reverse engineered HighMark software at other door replacement stores that the Johnsons own and operate (but which carry different names), including Defendants Casablanca Design Center, Inc., Interior Door & Closet Company, One Day Doors and Closets and One Day Enterprises, LLC.  By acquiring, installing and using the "fruit of the poisonous tree" sowed by Four Season's misappropriation, with full knowledge that it was acquired by improper means, Defendants Casablanca Design Center, Inc., Interior Door & Closet Company, One Day Doors and Closets and One Day Enterprises, LLC are also liable for misappropriation.

Later, in 2015, then-HighMark President David Winter began secretly working with HighMark's chief competitors, Dairl and Glenn Johnson. Specifically, Winter covertly conspired with Dairl and Glenn Johnson in emails, calls and face-to-face meetings in and around June 2015 to form a new entity that would compete directly against HighMark.  During this period, Dairl and Glenn Johnson sent Defendant Winter a "Letter of Intent" to memorialize their discussions about the new business.  In it, Glenn Johnson stated Winter would "bring the ***technology***, operations and operational experience" (emphasis added). The following week, Defendant Winter resigned from HighMark and refused to return his corporate-issued laptop when demanded to do so.  As President of HighMark, Defendant Winter had an electronic copy the source code for HighMark's door-cutting software.  After 7-10 days of refusing to turn over his HighMark laptop, Defendant Winter finally turned it over—but only after he had destroyed the computer's contents and wiped the hard drive multiple times.  As a

result of Winter's destruction of the computer's data, a forensic analysis of the laptop was inconclusive as to what Winter had secretly stored on that laptop and whether the laptop contained a copy of HighMark's source code for its technology.  A short time after Winter departed and started competing against HighMark, a third-party cloud-service provider informed HighMark that it was seeing an unusually high number of door-cutting files being generated from HighMark's technology—door-cutting files that far exceeded the number of new door orders HighMark received during that same period.

Elements:

1.      That Highmark owned the trade secret;

2.      That the information at issue was a trade secret at the time of the misappropriation;

3.      That Defendants improperly acquired, used, or disclosed the trade secret;

4.      That Highmark was harmed or Defendants were unjustly enriched; and

5.      That Defendants' acquisition, use, or disclosure was a substantial factor in causing Highmark's harm or Defendants to be unjustly enriched.

Source:    Judicial Council of California Civil Jury Instructions (2020 edition) § 4401.

**Claim 2:  Trade secret misappropriation against all Defendants under CUTSA**

Summary:    The elements of trade secret misappropriation under the California Uniform Trade Secret Act ("CUTSA") are essentially the same as those under the Federal Defend Trade Secrets Act ("DTSA").  *Waymo LLC v. Uber Techs., Inc.,* No. C 17-00939 WHA, 2017 WL 2123560, at *7 (N.D. Cal. May 15, 2017).  Because the operative facts and analysis are the same as for

-4-

Claim 1, HighMark incorporates by reference the "Summary" for Claim 1, above.

Elements:   Same as Claim 1, above.

Source:   Judicial Council of California Civil Jury Instructions (2020 edition) § 4401.

**Claim 3:   Violation of California Penal Code § 502, et seq. against Defendant David Winter**

Summary:   Defendant David Winter violated Penal Code § 502 by intentionally wiping and reformatting the hard drive for a HighMark corporate laptop in his possession when he resigned.   Winter's misconduct destroyed all information that was on the computer, making it impossible to track what HighMark data and/or files Winter removed, sent or stored elsewhere from the HighMark laptop.

Elements:

1.   That HighMark was the owner of the corporate laptop, including the data/files contained therein;

2.   That Winter knowingly deleted data and files from the corporate laptop; and

3.   That Winter's deletion of the data and files from the corporate laptop was without HighMark's permission.

Source:   Judicial Council of California Civil Jury Instructions (2020 edition) § 1812.

