# EXHIBIT A

STATE OF CALIFORNIA
DEPARTMENT OF INDUSTRIAL RELATIONS
DIVISION OF LABOR STANDARDS ENFORCEMENT

## CERTIFICATION OF SERVICE BY MAIL
## (C.C.P. 1013A) OR CERTIFIED MAIL

I, _____Kerry Lewis_____, do hereby certify that I am a resident of or employed in the County
of _____Sacramento_____, over 18 years of age, not a party to the within action, and that I am
employed at and my business address is:

**LABOR COMMISSIONER, STATE OF CALIFORNIA**
**2031 Howe Avenue, Suite 100**
**Sacramento, CA 95825**
**Tel: (916) 263-2841   Fax: (916) 263-2853**

I am readily familiar with the business practice of my place of business for collection and processing
of correspondence for mailing with the United States Postal Service. Correspondence so collected
and processed is deposited with the United States Postal Service that same day in the ordinary course
of business.

On _____June 13, 2016_____ at my place of business, a copy of the following document(s):

**Order, Decision or Award**

was(were) placed for deposit in the United States Postal Service in a sealed envelope, by
first class mail_____, with postage fully prepaid, addressed to:

NOTICE TO:   **Richard Matulia, an individual**
1751 Aviation Boulevard, Suite 200
Lincoln, CA  95648

and that envelope was placed for collection and mailing on that date following ordinary
business practices.

*I certify under penalty of perjury that the foregoing is true and correct.*

Executed on: _____June 13, 2016_____ at _____Sacramento_____, California

STATE CASE NUMBER:   08-76615 A CM

*Kerry Lewis*
Kerry Lewis

DLSE 544/DEF. #1  (3/06)         CERTIFICATION OF MAILING         L.C. 98
**EXHIBIT A**

-2-

| LABOR COMMISSIONER, STATE OF CALIFORNIA<br>Department of Industrial Relations<br>Division of Labor Standards Enforcement<br>2031 Howe Avenue, Suite 100<br>Sacramento, CA 95825<br>Tel: (916) 263-2841   Fax: (916) 263-2853 | For Court Use Only: |
|---|---|
| Plaintiff:   David Winter | |
| | Court Number |
| Defendant:   HIGHMARK DIGITAL, INC., a California corporation, GRAND MARK SOLUTIONS, INC., a California corporation, each jointly and severally liable | |

| State Case Number<br>08 - 76615 CM | ORDER, DECISION OR AWARD OF THE LABOR COMMISSIONER |
|---|---|

1. The above-entitled matter came on for hearing before the Labor Commissioner of the State of California as follows:

**DATE: May 27, 2016**   ☐ **CONTINUED TO:**

**CITY: 2031 Howe Avenue, Suite 100, Sacramento, CA 95825**

2. IT IS ORDERED THAT: **Plaintiff recover from Defendant.**

| $ | | |
|---|---|---|
| $ | 90,488.47 | for wages **(with lawful deductions)** |
| $ | 0.00 | for liquidated damages pursuant to Labor Code Section 1194.2 |
| $ | 92,337.50 | Reimbursable business expenses |
| $ | 16,178.86 | for interest pursuant to Labor Code Section(s) 98.1(c), 1194.2 and/or 2802(b), |
| $ | 19,082.40 | for additional wages accrued pursuant to Labor Code Section 203 as a penalty *and that same shall not be subject to payroll or other deductions.* |
| $ | 0.00 | for penalties pursuant to Labor Code Section 203.1 which *shall not be subject to payroll or other deductions.* |
| $ | 1,500.00 | other (specify): for penalties pursuant to Labor Code Sections 226(f) and 1198.5(k). |
| $ | **219,587.23** | **TOTAL AMOUNT OF AWARD** |

3. The herein Order, Decision or Award is based upon the Findings of Fact, Legal Analysis and Conclusions attached hereto and incorporated herein by reference.

4. The parties herein are notified and advised that this Order, Decision or Award of the Labor Commissioner shall become final and enforceable as a judgment in a court of law unless either or both parties exercise their right to appeal to the appropriate court* within ten (10) days of service of this document. Service of this document can be accomplished either by first class mail or by personal delivery and is effective upon mailing or at the time of personal delivery. If service on the parties is made by mail, the ten (10) day appeal period shall be extended by five (5) days. For parties served outside of California, the period of extension is longer (See Code of Civil Procedure section 1013). In case of appeal, the necessary filing fee must be paid by the appellant and appellant must, immediately upon filing an appeal with the appropriate court, serve a copy of the appeal request upon the Labor Commissioner. If an appeal is filed by a corporation, a non-lawyer agent of the corporation may file the Notice of Appeal with the appropriate court, but the corporation must be represented in any subsequent trial by an attorney, licensed to practice in the State of California. Labor Code Section 98.2(c) provides that if the party seeking review by filing an appeal to the court is unsuccessful in such appeal, the court shall determine the costs and reasonable attorney's fees incurred by the other party to the appeal and assess such amount as a cost upon the party filing the appeal. An employee is successful if the court awards an amount greater than zero.

**PLEASE TAKE NOTICE:** Labor Code Section 98.2(b) requires that as a condition to filing an appeal of an Order, Decision or Award of the Labor Commissioner, the employer shall first post a bond or undertaking with the court in the amount of the ODA; and the employer shall provide written notice to the other parties and the Labor Commissioner of the posting of the undertaking. Labor Code Section 98.2(b) also requires the undertaking contain other specific conditions for distribution under the bond. While this claim is before the Labor Commissioner, you are required to notify the Labor Commissioner *in writing* of any changes in your business or personal address within 10 days after any change occurs.

