**P O R T E R | S C O T T**
A PROFESSIONAL CORPORATION
Martin N. Jensen, (SBN 232231)
mjensen@porterscott.com
Joceline M. Herman, (SBN 310897)
jherman@porterscott.com
350 University Avenue, Suite 200
Sacramento, California 95825
Tel: 916.929.1481
Fax: 916.927.3706

Attorneys for Defendants
CASABLANCA DESIGN CENTERS, INC., FOUR SEASONS WINDOWS, INC., ONE DAY DOORS AND CLOSETS, INC., DAVID WINTER, AND ONE DAY ENTERPRISES, LLC

*(left margin, vertical)* PORTER | SCOTT / 350 University Avenue, Suite 200 / Sacramento, CA 95825 / TEL: 916.929.1481 / FAX: 916.927.3706

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| HIGHMARK DIGITAL, INC., a California corporation,<br><br>          Plaintiff,<br><br>v.<br><br>CASABLANCA DESIGN CENTERS, INC., a California corporation; FOUR SEASONS WINDOWS, INC., a California corporation; INTERIOR DOOR & CLOSET COMPANY, an unincorporated California company; ONE DAY DOORS AND CLOSETS, INC., a California corporation; DAVID WINTER, an individual; and ONE DAY ENTERPRISES, LLC, a Delaware company,<br><br>          Defendants.<br>_____/ | **CASE NO. 2:18-cv-06105-GW-ASx**<br><br>**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW (LOCAL RULE 16-4)**<br><br>**Hon. George H. Wu**<br>**Magistrate Judge Alka Sagar**<br>**Courtroom 9D**<br><br>**Pre-Trial Conf.:  September 9, 2021**<br>**Trial:  September 21, 2021** |

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW
{02486854.DOCX}

# <u>TABLE OF CONTENTS</u>

<u>Page(s)</u>

SUMMARY STATEMENT OF REMAINING
CLAIMS OF PLAINTIFF…………………………………………    1

STATEMENT OF PROVABLE FACTS IN
OPPOSITION TO CLAIMS AND IN SUPPORT
OF DEFENSES …………………………………………………….    1

I.       Four Seasons Licenses One-Cut<sup>TM</sup> . …………………….    1

II.      Defendants Did Not Reverse Engineer One-Cut<sup>TM</sup> …………    2

III.     HOP Files Are Not Trade Secrets of Plaintiff …………………    6

IV.     Defendants Did Not Access CadCode Following
         Winter's Resignation………………………………………….    8

V.      Plaintiff Suspected Infringement In 2012 ………………………    9

VI.     Facts Pertaining to Individual Entity Defendants………………   10

VII.    Facts Pertaining to Dave Winter ………………………………   11

Summary of Defendants' Affirmative Defenses (L.R. 16-4.1(d)………   14

<u>First Affirmative Defense:</u> Failure to State Facts
Sufficient to Constitute Claims ……………………………………..   14

(a)     Factual Basis …………………………………………………   14

(b)     Elements………………………………………………………   15

(c)     Key Evidence…………………………………………………   15

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

Second Affirmative Defense:  Defendants Allege they have Appropriately, Completely, and Fully Performed, Satisfied, and Discharged any and all Obligations and Legal Duties…………………………….. 15

(a)    Factual Basis………………………………………………… 15

(b)    Elements……………………………………………………… 15

(c)    Key Evidence………………………………………………… 16

Third Affirmative Defense: Each Claim in Complaint is Barred by Equitable Defenses of Laches……………………………………… 16

(a)    Factual Basis………………………………………………… 16

(b)    Elements…………………………………………………….. 17

(c)    Key Evidence………………………………………………… 17

Sixth Affirmative Defense: Recovery of All Claims Made by Plaintiff Are Barred by Any and All Applicable Statutes of Limitations……… 17

(a)    Factual Basis...……………………………………………… 17

(b)    Elements…………………………………………………….. 18

(c)    Key Evidence………………………………………………… 19

Ninth Affirmative Defense: Contractual Provision that Restrains Anyone from Engaging in a Lawful Trade and Profession by Void_…… 19

(a)    Factual Basis...……………………………………………… 19

(b)    Elements…………………………………………………….. 20

(c)    Key Evidence…………………………………………………….. 20

PORTER │SCOTT
350 University Ave., Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

{02486868.DOCX}                                        ii

Tenth Affirmative Defense: Trade Secrets That are the Subject
of the Complaint at all Times Relevant Were and are not "Secret",
steps to Maintain Secrecy Did Not Occur and/or the
Information is in the Public Realm……………………………………… 20

(a)    Factual Basis...………………………………………………… 20

(b)    Elements………………………………………………….. 20

(c)    Key Evidence…………………………………………….. 21

Eleventh Affirmative Defense: All Defenses Contained in the
Uniform Trade Secret Act in California Code
Sections 3426-3426.11…………………………………………… 21

(a)    Factual Basis...………………………………………….. 21

(b)    Elements…………………………………………………… 21

(c)    Key Evidence………………………………………………. 23

Twelfth Affirmative Defense: Defendants are Informed
And Thereon Allege, Any and All Defenses Contained in the
Defend Trade Secret Action in 18 U.S.C.
section 1836 ……………………………………………………… 23