**Claim 4(a):   Breach of contract against Defendant David Winter**

Summary:   Defendant Winter was bound by an employment agreement with HighMark.   Under that agreement, Winter was strictly prohibited from engaging in other employment or any other conduct in direct conflict with HighMark's business.   The agreement also prohibited him from disclosing HighMark's trade secret and/or confidential information to third parties.   Winter breached the agreement by secretly working with HighMark's competitors to

create a new competitor to HighMark while Winter was still employed as HighMark's President.   Winter also breached the agreement by sharing HighMark's trade secret technology and other confidential information with the Corporate Defendants.

Elements:

1.   That Highmark and David Winter entered into a contract;

2.   That Highmark did all, or substantially all, of the significant things that the contract required it to do;

3.   That David Winter did something that the contract prohibited him from doing;

4.   That Highmark was harmed; and

5.   That David Winter's breach of contract was a substantial factor in causing Highmark's harm.

Source:   Judicial Council of California Civil Jury Instructions (2020 edition) § 303.

**Claim 4(b):  Breach of contract against Defendant Four Seasons**

Summary:   Defendant Four Seasons was an authorized licensee of HighMark's trade secret software.   Four Seasons' license was memorialized in a duly executed Master Agreement between HighMark and Four Seasons.   The Master Agreement contained confidentiality provisions that barred Four Seasons from making any unauthorized disclosures of HighMark's trade secret technology and/or confidential information, either during or after the term of the agreement. The Master Agreement also barred Four Seasons from sublicensing HighMark's technology or confidential information to others.   Four Seasons violated the Master Agreement by having its employee (Mike MacGilvray), an employee of the Corporate Defendants, email a third party (Prodim) asking it to reverse engineer HighMark's technology from a confidential and trade secret output (HOP) file produced by HighMark's trade secret technology.   The Corporate

-6-

Defendants were fully aware that sending HighMark's confidential and trade secret files to a third party for purpose of reverse engineering breached the Master Agreement with HighMark.

<u>Elements</u>:

1.    That Highmark and Four Seasons entered into a contract;

2.    That Highmark did all, or substantially all, of the significant things that the contract required it to do;

3.    That Four Seasons did something that the contract prohibited it from doing;

4.    That Highmark was harmed; and

5.    That Four Season's breach of contract was a substantial factor in causing Highmark's harm.

<u>Source</u>:   Judicial Council of California Civil Jury Instructions (2020 edition) § 303.

**Prayer for Relief**

<u>Summary</u>:   HighMark seeks a permanent injunction restraining and enjoining Defendants from using, selling, disclosing, reverse engineering or otherwise disseminating HighMark's trade secret technology.   HighMark also seeks restitution, compensatory damages (including unjust enrichment and/or compulsory royalties), punitive and exemplary damages.   HighMark requests that Defendants' misappropriation, Winter's breach of contract and Four Seasons' breach of contract be declared willful, malicious, oppressive and done knowingly. HighMark also requests that Defendants be directed to file with the Court and serve on HighMark within thirty (30) days after the injunction is ordered, a written report, under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction. HighMark further seeks an award of attorneys' fees to HighMark in view of the attorney-fee provision in the Master Agreement and the willful nature of Defendants' conduct  Finally, HighMark

seeks an order imposing constructive trust, and such other relief as this Court may deem just and proper.

Elements:

Permanent injunction:  (1) irreparable harm to HighMark; (2) remedies at law inadequate to compensate for that injury; (3) considering the balancing of hardships between HighMark and Defendants, a remedy is warranted; and (4) the public interest would not be disserved if injunction issued.  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S. Ct. 1837, 1839 (2006).

Trade secret misappropriation damages:  If HighMark proves that Defendants misappropriated its trade secret, then Highmark is entitled to recover damages if the misappropriation caused HighMark to suffer an actual loss or Defendants to be unjustly enriched.  Source:  Judicial Council of California Civil Jury Instructions (2020 edition) § 4409.