* Appropriate Court:
Placer County Superior Court
PO Box 619072
Roseville, CA 95661-9072

**DATED: June 6, 2016**

LABOR COMMISSIONER, STATE OF CALIFORNIA

BY: _____
Kerry Lewis                    HEARING OFFICER

**EXHIBIT A**

DLSE 535 (Rev. 1/12)          ORDER, DECISION OR AWARD OF THE LABOR COMMISSIONER          L.C. 98

| LABOR COMMISSIONER, STATE OF CALIFORNIA<br>Department of Industrial Relations<br>Division of Labor Standards Enforcement<br>2031 Howe Avenue, Suite 100<br>Sacramento, CA 95825<br>Tel: (916) 263-2841   Fax: (916) 263-2853 | For Court Use Only: |
|---|---|
| Plaintiff:   David Winter | |
| Defendant:   RICHARD MATULIA, an individual | Court Number |

| State Case Number<br>**08 - 76615 A CM** | **ORDER, DECISION OR AWARD OF THE LABOR COMMISSIONER** |
|---|---|

1. The above-entitled matter came on for hearing before the Labor Commissioner of the State of California as follows:

**DATE: May 27, 2016**      ☐ **CONTINUED TO:**

**CITY: 2031 Howe Avenue, Suite 100, Sacramento, CA 95825**

2. IT IS ORDERED THAT: **Plaintiff take nothing by virtue of his/her complaint.**

| $ | 0.00 | for wages **(with lawful deductions)** |
|---|---|---|
| $ | 0.00 | for liquidated damages pursuant to Labor Code Section 1194.2 |
| $ | 0.00 | Reimbursable business expenses |
| $ | 0.00 | for interest pursuant to Labor Code Section(s) 98.1(c), 1194.2 and/or 2802(b), |
| $ | 0.00 | for additional wages accrued pursuant to Labor Code Section 203 as a penalty *and that same shall not be subject to payroll or other deductions.* |
| $ | 0.00 | for penalties pursuant to Labor Code Section 203.1 which *shall not be subject to payroll or other deductions.* |
| $ | 0.00 | other (specify): for penalties pursuant to Labor Code Sections 226(f) and 1198.5(k). |
| $ | **0.00** | **TOTAL AMOUNT OF AWARD** |

3. The herein Order, Decision or Award is based upon the Findings of Fact, Legal Analysis and Conclusions attached hereto and incorporated herein by reference.

4. The parties herein are notified and advised that this Order, Decision or Award of the Labor Commissioner shall become final and enforceable as a judgment in a court of law unless either or both parties exercise their right to appeal to the appropriate court* within ten (10) days of service of this document. Service of this document can be accomplished either by first class mail or by personal delivery and is effective upon mailing or at the time of personal delivery. If service on the parties is made by mail, the ten (10) day appeal period shall be extended by five (5) days. For parties served outside of California, the period of extension is longer (See Code of Civil Procedure Section 1013). In case of appeal, the necessary filing fee must be paid by the appellant and appellant must, immediately upon filing an appeal with the appropriate court, serve a copy of the appeal request upon the Labor Commissioner. If an appeal is filed by a corporation, a non-lawyer agent of the corporation may file the Notice of Appeal with the appropriate court, but the corporation must be represented in any subsequent trial by an attorney, licensed to practice in the State of California. Labor Code Section 98.2(c) provides that if the party seeking review by filing an appeal to the court is unsuccessful in such appeal, the court shall determine the costs and reasonable attorney's fees incurred by the other party to the appeal and assess such amount as a cost upon the party filing the appeal. An employee is successful if the court awards an amount greater than zero.

**PLEASE TAKE NOTICE:** Labor Code Section 98.2(b) requires that as a condition to filing an appeal of an Order, Decision or Award of the Labor Commissioner, the employer shall first post a bond or undertaking with the court in the amount of the ODA; and the employer shall provide written notice to the other parties and the Labor Commissioner of the posting of the undertaking. Labor Code Section 98.2(b) also requires the undertaking contain other specific conditions for distribution under the bond. While this claim is before the Labor Commissioner, you are required to notify the Labor Commissioner *in writing* of any changes in your business or personal address within 10 days after any change occurs.

\* Appropriate Court:
Placer County Superior Court
PO Box 619072
Roseville, CA 95661-9072

**DATED: June 6, 2016**

**LABOR COMMISSIONER, STATE OF CALIFORNIA**

BY: _____
Kerry Lewis                                    HEARING OFFICER

**EXHIBIT A**

BEFORE THE LABOR COMMISSIONER
OF THE STATE OF CALIFORNIA

DAVID WINTER                              )
                                          )
                    Plaintiff,            )        CASE NO. 08-76615 CM
                                          )
vs.                                       )
                                          )        ORDER, DECISION OR AWARD
                                          )        OF THE LABOR COMMISSIONER
HIGHMARK DIGITAL, INC., a California      )
corporation; GRAND MARK SOLUTIONS,        )
INC, a California corporation; RICHARD    )
MATULIA, an individual, each jointly and  )
severally liable                          )
                    Defendants.           )
_____)

## BACKGROUND

Plaintiff filed an initial claim with the Labor Commissioner's office on November 9, 2015. The Complaint alleges that Plaintiff is owed:

1.  Wages earned from January 1, 2010 to July 16, 2015 in the amount of $168,687.88;

2.  Vacation wages for 64 hours earned from January 1, 2010 to July 16, 2015 at the rate of $79.51 per hour, claiming $5,088.64;

3.  Reimbursable business expenses incurred from January 1, 2010 to November 2, 2015, claiming $75,621.03, plus reasonable attorney fees pursuant to Labor Code section 2802(c);

4.  Penalties pursuant to Labor Code section 203.1 for 13 days at the rate of $636.08 per day, claiming $8,269.04;

5.  Penalties pursuant to Labor Code section 203 for 30 days at the rate of $636.08 per day;

6.  Penalties pursuant to Labor Code section 226(f) in the amount of $750.00; and

7.  Penalties pursuant to Labor Code section 1198.5 in the amount of $750.00.

**EXHIBIT A**

-5-

1       A hearing was conducted in Sacramento, California, on May 27, 2016, before the

2   undersigned hearing officer designated by the Labor Commissioner to hear this matter.