(a)    Factual Basis...………………………………………….. 23

(b)    Elements……………………………………………………. 23

(c)    Key Evidence…………………………………………….. 23

Fourteenth Affirmative Defense: Failure to State Facts Sufficient to
Constitute a Viable Cause of Action or Theory to Predicate Attorney's
Fees ……………………………………………………………… 25

(a)    Factual Basis...……………………………………………. 25

(b)    Elements…………………………………………………….. 25

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

{02486868.DOCX}

TABLE OF CONTENTS / TABLE OF AUTHORITIES

(c)    Key Evidence……………………………………………………  25

BIFURCATION OF ISSUES (L.R.16-4.3)……………………………….  25

JURY TRIAL (L.R.16-4.4)…………………………………………….…..  26

ATTORNEY'S FEES (L.R. 16-4.5)…………………………………………  26

ABANDONMENT OF ISSUES (L.R. 16-4.6)……………………………  26

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

{02486868.DOCX}                                        iv

# TABLE OF AUTHORITIES

**Cases**                                                                                     **Page(s)**

*April Enterprises, Inc. v. KTTV*,
    147 Cal. App. 3d 805, 832 (1983)……………………………………..                18

*Board of Administration v. Wilson*
    (1997) 52 Cal. App. 4th 1109, 1126…………………………………….                17

*Broberg v. The Guardian Life Ins. Co. of Am.*,
    171 Cal. App. 4th 912, 920 (2009)…………………………………….                18

*Connell v. Higgins*
    (1915)170 Cal. 541, 556, citation omitted………………………………                15

*Fox v. Ethicon Endo-Surgery, Inc.*,
    35 Cal. 4th 797, 806 (2005) (quoting *Norgart v. Upjohn Co.*,
    21 Cal. 4th 383, 397 (1999)…………………………………………..                18

*Fox*, 35 Cal. 4th at 808
    (quoting *McKelvey v. Boeing North American, Inc.*,
    74 Cal. App. 4th 151, 160 (1999)……………………………………….                19

*Gabriel Techs. Corp. v. Qualcomm Inc.*,
    857 F. Supp. 2d 997, 1003 (S.D. Cal. 2012)
    (quoting *Alamar Biosciences Inc. v. Difco Labs. Inc.*,
    No. CIV-S-94-1856 DFL PA, 1996 WL 648286, at *3
    (E.D. Cal. Feb. 27, 1996)……………………………………………..                19

*Imax Corp. v. Cinema Techs., Inc.*,
    152 F.3d 1161, 1164-65 (9th Cir. 1998)……………………………                22, 24

*In re Marriage of Fogarty & Rasbeary*
    (2000) 78 Cal. App. 4th 1353, 1359……………………………………                17

*In re Marriage of Modnick*
    (1983) 33 Cal. 3d 897, 909……………………………………………                17

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

*Johnson v. City of Loma Linda*
    (2000) 24 Cal. 4th 61, 68………………………………………….. 17

*Kossler v. Palm Springs Developments, Ltd.*
    (1980) 101Cal.App.3d 88, 101…………………………………… 16

*Posner v. Grunwald-Marx, Inc.*
    (1961) 56 Cal.2d 169, 186-187…………………………………… 16

*Silvaco Data Sys. v. Intel Corp.*,
    184 Cal. App. 4th 210, 220 (2010)
    *disapproved of on other grounds by Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011)………………………………… 21, 22, 23, 24

*Vernon Fire Fighters Assn. v. City of Vernon*
    (1986) 178 Cal. App. 3d 710, 719………………………………… 17

*WeRide Corp. v. Kun Huang*,
    379 F. Supp. 3d 834, 845 (N.D. Cal. 2019)……………………… 22, 23

*Whyte v. Schlage Lock Co.*,
    101 Cal. App. 4th 1443, 1454 (2002)………………………….. 22, 24

**Other Authorities**

Cal. Bus. & Prof. Code §16600…………………………………… 20

Cal. Civ. Proc. Code § 337……………………………………… 18

Cal. Civ. Code § 3426.1(d)……………………………………… 21

Cal. Civ. Code § 3426.6………………………………………. 18

Cal. Civ. Code §§ 3426-3426.11………………………………… 21

18 U.S.C. § 1836……………………………………………… 23

18 U.S.C. § 1836(d)…………………………………………… 18

18 U.S.C. § 1839(3)………………………………………….. 22, 24

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

{02486868.DOCX}

vi

1

18 U.S.C. §§ 1839(5)(A)-(B)……………………………………………….  22, 24

2

3

4

5

6

7

8

9

10

11

12

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

Pursuant to Federal Rules of Civil Procedure (Fed. R. Civ. P.) 16 and Central District Local Rule 16-4, CASABLANCA DESIGN CENTERS, INC.[1], FOUR SEASONS WINDOWS, INC., ONE DAY DOORS AND CLOSETS, INC., DAVID WINTER, AND ONE DAY ENTERPRISES, LLC (collectively "DEFENDANTS") submit the following Memorandum of Contentions of Fact and Law.

## SUMMARY STATEMENT OF REMAINING CLAIMS OF PLAINTIFF

Plaintiff Highmark Digital, Inc. asserts claims for trade secret misappropriation (Defend Trade Secrets Act and Uniform Trade Secret Act) against all remaining Defendants, asserts a claim for breach of contract against David Winter and Four Seasons Windows, Inc. and a claim for violation of California Penal Code section 502 against David Winter.