Breach of contract damages:  The purpose of damages for breach of contract is to put HighMark in as good a position as it would have been if Defendants has performed as promised per the contract.  Judicial Council of California Civil Jury Instructions (2020 edition) § 350 (2020).

Exemplary damages:  If willful and malicious misappropriation exists, the Court may award exemplary damages in an amount not exceeding twice any award of reasonable royalty, or compensatory or unjust enrichment damages.  Source:  California Civil Code § 3426.3(c) (2020).

Unjust enrichment:  Defendants were unjustly enriched if their misappropriation of HighMark's trade secret caused Defendants to receive a benefit that they otherwise would not have achieved.  Source:  Judicial Council of California Civil Jury Instructions (2020 edition) § 4410.

Lost profits:  To recover damages for lost profits, HighMark must prove it is reasonably certain it would have earned profits but for Defendants' conduct.  Judicial Council of California Civil Jury Instructions (2020 edition) § 3903.

1  <u>Attorneys' fees pursuant to attorney fee provision</u>:  To recover attorneys'
2  fees based on the attorney fee provision in the parties' Master Agreement,
3  HighMark must prevail on its breach of contract claim relating to that agreement.
4  <u>Source</u>:  California Civil Code § 1717 (2020).

5  <u>Attorneys' fees due to Defendants' outrageousness conduct</u>:  An award of
6  attorneys' fees to HighMark is proper if Defendants' misappropriation was
7  willful and malicious.  Cal. Civ. Code § 3426.4.

8  <u>Reasonable royalty</u>:  If Defendants' misappropriation did not cause
9  HighMark to suffer an actual loss or Defendants to be unjustly enriched,
10  HighMark may still be entitled to a reasonable royalty for no longer than the
11  period of time the use could have been prohibited.  <u>Source</u>:  Judicial Council of
12  California Civil Jury Instructions (2020 edition) § 4409.

13  <u>Punitive damages</u>:  That the conduct constituting malice, oppression, or
14  fraud was committed by one or more officers, directors, or managing agents of
15  Defendants; or, that the conduct constituting malice, oppression, or fraud was
16  authorized by one or more officers, directors, or managing agents of Defendants;
17  or, that one or more officers, directors, or managing agents of Defendants knew
18  of the conduct constituting malice, oppression, or fraud and adopted or approved
19  that conduct after it occurred.  <u>Source</u>:  Judicial Council of California Civil Jury
20  Instructions (2020 edition) § 3945.

21  **B.**   **<u>Summary of Key Evidence in Support of Each of Plaintiff's Claims</u>**
22      **<u>(L.R. 16-4.1(c))</u>**
23      **Claim 1:  Trade secret misappropriation under DTSA (against all**
24      **Defendants except Four Seasons)**

25  In addition to the evidence referenced in the above "Summary" section for
26  this claim, HighMark will introduce the following categories of evidence
27  establishing that Defendants misappropriated HighMark's trade secret technology
28  for cutting custom replacement doors:

- Evidence and testimony from Richard Matulia, Joseph Fallon and HighMark's technical expert showing that HighMark's technology constitutes a "trade secret"

- Evidence and testimony from Richard Matulia, Joseph Fallon and HighMark's technical expert showing the time, expense, complexity of developing HighMark's trade secret technology, and the steps HighMark takes to safeguard their trade secret

- Evidence and testimony from Richard Matulia, HighMark's technical expert, Defendant Winter, Dairl Johnson and Glenn Johnson regarding the Defendants' contractual obligations to strictly maintain the confidentiality of HighMark's trade secret technology

- Evidence and testimony from Dairl Johnson, Glenn Johnson and HighMark's technical expert showing that Defendants secretly emailed a copy of HighMark's confidential HOP files to a third party (Prodim) with a request that the third party reverse engineer HighMark's software, without HighMark's permission