3   Plaintiff appeared and was represented by Timothy Nelson, Esq. Tammy Mendonca and

4   Philomena Stipp were subpoenaed by Plaintiff to appear as witnesses.

5       Highmark Digital, Inc., a California corporation ("Highmark"), Grand Mark

6   Solutions, Inc., a California corporation ("Grand Mark"), and Richard Matulia, an

7   individual, were represented by Dennis Murphy, Esq. All three named Defendants are

8   referred to herein collectively as "Defendants."

9       Due consideration having been given to the testimony, documentary evidence, and

10  arguments presented, the Labor Commissioner hereby adopts the following Order,

11  Decision or Award.

12                           <u>FINDINGS OF FACT</u>

13      Defendant Highmark employed Plaintiff pursuant to the terms of a written

14  employment agreement in Placer County, California, from 2007 until July 16, 2015.

15      Plaintiff was one of the founders of the company with his father-in-law. Plaintiff's

16  father-in-law, Mike McElroy, was the President and Plaintiff was the Vice President. In

17  August 2011, Plaintiff and McElroy entered into a written agreement ("Agreement")

18  whereby Plaintiff was promoted to President and CEO. Pursuant to the Agreement,

19  Plaintiff's starting salary was $125,060.00, with a five percent increase at the start of each

20  calendar year. The Agreement called for an increase to $150,000.00 if Plaintiff "sold" ten

21  dealerships, or franchises. Plaintiff's records indicate that there were ten franchises sold by

22  the end of 2012, so his claim is based on a salary of $150,000.00 starting in January of 2013

23  and increasing by five percent each year thereafter: $157,500.00 in 2014, and $165,375.00 in

24  2015. Additionally, the Agreement provided that Plaintiff would be reimbursed for

25  "reasonable out-of-pocket expenses incurred with respect to [his] execution of the

26  Company's business, including reasonable travel and entertainment expenses."

27      ///

**EXHIBIT A**

1    Defendants argued that the Agreement was invalid because it was "secret" and the

2    Board of Directors (the "Board") was unaware of its existence. Plaintiff was a member of

3    the Board throughout the course of his employment. Meeting minutes from the September

4    19, 2014 Board meeting reflect that "the Company has an existing employment contract

5    with David Winter as President of Highmark Digital, Inc." and "the Company undertakes

6    to update its employment agreement with David Winter upon mutually agreeable terms

7    no later than the next board meeting of the Company."

8    In September of 2014, Plaintiff and Defendants agreed that Plaintiff's compensation

9    would be modified in an effort to save Defendants money. Plaintiff agreed to have a

10   portion of his salary paid toward equity in Highmark. The details of the amounts that

11   were allotted to wages versus equity were set forth in an email between Plaintiff, Paul

12   Bernards (Board member), Richard Shi (CFO) and John Ambruz (Board member) on

13   September 18, 2014. Plaintiff attached a copy of the Agreement to the email. In that email,

14   Plaintiff's actual monthly salary was set forth as $13,083.00, increasing to $13,781.00 in

15   January 2015. These monthly salaries are the equivalent of $157,000.00 and $165,375.00 per

16   year, respectively. The monthly salary was then broken down into the portion that would

17   be paid on his paycheck and the amount that would be allotted to equity in the company.

18   This calculation was sent to Bernards, Shi, and Ambruz and none of the three registered an

19   objection to Plaintiff's salary being reflected at these amounts. When the paycheck portion

20   of Plaintiff's wages was due to increase pursuant to the table set forth in the September 18,

21   2014 email, Plaintiff forwarded it to Tammy Mendonca (bookkeeper), Richard Shi, and

22   Richard Matulia (CEO) to ensure that the amount he received on his paycheck

23   corresponded with the agreed-upon allocations. Mendonca testified that she confirmed the

24   increase with Shi and Plaintiff was paid accordingly. Mendonca further testified that she

25   adjusted the equity amounts allotted to Plaintiff pursuant to the September 18, 2014 email.

26   Plaintiff was not provided with any record of stock options. Matulia testified that

27   Plaintiff had stock options on the company's books, but no documentation was submitted

**EXHIBIT A**
Page 3

1   in support of this assertion and Plaintiff was given no information regarding how or when

2   he could exercise his options if, in fact, he has any stock options on the books.

3          Plaintiff asserted that he was underpaid in the total amount of $90,488.47 for the

4   period from November 9, 2011 through July 16, 2015.

5          Plaintiff was originally the CFO of the company when it incorporated in 2007. As the

6   CFO, Plaintiff was tasked with opening the corporate bank account and establishing the

7   company's credit cards. Plaintiff opened two Wells Fargo credit cards and a line of credit

8   on behalf of Highmark. Plaintiff was a personal guarantor on all of the accounts. Plaintiff

9   testified that he used the two credit cards for business expenses and those credit card

10  statements were sent to Highmark for payment each month. Additionally, Plaintiff

11  testified that had a personal credit card ("USAA card") which he utilized only for business

12  purposes. Plaintiff brought the USAA card's monthly statements to Highmark for

13  payment as well. Plaintiff occasionally submitted receipts for the items he purchased, but

14  Mendonca testified that it was often difficult to ascertain whether the charges on any of the

15  credit cards were for business or personal expenses. Nonetheless, Highmark made partial

16  payments on the cards each month without questioning the charges.