## STATEMENT OF PROVABLE FACTS IN OPPOSITION TO CLAIMS AND IN SUPPORT OF DEFENSES

### I.   Four Seasons Licenses One-Cut™.

Defendant Four Seasons Windows, Inc. ("Four Seasons") licensed Plaintiff Highmark Digital Inc.'s One-Cut™ door software under a December 2008 "Master Agreement."  The initial term of the Master Agreement was December 12, 2008, to December 31, 2010.  The Master Agreement could be renewed for additional two-year term, at Four Seasons' request and with Plaintiff's approval, but Four Seasons

---

[1] Interior Door and Closet Company has been dismissed by Court Order from this litigation and is recognized as a fictitious business name of Defendant Casablanca Design Centers, Inc. (*See* Document 201, Filed March 26, 2020, containing the Civil Minutes Ruling by Judge Otero.)

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW
{02486854.DOCX}

and Plaintiff did not execute an agreement to renew the Master Agreement beyond December 31, 2010.   This notwithstanding, Four Seasons continued using One-Cut$^{TM}$ until November 2011. Four Seasons never sublicensed One-Cut$^{TM}$.

Under the Master Agreement, Four Seasons uploaded door frame measurement data to Plaintiff over the internet. Four Seasons captured the measurement data using an electronic measuring device called the Proliner.  The Proliner measures the dimensions of door frames in existing structures so that a custom fit replacement door can be cut.[2]   Until Prodim became a competitor of Plaintiff, Plaintiff relied on the Proliner to measure door frames as well.

During the period Four Seasons licensed One-Cut$^{TM}$, Plaintiff used software originally developed by a company called MetaWorks, LLC to convert Proliner measurement data into eXtensible markup language ("XML") output ("MetaWorks Software").  Software provided by CadCode translated XML output into "HOP files" ("CadCode Software").  Holz-Her GmbH ("Holz-Her") computer numerical control ("CNC") machines[3] are programmed to receive cutting instructions in HOP format.  HOP files are essentially instructions to Holz-Her CNC machines about how to cut the desired product (doors, cabinets, countertops, etc.).  HOP is a standard Holz-Her programming interface, and Plaintiff was not involved in its development.   The CadCode Software included a library of CNC manufacturers'

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

---

[2] For demonstrative purposes, video of a Proliner being used to measure a door opening can be viewed at: https://www.youtube.com/watch?v=bqNqWKD0-l0&list=PLy14xVzHNWvbjlXLVyTR2-oWZG_A1KHK2&index=1
[3] Computer numerical control is the control of machine tools by an attached computer.  Video of a Holz-Her CNC machine cutting a door can be viewed on the Holz-Her website at: https://www.holzherusa.com/us/company-overview/news-press/holz-her-application-videos.html.

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW
{02486854.DOCX}

programming interfaces that CadCode used in order to translate non-CNC machine specific data (*e.g.*, Plaintiff's XML) into files readable by CNC machines produced by different CNC manufacturers (*e.g.*, HOP for Holz-Her). Four Seasons downloaded the converted HOP files and cut doors on its Holz-Her CNC machine.

Four Seasons never possessed any "source code" for either the MetaWorks Software or the CadCode Software, which was stored in Plaintiff's cloud-based source-code repository, backup hard drives, or with CadCode. Nor did Four Seasons ever receive the MetaWork Software XML output – Four Seasons simply uploaded door opening measurement data and downloaded HOP files for cutting on its Holz-Her CNC machine.

## II. Defendants Did Not Reverse Engineer One-Cut™.

Four Seasons paid Plaintiff a fee for each HOP file it downloaded – effectively a per door cut fee – which Plaintiff increased in or around December 2010, prompting Dairl and Glenn Johnson, of Four Seasons, to look into the availability of an alternative software provider. Dairl Johnson incorporated Defendant Casablanca Design Centers, Inc. ("Casablanca") in November 2010. Dairl Johnson founded Casablanca in anticipation of it operating as part of a national chain of door manufacturers, unlike Four Seasons, which had operated locally in Southern California.

//

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

3

In or around October 2011, Casablanca licensed Prodim software to convert Proliner measurement data into HOP files for cutting on Four Seasons' Holz-Her CNC machine.  Prodim offered a non-expiring license for a one-time fee.  Prodim completed installation of its software in November 2011.  In 2013, Casablanca paid to upgrade the Prodim software, and has manufactured doors using the Prodim software since November 2011.

Prodim uses computer aid manufacturing ("CAM") software from vectorcam[4] to generate HOP files; software installed on the Prodim Proliner generates XML directly (collectively, "Prodim Software").   In the course of licensing the Prodim Software, neither Casablanca nor Four Seasons participated in any kind of conspiracy to reverse engineer any part of One-Cut™. The Johnsons have no experience reading or writing any kind of computer code, and neither they nor their employees disclosed any type of trade secret or confidential information of Plaintiff to Prodim for reversing engineering purposes or otherwise.  In fact, after Prodim installed its software, Casablanca personnel noted that the Prodim software functioned differently than One-Cut™.

The absence of evidence pertaining to this reverse engineering conspiracy is unsurprising because Prodim had the ability to take Proliner measurement data – *i.e.*, data produced by the device Prodim invented – and use it to manufacture products (countertops, doors, cabinets, etc.) on Holz-Her CNC machines long

---

[4] https://www.vectorcam.com/en/

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

{02486854.DOCX}

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

before Dairl Johnson licensed the Prodim software in 2011.