- Evidence and testimony from Dairl Johnson, Glenn Johnson and HighMark's technical expert showing that, after Prodim delivered the unauthorized reverse engineered software to Defendants, that Defendants repeatedly told Prodim that the software was not similar enough to HighMark's software and that Prodim had promised Defendants the software would be equivalent to HighMark's

- Evidence and testimony from Defendant Winter, Dairl Johnson, Glenn Johnson and HighMark's technical expert demonstrating that the owners and operators of Defendant Four Seasons used and shared the unauthorized reverse engineered software with the other Corporate Defendants that they own and run as a joint enterprise

- Evidence and testimony from Richard Matulia, HighMark's

technical expert, Defendant David Winter, Dairl Johnson and Glenn Johnson that Defendant Winter had access and possession of the source code for HighMark's trade secret technology when he was President of HighMark; that Winter was secretly working with competitors to form a new company that would compete directly against HighMark while he was still serving as President of HighMark; that Defendants wrote a "Letter of Intent" to Winter to review their arrangement; that the "Letter of Intent" to Winter said that Winter would "bring the technology" to the new enterprise, even though Winter is a business man with no technical training or background; that when Winter finally resigned from HighMark, we refused to turn over his HighMark corporate laptop as required; that Winter improperly kept the HighMark corporate laptop for 7-10 days only to repeatedly wipe the HighMark laptop to make it impossible for a forensics analysis to show what information Winter had on the laptop and whether he transmitted the information to others or saved it on another device.

- Evidence and testimony from HighMark's technical expert regarding his analysis and opinions regarding whether Defendants misappropriated HighMark's trade secret technology

- Evidence and testimony from Richard Matulia and HighMark's damages expert regarding irreparable harm, and damages due, to HighMark in connection with this claim

**Claim 2:  Trade secret misappropriation against all Defendants under CUTSA**

Because the elements of trade secret misappropriation under CUTSA are essentially the same as those under the DTSA, HighMark will rely upon the same evidence to support both claims.  Accordingly, HighMark hereby incorporates by reference the "Key Evidence" cited above for Claim 1.

**Claim 3:  Violation of California Penal Code § 502, et seq. against Defendant David Winter**

In addition to the evidence referenced in the above "Summary" section for this claim, HighMark will introduce the following categories of evidence establishing that Defendant Winter HighMark's violated Penal Code § 502 by destroying the files and contents of HighMark's corporate laptop before returning the computer to HighMark:

- Evidence and testimony from Richard Matulia and Defendant Winter regarding Winter's intentional destruction of all data and files on the HighMark corporate laptop that he refused to turn-over upon his resignation

- Evidence and testimony from a computer forensics consultant whose firm conducted the forensics analysis of the HighMark laptop at issue after Winter destroyed its contents

- Evidence and testimony from Richard Matulia and HighMark's damages expert regarding damages due to HighMark in connection with this claim

**Claim 4(a):  Breach of contract against Defendant David Winter**

In addition to the evidence referenced in the above "Summary" section for this claim, HighMark will introduce the following categories of evidence establishing that Defendant Winter breached his employment contract with HighMark:

- Evidence and testimony from Richard Matulia regarding Winter's employment contract and its obligations and restrictions

- Evidence and testimony from Richard Matulia and Defendant Winter regarding Winter's intentional destruction of all data and files on the HighMark corporate laptop that he refused to turn-over upon his resignation

- Evidence and testimony from a computer forensics consultant that analyzed the HighMark laptop after Winter destroyed its contents

- Evidence and testimony from HighMark employees, Defendant Winter, Dairl Johnson and Glenn Johnson that, while still President of HighMark,

Winter was texting, emailing, calling and having face-to-face communications with the owners/operators of the Corporate Defendants (Dairl and Glenn Johnson) to set up a new competitor to HighMark, and that Winter would "bring the technology" to the new business

- Evidence and testimony from Richard Matulia and HighMark's damages expert regarding irreparable harm, and damages due, to HighMark in connection with this claim