17         After Plaintiff resigned on June 16, 2015, the statements for the credit cards and credit

18  line stopped being delivered to Highmark for reasons that neither Plaintiff nor Defendants

19  could explain. When Mendonca attempted to get the statements sent to Highmark in order

20  to pay them, Wells Fargo refused to provide them because they were in Plaintiff's name.

21  Mendonca testified that she was instructed by Matulia and the Board to stop paying any of

22  the outstanding credit card or credit line debt in August of 2014. All of the amounts were

23  past due even before Defendants ceased making payments, so the creditors began to

24  demand payment from Plaintiff. After Wells Fargo sought to recover the debt directly

25  from Plaintiff's personal accounts in late 2015, Plaintiff reached out to Wells Fargo to try to

26  negotiate the amounts due in order to get them paid off. Plaintiff ultimately got the debt

27  reduced significantly and, after taking out a second mortgage on his home in January 2016,

**EXHIBIT A**

1    paid Wells Fargo a total of $39,946.63. Additionally, Plaintiff paid off the USAA card in the

2    total amount of $26,548.40.

3         Defendants argued that there was no way for them to determine which of the charges

4    were personal and which were legitimate business expenses. As such, the Board gave a

5    directive that none of the balances were to be paid without sufficient proof that they were

6    business-related. Mendonca conducted an audit of the various credit cards and, using

7    criteria established by the Board and Matulia, made an assessment of which charges

8    appeared to be personal in nature. A few of the items that Mendonca asserted were

9    personal were: a charge at Jessica McClintock clothing store for $1,100.00; a down payment

10   for a vehicle purchased from Future Ford; and charges for repairing Plaintiff's personal

11   vehicle. Plaintiff testified that the Jessica McClintock charge was for a shrink wrap

12   machine and pancake scale that the clothing store was selling at a good value due to store

13   closure. Matulia testified that the company does possess these items in its warehouse.

14   Plaintiff further testified that when his personal truck broke down while being used for

15   business purposes, he received approval from Paul Bertrands to purchase a new truck and

16   the company would pay the down payment, rather than repair the other truck at greater

17   expense. Finally, Plaintiff testified that his newly purchased truck was damaged while

18   towing a machine on behalf of the company. Matulia was present when the truck was

19   damaged and he approved Plaintiff charging the repairs to the company.

20        Defendants' audit of the credit card transactions reveals $17,818.75 charges which

21   were arguably personal, including those specifically refuted by Plaintiff as personal

22   expenses, above. Plaintiff argued that all the charges were business expenses. However,

23   Plaintiff asserted that the fact that he negotiated the balances down on all the Wells Fargo

24   accounts as well as his USAA card, reducing Defendants' potential debt from over

25   $88,000.00 to approximately $66,500.00 saved the companies more than $21,500.00. As

26   such, even if those charges were arguably personal, which Plaintiff adamantly denies,

27

**EXHIBIT A**
Page 5

1   Plaintiff is not requesting reimbursement for them because that amount was written off by

2   the bank.

3        On three different occasions in 2013 and early 2014, Plaintiff made deposits in

4   Defendants' bank accounts to cover payroll, expecting that the amounts would be repaid

5   shortly thereafter. The 2013 "loan" was repaid approximately one month later. However,

6   there were two deposits made by Plaintiff in March and April of 2014 in the amounts of

7   $6,200.00 and $2,929.00, respectively, for which Plaintiff was not reimbursed. These

8   amounts are not disputed by Defendants. Defendants unilaterally decided to reclassify the

9   $6,200.00 "loan" as capital stock so that it would not be reflected in its accounts payable

10  ledger as an outstanding debt. There was no evidence regarding the April 2014 deposit

11  and Defendants did not assert that it had been reclassified or otherwise repaid. Plaintiff

12  argued that Defendants did not have the right to reclassify any portion of the monies he

13  was owed without his consent.

14       Plaintiff's 2010 employment agreement provided for 120 hours of paid vacation per

15  calendar year. Plaintiff alleges that he is owed 64 hours of vacation that he did not take

16  between August of 2010 and the end of his employment. Plaintiff did not provide a basis

17  for his assertions, other than to say that he had 24 unused hours in 2013 and 40 unused

18  hours in 2014. Plaintiff did not claim any unused hours in 2015 because he had taken all of

19  the hours he had accrued for that year. However, Defendants' records reflect that Plaintiff

20  had actually used 100 hours in 2015, while only entitled to 60 hours of accrual. Plaintiff did

21  not account for this negative balance in his claim for unused vacation hours. Additionally,

22  Plaintiff did not provide any breakdown of the hours he took off throughout the years.

23  Plaintiff argued that Defendants should have tracked his vacation hours more effectively

24  throughout the years. Defendants argued that Plaintiff was the highest ranking individual

25  in the company and any such tracking procedures should have been implemented by him.

26       Plaintiff resigned without notice on July 16, 2015. He was mailed his final paycheck

27  via certified mail on July 18, 2015, but he did not pick it up from the post office until July

**EXHIBIT A** Page 6

1    24, 2015. The gross amount of the paycheck for the semi-monthly pay period was

2    $4,528.89. Plaintiff argues that the paycheck did not contain all earned prorated wages

3    because his salary rate as of his resignation was $165,375.00, which is the equivalent of

4    $6,890.00 per semi-monthly pay period. Additionally, when Plaintiff deposited the check

5    into his account, it was returned by the bank for insufficient funds.