In fact, Prodim was instrumental in the development of One-Cut™ in the first place. Specifically, in or around 2006 McElroy travelled to an industry trade show to meet with Prodim regarding use of the Proliner in McElroy's replacement door business, which at that time manufactured doors manually. Prodim informed McElroy that the Proliner could be used for replacement doors, and in fact, Prodim already had basic door software, which it demonstrated for McElroy.

Prior to meeting with Prodim, McElroy "didn't even know what a CNC machine was," but Prodim had a pre-existing relationship with Holz-Her and recommend McElroy use Holz-Her CNC machines. McElroy opted to purchase a Holz-Her CNC machine because of Prodim's preexisting relationship with Holz-Her, which was important to McElroy. At the trade show, McElroy learned Holz-Her had had been cutting doors on its CNC machines for years. Prodim was also experienced in using Holz-Her CNC machines to cut countertops, and it was McElroy's impression that Holz-Her had sold many machines through Prodim. After the trade show, Prodim travelled to McElroy's California facility, and cut a door using the Proliner on the Holz-Her CNC machine McElroy purchased at Prodim's recommendation.

McElroy wanted to obtain software that would automatically convert Proliner measurement data into files readable by CNC machines, including Holz-Her.

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW
{02486854.DOCX}

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

Prodim offered to enhance its current door software, which McElroy understood Prodim could do "fairly easily."  Multiple companies had "expressed that they had the ability to do what [McElroy was] asking them to do."  But Prodim wanted to enter into a "per-door" licensing agreement for the software, whereas McElroy wanted to own the software.

## III.   HOP Files Are Not Trade Secrets of Plaintiff.

The HOP files at-issue in this lawsuit are generated by CadCode Software and used to cut doors on Holz-Her CNC machines.  Plaintiff did not invent HOP, and users of Holz-Her CNC machines all over the world use HOP files to manufacture different types of products.  Winter, the former President and Chief Executive Officer of Plaintiff, does not consider HOP files proprietary.  And McElroy indicated that he did not see HOP files as "something proprietarywise." According to Plaintiff's Chief Technology Officer, CadCode HOP files are "simple."

CadCode offers its software to other customers, and there is no evidence of what, if any, confidentiality or trade secret restrictions CadCode imposes on users of its file library.  Plaintiff used the CadCode Software for years without a written confidentiality or trade secret agreement restricting Plaintiff's use of the software, or its ability to reverse engineer the software, as Plaintiff later did.

//

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

6
DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW
{02486854.DOCX}

In discovery, Plaintiff produced a manual from the German software company cnc-systeme gmbh, makers of the NC HOPS software, describing how to program HOP files for Holz-Her CNC machines.   The manual is dated July 13, 2006 – Plaintiff did not exist in 2006.   Similarly, as of 2006, Holz-Her had been cutting doors on its machines for years.   Prodim was cutting countertops (at least) on Holz-Her CNC machines before McElroy even knew what a CNC machine was. Holz-Her gives out sample HOP files to users of its machines, and users on woodworking and CNC machine forums discuss and share information regarding programming Holz-Her CNC machines, including sample HOP files.

Plaintiff also admits it reverse engineered the CadCode Sotware rather than pay an increased licensing fee.   Specifically, after CadCode contacted Plaintiff regarding the terms of Plaintiff's use of the CadCode Software, Plaintiff's Chief Technology Officer sent e-mail correspondence in which he derided the CadCode Software and HOP files and stated that he could easily recreate CadCode's "little library," if CadCode did not stop pressuring Plaintiff to pay an increased licensing fee.   Plaintiff's current Chief Executive Officer, Richard Matulia ("Plaintiff's CEO"), responded that the e-mail was good, but he did not want CadCode to "leverage [Plaintiff] on new pricing." UMF 88.  Ultimately, Plaintiff carried out the threat, wrote software that was the "equivalent" of the CadCode software, and cut CadCode out of the process.

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

{02486854.DOCX}

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

## IV.    Defendants Did Not Access CadCode Following Winter's Resignation.

Winter resigned from Plaintiff in July 2015.  Plaintiff claims that Winter took code relating to CadCode and Casablanca began accessing CadCode to generate HOP files, causing CadCode to note an increase of the number of HOP files it was processing.

Casablanca did not generate HOP files through CadCode following Winter's resignation in July 2015 and would have no reason to do so.   Casablanca licensed the Prodim software, including vectorcam to generate HOP files, for a one-time fee.  Casablanca can generate infinite HOP files using the vectorcam software linked to its CNC machines for no additional cost.  Each HOP file generated by Defendants from November 2011 to the present bears the name "vectorcam" in its text.

In fact, on December 2, 2016, Plaintiff's Chief Technology Officer, Joseph Fallon ("Plaintiff's CTO"), acknowledged that CadCode seemed to be processing more HOP files than Plaintiff was producing doors because, for a given door, Plaintiff's employees would regenerate HOP files on average 3–4 times.   CadCode responded that Plaintiff's CTO's data was "consistent with the logs, so I think that question has been answered."

Later Plaintiff wrote to CadCode to ask if there had been "any CadCode conversions coming from more than 1 IP address in regards to our specific account." CadCode responded that it had "just verified that all of the authorization requests

8
DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW
{02486854.DOCX}

have come from the same computer ID." On January 4, 2017, CadCode informed Plaintiff that: "For the record, we don't have any evidence that Dave and/or his current company are using the CadCode solution." In March 2017, when the CadCode Software server was down, and Plaintiff needed CadCode to make the issue a high priority "so we can get back up and running," Casablanca continued to generate HOP files without interruption.