**Claim 4(b):  Breach of contract against Defendant Four Seasons**

In addition to the evidence referenced in the above "Summary" section for this claim, HighMark will introduce the following categories of evidence establishing that Defendant Four Seasons breached its Master Agreement with HighMark:

- Evidence and testimony from Richard Matulia regarding the Master Agreement between HighMark and Four Seasons, including contract language prohibiting Four Seasons from disclosing HighMark's confidential and trade secret information to any third parties or attempting to reverse engineer HighMark's technology

- Evidence and testimony from Dairl Johnson, Glenn Johnson and Mike MacGilvray showing that Defendants secretly emailed a copy of one of HighMark's HOP files to a third party (Prodim) with a request that the third party reverse engineer HighMark's software without permission

- Evidence and testimony from Dairl Johnson, Glenn Johnson and Mike MacGilvray showing, after Prodim delivered the unauthorized reverse engineered software to Defendants, that Defendants repeatedly told Prodim that the software was not close enough to HighMark's software and that Prodim had promised Defendants the software would be equivalent to HighMark's

- Evidence and testimony from Dairl Johnson, Glenn Johnson and Mike MacGilvray showing the owners and operators of Defendant Four Seasons

-13-

used and shared the software that was improperly reverse engineered from HighMark's HOP file with the other Corporate Defendants that they own and operate as a joint enterprise

- Evidence and testimony from Richard Matulia and HighMark's damages expert regarding irreparable harm, and damages due, to HighMark in connection with this claim

## C. Summary, Elements and Key Evidence in Opposition to Defendants' Counterclaims and Affirmative Defenses (L.R. 16-4.1(d)-(f))

**No counterclaims remain in the case.** On July 8, 2019, the Court dismissed with prejudice Defendants' sole counterclaim against HighMark. D.I. 85.

Defendants assert the following sixteen "affirmative defenses" in their Amended Answer: (1) failure to state a claim; (2) full performance of obligations; (3) unclean hands and laches; (4) res judicata, collateral estoppel, issue preclusion and judicial estoppel; (5) failure to state a claim (repeated); (6) statute of limitations; (7) failure to exhaust administrative remedies; (8) lack of standing; (9) contract void; (10) lack of "trade secrets"; (11) "any and all defenses" in CUTSA; (12) "any and all defenses" in DTSA; (13) requirement to arbitrate; (14) failure to state a claim for attorneys' fees; (15) lack of standing (again); and (16) reservation of additional defenses. *See generally* D.I. 35 (Answer); D.I. 61 (Amended Answer by One Day Enterprises, LLC).

**First, Fifth and Fourteenth Affirmative Defenses: Failure to State a Claim**

<u>Summary</u>: "[F]ailure to state a claim is not an affirmative defense; it is a defect in a plaintiff's claim and not an additional set of facts that would bar recovery notwithstanding the plaintiff's valid prima facie case." *Vogel v. Huntington Oaks Del. Partners, LLC*, 291 F.R.D. 438, 442 (C.D. Cal. 2013). "This allegation asserts a defect in [plaintiff's] case and should properly be

1    brought as a motion to dismiss."  *Ross v. Morgan Stanley Smith Barney, LLC*,
2    2013 WL 1344831, *3 (C.D. Cal. 2013).  Because this is not a cognizable
3    affirmative defense, there are no elements or evidence to identify individually.

4                **Second Affirmative Defense:  Full Performance**

5        Summary:  Defendants assert an "affirmative defense" of having
6    "completely and fully performed, satisfied and discharged any and all obligations
7    and legal duties arising out of the matters alleged in the Complaint."  In this
8    affirmative defense, Defendants assert that they did not breach any contractual or
9    legal duties owed to HighMark.  This is not an affirmative defense.  "This
10   allegation asserts a defect in [plaintiff's] case and should properly be brought as a
11   motion to dismiss."  *Ross v. Morgan Stanley Smith Barney, LLC*, 2013 WL
12   1344831, *3 (C.D. Cal. 2013).  Further, Defendants appear to have abandoned
13   this defense by failing to assert it in their opposition to HighMark's motion for
14   summary judgment on all its claims.