6       Defendants asserted that the bank account on which Plaintiff's check was written had

7    been frozen or closed because it was determined that there had been fraudulent activity on

8    the account between the time that the check was written and Plaintiff's depositing it. The

9    activity in question was the result of Plaintiff's actions in attempting to make a large

10    payment on his USAA card from an account to which he was not supposed to have access.

11    When it became apparent that Defendants' accounts were "under attack," immediate

12    action was taken to reverse the attempted credit card payments and protect the accounts

13    from future unauthorized activity. On July 28, 2015, Plaintiff informed Matulia that the

14    check had been returned by his bank and the wages were replaced immediately.

15       On December 15, 2015, Plaintiff's attorney sent a letter to Highmark and its attorney

16    requesting a copy of Plaintiff's personnel file and payroll records. The initial request did

17    not identify who the attorneys were representing, but Plaintiff's identity was provided by

18    the end of December. Plaintiff's attorney ultimately received the requested information on

19    February 22, 2016. Defendants asserted that it took time to compile the personnel file

20    because nothing had been maintained over the years due to Plaintiff's poor management

21    of the company. It was unclear why Defendants did not provide payroll records within the

22    21-day time frame set forth in Labor Code section 226.

23       Plaintiff's attorney submitted a declaration regarding fees Plaintiff has incurred in

24    furtherance of his claims. The declaration asserts that the Plaintiff has incurred a total of

25    $33,433.00 in attorneys' fees to date. The declaration further asserts that the efforts put

26    forth in preparation for the hearing, as well as the time spent at the hearing, were

27

1    primarily focused on the expenses portion of Plaintiff's claim, for an estimate of 50 percent

2    of the attorney's time. Defendants did not object to this estimate.

3        Plaintiff argued that Richard Matulia has individual liability for his claims pursuant

4    to Labor Code section 558.1. Plaintiff asserted that Matulia had personal knowledge of the

5    expenses Plaintiff incurred and Defendants' refusal to reimburse those expenses, as well as

6    Defendants' failure to honor the August 2011 contract and the equity agreement allocating

7    a portion of Plaintiff's salary to stock options for a period of one year. Matulia argued that

8    he was only the CEO of Highmark and Grand Mark acting in his capacity as an employee

9    and, therefore, should not have personal liability for Plaintiff's employment claims.

10       Defendants further argued that Plaintiff's Complaint extends to periods outside the

11   statute of limitations for the various claims. Additionally, Defendants asserted that,

12   although the claim was originally filed on November 9, 2015, Grand Mark and Matulia

13   were not added as named defendants until the formal Complaint was signed on February

14   22, 2016, so the statute of limitations periods should begin on that date for those two

15   Defendants. As part of the Labor Commissioner's process, a Notice of Claim was mailed to

16   Highmark at its address of record, which is also the address of record for Grand Mark.

17   Highmark and Grand Mark were both payors of Plaintiff's wages, have the same CEO,

18   and have been represented by the same attorney since the inception of the case. Matulia

19   received the original Notice of Claim and attended the conference in December 2015 with

20   his attorney. Matulia knew that Plaintiff's claims would have been against both Highmark

21   and Grand Mark, as the two appear to be interchangeable in most respects with regard to

22   payment of wages and use of credit cards to pay business expenses. Plaintiff's paychecks

23   appear to have been paid by Highmark, but the W-2 Forms were issued from Grand Mark.

24   Credit card charges on Highmark cards reflect that they were funds transfers to pay off

25   Grand Mark debts.

26       ///

27

**EXHIBIT A**

**-12-**

1

LEGAL ANALYSIS

2 **Individual Liability**

3    At the outset, it is necessary to determine whether Richard Matulia is individually

4 liable for any of Plaintiff's claims. Plaintiff argued that Matulia should be held liable for his

5 wage and expenses claims pursuant to Labor Code section 558.1, which provides, in

6 relevant part:

7    Any employer or other person acting on behalf of an employer, who violates,
     or causes to be violated, any provision regulating minimum wages or hours

8    and days of work in any order of the Industrial Welfare Commission, or
     violates, or causes to be violated, Sections 203, 226, ... or 2802, may be held

9    liable as the employer for such violation.

10   (b) For purposes of this section, the term "other person acting on behalf of
     an employer" is limited to a natural person who is an owner, director, officer,

11   or managing agent of the employer, and the term "managing agent" has the
     same meaning as in subdivision (b) of Section 3294 of the Civil Code.

12

13   Labor Code section 558.1 was implemented on January 1, 2016. Because the statute

14 imposes liability on persons who did not previously have liability, it cannot be applied

15 retroactively. Plaintiff's alleged wages and expenses were incurred prior to 2016. As such,

16 Labor Code section 558.1 cannot be the basis for finding individual liability.

17   Prior to Labor Code section 558.1, the issue of whether individual corporate agents

18 have liability for wages when acting within the scope of their agency was decided in

19 *Martinez v. Combs* (2010) 49 Cal.4th 35. The California Supreme Court in *Martinez* held that

20 individual corporate agents cannot be found liable as "employers" owing wages unless the

21 facts show that they were acting outside the scope of their agency. There were no such

22 facts present in this matter. Plaintiff provided no testimony or other evidence that Matulia

23 was in any way acting outside the scope of his agency. Accordingly, Matulia is not found

24 individually liable for wages, expenses, or penalties awarded herein.

25 **Statute of Limitations**

26   The California Code of Civil Procedure establishes time limits for filing various types

27 of claims. The statute of limitations for filing a claim based on a statutory right, such as

Page 9

**EXHIBIT A**

**-13-**

1   expenses, is three years from the date the right to reimbursement occurred. (Code of Civ.