## V.   Plaintiff Suspected Infringement In 2012.

McElroy and Winter knew Dairl and Glenn Johnson had transitioned to Prodim software by early 2012 at the latest. McElroy was "mad" and "upset." Prior business dealing with the Johnsons had not ended on "good terms," and the relationship between McElory and the Johnsons was "fractured." McElroy did not trust the Johnsons, questioned the legitimacy of their business dealings, and did not believe the Johnsons conducted business in an "honest" manner, whether that meant the way they paid their bills, treated customers, or how they resolved issues and problems.

McElroy also considered Prodim a competitor that posed a threat to Plaintiff's business because Prodim had begun offering competing software. Prodim was offering competing software and "advertising the fact that, you know, who needs HighMark when we can do it." McElroy was concerned Prodim was using ideas and technology developed by Plaintiff. A former employee of Plaintiff abruptly left

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW
{02486854.DOCX}

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

his employment with Plaintiff and went to work for Prodim; when McElroy learned of this, he was "upset" and "surprised."

When McElroy learned the Johnsons were using Prodim software, he was concerned the Johnsons might engage in "infringement" and use information belonging to Plaintiff "that they weren't allowed to have."  McElroy and Winter met and reviewed the terms of the Master Agreement.  McElroy and Winter could not be certain about what the Johnson were doing with Plaintiff's technology, if anything, but McElroy was concerned and believed there to be "a need for protection. McElroy and Winter considered litigation against Dairl and Glenn Johnson in or around the beginning of 2012.

Plaintiff could have further investigated its suspicions but elected not to do so.

## VI.    Facts Pertaining to Individual Entity Defendants.

Plaintiff sued certain Entity Defendants without regard to whether they were involved in the alleged acts in the Complaint or even existed during the relevant time period.   One Day Doors and Closets, Inc. was incorporated April 18, 2012. One Day Doors was incorporated with the intention of operating as part of a nationwide dealership program, but that never occurred and to date One Day Doors has never manufactured doors, had employees, or generated revenue.   One Days Doors has never used any type of software, whether that be One-Cut™ or Prodim

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW
{02486854.DOCX}

Software, to manufacture doors or anything else.  One Day Enterprises, LLC, for its part, did not commence operations until 2017, more than five years after Casablanca began using Prodim Software and almost two years after Winter resigned from Plaintiff.    It could not possibly have committed the alleged acts because it did not exist when they are supposed to have occurred.  Four Seasons has been non-operational since 2011 and is not responsible for alleged conduct occurring while it was a defunct entity.

## VII.   Facts Pertaining to Dave Winter.

In June of 2015, Winter connected via a short telephone call with Dairl and Glenn Johnson regarding the potential of future employment. After the phone call, the parties entered into a nondisclosure agreement that Winter viewed as important to protect his family.  During this time, Dave Winter and Dairl and Glenn Johnson discussed broad business plans.  Thereafter, Winter flew to Southern California to meet with Dairl and Glenn Johnson.  Next, the parties worked toward a letter of intent.

Winter resigned from his employment with HighMark on July 16, 2015, and his last day of employment at HighMark was on July 17, 2015.  Winter flew to Southern California for a business meeting with Dairl and Glenn Johnson on July 22, 2015.  Winter began his employment with Casablanca in August of 2015.

//

PORTER │ SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW
{02486854.DOCX}

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

Winter never accessed, took, or disclosed any information that HighMark considered to be a trade secret or confidential.   Winter has never used CadCode since being employed with HighMark.   Plaintiff's Chief Technology Officer, Joseph Fallon admitted that he has no evidence Winter took, disclosed, or used trade secret or confidential information belonging to Plaintiff in any manner. Winter made it crystal clear to his future employers in July of 2015 that he did not want to bring over any dealers or assets from HighMark or do anything to the detriment of the company (HighMark).  Winter wanted to be ethical in all areas and wanted nothing to do with HighMark's technology.

After his resignation, Winter returned materials that consisted of an Apple laptop, an external electronic storage device, and the materials in his office.  Winter returned the Apple laptop and the external electronic storage device to Richard Matulia at a Starbucks.  Winter returned the Apple laptop and the external storage device approximately a week to a week and a half after his employment at HighMark ceased.   Initially, Winter intended to return the Apple laptop upon his resignation.

Right after the termination of his employment, Winter received an email alert that information including his and his wife's phone number, e-mail address and home address had been changed on his personal Wells Fargo bank account.  HighMark banked with US Bank at the time.   Winter went to a Wells Fargo branch

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW
{02486854.DOCX}

and was informed that his account information had been changed to include Rich Matulia's email address, other HighMark email addresses, HighMark phone numbers, and the physical address for HighMark.  Winter also believes that his personal Facebook page was accessed, and account settings were changed by HighMark.  Winter believes HighMark hacked into the Wells Fargo and Facebook accounts.  inter was not informed of the changes made to his Wells Fargo and Facebook accounts prior to HighMark doing so, and Winter did not consent to the changes made by HighMark.