15              **Third Affirmative Defense:  Unclean hands and laches**

16       Summary:  Defendants contend that HighMark's claims are barred by
17   unclean hands and laches.  Defendants appear to have abandoned these defenses
18   by failing to rely upon them when opposing HighMark's motion for summary
19   judgment on all claims.  Instead, Defendants only pursued a statute of limitations
20   defense.

21       When a plaintiff files suit before the applicable statute of limitations
22   expires, there is a strong presumption that laches is inapplicable.  *Shouse v.*
23   *Pierce Cty.*, 559 F.2d 1142, 1147 (9th Cir. 1977) ("It is extremely rare for laches
24   to be effectively invoked when a plaintiff has filed his action before limitations in
25   an analogous action at law has run.").  "The doctrine of unclean hands requires
26   unconscionable, bad faith, or inequitable conduct by the plaintiff in connection
27   with the matter in controversy."  *Fladeboe v. Am. Isuzu Motors Inc.*, 150 Cal.
28   App. 4th 42, 56, 58 Cal. Rptr. 3d 225 (2007).  Because Defendants have not

pursued an unclean hands affirmative defense, it is unclear what Defendants' argument is on this issue, if preserved.

**Fourth Affirmative Defense:  Res judicata, collateral estoppel, issue preclusion and judicial estoppel**

Summary:  Defendants assert an affirmative defense that HighMark's entire Complaint, and every claim made therein, is barred by the defenses of res judicata, collateral estoppel, issue preclusion and judicial estoppel.  Defendants, however, never elaborated on this assertion, nor have they pursued this affirmative defense in the litigation.  Further, Defendants appear to have abandoned this defense by failing to assert it in their opposition to HighMark's motion for summary judgment on all its claims.

**Sixth Affirmative Defense:  Statute of Limitations**

Summary:  Defendants contend that certain claims are barred by the applicable statute of limitations.

Elements:  Defendants must show by a preponderance of the evidence that HighMark's claimed harm occurred before the applicable statute of limitation.  Source:  Judicial Council of California Civil Jury Instructions (2020 edition) § 454.

The statute of limitations begins to run once the misappropriation "is discovered or by the exercise of reasonable diligence should have been discovered."  *See* Cal. Civ. Code § 3426.6; 18 U.S.C. § 1836.  Likewise, under California's discovery rule, the limitations period for breach of contract and unfair competition claims begins to run once a plaintiff actually discovers or reasonably should have discovered the wrongful conduct.  *April Enters., Inc. v. KTTV*, 147 Cal. App. 3d 805, 832 (Cal. App. 1983); *Broberg v. Guardian Life Ins. Co. of Am.*, 171 Cal. App. 4th 912, 920-21 (Cal. App. 2009).  A plaintiff discovers a cause of action "when the plaintiff has actual or constructive notice of the facts giving rise to the claim."  *Alamar Biosciences Inc. v. Difco Labs. Inc.*,

40 U.S.P.Q.2d 1437, 1438 (E.D. Cal. 1996).  A plaintiff is deemed to have constructive notice of "all facts that a reasonable inquiry would disclose" once the plaintiff becomes aware of "circumstances sufficient to put a prudent man upon inquiry[.]"  *E-Fab, Inc. v. Accts., Inc. Servs.*, 153 Cal. App. 4th 1308, 1319, (2007).

Key Evidence in Opposition:  Defendants have failed to identify any evidence proving that HighMark had knowledge (or even suspicion) of any specific harm by the Defendants sufficient to trigger any applicable statute of limitations.  *See generally* D.I. 164 at 2-13 (HighMark's Opp'n Summ. J.) (setting forth HighMark's evidence rebutting Defendants' statute of limitations affirmative defense) (incorporated herein by reference).