2   Pro. §338.) An action upon any contract, obligation or liability founded upon an

3   instrument in writing has a four-year statute of limitations. (Code of Civ. Pro. §337.)

4        Plaintiff's Complaint alleges wages and expenses from January of 2010. Defendants

5   argued that a portion of this period is outside the statute of limitations because Plaintiff's

6   claim was filed on November 9, 2015. Because the wages alleged by Plaintiff were owed

7   pursuant to a written agreement, his claim for wages may only encompass the period from

8   November 9, 2011 until July 16, 2015. While reimbursement of expenses is a statutory right

9   pursuant to Labor Code section 2802, Plaintiff's written agreement provided for

10  reimbursement of his expenses, extending the statute of limitations to four years. Plaintiff

11  incurred the expenses alleged when he paid off Defendants' credit cards in 2015 and 2016.

12  Prior to paying off Defendants' credit card debts, the expenses were incurred by

13  Defendants, not Plaintiff. As such, all of Plaintiff's claims for reimbursement of expenses

14  fall within the applicable statute of limitations.

15       Defendants further argued that the statute of limitations for Grand Mark should be

16  measured based on Plaintiff's addition of the new Defendant to his Complaint on

17  February 22, 2016[1]. Plaintiff filed his initial claim with the Labor Commissioner on

18  November 9, 2015. It is from this date that the statute of limitations is calculated. (See

19  *Cuadra v. Millan* (1998) 17 Cal.4th 855.)

20       As part of the Labor Commissioner's process, a Notice of Claim was mailed to

21  Highmark at its address of record on November 23, 2015, which is also the address of

22  record for Grand Mark. Highmark and Grand Mark were both payors of Plaintiff's wages,

23  have the same CEO, and have been represented by the same attorney since the inception of

24  the case.

25

26  _____

27  [1] Defendants' argument regarding the statute of limitations pertained to the addition of both Grand Mark
    and Matulia. Because Matulia has been found to have no individual liability, he has not been included in this
    statute of limitations analysis, as it is moot.

Although hearings held pursuant to Labor Code section 98 are not subject to the Federal Rules of Civil Procedure, a brief discussion of the federal courts' use of amended pleadings is instructive. Federal Rule 15(c)(2) provides that an amendment relates back to the date of the original complaint when the claim asserted in the amended complaint "arose out of the conduct, transaction, or occurrence set forth" in the original complaint." Rule 15(c)(3) adds two additional requirements when the amendment changes or adds a new defendant. First, within the period for service of the summons and complaint, the party to be brought in by amendment must have received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits. (FRCP 15(c)(3)(A).) Second, the new party must know or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against that party. (FRCP 15(c)(3)(B).)

Matulia received the original Notice of Claim and attended the conference in December 2015 with his attorney. Matulia knew that Plaintiff's claims would have been against both Highmark and Grand Mark, as the two appear to be interchangeable in most respects with regard to payment of wages and use of credit cards to pay business expenses. Plaintiff's paychecks appear to have been paid by Highmark, but the W-2 Forms were issued from Grand Mark. Credit card charges on Highmark cards reflect that they were funds transfers to pay off Grand Mark debts. Whatever the reason that Plaintiff did not initially name Grand Mark as an employer, there is no doubt that the entity was aware of Plaintiff's claims and that it had potential liability.

As such, even utilizing the Federal Rules of Civil Procedure, which are more restrictive than California procedure, it would be proper to permit Plaintiff's amendment adding Grand Mark to carry the same statute of limitations as the original claim filed in November 2015. California courts follow a far more liberal scheme of relation back, commonly referred to as "Doe defendant practice," with respect to amended complaints that add new defendants. (See *Austin v. Mass. Bonding & Ins. Co.* (1961) 56 Cal.2d 596.) That

1   is, the original complaint may contain unnamed defendants who are subsequently

2   identified in amended complaints. Under California's Doe defendant practice, an amended

3   complaint substituting an actual defendant for a fictitious one relates back to the date of

4   the original complaint, thereby defeating the bar of the statute of limitations, provided it

5   seeks recovery on the "same general set of facts" as alleged in the original complaint. (See

6   *Austin, id.*, and Cal. Code of Civ. Pro. §474.) Plaintiff's claims against Grand Mark are

7   identical to those that he raised in his initial claim against Highmark. The facts and

8   allegations did not change at all. Matulia was well aware of Plaintiff's allegations and,

9   although California civil practice does not even require that the newly added defendant

10   have any knowledge of the existence of a claim against it, Grand Mark had full knowledge

11   of the allegations.

12        The policy behind statutes of limitations is to put defendants on notice of the need

13   to gather and preserve evidence in time to prepare a fair defense on the merits. (See

14   *Garrison v. Bd. of Dirs. of the United Water Conservation Dist.* (1995) 36 Cal.App.4th 1670;

15   *Pasadena Hosp. Ass'n v. Superior Court* (1988) 204 Cal. App. 3d 1032; *Lamont v. Wolfe* (1983)

16   142 Cal. App. 3d 375.) There were no additional documents, witnesses, or defenses

17   required as a result of Plaintiff's addition of Grand Mark to the claim. As such, the statute

18   of limitations applicable to all Defendants is the same.

19   **Salary Wages**

20        In California, a contract is defined by statute as "an agreement to do or not to do a

21   certain thing." (Civil Code §1549.) Four essential elements of a contract are (1) parties

22   capable of contracting; (2) (mutual) consent; (3) a lawful object, and (4) a sufficient cause or

23   consideration (Civil Code §1550.)

24        In order for a binding contract to arise, there must be mutual assent between the

25   parties (Civil Code §1565) such that each must intend to enter into the contract under the

26   same terms and conditions (Civil Code §1580).