In July of 2015, Katherine Gabales was an employee of HighMark.  One of the job duties of Gabales was to change credentials once employees stopped working there.  Gabales was orally instructed to change credentials for Winter after he left HighMark.  Gabales admits to accessing a Wells Fargo bank account and switching the credentials to reflect HighMark.  Gabales did not communicate with Winter that the changes were going to be made to the Wells Fargo account.  Gabales admits to accessing a Facebook account and switching the credentials to reflect Highmark.  Gabales did not communicate with Winter that changes were made to the Facebook account or any account.  Gabales assumed that the accounts, for which credentials were changed, were HighMark accounts and not personal accounts of Winter.

//

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

{02486854.DOCX}

Winter was advised by Wells Fargo officials in its fraud department to wipe the hard drive of the Apple computer.  Winter did not want to do so, but ultimately did wipe the hard drive of the Apple laptop.  Before wiping the hard drive of the Apple laptop, Winter backed up any HighMark files to an external hard drive to insure HighMark files would be preserved.  Winter never intentionally deleted any HighMark data or information from any HighMark issued laptop or hard drive. It is admitted that the external electronic storage device provided by Winter contained HighMark files and there is no suspicion that files were missing.

Beginning in 2017, Winter began working for One Day Enterprises, LLC ("One Day Enterprises") which operates in Rocklin, California.   One Day Enterprises has been using Prodim Software since 2017.  One Day Enterprises has never used CadCode in its operations.

**Summary of Defendants' Affirmative Defenses (L.R. 16-4.1(d):**

**First Affirmative Defense: Failure to State Facts Sufficient to Constitute Claims.**

**(a)     Factual Basis:**

Plaintiff cannot factually prove each and every element of its claims against the Defendants as described above.

//

//

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

14

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

{02486854.DOCX}

**(b)      Elements:**

For the remaining claims described above, Plaintiff cannot present facts to satisfy each and every element of each cause of action.

**(c)      Key Evidence:**

Testimony of Plaintiff's current and former representatives, testimony of Defendants and their representatives, testimony of experts and admission of key documents as described above.

**Second Affirmative Defense:  Defendants Allege they have Appropriately, Completely, and Fully Performed, Satisfied, and Discharged any and all Obligations and Legal Duties.**

**(a)      Factual Basis:**

Defendants have performed all terms, conditions and obligations as outlined above in any written agreement with the Plaintiff, respectively.

**(b)      Elements:**

"'Substantial performance means that there has been no willful departure from the terms of the contract, and no omission of any of its essential parts, and that the contractor has in good faith performed all of its substantive terms. If so, he will not be held to have forfeited his right to a recovery by reason of trivial defects or imperfections in the work performed.' " (*Connell v. Higgins* (1915)170 Cal. 541, 556, citation omitted.) The Supreme Court has cited the following passage from

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

Witkin with approval: "At common law, recovery under a contract for work done was dependent upon a complete performance, although hardship might be avoided by permitting recovery in quantum meruit. The prevailing doctrine today, which finds its application chiefly in building contracts, is that substantial performance is sufficient, and justifies an action on the contract, although the other party is entitled to a reduction in the amount called for by the contract, to compensate for the defects. What constitutes substantial performance is a question of fact, but it is essential that there be no willful departure from the terms of the contract, and that the defects be such as may be easily remedied or compensated, so that the promisee may get practically what the contract calls for." (*Posner v. Grunwald-Marx, Inc*. (1961) 56 Cal.2d 169, 186-187; see also *Kossler v. Palm Springs Developments, Ltd.* (1980) 101Cal.App.3d 88, 101.)"

**(c)   Key Evidence:**

Testimony of Plaintiff's current and former representatives, testimony of Defendants and their representatives, testimony of experts and admission of key documents as described above.

**Third Affirmative Defense**: Each Claim in Complaint is Barred by **Equitable Defenses of Laches.**

**(a)   Factual Basis:**

Plaintiff waited an unreasonable time to bring its claims as described above.

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

16

**(b)   Elements:**

The defense of laches requires unreasonable delay plus either acquiescence in the act about which the plaintiff complains or prejudice to the defendant resulting from the delay (*Johnson v. City of Loma Linda* (2000) 24 Cal. 4th 61, 68; *Board of Administration v. Wilson* (1997) 52 Cal. App. 4th 1109, 1126; *In re Marriage of Fogarty & Rasbeary* (2000) 78 Cal. App. 4th 1353, 1359; *Vernon Fire Fighters Assn. v. City of Vernon* (1986) 178 Cal. App. 3d 710, 719.)   In passing on the argument of laches, the court must look to the extent of prejudice to the opposing party and to the reasonableness of the moving party's actions. These two factors are interrelated; the greater the prejudice, the more timely must be the relief sought (*In re Marriage of Modnick* (1983) 33 Cal. 3d 897, 909.)

**(c)   Key Evidence:**

Testimony of Plaintiff's current and former representatives, testimony of Defendants and their representatives, testimony of experts and admission of key documents as described above.

**<u>Sixth Affirmative Defense:</u> Recovery of All Claims Made by Plaintiff are Barred by Any and All Applicable Statues of Limitations.**

**(a)   Factual Basis:**

Plaintiff has failed to proceed with its claims inside of the statute of limitations for each claim against each Defendant.

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW
{02486854.DOCX}

**(b)    Elements:**

Defendants assert that the statute of limitations has run on each of the remaining claims asserted against them. The law is clear on, the applicable statutes of limitations for the remaining claims. The statute of limitations in California for a breach of contract claim is four years. Cal. Civ. Proc. Code § 337. The California and federal misappropriation of trade secrets causes of action both have a statute of limitations of three years. Cal. Civ. Code § 3426.6; 18 U.S.C. § 1836(d). The statute of limitations for all of Plaintiff's claims are four years or less. Because Plaintiff filed its lawsuit on July 13, 2018, claims that accrued before July 13, 2014, are time-barred.