**Seventh Affirmative Defense:   Failure to Exhaust Administrative Remedies**

Summary:   Defendants allege that HighMark's claims are barred because HighMark somehow failed to exhaust appropriate administrative remedies. Defendants, however, fail to identify what administrative proceedings or remedies would be applicable to this trade secret/breach of contract dispute. Because HighMark has no notice of the basis for this defense, there is nothing for HighMark to rebut.  Further, Defendants appear to have abandoned this defense by failing to assert it in their opposition to HighMark's motion for summary judgment on all its claims.

**Eighth and Fifteenth Affirmative Defenses:  Lack of standing**

Summary:   Defendants contend that HighMark lacks standing to bring this action,.  Defendants, however, never elaborated on this assertion, nor have they pursued this affirmative defense in the litigation.   Further, Defendants appear to have abandoned this defense by failing to assert it in their opposition to HighMark's motion for summary judgment on all its claims.

**Ninth Affirmative Defense:  Contract void**

-17-

Summary:   Defendants purport to assert an affirmative defense relating to the contracts at issue being void.  Defendants, however, never elaborated on this assertion, nor have they pursued this defense in the litigation.  Defendants have failed to allege any basis for why the contracts at issue would be void.  This is not an affirmative defense.  "This allegation asserts a defect in [plaintiff's] case and should properly be brought as a motion to dismiss."  *Ross v. Morgan Stanley Smith Barney, LLC*, 2013 WL 1344831, *3 (C.D. Cal. 2013).   Further, Defendants appear to have abandoned this defense by failing to assert it in their opposition to HighMark's motion for summary judgment on all its claims.

**Tenth Affirmative Defense:  Lack of "trade secrets"**

Summary:   This is not an affirmative defense.  "This allegation asserts a defect in [plaintiff's] case and should properly be brought as a motion to dismiss."  *Ross v. Morgan Stanley Smith Barney, LLC*, 2013 WL 1344831, *3 (C.D. Cal. 2013).  Because this is not a cognizable affirmative defense, there are no elements or evidence to identify individually.

**Eleventh Affirmative Defense:  "Any and all defenses" in CUTSA**

Summary:   This is not an affirmative defense.  Defendants have not identified any specific defenses in CUTSA that they intend to rely upon at trial.  Because this is not a cognizable affirmative defense, there are no elements or evidence to identify individually.

**Twelfth Affirmative Defense:  "Any and all defenses" in DTSA**

Summary:   This is not an affirmative defense.  Defendants have not identified any specific defenses in DTSA that they intend to rely upon at trial.  Because this is not a cognizable affirmative defense, there are no elements or evidence to identify individually.

**Thirteenth Affirmative Defense:  Requirement to arbitrate**

Summary:   Defendants purport to assert an affirmative defense that the parties were required to arbitrate their dispute.  Defendants, however, never

pursued this issue in the litigation.  Defendants never identified to HighMark which agreement between the parties contained an alleged arbitration clause, or which particular issue(s) in the case were required to be arbitrated.  Further, Defendants appear to have abandoned this defense by failing to assert it in their opposition to HighMark's motion for summary judgment on all its claims.

**Fifteenth Affirmative Defense:  Failure to state a claim for attorneys' fees**

Summary:   Defendants purport to assert an affirmative defense for failure to state a claim for attorneys' fees.  This is not an affirmative defense.  "This allegation asserts a defect in [plaintiff's] case and should properly be brought as a motion to dismiss."  *Ross v. Morgan Stanley Smith Barney, LLC*, 2013 WL 1344831, *3 (C.D. Cal. 2013).  Further, Section 10.8 of the HighMark's Master Agreement with Defendant Four Seasons provides:  "The prevailing party shall be entitled to attorneys' fees and its litigation or related expenses in any suit or proceeding with respect to the subject matter of this Agreement or arising out of or related to it, or to interpret or enforce this Agreement."  HighMark also seeks the recovery of its attorneys' fees because Defendants' misappropriation was willful and malicious.  Cal. Civ. Code § 3426.4.