27

Plaintiff and the former President of Highmark entered into a valid written contract. The contract set forth the terms of Plaintiff's employment as the President of the company. Defendants' argument that the contract was not valid because it was "secret" is not supported by the facts provided by Plaintiff. The September 2014 Board minutes reference an employment contract, yet Defendants did not argue that there was any other contract to which the Board would have been referring. Additionally, Plaintiff attached a copy of the Agreement to his September 2014 email to two Board members and the CFO, in which he set forth his acceptance of an offer to modify his compensation structure for an allocation of a portion of his salary to equity shares. The salary amount reflected in the email is the monthly equivalent of the salary set forth in his written Agreement. This email was then forwarded to Mendonca, Robert Shi, and Matulia in October 2014. Mendonca testified that she confirmed the increase with Shi and Plaintiff was paid accordingly.

Defendants did not compensate Plaintiff in accordance with the terms of his Agreement. Additionally, Defendants failed to provide any documentation that a portion of Plaintiff's salary had, in fact, been allocated to equity shares. If Plaintiff has shares in the company, he has seen no evidence of it and has no way of knowing how to exercise those options, their value, or that they even exist.

From November 2011 to July 2015, Plaintiff was underpaid in the amount of $90,488.47. Defendants are hereby ordered to pay Plaintiff's underpaid wages in the amount of $90,488.47.

**Vacation Wages**

Labor Code section 227.3 provides in relevant part:

> Unless otherwise provided by a collective bargaining agreement, whenever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate in accordance with such contract of employment or employer policy respecting eligibility or time served; provided, however, that an employment contract or employment policy shall not provide for forfeiture of vested vacation time upon termination…

1     Plaintiff, as the party asserting the affirmative, has the burden of proof including the

2 initial burden of going forward and the burden of persuasion by a preponderance of the

3 evidence. Plaintiff has not met his burden with regard to his claim for unpaid vacation.

4 Plaintiff's employment agreement provided for three weeks, or 120 hours, of vacation pay

5 per year. Plaintiff did not provide any basis for his claim that he did not use 64 hours of

6 vacation during the years 2013 and 2014. Plaintiff did not account for the fact that he had

7 used far more than he accrued in 2015 and did not provide any testimony or

8 documentation regarding how many hours he used in the prior years. Plaintiff was the

9 President and CEO of the company during the majority of the period of his claim. It is

10 disingenuous for Plaintiff to argue that Defendants should have tracked his vacation hours

11 and their failure to have a more effective procedure to do so should entitle him to recover

12 on a claim for which he has set forth no factual basis. Accordingly, Plaintiff shall take

13 nothing pursuant to his claim for unpaid vacation wages.

14 **Expenses**

15     Labor Code section 2802(a) provides:  "An employer shall indemnify his or her

16 employee for all necessary expenditures or losses incurred by the employee in direct

17 consequence of the discharge of his or her duties…"  Plaintiff utilized Defendants'

18 corporate credit cards to make purchases on Defendants' behalf. Additionally, Plaintiff

19 had a personal credit card which he testified was used exclusively for business expenses.

20 These cards were paid by Defendants without question during his employment. After

21 Plaintiff's resignation, Defendants stopped paying all the credit cards, leaving enormous

22 balances entirely unpaid. Because those cards and the line of credit were in Plaintiff's

23 name, the creditors held him liable and went after Plaintiff's personal finances to recover

24 the debt. Plaintiff was able to reduce the debt, which belonged to Defendants, from

25 $88,000.00 to approximately $66,500.00, which saved the companies more than $21,500.00.

26 As such, even if $17,818.75 of the charges were arguably personal in nature, which Plaintiff

27 credibly and reasonably refuted as personal expenses, Plaintiff's claim does not include

1  reimbursement for those allegedly personal charges. Even taking the full balance of the

2  credit cards and line of credit and discounting it for the amount that Defendants allege to

3  be personal charges, the balance is still more than Plaintiff is actually claiming he is owed.

4  Additionally, Plaintiff made two deposits into Defendants' account to cover payroll

5  in 2014, which were never reimbursed to him, for a total of $9,129.00. Defendants took the

6  $6,200.00 deposit off its books and reclassified it as capital stock without Plaintiff's

7  approval. However, this is not evidence that Defendant reimbursed such expenses.

8  Defendants are hereby ordered to pay Plaintiff $75,629.00 as reimbursement for

9  business expenses.

10  Labor Code section 2802(b) provides: For purposes of this section, the term

11  "necessary expenditures or losses" shall include all reasonable costs, including, but not

12  limited to, attorney's fees incurred by the employee enforcing the rights granted by this

13  section." Plaintiff's attorney submitted a declaration attesting to the fact that Plaintiff has

14  incurred attorney's fees in the amount of $33,433.00 as a result of his claims against

15  Defendants. Plaintiff's attorney asserted that preparation of Plaintiff's expenses claim was

16  the primary focus of his legal efforts in the case. As such, it is reasonable to find that 50

17  percent of the fees incurred were attributable to time spent pursuing Plaintiff's expenses

18  claim. Accordingly, Defendants are ordered to pay $16,716.50 in attorney's fees.

19  **Interest**

20  Labor Code sections 98.1(c) and 2802(b) provide that all awards granted pursuant to

21  this hearing shall accrue interest on all due and unpaid wages and expenses from the date

22  that said amounts became due until the monies are paid. Therefore, Plaintiff is entitled to

23  $16,178.86 in interest accrued to date on the unpaid balance.

24  **Penalties—Labor Code Section 203**

25  Labor Code section 202 requires that if an employee quits without providing at least

26  72 hours' notice, all earned wages are due within 72 hours of his resignation. Labor Code

27  section 203 provides that if an employer willfully fails to pay any earned wages of an

1    employee in accordance with Labor Code section 202, the wages of such employee shall

2    continue as a penalty from the due date thereof at the same rate until paid, up to 30 days.