"Generally speaking, a cause of action accrues at 'the time when the cause of action is complete with all of its elements.'" *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806 (2005) (quoting *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999)). However, under the "discovery rule," the accrual is postponed until the plaintiff discovers, or has reason to discover, the cause of action. *Fox*, 35 Cal. 4th at 807. "A plaintiff has reason to discover a cause of action when he or she 'has reason at least to suspect a factual basis for its elements.'" *Id.* (quoting *Norgart*, 21 Cal. 4th at 398). California's discovery rule applies to breach of contract claims. *April Enterprises, Inc. v. KTTV*, 147 Cal. App. 3d 805, 832 (1983); *Broberg v. The Guardian Life Ins. Co. of Am.*, 171 Cal. App. 4th 912, 920 (2009).

18
DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW
{02486854.DOCX}

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

"[W]hen there is reason to suspect that a trade secret has been misappropriated, and a reasonable investigation would produce facts sufficient to confirm this suspicion (and justify bringing suit), the limitations period begins, even though the plaintiff has not conducted such an investigation." *Gabriel Techs. Corp. v. Qualcomm Inc.*, 857 F. Supp. 2d 997, 1003 (S.D. Cal. 2012) (quoting *Alamar Biosciences Inc. v. Difco Labs. Inc.*, No. CIV-S-94-1856 DFL PA, 1996 WL 648286, at *3 (E.D. Cal. Feb. 27, 1996)).

To invoke the discovery rule and delay the accrual of a cause of action, the plaintiff must "show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *See Fox*, 35 Cal. 4th at 808 (quoting *McKelvey v. Boeing North American, Inc.*, 74 Cal. App. 4th 151, 160 (1999)).

**(c)**     **Key Evidence:**

Testimony of Plaintiff's current and former representatives, testimony of Defendants and their representatives, testimony of experts and admission of key documents as described above.

**<u>Ninth Affirmative Defense:</u> Contractual Provision that Restrains Anyone from Engaging in a Lawful Trade and Profession be Void.**

**(a)**     **Factual Basis:**

Any contractual provision between Plaintiff and Defendants that prevents the

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

Defendants from engaging in a lawful profession, trade, or business of any kind is to that extent void.

**(b)    Elements:**

California Business and Professions Code section 16600 provides: "[e]xcept as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." (Cal. Bus. & Prof. Code §16600.)

**(c)    Key Evidence:**

Testimony of Plaintiff's current and former representatives, testimony of Defendants and their representatives, testimony of experts and admission of key documents as described above.

**<u>Tenth Affirmative Defense:</u> Trade Secrets That are the Subject of the Complaint at all Times Relevant Were and are not "Secret", Steps to Maintain Secrecy Did Not Occur and/or the Information is in the Public Realm**

**(a)    Factual Basis:**

Computer files known as HOP files are not and never were a trade secret of Plaintiff.

**(b)    Elements:**

Information will be considered a trade secret only where the information: (1) derives independent economic value from not being generally known; and (2) is the

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW
{02486854.DOCX}

PORTER |SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

subject of reasonable efforts to maintain its secrecy. (Cal. Civ. Code § 3426.1(d).)

**(c)  Key Evidence:**

Testimony of Plaintiff's current and former representatives, testimony of Defendants and their representatives, testimony of experts and admission of key documents as described above.

**Eleventh Affirmative Defense: All Defenses Contained in the Uniform Trade Secret Act in California Code Sections 3426-3426.11.**

**(a)  Factual Basis:**

Plaintiff claims that Defendants have taken their trade secrets in the form of source code or HOP files.

**(b)  Elements:**

The elements of the claims and defenses of the Uniform Trade Secret Act are contained in California Civil Code sections 3426-3426.11. (Cal. Civ. Code §§ 3426-3426.11.) To prevail on a DTSA or CUTSA claim, a plaintiff must prove: (1) ownership of a trade secret; (2) the defendant misappropriated the trade secret; and (3) damages caused by the defendant's actions. (*WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 845 (N.D. Cal. 2019); *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 220 (2010) *disapproved of on other grounds by Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011).) The DTSA and CUTSA both define "misappropriation" as the improper "acquisition," "disclosure," or "use" of a trade

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW
{02486854.DOCX}

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL. 916.929.1481
FAX: 916.927.3706

secret. (18 U.S.C. §§ 1839(5)(A)-(B); *Silvaco*, 184 Cal. App. 4th at 222.)

A plaintiff first "must identify the trade secrets and carry the burden of showing that they exist." (*Imax Corp. v. Cinema Techs., Inc*., 152 F.3d 1161, 1164-65 (9th Cir. 1998).) The plaintiff "should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons ... skilled in the trade." (*Imax Corp.*, 152 F.3d at 1164-65 (internal citation omitted).) In addition to the requirement that the information be sufficiently particular, courts apply a two-part test to determine whether the information at issue constitutes a trade secret: (1) the information is valuable because it is unknown to others, and (2) the owner made reasonable efforts to keep the information secret. (18 U.S.C. § 1839(3); *see Imax Corp.*, 152 F.3d at 1164; *see Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1454 (2002).) DTSA defines "trade secret" as "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes." (18 U.S.C. § 1839(3).)