**Sixteenth Affirmative Defense:  Reservation of other defenses**

Summary:   The mere " 'reservation of affirmative defenses' is not an affirmative defense."  *E.E.O.C. v. Timeless Investments, Inc.*, 734 F. Supp. 2d 1035, 1055 (E.D. Cal. 2010).   Parties cannot reserve additional affirmative defenses outside the pleadings.

**III.  ANTICIPATED EVIDENTIARY ISSUES (L.R. 16-4.1 (i))**

HighMark is filing a motion *in limine* requesting that Defendants be precluded from offering any evidence or argument at trial relating to a prior administrative proceeding between HighMark and Defendant Winter before the California Labor Board.  The Labor Board proceedings are irrelevant to the issues

for trial.  Introduction of those proceedings would unfairly prejudice HighMark before the jury, cause the jury to be confused as to issues before it and likely cause the jury to be misled into believing the result of the Labor Board proceedings is somehow relevant to how this case should be decided (which it is not).  *See* HighMark's Motion *in Limine* (filed concurrently herewith).

## IV.  ISSUES OF LAW (L.R. 16-4.1 (i))

HighMark is not aware of any issues of law that remain in dispute.

## V.  BIFURCATION (L.R. 16-4.3)

Bifurcation is not proper, in view of the limited number of claims for relief presented and the substantial overlap of facts across issues those claims for relief.

On June 16, 2020, Defendants moved to bifurcate their statute of limitations defense from the other issues in the case.  D.I. 216.  HighMark opposed.  D.I. 213.  On July 16, 2020, the Court denied Defendants' bifurcation.  D.I. 216.  In its Minutes Order, the Court provided the following reasons for rejecting bifurcation of the statute of limitations issue:   (1) the statute of limitations defense does not apply to all claims; (2) a factual background presentation would be necessary for both trials, duplicating efforts and would lead to minimal time and efficiency savings, if any; and (3) empaneling even a single jury will be taxing on society and the judicial system given the ongoing Covid pandemic.  In view of the Court's Minute Order and the ongoing Covid pandemic, bifurcation remains improper.

## VI.  JURY TRIAL (L.R. 16-4.4)

HighMark made a timely jury demand together with its Second Amended Complaint filed on March 21, 2019 (D.I. 56) as to all claims and issues so triable.

A.  **Jury Issues**

       1.  Whether Defendants misappropriated HighMark's trade secret technology

       2.  Whether Defendant Winter violated Penal Code § 502

3.     Whether Defendant Four Seasons breached the Master Agreement with HighMark

4.     Whether Defendant Winter breached his employment agreement with HighMark

5.     Statute of limitations

6.     Damages (including attorneys' fees pursuant to the parties' Master Agreement)

**B.**   **Court Issues**

1.     Unclean hands (if preserved)

2.     Laches (if preserved)

3.     Injunctive relief

4.     Attorneys' fees

## VII.  **ATTORNEYS' FEES (L.R. 16-4.5)**

HighMark seeks the recovery of its attorneys' fees pursuant to Section 10.8 of the Master Agreement between the parties, which provides: "The prevailing party shall be entitled to attorneys' fees and its litigation or related expenses in any suit or proceeding with respect to the subject matter of this Agreement or arising out of or related to it, or to interpret or enforce this Agreement."

HighMark also seeks the recovery of its attorneys' fees because Defendants' conduct was willful and malicious. Cal. Civ. Code § 3426.4.

## VIII.  **ABANDONMENT OF ISSUES (L.R. 16-4.6)**

HighMark has not abandoned any claims.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  August 26, 2021     By: */s/ Thomas P. Krzeminski*
                                Michael K. Friedland
                                Thomas P. Krzeminski

                                Attorneys for Plaintiff,
                                HIGHMARK DIGITAL, INC.