3    The term "willful" as used in the statute has been defined by case law as an intentional

4    failure to perform an act that is required under the law.  There is no requirement of evil

5    purpose or intent to defraud.   (*Davis v. Morris* (1940) 37 Cal.App.2d 269.) Defendants

6    intended to pay Plaintiff the amounts that they paid. Defendants were aware of Plaintiff's

7    contract setting forth a different amount, yet failed to pay it. Plaintiff's final paycheck was

8    not issued in the correct amount pursuant to his contract. Defendants did not even provide

9    an explanation for the amount that he was paid in his final paycheck, which equates to

10   $100,000.00 per year. This amount is not even equivalent to the salary portion of the

11   equity/salary agreement that had previously been in effect prior to July 2015.

12         Because Defendants failed to set forth a good faith dispute to Plaintiff's wage claim,

13   they are ordered to pay the maximum of 30 days' wages in the amount of $636.08 per day,

14   for a total of $19,082.40.

15         **Penalties—Labor Code Section 203.1**

16         Labor Code section 203.1 provides that if an employer issues a check for wages which

17   is refused payment because the employer does not have an account with the bank or has

18   insufficient funds in the account, and the employee has presented the check for payment

19   within thirty days of receipt, those wages shall continue as a penalty from the due date

20   thereof at the same rate until paid, up to a maximum of 30 days. Plaintiff's final paycheck

21   was mailed to him via certified mail on July 18, 2015. Plaintiff did not pick it up from the

22   post office until July 24, 2015. The check was subsequently returned by his bank.

23         Labor Code section 203.1 provides that, "this penalty shall not apply if the employer

24   can establish to the satisfaction of the Labor Commissioner or an appropriate court of law

25   that the violation of this section was unintentional." Defendants argued that the reason the

26   check was not negotiable was not due to negligence or intentional wrongdoing on the part

27   of the company. Rather, in an effort to ensure that the bank accounts were secure after

Plaintiff attempted to make a large unauthorized payment to his personal credit card, Defendants took immediate action by freezing or closing their accounts. This activity took place in the interim period between the issuance of Plaintiff's paycheck and his attempt to deposit it in his bank. The wages were promptly replaced when Plaintiff notified Defendants that the check had been returned.

Defendants have sufficiently demonstrated that penalties pursuant to Labor Code section 203.1 should not apply. Plaintiff shall take nothing pursuant to his claim for penalties.

**Labor Code Section 226—Payroll Records**

Labor Code section 226(a) provides the following:

Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing

(1)     gross wages earned;

(2)     total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of section 515 or any applicable order of the Industrial Welfare Commission;

(3)     the number of piece rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis;

(4)     all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item;

(5)     net wages earned;

(6)     the inclusive dates of the period for which the employee is paid;

(7)     the name of the employee and…the last four digits of his or her social security number or an employee identification number other than a social security number may be shown on the itemized statement;

(8)     the name and address of the legal entity that is the employer;  and

(9)     all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

/ / /

/ / /

**EXHIBIT A**
**-21-**

The deductions made from payments of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement or a record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California.

Labor Code section 226(f) entitles the current or former employee to recover from the employer a penalty of $750.00 if the employer fails to permit the employee to inspect or copy the records referenced in section (a), within 21 calendar days of the date of his written or oral request.

At the end of December, 2015, Plaintiff's attorney served Defendants and Defendants' attorney with a letter requesting a copy of Plaintiff's payroll records. Defendants failed to provide Plaintiff with those records within 21 days. Accordingly, Defendants shall pay Plaintiff a penalty of $750.00 pursuant to Labor Code section 226(f).

**Labor Code Section 1198.5—Personnel File**

Labor Code section 1198.5(k) entitles a current or former employee to recover from the employer a penalty of $750.00 if the employer fails to permit the employee to inspect or copy personnel records within 30 calendar days of his written request.

At the end of December, 2015, Plaintiff's attorney served Defendants and Defendants' attorney with a letter requesting a copy of Plaintiff's personnel file. Defendants failed to provide Plaintiff with those records within 30 days. Accordingly, Defendants shall pay Plaintiff a penalty of $750.00 pursuant to Labor Code section 226(f).

CONCLUSION

**Richard Matulia, an individual**

Richard Matulia, an individual, is found to have no individual liability and, as such, Plaintiff shall take nothing pursuant to his claims against Matulia.

*/ / /*

**EXHIBIT A**

-22-

1    **Highmark Digital, Inc. and Grand Mark Solutions, Inc.**

2         For all of the reasons set forth above, IT IS HEREBY ORDERED that Defendants

3    Highmark Digital, Inc., a California corporation, and Grand Mark Solutions, Inc., a

4    California corporation, shall pay Plaintiff a total of $219,587.23, as follows:

5         1.  $90,488.47 for wages earned and unpaid;

6         2.  $75,629.00 for business expenses pursuant to Labor Code section 2802;

7         3.  $16,716.50 for attorney's fees pursuant to Labor Code section 2802(c);

8         4.  $16,178.86 in interest pursuant to Labor Code sections 98.1(c) and 2802(b);

9         5.  $19,082.40 in waiting time penalties pursuant to Labor Code section 203;

10        6.  $750.00 in penalties pursuant to Labor Code section 226(f); and

11        7.  $750.00 in penalties pursuant to Labor Code section 1198.5(k).

12

13   Dated:        June 6, 2016

14                                              Kerry Lewis, Hearing Officer

**EXHIBIT A**
**-23-**