//

//

//

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW
{02486854.DOCX}

**(c)    Key Evidence:**

Testimony of Plaintiff's current and former representatives, testimony of Defendants and their representatives, testimony of experts and admission of key documents as described above.

**Twelfth Affirmative Defense: Defendants are Informed and Believe and Thereon Allege, Any and All Defenses Contained in the Defend Trade Secret Act in 18 U.S.C. section 1836.**

**(a)    Factual Basis:**

Plaintiff claims that Defendants have taken their trade secrets in the form of source code or HOP files.

**(b)    Elements:**

The elements of the claims and defenses of the Defend Trade Secret act are contained in 18 U.S.C. Section 1836. (18 U.S.C. § 1836.)

**(c)    Key Evidence:**

Testimony of Plaintiff's current and former representatives, testimony of Defendants and their representatives, testimony of experts and admission of key documents as described above. To prevail on a DTSA or CUTSA claim, a plaintiff must prove: (1) ownership of a trade secret; (2) the defendant misappropriated the trade secret; and (3) damages caused by the defendant's actions. (*WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 845 (N.D. Cal. 2019); *Silvaco Data Sys. v. Intel*

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

*Corp.*, 184 Cal. App. 4th 210, 220 (2010) *disapproved of on other grounds by Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011).) The DTSA and CUTSA both define "misappropriation" as the improper "acquisition," "disclosure," or "use" of a trade secret. (18 U.S.C. §§ 1839(5)(A)-(B); *Silvaco*, 184 Cal. App. 4th at 222.)

A plaintiff first "must identify the trade secrets and carry the burden of showing that they exist." (*Imax Corp. v. Cinema Techs., Inc*., 152 F.3d 1161, 1164-65 (9th Cir. 1998).) The plaintiff "should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons ... skilled in the trade." (*Imax Corp.*, 152 F.3d at 1164-65 (internal citation omitted).) In addition to the requirement that the information be sufficiently particular, courts apply a two-part test to determine whether the information at issue constitutes a trade secret: (1) the information is valuable because it is unknown to others, and (2) the owner made reasonable efforts to keep the information secret. (18 U.S.C. § 1839(3); *see Imax Corp.*, 152 F.3d at 1164; *see Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1454 (2002).) DTSA defines "trade secret" as "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes." (18 U.S.C. § 1839(3).)

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW
{02486854.DOCX}

**<u>Fourteenth Affirmative Defense:</u> Failure to State Facts Sufficient to Constitute a Viable Cause of Action or Theory to Predicate Attorney's Fees.**

**(a)     Factual Basis:**

Plaintiff cannot prevail factually on its underlying claims and as a result cannot recover attorney's fees.

**(b)     Elements:**

There is the potential for recovery of contractual attorneys' fees for any agreement between Plaintiff and any Defendant. There is also the potential for recovery of statutory attorneys' fees in the Uniform Trade Secret Act and Defend Trade Secrets Act.

**(c)     Key Evidence:**

Testimony of Plaintiff's current and former representatives, testimony of Defendants and their representatives, testimony of experts and admission of key documents as described above.

**<u>BIFURCATION OF ISSUES (L.R. 16-4.3)</u>**

Defendants moved the Court to bifurcate the statute of limitations defenses claimed by Defendants. That motion was denied.

//

//

//

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

25

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

{02486854.DOCX}

### JURY TRIAL (L.R. 16-4.4)

The claims for trade secret misappropriation, breach of contract and penal code 502 permit a jury trial. The equitable defense of laches would be determined by the Court.

### ATTORNEY'S FEES (L.R. 16-4.5)

The recovery of attorneys' fees is possible given that there is contractual attorneys' fees provisions between the Plaintiff and some Defendants and there is also statutory attorneys' fees provisions in the Uniform Trade Secret Act and Defend Trade Secrets Act.

### ABANDONMENT OF ISSUES (L.R. 16-4.6)

Defendants abandon the fourth, fifth, seventh, eighth, thirteenth, fifteenth and sixteenth affirmative defenses. Defendant Four Seasons Windows, Inc.'s statute of limitations defense based on the plain language of the Master Agreement has been precluded by the ruling by Judge Otero on the cross motions for summary judgment/adjudication. (See Document 201, Filed March 26, 2020, containing the Civil Minutes Ruling by Judge Otero.)

As to Plaintiffs fifth and sixth causes of action judgment has been entered in favor of the Defendant(s) named in the respective causes of action. Plaintiff is barred from claiming that Four Seasons Windows, Inc. and Casablanca Design Centers, Inc. are a single entity for the purposes of this litigation. (See Document

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW
{02486854.DOCX}

201, Filed March 26, 2020, containing the Civil Minutes Ruling by Judge Otero.)

Dated:  August 26, 2021            PORTER SCOTT
                                   A PROFESSIONAL CORPORATION


                                   By   /s/ Martin N. Jensen
                                        Martin N. Jensen
                                        Joceline M. Herman
                                        Attorneys for Defendants
                                        CASABLANCA DESIGN CENTERS,
                                        INC., FOUR SEASONS WINDOWS,
                                        INC., ONE DAY DOORS AND
                                        CLOSETS, INC., DAVID WINTER,
                                        AND ONE DAY ENTERPRISES,
                                        LLC

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

27
DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW
{02486854.DOCX}